**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| INTEGRATED HEALTH SERVICES, INC., | ) | Chapter 11 |
| ET AL., | ) | |
| | ) | Case No. 00-389 (MFW) |
| Debtors. | ) | |
| | ) | (Jointly Administered) |
| | ) | |
| | ) | |
| | ) | |
| IHS LIQUIDATING LLC, | ) | |
| | ) | |
| Appellant, | ) | |
| | ) | |
| v. | ) | Appeal No. 04-CV-917(GMS) |
| | ) | |
| DON G. ANGELL, *et al.*, | ) | |
| | ) | |
| Appellee. | ) | |
| | ) | |
| | ) | |
| | ) | |

**BRIEF OF APPELLANT**
**IHS LIQUIDATING LLC**

YOUNG CONAWAY STARGATT &
TAYLOR, LLP
Robert S. Brady (No. 2847)
Edmon L. Morton (No. 3856)
Joseph M. Barry (No. 4221)
The Brandywine Building
1000 West Street - 17th Floor
P.O. Box 391
Wilmington, DE 19899-0391
(302) 571-6600

KAYE SCHOLER LLP
Arthur Steinberg
425 Park Avenue
New York, New York 10022
(212) 836-8000

*Attorneys for Appellant IHS Liquidating LLC*

# TABLE OF CONTENTS

Page

1. STATEMENT OF THE BASIS FOR APPELLATE JURISDICTION . . . . . . . . . . . . . . 1

2. STATEMENT OF ISSUES PRESENTED ON APPEAL AND APPLICABLE
   STANDARD OF APPELLATE REVIEW . . . . . . . . . . . . . . . . . . . . . . . . . . . 1
   a. Issues Presented on Appeal . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1
   b. Standard of Review . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

3. STATEMENT OF THE CASE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
   a. Nature of the Case . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
   b. Procedural History of the Instant Appeal and Statement of Facts . . . . . . . . . . . 9
      1. Filing of Cases and Disputed Claims . . . . . . . . . . . . . . . . . . . . . . . 9
      2. The Angell Lawsuit . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9
      3. The Premiere D&O Action . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11
      4. The Premiere Settlement . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13
      5. The Debtors' Plan of Reorganization . . . . . . . . . . . . . . . . . . . . . . . 14
      6. Appellant's Claim Objections to Appellees' Disputed Claims . . . . . . . . 15

4. ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17
   a. The Plan Does Not Exclude Appellant From Asserting Its Claim Objection
      against Appellees . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18
      1. The Record in the Cases . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19
   b. Appellant Is Not Precluded from Asserting its Claims Against Appellees
      under the Doctrine of Res Judicata . . . . . . . . . . . . . . . . . . . . . . . . . . 27
   c. Appellees' Improper Conduct in these Cases Should Result in a
      Disallowance of the Disputed Claims . . . . . . . . . . . . . . . . . . . . . . . . . 33

5. CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35

# TABLE OF AUTHORITIES

Page

## FEDERAL CASES

*In re ANC Rental Corp.,*
    280 B.R. 808 (D. Del 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   4

*In re Artra Group, Inc.,*
    308 B.R. 851 (Bankr. N.D. Ill. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . .   29

*In re Comer,*
    716 F.2d 168 (3d Cir. 1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   1

*Donaldson v. Bernstein,*
    104 F.3d 547 (3d Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   26

*First Am. Bank of New York v. Century Glove, Inc.,*
    81 B.R. 274 (D. Del. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   4

*Gillman v. Continental Airlines (In re Continental Airlines),*
    203 F.3d 203 (3d Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   4

*Huck ex rel. Sea Air Shuttle Corp. v. Dawson,*
    106 F.3d 45, 48 (3d. Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   31

*In re Marvel Ent. Group,*
    140 F.3d 463 (3d Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   1

*In re Matunas,*
    261 B.R. 129 (Bankr. D. N.J. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . .   27

*Meespierson, Inc. v. Strategic Telecom, Inc.,*
    202 B.R. 854, 847 (D. Del. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . .   4

*Mellon Bank, N.A. v. Metropolitan Communications, Inc.,*
    945 F.2d 635 (3d Cir. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   4

*In re Montgomery Ward Holding Corp.,*
    269 B.R. 1 (D. Del. 2001), *aff'd*, 326 F.3d 383 (3d Cir. 2003) . . . . . . . . . .   4

*New Hampshire v. Maine,*
    532 U.S. 742 (2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   note 3, 26

*Pepper v. Litton,*
   308 U.S. 295 (1939) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  35

## FEDERAL STATUTES AND RULES

11 U.S.C. 101 *et seq* ("Bankruptcy Code") . . . . . . . . . . . . . . . . . . . . . . . . . . . .  9

11 U.S.C. 362 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  11, 17

11 U.S.C. 510(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  33

Fed. R. Bankr. P. 8013 ("Bankruptcy Rules") . . . . . . . . . . . . . . . . . . . . . . . . . .  4

## MISCELLANEOUS

7 COLLIER ON BANKRUPTCY ¶ 1103.5[2] (15th ed. *rev'd* 2002) . . . . . . . . . . . . . .  29

RESTATEMENT OF THE LAW (SECOND) JUDGMENTS 2D § 20(2) . . . . . . . . . . . . . .  31

RESTATEMENT OF THE LAW (SECOND) JUDGMENTS 2D § 24 . . . . . . . . . . . . . . . .  31

RESTATEMENT OF THE LAW (SECOND) JUDGMENTS 2D § 26(1)(F) . . . . . . . . . . . .  31

RESTATEMENT OF THE LAW (SECOND) JUDGMENTS 2D § 26(2) . . . . . . . . . . . . . . .  32

Appellant, IHS Liquidating LLC ("Appellant" or " Liquidating LLC") hereby appeals from the *Order (i) Granting Motion To Dismiss Counterclaims, (ii) Sustaining, In Part, and Overruling, in Part, Objections To Claims, and (iii) Allowing Unsecured Claims of Don G. Angell, Don G. Angell Irrevocable Trust, Angell Care Incorporated and Bermuda Village Retirement Center Limited Partnership* ("Order") (D 48)[1] entered by the United States Bankruptcy Court for the District of Delaware ("Bankruptcy Court") on June 25, 2004 in the above-captioned cases of Integrated Health Services, Inc. ("IHS") and its subsidiaries (collectively with IHS, "Debtors").

### 1.

## STATEMENT OF THE BASIS FOR APPELLATE JURISDICTION

The United States District Court for the District of Delaware ("Court") has jurisdiction over this appeal pursuant to 28 U.S.C. § 158(a)(1) because this is a direct appeal from the entry of a final order by the Bankruptcy Court. *In re Marvel Ent. Group*, 140 F.3d 463, 470 (3d Cir. 1998); *In re Comer*, 716 F.2d 168, 171 (3d Cir. 1983).

### 2.

## STATEMENT OF ISSUES PRESENTED ON APPEAL
## AND APPLICABLE STANDARD OF APPELLATE REVIEW

**a.**    **Issues Presented on Appeal**

i.    Whether the Bankruptcy Court erred in granting Don G. Angell ("Angell"), Don G. Angell Irrevocable Trust ("Trust"), Angell Care Incorporated ("ACI") and Bermuda Village Retirement Center Limited Partnership's ("BVRC") (collectively, "Appellees") *Motion to*

---

[1]    "D ___" refers to Appellant's Designation of Items to Be Included in the Record on Appeal and Statement of Issues on Appeal, filed with the Bankruptcy Court on July 12, 2004 ('Designation') . For the convenience of the Court and parties-in-interest, accompanying this brief is an Appendix containing any specific excerpt cited from any designated item, with a numbered copy of the Designation as Appendix Item 1

*Dismiss Counterclaim Pursuant to Federal Rule of Bankruptcy Procedure 7012 and Preliminary Response to Objection to Claims* ("Motion to Dismiss") (D 44).

      ii.      Whether the Bankruptcy Court erred in denying Appellant's counterclaims ("Counterclaims") set forth in *IHS Liquidating LLC's Objections and Counterclaims to the Claims Asserted by Don G. Angell, Don G. Angell Irrevocable Trust and Angell Care Incorporated (Proof of Claim Nos. 9162-9172, 9657, 10620, 10623 and 10625)* ("Claim Objections") (D 41).

      iii.      Whether the Bankruptcy Court erred in denying Appellant's cross-motion ("Cross-Motion") for judgment on the pleadings set forth in Appellant's *Objection to Defendant's Motion to Dismiss Counterclaim Pursuant to Federal Rule of Bankruptcy Procedure 7012 and Preliminary Response to Objection to Claims, and (B) Cross-Motion for Judgment on the Pleadings* ("Objection") (D 45).

      iv.      Whether the Bankruptcy Court erred in allowing portions of Appellees' Proofs of Claim, Nos. 10620, 10623 and 10625 (D 50-52).

      v.      Whether the Bankruptcy Court erred in holding that the Debtors waived their right to argue that Appellees, as a matter of law and by virtue of the Plan and Confirmation Order (as herein defined), were barred from pursuing derivative claims belonging to the Debtors' estates.

      vi.      Whether the Bankruptcy Court erred in holding that the Plan effected a waiver of the Appellant's right to seek damages from Appellees for prosecuting causes of action that belong to the Debtors' estates, in the event that the Appellees, after the settlement with the Premiere Committee, asserted released causes of action that belonged to the Debtors' estates in the litigation known as *Don G. Angell, D. Gray Angell, Jr., and Don R. House, in their capacities as Co-Trustees of the Don Angell Irrevocable Trust Under Instrument Dated July 24,*

1992, Angell Care Incorporated, v. Elizabeth B. Kelly, C. Taylor Picket, Daniel Booth and

Ronald L. Lord ("Angell Lawsuit") (Ex "A" to D. 1), pending in the United States District Court

for the Middle District of North Carolina (Durham) ("North Carolina Court"), Case No. 01- CV -

435 (Osteen, D.J.).

      vii.    Whether the Bankruptcy Court erred in ruling that the Plan effected a waiver of

the Appellant's right to pursue the Counterclaims or object to claims based upon the consensual

resolution of the Debtors' *Complaint for Declaratory & Injunction Relief, Sanctions &*

*Attorneys' Fees* filed in the Bankruptcy Court, Adv. Pro. No. 01-1030 ("Injunction Complaint")

(D. 1), when such resolution was simultaneous with the confirmation of the Debtors' *Amended*

*Joint Plan of Reorganization of Integrated Health Services, Inc. and Its Subsidiaries Under*

*Chapter 11 of the Bankruptcy Code* ("Plan") (D. 28), whereby the Debtors' estates' causes of

action were settled with prejudice, and such Debtors' estates' claims were substantially the same

as those asserted in the Angell Lawsuit.

      viii.    Whether the Bankruptcy Court erred in denying Appellant the right to assert that

Appellees after the Effective Date (as herein defined) were violating other provisions of the Plan

and the *Findings of Fact, Conclusions of Law and Order Under 11 U.S.C. Section 1129(a) and*

*(b) and Fed. R. Bankr. P. 3020 Confirming Amended Joint Plan of Reorganization of Integrated*

*Health Services, Inc. and its Subsidiaries Under Chapter 11 of the Bankruptcy Code*

("Confirmation Order") (D. 29) because the Injunction Complaint was consensually dismissed

with prejudice pursuant to the same Plan and Confirmation Order.

b.     **Standard of Review**

Rule 8013 of the Federal Rules of Bankruptcy Procedure ("Bankruptcy Rules") sets the general standard of review in appeals from a bankruptcy court and states, "[o]n an appeal the district court . . . may affirm, modify, or reverse a bankruptcy judge's judgment, order, or decree or remand with instructions for further proceedings."

Under Bankruptcy Rule 8013, the bankruptcy court's factual findings "shall not be set aside unless clearly erroneous." However, "[w]hen findings of fact are based on an incorrect legal standard, those findings are subject to plenary review on appeal." *First Am. Bank of New York v. Century Glove, Inc.*, 81 B.R. 274, 278 (D. Del. 1988). A bankruptcy court's "conclusions of law are subject to plenary review and are considered *de novo* by the reviewing court." *In re Montgomery Ward Holding Corp.*, 269 B.R. 1, 6 (D. Del. 2001), *aff'd*, 326 F.3d 383 (3d Cir. 2003); *Meespierson, Inc. v. Strategic Telecom, Inc.*, 202 B.R. 854, 847 (D. Del. 1996). Stated succinctly, on appeal, a district court reviews a bankruptcy court's "legal determination *de novo* [and] its factual finding for clear error . . . ." *Gillman v. Continental Airlines (In re Continental Airlines)*, 203 F.3d 203, 208 (3d Cir. 2000); *See also In re ANC Rental Corp.*, 280 B.R. 808, 814 (D. Del 2002).

Mixed questions of law and fact are "subject to a 'mixed standard of review' under which the appellate court accepts findings of 'historical or narrative facts unless clearly erroneous, but exercise[s] plenary review of the trial court's choice and interpretation of legal precepts and its application of those precepts to the historical facts.'" *Id.*, quoting *Mellon Bank, N.A. v. Metro Communications, Inc.*, 945 F.2d 635, 641- 42 (3d Cir. 1991).

3.

## STATEMENT OF THE CASE

a.    **Nature of the Case**

This appeal seeks a review of the Bankruptcy Court's Order overruling the Claim

Objections brought by Appellant against Appellees. The Claim Objections sought disallowance

or subordination of the Appellees' claims against the Debtors' estates, not because Appellant

disputes Debtors' liability on the promissory notes underlying those claims, but as a sanction for

Appellees' deliberate breach of a settlement embodied in the Plan and Appellees' violation of the

Confirmation Order.

The facts giving rise to the Claim Objections are indisputable. In February 2001, certain

of the Appellees commenced the Angell Lawsuit, by which they asserted approximately $40

million in tort and statutory claims (including trebled damages) against certain individuals who

were then officers of IHS ("Former Officers"). The majority of the claims are centered around

the allegation that the Former Officers caused Appellees to suffer damages resulting from

guarantees given to the Debtors' lending group (which the Debtors were contractually required to

give) that allegedly caused the insolvency and ultimate bankruptcy of certain of the Debtors

known as Premiere Associates, Inc. ("Premiere") and its subsidiaries (collectively with Premiere,

"Premiere Entities").

These stated causes of action are in the nature of a fraudulent conveyance claim and are

unquestionably property of the Debtors' estates that Appellees had no right to pursue for their

personal benefit; to the contrary, it is black letter law that only an estate representative can bring

this type of claim, which it may only pursue for the benefit of *all* creditors of the estate.

Accordingly, the Debtors filed the Injunction Complaint in the Bankruptcy Court, in which they

sought an injunction of the Angell Lawsuit and a declaration that Appellees' had asserted estate causes of action. Recognizing their mistake, Appellees agreed to a consensual stay of the Angell Lawsuit and then petitioned the Bankruptcy Court to direct the formation of an official creditors' committee for creditors of the Premiere Entities' bankruptcy estates to investigate these same causes of action on behalf of those estates. The Bankruptcy Court granted the Appellees' request, and Appellees became the Chair of that committee ("Premiere Committee") (D 6). With Appellees at the helm, the Premiere Committee then filed a lawsuit, on behalf of the Premiere Entities' estates, asserting substantially the same causes of action that had been improperly asserted in the Angell Lawsuit.

In 2003, Appellee Angell, together with counsel for the Premiere Committee (D 8,15) (which was the former counsel for Appellees), negotiated with the Debtors and ultimately agreed upon a consensual Plan, which provided, among other things, for (i) special and enhanced distributions to the holders of claims against the Premiere Entities, with the lion's share of those distributions to be paid to Appellees, (ii) dismissal of the Premiere Committee's lawsuit against the Former Officers with prejudice, (iii) dismissal of the Injunction Complaint with prejudice, and (iii) dissolution of the stay of the Angell Lawsuit for the purpose of allowing Appellees to pursue their personal, non-estate causes of action against the Former Officers. The dismissal of the estate causes of action in the Angell Lawsuit was critical to the implementation of the Plan, because, among other things, in the absence of such dismissal, the Former Officers would assert indemnification claims against the Debtors based on their potential exposure to an adverse judgment in Appellees' favor. Indeed, eliminating the specter of these indemnification claims was a critical element for the Debtors' agreement to pay an enhanced distribution to the holders of unsecured claims against the Premiere Entities ("Premiere Unsecured Claims").

Instead of honoring their commitment under the Plan, Appellees refused to withdraw and continued to prosecute the estates' causes of action until September 17, 2004, when the North Carolina Court dismissed all of the estates' causes of action asserted in the Angell Lawsuit. In its *Memorandum Opinion and Order* filed September 17, 2004 (Appendix Item 2, pp. A9-A33), the North Carolina Court held that the dismissed claims constituted property of the Debtors' estates that the Angell Plaintiffs lacked standing to assert (as Appellant had said all along). The North Carolina Court's order came <u>after</u> the Bankruptcy Court's Order that is the subject of the instant appeal.

Until Appellees were finally stymied by the North Carolina Court, the Appellant, which was created under the Plan for the primary purpose of making distributions to *all* unsecured creditors as required by the Plan, suffered damages in the form of (i) needless litigation expenses incurred in its battle with the Former Officers over their potential liability to the Appellees for these released claims, (ii) added costs associated with the Bankruptcy Court's decision to order the Debtors' estates to file a motion on notice to the Former Officers before *any* distribution to unsecured creditors was made, so that they would have an opportunity to object or otherwise respond, (iii) delay of distributions to the vast majority of the Debtors' unsecured creditors, who bargained for a resolution of the claims Appellees wrongfully pursued after the Plan became effective, and (iv) paying legal fees incurred by the Former Officers, because the Debtors' self-insured retention obligation under the Debtors' director and officer insurance policy had not yet been satisfied.

Were it not for the improper conduct of the Appellees in prosecuting these released estate claims, the ensuing delay and expense incurred by the Appellant would have been avoided, or at least substantially reduced. Accordingly, Appellant argued below that as an appropriate sanction,

the Bankruptcy Court should disallow, or at least subordinate, Appellees' claims against the

Debtors, so that Appellees would not reap the benefits of a settlement they had breached. The

sanction request was also predicated on a clear violation of the Confirmation Order.

Rather than deal with the underlying substance of Appellees' improper prosecution of

released estate causes of action, the Bankruptcy Court narrowly focused its attention on certain

limited portions of the Plan, leading it to improperly conclude that (i) the Plan had caused a

waiver of the Appellant's right to argue that Appellees' prosecution of estate causes of action

was a breach of the Plan settlement and violation of the Confirmation Order, and, further,

(ii) under the doctrine of *res judicata*, the Debtors' earlier voluntary dismissal of the Injunction

Complaint with prejudice precluded Appellant from now seeking sanctions for post-Effective

Date conduct. The Bankruptcy Court further found that because the Former Officers' right to

make the same arguments raised by Appellant in its Claim Objections had been expressly

preserved, this meant that those arguments could *only* be made by the Former Officers and not

the Appellant (May 26, 2004 Tr . at 43, 51-52, 56) (Appendix Item 3, pp. A34-A37).

The Bankruptcy Court erred in finding that the Debtors, through the Plan or elsewhere,

waived or relinquished the right of Appellant to seek to enforce the Plan and Confirmation Order

and/or seek sanctions based on the Appellees' pursuit of the estate causes of action, post-

Effective Date, that had been released under the Plan. By entering into a settlement, the Debtors

were settling with prejudice estate causes of action. They never waived the right to enforce that

settlement. The Bankruptcy Court erred in finding that the Plan provision dismissing the

Injunction Complaint with prejudice, which was only a component part of a larger global

settlement involving the parties, precluded Appellant from later arguing in the Bankruptcy Court

that Appellees' pursuit of released estate claims violates the Plan and Confirmation Order.

Stated differently, once the estate causes of action were settled, the Plan was being confirmed and the Former Officers no longer worked for the Debtors, the Injunction Complaint was effectively rendered moot. Its dismissal (with prejudice or not) was the outgrowth of the settlement achieved. By contrast, its dismissal was not an opportunity for the Appellees to violate the settlement, and the Debtors' certainly did not waive the right to enforce their bargained-for settlement. The Plan in fact expressly preserves that right.

Accordingly, as explained more fully below, this Court should reverse the Order and either award sanctions to Appellant or remand this dispute to the Bankruptcy Court with instructions to consider appropriate sanctions for the Appellees' violation of the Plan and Confirmation Order.

**b.    Procedural History of the Instant Appeal and Statement of Facts**

    **1.    Filing of Cases and Disputed Claims**

On February 2, 2000 ("Filing Date"), each of the above-captioned Debtors filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. § 101, et seq. ("Bankruptcy Code").

On August 25, 2000, Proofs of Claim Nos. 9162 - 9172, 9657, 10620, 10623, and 10625 ("Disputed Claims") were filed in these cases by the several Appellees: Angell, an individual residing in North Carolina; ACI, a Delaware corporation; Trust, a trust created under an instrument dated July 24, 1992 with D. Gray Angell, Jr. and Don R. House acting as co-trustees and of which Angell is the beneficiary; and BVRC, a North Carolina limited partnership.

    **2.    The Angell Lawsuit and Injunction Complaint**

On February 27, 2001, approximately one year after the Filing Date, Appellees (excluding BVRC, "Angell Plaintiffs") commenced the Angell Lawsuit, now pending in the North Carolina

Court. In their Amended Complaint ("Angell Complaint") (Exhibit "A" to D 1), the Angell Plaintiffs allege that in connection with the 1998 merger acquisition ("Merger") of Premiere by IHS, Elizabeth B. Kelly ("Kelly") and C. Taylor Pickett ("Pickett"), two of IHS's Former Officers, made various misrepresentations and/or omissions of material fact that purportedly damaged creditors of Premiere generally and the Angell Plaintiffs specifically. Appellee Angell controls each of the other Appellees and has acted on their behalf at all times relevant to this appeal.

The Angell Lawsuit's key allegations were that the Former Officers induced the Angell Plaintiffs, as part of the Merger, to release their security interest in the stock of Premiere by inducing Appellees to agree to accept as a replacement thereof a payment guaranty by IHS ("IHS Guaranty") of approximately $14 million of Premiere's Series A Promissory Notes ("Notes") held by the Angell Plaintiffs. The Former Officers allegedly played a role in the Angell Plaintiffs' mistaken belief that somehow the obligations under the IHS Guaranty would have priority over the indebtedness and other obligations of Premiere. (Angell Complaint, ¶ 14). Significantly, there is no document that subordinates the claims of other creditors of the Premiere Entities in favor of the Angell Plaintiffs.

The Angell Plaintiffs further stated that they were unaware that IHS had incurred debt obligations in excess of $2 billion through a revolving credit and term loan agreement with Citibank N.A. ("Citibank"), which all subsidiaries of IHS were required to guarantee on a joint and several basis, subject to contribution rights against each other. (Angell Complaint, ¶ 16). Significantly, the existence of this $2 billion credit agreement was described in detail in the Debtors' public filings with the Securities Exchange Commission, which were available to the Angell Plaintiffs at the time of the Merger negotiations. Angell Plaintiffs further claimed that

Kelly and Pickett made misrepresentations of material fact regarding the healthcare industry and their plan to require Premiere to comply with the Citibank loan agreements and guarantee IHS's debt. (Angell Complaint, ¶ 18). Significantly, the Angell Plaintiffs operated in the healthcare industry for many years and had the equivalent market "crystal ball" as the Former Officers.

Based on the foregoing, Angell Plaintiffs asserted in the Angell Lawsuit statutory and common law tort claims against the Former Officers for essentially causing the guarantees to be issued by the Premiere Entities to the Debtors' lending group. The Angell Plaintiffs parsed this one transaction into many separate theories of recovery, asserting counts based upon (i) fraud, (ii) negligent misrepresentation, (iii) breach of fiduciary duty, (iv) constructive fraud, (v) transfer defrauding claimants, (vi) distributions in violation of North Carolina fraudulent conveyance statutes, (vii) unauthorized execution, and (viii) unfair and deceptive trade practices, plus trebled damages, attorneys' fees and costs.

In response to the Angell Lawsuit, on March 12, 2001, the Debtors filed the Injunction Complaint. The action argued, *inter alia*, that the Angell Lawsuit violated the automatic stay arising under section 362(a) of the Bankruptcy Code by asserting estate causes of action that belonged to the Debtors that could not be asserted by the Angell Plaintiffs or any other individuals and that the violation was sanctionable.

### 3.    The Premiere D&O Action

On the basis of motions filed by the Appellees' bankruptcy counsel (D 3), on January 4, 2002, the Bankruptcy Court ordered the United States Trustee to appoint an Official Committee of Unsecured Creditors of Premiere Associates, Inc. (D 4) (i.e. the Premiere Committee) to represent the unsecured creditors of the Premiere Debtors. Appellees ACI, BVRC became Chair of a three-

person Premiere Committee, acting through Angell, and Appellee's former bankruptcy counsel became counsel to the Premiere Committee.

On or about January 9, 2002, the Premiere Committee filed delegation motions ("Delegation Motions") (D 5, 7, 17, 18) with the Bankruptcy Court requesting authority to bring actions on behalf of the Premiere Debtors' estates:  (i) against Citibank to avoid the guaranty of the Premiere Debtors for IHS' prepetition indebtedness under the Citibank credit agreement ("Premiere Avoidance Action") and (ii) against certain current and former officers and directors of the Premiere Debtors, including Booth, Pickett and Lord (i.e., the Former Officers), asserting claims of personal liability for causing the Premiere Debtors to be bound by the guaranty of the Citibank credit agreement.

In January 2002, the Bankruptcy Court (i) authorized the Premiere Committee to file a complaint against the Former Officers, but immediately stayed the action pending a determination on whether the action should be pursued (D 13, 22), and (ii) approved a consensual tolling of the Premiere Avoidance Action pending a determination of whether that action should be pursued.

The Premiere Committee then filed an adversary proceeding styled *Official Committee of Unsecured Creditors of Premiere Associates, Inc. and its Subsidiaries, on behalf of Premiere Associates, Inc., et al., v. Daniel J. Booth, Ronald L. Lord, C. Taylor Pickett, Marshall Elkins and Marc Levin*, on February 1, 2002 ("Premiere D&O Action").  The complaint in the Premiere D&O Action ("Premiere Complaint") (D 11) asserted essentially the same claims that had been asserted in the Angell Lawsuit, with the exception of three claims that alleged a particular injury to Angell. Specifically, the Premiere Complaint contains the following claims virtually identical to those alleged in the Angell Lawsuit:

- breach of fiduciary duty (compare Premiere Complaint, Second Claim for Relief, with Angell Complaint, Third Claim for Relief);

- constructive fraud (compare Premiere Complaint, Fourth Claim for Relief, with Angell Complaint, Fourth Claim for Relief);
- unlawful transfer (compare Premiere Complaint, Fifth Claim for Relief, with Angell Complaint, Fifth Claim for Relief);

- unlawful distributions (compare Premiere Complaint, Sixth Claim for Relief, with Angell Complaint, Sixth Claim for Relief); and

- unauthorized execution (compare Premiere Complaint, Seventh Claim for Relief, with Angell Complaint, Seventh Claim for Relief).

In bringing these claims into the Premiere D&O Action, the Premiere Committee (of which ACI, BVRC was Chair) and its counsel essentially conceded that these claims were estate claims (as contrasted to individual creditor claims) and could only be brought for the benefit of all Premiere Creditors. The pursuit of these claims was paid for by the Debtors' estates and not by any individual creditor. Thus, by the Premiere Committee's assertion of these mirror image claims (collectively, "D&O Claims"), it was established as the law of the case that they belong to the Premiere estates, and not individual creditors such as the Angell Plaintiffs.

## 4.     The Premiere Settlement

Thereafter, the Debtors and the Premiere Committee agreed to a settlement ("Premiere Settlement") that was ultimately embodied in the Plan and approved in paragraphs 27 and 29 of the Bankruptcy Court's Confirmation Order (Appendix Item 4, p. A38). A key reason for the Debtors entering into the Premiere Settlement was to stem the substantial administrative expenses being incurred by the Debtors' estates because of the need to address disputes and litigations initiated by the Premiere Committee, including the Premiere D&O Action. Thus, Section 10.9 of the Plan and paragraph 69 of the Confirmation Order provide that, as of the Effective Date, the Premiere Motion and Premiere D&O Action "shall each be deemed to be *dismissed with*

*prejudice*, and the Premiere Committee and the Debtors' estates shall be deemed to have

*permanently waived and relinquished* any and all claims and causes of actions referred to in or

contemplated by the Premiere Motion" (emphasis added) (Appendix Item 4, p. A45)  As a result

of the Premiere Settlement, the D&O Claims, which were the primary claims asserted in the

Angell Lawsuit, were dismissed with prejudice.

## 5.    The Debtors' Plan of Reorganization

As noted above, the Premiere Settlement was embodied and effectuated through the

Debtors' Plan. The Debtors were granted authority to solicit acceptances for their Plan, dated

March 13, 2003, and their companion *Disclosure Statement for Amended Joint Plan of*

*Reorganization of Integrated Health Services, Inc and it's Subsidiaries Under Chapter 11 of the*

*Bankruptcy Code* ("Disclosure Statement") (D 28) of even date was found to provide adequate

information by the Bankruptcy Court, who entered its  *Order (I) Approving Disclosure Statement*

*for the Amended Joint Plan of Reorganization of Integrated Health Services, Inc and its*

*Subsidiaries under Chapter 11 of the Bankruptcy Code, (II) Establishing a Record Date;*

*(III) Establishing Notice Objection Procedures for Confirmation of the Plan; (IV) Approving*

*Solicitation Packages and Procedures for Distribution; and (V) Approving Forms of Ballots and*

*Establishing Procedures for Voting on the Plan* on March 14, 2003 ("Disclosure Statement

Order") (D 26).

Thereafter, on May 12, 2003, the Bankruptcy Court entered the Confirmation Order

approving and confirming the Plan, which became effective on September 9, 2003 ("Effective

Date").

Pursuant to the Plan, Liquidating LLC, a New York limited liability company, was formed

as a vehicle to make distributions on account of prepetition allowed claims and certain limited

postpetition administrative expense claims. Among other things, Liquidating LLC is charged with completion of the claims resolution process undertaken by the Debtors prior to the Effective Date, including, when necessary, objecting to claims (as it did with respect to the Disputed Claims).

Notwithstanding the settlement, approval of the Plan embodying the settlement, and entry the Court's Confirmation Order, at no time following the Effective Date did the Angell Plaintiffs proceed to withdraw the estate causes of action from the Angell Lawsuit. In light of the continued prosecution of the Angell Lawsuit, as feared by Appellant, the Former Officers commenced defensive proceedings in the Bankruptcy Court as well as in the Angell Lawsuit. Appellant made numerous good faith attempts to resolve the matter, but Appellees held steadfast and refused to amend the Angell Lawsuit to eliminate the released claims belonging to the Debtors' estates.

**6.    Appellant's Claim Objections to Appellees' Disputed Claims**

With the Appellees having totally disregarded their obligation to dismiss the estate causes of action in the North Carolina Court, on March 23, 2004, Appellant filed its Claim Objections (D 41), objecting to Appellees' claims on a variety of grounds, and asserting Counterclaims on the same basis. Among the relief sought, Appellant sought to have the Bankruptcy Court disallow, or subordinate, in whole or in part, the Appellees' Remaining Claims (D 50-52) as a sanction for their contumacious conduct.

On April 15, 2004, Appellees filed their Motion to Dismiss, opposing Appellant's Claim Objections and seeking to dismiss Appellant's Counterclaims (D 44). In response, on April 30, 2004, Appellant filed an Objection to Appellees' Motion to Dismiss, which included the Cross-Motion for a judgment on the pleadings (D45). On May 7, 2004, Appellees filed a *Reply To IHS Liquidating LLC's (A) Opposition To Defendants' Motion To Dismiss Counterclaim Pursuant To Federal Rule Of Bankruptcy Procedure 7012 And Preliminary Response To Objection to Claims,*

*and (B) Cross-Motion For Judgment On The Pleadings* ("Reply") (D 46) in opposition to
Appellant's Objection and Cross-Motion.

On May 12, 2004, the Bankruptcy Court held a hearing on the Claims Objection,
Counterclaims, Motion to Dismiss, Cross-Motion and Reply. On June 25, 2004, the Bankruptcy
Court entered the Order, which is the subject of the instant appeal.

As set forth in the Order, the Bankruptcy Court granted the Claim Objection in part and
overruled it in part, and allowed three of the Disputed Claims (i.e., the Remaining Claims); Claim
No. 10620 filed by Angell and allowed in the amount of $8,888,603.35, Claim No. 10623 filed by
BVRC and allowed in the amount of $2,764,631.81, and Claim No. 10625 filed by Trust and
allowed in the amount of $1,409,923.27. The Court found that the Appellees had not violated the
Plan and that their conduct did not merit sanctions in the form of disallowance or subordination of
the Remaining Claims.

Appellant timely filed a *Notice of Appeal* to the Order on June 25, 2004 (Appendix Item
5, pp. A46-A48). On July 12, 2004, Appellant filed *Appellant's Designation of Items to Be
Included in the Record on Appeal and Statement of Issues on Appeal* (Appendix Item 6, pp. A49-
A64). On July 22, 2004, Appellees filed a *Counter-Designation of Record By Appellees Don G.
Angell, Don G. Angell Irrevocable Trust and Angell Care Incorporated* (Appendix Item 7, pp.
A65-A68). Appellees did not file a Cross Appeal of the Order.

As stated above, subsequent to Appellant's appeal of the Bankruptcy Court's June 25,
2004 Order, on September 17, 2004, the North Carolina Court entered a 25 page *Memorandum
Opinion and Order* (i) dismissing all but three of the Angell Lawsuit's causes of action that it
found to plead specific injuries (fraud, negligent misrepresentation and unfair/deceptive trade
practices as against 3 of the Former Officers) and (ii) finding that the other causes of action

constituted property of the Debtors' estates that the Angell Plaintiffs lacked standing to assert (as Appellant had said all along).[2]

## 4.

## **ARGUMENT**

Appellant objected to Appellees' claims and sought sanctions because of Appellees' continued prosecution against the Former Officers of estate causes of action in the North Carolina Court, notwithstanding that (i) Appellees (through their participation on the Premiere Committee) had already conceded that these claims were property of the estate and took actions in furtherance of that fact, and (ii) the causes of action were released pursuant to a settlement agreement embodied in the Plan, which Appellee Angell personally was involved with negotiating.

The Bankruptcy Court incorrectly found that the Claim Objection was not sustainable because the relief sought -- i.e., sanctions against the Angell Plaintiffs for pursuing estate causes of action -- had been waived by virtue of the dismissal of the Injunction Complaint. This Court should reverse and remand the matter for further consideration, because the Bankruptcy Court completely confused the relief the Debtors sought in 2001 with the relief sought in the Claim Objection. The Debtors did not waive the right to seek enforcement of the Plan. The Angell Plaintiffs' violation of the Plan and Confirmation Order was different from their earlier violation in 2001 of the automatic stay imposed by section 362 of the Bankruptcy Code.

After the initial act of asserting the estate causes of action, the Angell Plaintiffs tacitly conceded the point that these causes of action did not belong to them. That acknowledgment is conclusively established by the fact that the Angell Plaintiffs, after agreeing to a consensual stay

---

[2]    A copy of the Memorandum Opinion and Order is attached hereto as Appendix Item 2, pp. A9-A33. The Angell Lawsuit was dismissed against Lord (one of the Former Officers) in full.

of the Angell Lawsuit, moved the Bankruptcy Court for the formation of a special creditors'

committee (i.e., the Premiere Committee) to pursue <u>identical</u> causes of action that the Angell

Plaintiffs had brought in their personal complaint in the North Carolina Court. Angell, the acting

chair of that Committee, negotiated the settlement, whereby the Premiere Committee agreed to

release the estate's causes of action in exchange for an enhanced distribution to the Premiere

creditors, and a release of the earlier sanction request contained in the Injunction Complaint.

directly and by implication, the overall record created in these cases show that contrary to Appellees' arguments, Liquidating LLC is not barred by the Plan, the doctrine of res judicata or on any other ground from objecting to the Remaining Claims or asserting its Counterclaims against the Appellees.

i.    **The Record in the Cases**

The Bankruptcy Court's ruling was premised on a few isolated excerpts of the Plan and ignored the substantive basis of the Premiere Settlement. The full record in these cases clearly demonstrates Appellees' concession that the D&O Claims were not Appellees' claims but, rather, were estate causes of action that could only be brought by the Debtors' estates.

When the Premiere Committee filed the Delegation Motions in January 2002, proposed committee counsel (Appellees' former bankruptcy counsel) informed the Court that it had been instructed by the Premiere Committee, which was chaired by the Appellees, "to seek authority from the Bankruptcy Court to commence an adversary proceeding on behalf of the estates against Directors and Officers for breaches of their fiduciary duties as a result of acts and omissions related to the Guaranty (the 'Action')." Delegation Motions ¶ 8. The reason given for the request was "because it is clear that the Premiere Debtors are not going to bring the Action, even though it would benefit the estates." Id. ¶ 12. The Delegation Motions concludes by emphasizing "[t]he interests of the estates are not protected if the Debtors refuse to prosecute the [D&O Claims]. The estates have an interest in receiving recoveries commensurate with the harm caused by the Directors' and Officers' breaches of their fiduciary duties. This interest will not be protected unless the Premiere Committee is permitted to prosecute the Action." Id. ¶ 23. (Appendix Item 9, pp. A78-A140). Clearly, the Premiere Committee's Delegation Motions sought a delegation of authority to act on behalf of the Premiere Debtors to assert claims that belong to the estates of the

Premiere Debtors. As a result of filing that Motion, the Premiere Committee obtained authority

for the Bankruptcy Court to file the Premiere D&O Action.

As noted, the causes of action asserted therein by the Premiere Committee against the

Former Officers are virtually identical to those alleged by the Angell Plaintiffs in the Angell

Lawsuit. Unless the Bankruptcy Court and Debtors were being misled, the Premiere Motion and

the filing of the Premiere D&O Action unequivocally established Angell's recognition that the

D&O Claims were estate claims (as contrasted to individual creditor claims). Certainly, it would

have been improper for the Debtors' estates to pay legal fees incurred by the Premiere Committee

for prosecuting the Premiere D&O Action if the claims asserted therein did not belong to the

Debtors' estates but instead were raised on behalf of the Appellees in their individual capacities.

For the Appellees to suggest otherwise is tantamount to saying they fooled the Bankruptcy Court

in 2002. There is no "in-between" on this issue. Either they were estate causes of action -- or they

were not, and as Appellees acknowledged in 2002 by commencing the Premiere D&O Action,

they were estate causes of action.

At a hearing held before the Bankruptcy Court on February 26, 2003 on the Debtors'

Disclosure Statement, at which the Premiere Committee appeared by its counsel (former counsel

for the Appellees), with Angell present at the hearing, Debtors' counsel, in describing the

proposed settlement with the Premiere Committee, advised the Bankruptcy Court (without

objection) that the settlement provided for a release of the estates' causes of action against the

Debtors' directors and officers. Tr. at pp. 19, lines 1-9 (D 24) (Appendix Item 10, p. A141).

Having achieved this major concession, the Debtors were prepared to dissolve the Bankruptcy

Code section 105 injunction sought by the Debtors in the Injunction Complaint and consensually

agreed to by the Angell Plaintiffs in a *Stipulation and Order Regarding Motion for Preliminary*

*Injunction Staying Prosecution of The Angell Action* approved by the Bankruptcy Court on June 12, 2001 D 2). As a practical matter, from the Debtors' perspective, the estate claims comprising Premiere's D&O Claims were resolved by the settlement, and as such, there was no need to continue the Injunction Complaint other than to press for sanctions, respecting a 2001 violation, which Appellant was prepared to resolve consensually as part of the settlement embodied in the Plan. The parties' continuing rights and responsibilities would now be governed by the Plan and Confirmation Order, which required Angell to give up the pursuit of the now-settled D&O Claims.

The hearing on the Debtors' Disclosure Statement was continued to March 12, 2003, at which time Debtors' counsel provided further explication on the Premiere Settlement, stating:

> The [Premiere Committee] would agree that the estate causes of action related to whether the bank guarantee should have been issued and whether the directors should have signed the guarantees -- those **estate causes of action**, one of which is subjudice as to whether they should bring it; the other one was brought but immediately stayed. Those **would be dismissed with prejudice**. Mr. Angell's **individual** litigation against those same offices and directors [Former Officers] . . . would go forward in the North Carolina Court, . . . ."

Tr. at pp. 18 (lines 19-25) & 19 (lines 1-3) (Emphasis Added) (D 25) (Appendix Item 11, pp. A142-143). Thus, the estate causes of action, defined by the Premiere D&O Action, were dismissed with prejudice; only individual, non-estate causes of action would be prosecuted by the Angell Plaintiffs.

Nowhere does the record suggest that the Debtors waived or relinquished their right to hold the Appellees to this arrangement. While the Confirmation Order provided that the Former Officers could raise the issue of the propriety of the Angell Plaintiffs asserting claims that are estate claims as a defense in the Angell Lawsuit, that provision was added at the request and for the benefit of the Former Officers in order to negate an argument by the Angell Plaintiffs that the

Former Officers lacked standing, and served to expressly preserve the Former Officers' right to argue the impact of the Premiere Settlement in the Angell Lawsuit.

Two days later, on March 14, 2003, the Bankruptcy Court entered the Disclosure Statement Order approving the Disclosure Statement. The second to last decretal paragraph of the Disclosure Statement Order states:

> ORDERED, that nothing contained herein shall be construed as effectuating a discharge of any **third party, non-debtor claims** asserted in that certain civil action, pending in the United States District Court for the Middle District of North Carolina, styled as *Don G. Angell, D. Gray Angell, Jr., and Don R. House, in their capacities as Co-Trustees of Don Angell Irrevocable Trust Under Instrument Dated July 24, 1992; and Angell Care Incorporated v. Elizabeth B. Kelly, C. Taylor Pickett, Daniel J. Booth and Ronald L. Lord* [Case No. 01-CV-435].

Disclosure Statement Order at p. 15 (Emphasis added.) (Appendix Item 12, p. A144). The inclusion of "third party, non-debtor claims" in the foregoing reservation of rights would be meaningless if the Angell Plaintiffs were being permitted to continue to prosecute estate claims in the Angell Lawsuit. By implication, estate claims, specifically, the D&O Claims, had been removed from the equation by dint of the Premiere Settlement. Moreover, it is not surprising that there is nothing in the Disclosure Statement, Disclosure Statement Order (or for that matter, the Plan or Confirmation Order) that states that the Angell Plaintiffs are entitled to bring or continue to prosecute released estate causes of action or any other claims belonging to the Debtors' estates.

On May 7, 2003 at a hearing on confirmation of the Plan, the Bankruptcy Court overruled the Former Officers' confirmation objections and scheduled a hearing on the issue of whether a reserve should be established to cover their purported indemnification claims stemming from the pending Angell Lawsuit. On June 11, 2003, the Debtors served on parties in interest, including Appellees' counsel, *Debtors' Memorandum of Law (i) in Accordance with the Findings of Fact,*

*Conclusions of Law, and Order under 11 U.S.C. § 1129(A) and (B) and Fed. R. Bankr. P. 3020*

*Confirming Amended Joint Plan of Reorganization of Integrated Health Services, Inc. and its*

*Subsidiaries under Chapter 11 of the Bankruptcy Code, in Connection with Determination of*

*Appropriate Reserve, if any, to be Established by the Liquidating LLC for the Benefit of C. Taylor*

*Pickett, Daniel J. Booth, and Ronald Lord and (ii) in Response to the Motion of C. Taylor Pickett*

*and Daniel Booth to Establish Indemnification Obligation and Reserve in Connection with*

*Administrative Claims and Related Relief* ("<u>Reserve Memorandum</u>") (D.30). Here again, the

Debtors expressed in no uncertain terms that as result of the Premiere Settlement, the estates'

causes of action asserted in the Angell Lawsuit were being dismissed. Specifically:

> Thus, as a result of the Premiere Settlement, five of the nine causes of action
> asserted by the Angell Plaintiffs against the Officers, which belong to the Premiere
> estates, are being dismissed with prejudice [as of the Effective Date]. They cannot
> be reasserted by any creditor, including the Angell Plaintiffs, as direct claims in the
> Angell Lawsuit. To reserve for claims which will be dismissed on the Effective
> Date of the Plan makes no sense.

Reserve Memorandum at ¶ 19. Similarly, with regard to the unlawful distribution count in the

Angell Lawsuit, the Reserve Memorandum states:

> This claim is a derivative claim that belongs to and can only be asserted by the
> Premiere estates and cannot be asserted by the Angell Plaintiffs as a direct claim.
> Moreover, that claim was previously asserted by the Premiere Committee in
> connection with the Premiere Lawsuit and, on the Effective Date, will be dismissed
> with prejudice by the Premiere Committee in connection with the Premiere
> Settlement (Plan, § 10.9). Thus, it cannot be reasserted by the Angell Plaintiffs as
> a direct claim in the Angell Lawsuit.

Reserve Memorandum at ¶ 44 (Appendix Item 13, pp. A145-A147)

The Bankruptcy Court held a hearing on the reserve issue on June 16, 2003, at which

counsel for the Premiere Committee (Appellees' former counsel) appeared. Appellees' new

counsel also received notice of the hearing. At that time, Debtors' counsel stated that the

Effective Date was the triggering event for the dismissal of the D&O Claims, and that unless these

estate causes of action were dismissed from the Angell Lawsuit, the Debtors would seek an order

from the Bankruptcy Court in aid of implementation of the Plan to eliminate continued

prosecution of those causes of action.

> We haven't gone effective yet so the concept of reserving for a cash pool
> which we haven't achieved yet, is a little premature and the effective date of the
> plan also triggered the dismissal of the Premiere Creditors' Committee causes of
> action and in our papers, highlight the overlap between what was in the estate
> cause of action and in the individual cause of action. And it would be our firm
> belief that when the plan went effective, that neither the officers in the North
> Carolina court, or even the Debtor in this court, would say that unless Mr. Angell
> dismissed out of that complaint all of what was an estate cause of action which was
> dismissed with prejudice as part of the settlement that Your Honor approved as
> part of the plan, unless that was taken out of the equation, that we would move in
> this Court to say that in aid of implementation of the plan, and the retention of
> jurisdiction that was reserved, that those causes of action should be eliminated.

Tr. at p. 27 (lines 6-22).

Indeed, the Debtors made no secret of their logic and explained to the Bankruptcy Court

that because a release of all third-party claims could not be achieved, the next best alternative was

to settle the estate causes of action, which would have the effect of stripping the Angell Plaintiffs

of all but the limited individual counts of their Angell Lawsuit: one claim that did not give rise to

an indemnification claim (fraud) and another claim (negligent misrepresentation) that had ample

insurance coverage. Counsel explained:

> I think, Your Honor, to put into context what the Debtor -- I think it's important to
> put into context because there's been a lot of discussion as to what the Debtor
> achieved or didn't achieve as part of the Premiere Committee settlement and I
> think the Premiere Committee settlement was significant.

> At the time that we were faced with trying to wrap up the issues raised by the
> Premiere Committee, there were two truths that we had to deal. One is that when
> we go effective, the ability to continue a Section 105 injunction standing by itself,
> being disrupted by the reorganization process, those arguments have a tendency to
> not hold up and specifically, the consent on the 105 injunction wasn't until the

effective date of a plan. So, that lawsuit was going to go forward on the effective date and there was no way to stop it. The second thing, Your Honor, is if I could have convinced you that my plan should embody releases of third party claims, I would have done and I think Your Honor has made it clear in other decisions, and the U.S. Trustee has made it clear, that I couldn't achieve it and I did try to achieve a global resolution and I couldn't get it.

But what I tried to achieve was what I could achieve, which is the settlement of estate causes of action. And I knew that if I settled the estate causes of action, I would strip the Angell plaintiffs in North Carolina of everything except for the fraud and the negligent misrepresentation claim. The fraud claim I never had an indemnity obligation for, the negligent misrepresentation claim I had insurance for.

Tr. at pp. 34 (lines 14-25) & 35 (lines 1-15). Nor, if after the Effective Date the Angell Plaintiffs failed to dismiss the D&O Claims from the Angell Lawsuit, was counsel's stated intention to seek relief from the Bankruptcy Court a secret. Debtors' Counsel could not have been any more blunt when he stated in open court:

> . . . it may be that I will be filing a motion in this court if I felt it was necessary, to assist them [Former Officers] to get rid of those estate causes of action if Mr. Angell is not prepared to amend his complaint because we did not bargain for that and that was a substantial benefit of the settlement that we had with them.

Tr. at p. 43 (lines 4-9). (D.31) (Appendix Item 14, pp. A148-A151) Thus, as reflected by the foregoing, Appellant's position was well aired both in the Debtors' pleadings and the hearing record in these cases before the Premiere Settlement was consummated: the D&O Claims were estate causes of action that had to be dismissed from the Angell Lawsuit by the Effective Date, failing which, Appellant would seek an order from the Bankruptcy Court in aid of implementation of the Plan to force compliance therewith.

In fact, Liquidating LLC repeated its position before filing the Claim Objections in its *Reply of IHS Liquidating LLC to Limited Objection of Defunct Committee of Premiere Associates for an Order Designating Certain Claims Filed Against the Debtors as Premiere Unsecured Claims and in Further Response to Unsecured Creditors Committee of Premiere Associates, Inc.*

*Motion to Enforce Plan Provisions by Designating and Paying, or Reserving for Premiere*

*Unsecured Creditors*, filed with the Bankruptcy Court on January 21, 2004 ("Reply to Limited

Objection").

> It cannot be ignored that the Chairman of the former three person Premiere
> Committee was Don Angell ("Angell"). He is the largest purported Premiere
> creditor by far. Counsel for the Premiere Committee used to represent him in these
> cases. Angell, who is the primary beneficiary of the relief requested in the
> Premiere Motion, is acting in violation of the Confirmation Order for his purported
> personal benefit. He continues to assert causes of action in a court in North
> Carolina that were dismissed by this Bankruptcy Court as part of the Premiere
> settlement embodied in the Plan. Angell's prosecution of these actions is the
> genesis of the Pickett, Booth and Lord purported Administrative Expense Claims.
> Those purported a Administrative Expense Claims could tie up the distribution to
> the Debtors' ($3 billion) unsecured creditors.

Reply to Limited Objection ¶ 8. (Appendix Item 15, p. A152)

At no time did the Appellees refute or challenge the aforesaid record made by Appellant.[3]

The Angell Plaintiffs knew or should have known that their continued failure to dismiss the D&O

Claims that are estate causes of action from the Angell Complaint would not only engender a

response from the Former Officers, but also from the Liquidating LLC, which came home to roost

in the form of Liquidating LLC's Claim Objections. Not only is there nothing that Appellees can

point to in the Plan that reflects a waiver or relinquishment by Appellant of the right to seek

redress against Appellees for continuing to prosecute released estate causes of action in the Angell

Lawsuit after the Effective Date, the record made throughout strongly supports Appellant's

position in this matter.

---

[3] The doctrine of judicial estoppel applies to preclude a party who has taken a particular position in a judicial
proceeding from later taking a contrary or inconsistent position. *New Hampshire v. Maine*, 532 U.S. 742
(2001). In light of the aforesaid record, Appellees should be judicially estopped from having the right to
raise res judicata as a defense to the Claims Objection.

b.    **Appellant Is Not Precluded from Asserting its Claims
Against Appellees under the Doctrine of Res Judicata**

While it is true that under the Plan, the Injunction Complaint was dismissed with

prejudice, and that it sought to enjoin the Appellees from, *inter alia*, pursuing estate causes of

action comprising the D&O Claims, Appellant submits that this provision must be received in the

context of other provisions of the Plan, which under the Premiere Settlement the estate causes of

action were actually being dismissed with prejudice.  Under these circumstances, the doctrine of

res judicata does not preclude Appellant from enforcing the Plan and Confirmation Order

provisions knowingly flouted by the Appellees.

The Injunction Complaint, originally served two purposes.  The first was to protect the

Debtors' estates from litigation that would distract the officers from carrying out their duties and

responsibilities to the Debtors during the reorganization.  The second was to stop the Angell

Plaintiffs from pursuing causes of action that belonged to the Debtors' estates.  In the context of

the Plan negotiations leading to dismissal of the Injunction Complaint, these reasons no longer

existed.  First, the reorganization effort had been concluded; the Debtors' businesses were being

sold and the Former Officers were no longer working for the Debtors.  Secondly, and most

significantly, the Premiere Settlement settled all estate causes of action against the Former

Officers.

The Premiere Committee had received a delegation of authority from the Bankruptcy

Court to bring estate claims against the Debtors' former officers and directors, had done so by

filing their Premiere D&O Action, and that action was dismissed with prejudice.  A fortiori, with

the Premiere Settlement in place, the Injunction Complaint was rendered superfluous because the

relief was either moot or was being granted.

While it was contemplated that the Angell Lawsuit would continue, that was only because it also contained limited, individual, non-estate claims, precluding a full dismissal of that action as a consequence of settling the estate claims. As structured, the Premiere Settlement was not effective or enforceable until the Effective Date. Thus, at the behest of the Former Officers, who felt that they should not have to rely on the Debtors in protecting their interests, a provision was included in the Plan permitting them to challenge the Angell Plaintiffs' continued prosecution of estate claims in the Angell Lawsuit after the Effective Date. However, at no time or in any manner did the Debtors waive or relinquish their right to protect their own interests in the Bankruptcy Court in the event the Angell Plaintiffs failed to honor the Premiere Settlement, comply with the Plan and abide by the Confirmation Order.

The Bankruptcy Court's conclusion that the Plan (i) waived the Debtors' right to contest the Angell Claimants continued prosecution of estate claims in the Angell Lawsuit as a consequence of the dismissal of the Injunction Complaint with prejudice in conjunction with the Premiere Settlement, but (ii) preserved the right of the Former Officers to raise this point as a defense in the Angell Lawsuit (May 12, 2004 Tr. at 42-43, 45, 52, 55) (Appendix Item 8, pp. A142-A143), simply ignores the overall context and structure of the Premiere Settlement.

Moreover, the Bankruptcy Court also failed to see or chose to ignore the flip side of the coin in not recognizing the res judicata impact of the dismissal of the Premiere D&O Action with prejudice.

The basic elements of res judicata are (a) a final judgment going to the merits in a prior suit, (b) involving the same parties or those in privity with them and (c) a subsequent lawsuit on the same causes of action. See *Donaldson v. Bernstein*, 104 F.3d 547, 554 (3d Cir. 1997). These elements are readily met in juxtaposing the Premiere D&O Action with the Angell Lawsuit.

The dismissal of the Premiere D&O Action with prejudice is a final judgment. *See In re Matunas*, 261 B.R. 129 (Bankr. D. N.J. 2001). Thus, the first element is satisfied.

The Angell Plaintiffs are in privity with the Premiere Committee; a creditors' committee is by its nature in privity with its members, which included the Angell Plaintiffs and represented their interests. *See In re Artra Group, Inc.* 308 B.R. 851, 857 (Bankr. N.D. Ill. 2003); 7 COLLIER ON BANKRUPTCY ¶ 1103.5[2] (15th ed. *rev'd* 2002). As stated above, among other things, Appellees, who appeared together (D16), are affiliates of one another, one was the Chair of the Premiere Committee, Angell was the individual who actually participated as Chair (with correspondence directed to him), Appellees held the bulk of the claims against the Premiere Debtors, and Angell's former personal counsel (D 8,15) became counsel to the Premiere Committee. In summary, the Premiere Committee's interests and those of the Angell Plaintiffs are so closely aligned that one can be said to represent the other. Thus, the second element is satisfied.

The Premiere D&O Action and Angell Lawsuit are "eye to eye" on the estate causes of action (*compare* Premiere D&O Action counts 2, 4, 5, 6, & 7 with Angell Lawsuit counts 3, 4, 5, 6, & 7 alleging breach of fiduciary duty, constructive fraud, unlawful transfer, unlawful distributions, and unauthorized executions). They involve the same transactions. Thus, the third and final element is satisfied.

Having readily satisfied the requirements of res judicata with respect to the Appellees, the Bankruptcy Court should not have permitted the Angell Plaintiffs to continue to prosecute estate causes of action in the Angell Lawsuit. If on no other basis, the Bankruptcy Court could have done so under its Confirmation Order as a court always has the power to enforce its own orders. Further, exclusive jurisdiction was reserved to the Bankruptcy Court under section 11 of the Plan

to, *inter alia,* consider claims allowance, restrain interference by any person with implementation

of the Plan, determine Plan disputes, enforce the Plan, and determine the rights, claims or causes

of action accruing to the Debtors and paragraphs 32 and 67 the Confirmation Order (Appendix

Item 4, A39-A43). The Bankruptcy Court could have and should have reined in the Angell

Plaintiffs extrajudicial conduct.

Further militating against the Bankruptcy Court's construct are the gaping holes and

disadvantages that would inure to the detriment of both the Debtors and the Former Officers if

they had subscribed to the outcome from which Appellant appeals.

The Debtors and the Former Officers have very different interests to protect. Limiting the

right to challenge the Angell Plaintiffs post-Effective Date continued prosecution of estate causes

of action solely to the Former Officers in the North Carolina Court would leave the Debtors'

estates exposed to claims emanating from the Angell Lawsuit to the prejudice of all creditors.

What if the Former Officers did not raise the defense? What if the Former Officers conceded the

issue in order to gain advantage in another context such as settling the non-estate causes of action?

Even if the Former Officers vigorously defended and prevailed, the Former Officers would have

no pecuniary interest in recovering damages for the Debtors' estates caused by the Angell

Plaintiffs improper prosecution of estate causes of action and, in any event, no standing to do so.

According to the Bankruptcy Court, there is no one who can act to recover damages

occasioned by the Angell Plaintiffs in improperly pursuing estate causes of action in the Angell

Lawsuit. (May 12, 2004 Tr . at 56) (Appendix Item 8, p. A78). A wrong without a remedy flies in

the face of our legal tradition and is further evidence of the Bankruptcy Court's error. On the

other hand, no conflict is presented by both the Former Officers and Appellant having the right to

challenge the Angell Plaintiffs' continued improper prosecution of released estate claims; rather, it provides closure to where a vacuum would otherwise exist.

Finally, to the extent that a technical application of the res judicata doctrine appears to bar Appellant from asserting its Claim Objections and Counterclaims (when it should not), Appellant submits that the facts and circumstances of the instant case fall within one or more of three recognized exceptions to the general rule.[4]

The first exception applies where a plaintiff had no enforceable claim because the action was premature or plaintiff failed to satisfy a precondition to suit, thereby triggering an exception applicable to a change in circumstances after the decision on the original action. *See* RESTATEMENT OF THE LAW (SECOND) JUDGMENTS 2D § 20(2) (Judgment for Defendant - Exceptions to the General Rule of Bar) and *Comments k, l& m* thereto (*Rationale for Subsection (2), Where time for performance has not arrived, and Where a condition precedent has not been performed* and § 24 (Dimensions of "Claim" for Purposes of Merger or Bar -- General Rule Concerning "Splitting") and *Comment f* thereto (*Change of Circumstances*).

The simultaneous effectiveness of the dismissal with prejudice of the Injunction Complaint and the Premiere D&O Action as part of the Premiere Settlement acted to make the liability of Appellees conditional upon the happening of a future event, i.e. the failure of the Appellees to withdraw released estate claims after the Effective Date.

A second applicable exception applies where the policies favoring preclusion of a second action are overcome for an extraordinary reason, including the failure of the first litigation to yield a coherent disposition of the controversy. *See* RESTATEMENT OF THE LAW (SECOND)

---

[4]    "Absent local law or precedent to the contrary, the Restatement (Second) of Judgments provides the applicable law." (citations omitted) *Huck ex rel Sea Air Shuttle Corp v Dawson*, 106 F.3d 45, 48 (3d Cir. 1997).

JUDGMENTS 2D § 26(1)(f) (Exceptions to the General Rule Concerning Splitting) and Comment *i* thereto (*Extraordinary situations where merger or bar is inapposite*).

The facts and circumstances of this case present extraordinary reasons for overriding the general policies that ordinarily favor preclusion. As shown above, the Appellant and the Former Officers have very differing interests to protect. Barring Appellant, who is in privity with the Debtors, from asserting its Claim Objection and Cross-Motion exacts an unfair penalty on innocent third-parties: creditors of these estates. It is inequitable and unjust to disadvantage thousands of creditors by allowing several claimants (Appellees) to gain an advantage in a way that was never intended. Moreover, in disposing of the Injunction Complaint and denying Appellant recourse against Appellees does not yield a coherent disposition of the underlying controversy. As left by the Bankruptcy Court's ruling, Former Officers, who have differing interests from Appellant and cannot pursue damages caused by Appellees to the estates, have been given exclusive standing to argue a key issue in a foreign court. This is anything but a coherent disposition of the controversy.

Finally, res judicata will not be applied where there has been mistake, fraud, concealment or misrepresentation by a defendant. In such a case, a defendant cannot object to being sued a second time. *See* RESTATEMENT OF THE LAW (SECOND) JUDGMENTS 2D § 26(2) (Exceptions to the General Rule Concerning Splitting) and Comment j thereto (*Mistake or fraud, concealment, or misrepresentation by the defendant*).

It is readily apparent from the post-Effective Date conduct of the Angell Plaintiffs that the Angell Plaintiffs, who were in privity with and whose interests were inextricably tied to the deliberations of the Premiere Committee, never intended from the inception of settlement discussions to honor the spirit of the Premiere Settlement by withdrawing the estate causes of

action plead in the Angell Lawsuit. Clearly, Appellees defrauded the Debtors, made misrepresentations to the Debtors and concealed their true intent to induce the Debtors to enter into the Premiere Settlement and dismiss the Injunction Complaint. There simply is no other way to explain Appellees post-Effective Date conduct and obstructionist behavior. Appellees cannot now defend themselves by arguing that the dismissal of the Injunction Complain is a bar to Appellant's Claim Objections and Cross-Motion.

c.    **Appellees' Improper Conduct in these Cases**
      **Should Result in a Disallowance of the Disputed Claims**

Appellant submits that the Bankruptcy Court should have permitted it to present a case showing that Appellees were pursuing released estate causes of action. Appellees' contemptuous conduct should not be countenanced and the appropriate remedy is to disallow and expunge the Appellees' claims, or, at least, subordinate their Remaining Claims under the principles of equitable subordination recognized by section 510(c) of the Bankruptcy Code.

Angell Plaintiffs knowingly and willingly violated the Plan and the Bankruptcy Court's Confirmation Order by continuing to prosecute released estate causes of action for the personal benefit of Angell in the North Carolina Court. Both the Angell Lawsuit and Premiere D&O Action causes of action are virtually identical, the latter of which were deemed dismissed with prejudice pursuant to Section 10.9 of the Plan and paragraph 69 of the Confirmation Order (Appendix Item 4, p. A45). As noted, the degree of separation between the Appellees and Premiere Committee is negligible.

Appellees' failure to dismiss the estate claims from the Angell Lawsuit led to adverse consequences for the Appellant, including the following:

●      The Former Officers have asserted Administrative Expense Claims against the Liquidating LLC for defense costs;

- The Debtors' estates became subject to a $500,000 self-insured retention amount under IHS' director and officer insurance policy, and faced potential exposure of millions of dollars;

- As a result of motion practice by the Former Officers in the Bankruptcy Court, the Bankruptcy Court ordered the Debtors' estates not to make *any* distributions to unsecured creditors without first filing approval motions on notice to the Former Officers, who would be given an opportunity to object and be heard, which resulted in the filing of several otherwise unnecessary motions and objections;

- Appellant was forced to capitulate to demands from certain Former Officers that, until the time of the first distribution to creditors or further order of the Bankruptcy Court, Appellant would have to maintain at least $30 million in cash on hand;

- The Debtors and Appellant were forced to incur substantial defense costs on behalf of these Former Officers in the Angell Lawsuit, and additional costs and expenses defending and responding to motions filed by the Former Officers in the Bankruptcy Court, including the aforesaid proceeding that forced Appellant to establish and maintain a temporary $30 million cash reserve against the estates' assets.

As was readily foreseeable, Appellees' improper conduct interfered with the prompt, timely and economical administration of these cases and has been prejudicial to all other creditors of the Debtors. This delay and expense, if not for the improper conduct of the Angell Plaintiffs, should have been avoided or substantially ameliorated by virtue of the Premiere Settlement.

In the interest of justice and equity, the Bankruptcy Court, a court of equity, *Pepper v. Litton*, 308 U.S. 295 (1939), should have disallowed and expunged, or at least subordinated, Appellees' Remaining Claims, as an appropriate sanction for their knowingly flouting the Plan and Confirmation Order and causing the Debtors' estates to incur needless expenses to enforce the Premiere Settlement and delay in making distributions to creditors.

5.

## CONCLUSION

For all of the reasons set forth herein, Appellant respectfully submits that the Court

(a) should reverse the Bankruptcy Court's June 25, 2004 *Order (i) Granting Motion To Dismiss*

*Counterclaims; (ii) Sustaining, In Part, and Overruling, in Part, Objections To Claims; and*

*(iii) Allowing Unsecured Claims of Don G. Angell, Don G. Angell Irrevocable Trust, Angell Care*

*Incorporated and Bermuda Village Retirement Center Limited Partnership* and disallow the

Appellees' Claims or remand to the Bankruptcy Court for consideration of the merits of

Appellants' argument for sanctions, and (b) grant Appellant such other and further relief as the

Court deems just and proper.

Dated:   March 24, 2005
         Wilmington, Delaware

                                 YOUNG CONAWAY STARGATT
                                   &   TAYLOR, LLP

                                   Robert S. Brady (No. 2847)
                                   Edmon L. Morton (No. 3856)
                                   Joseph M. Barry (No. 4221)
                                   The Brandywine Building
                                   1000 West Street - 17th Floor
                                   P.O. Box 391
                                   Wilmington, DE  19899-0391
                                   (302) 571-6600

                                         -and-

                                   KAYE SCHOLER LLP
                                   Arthur Steinberg
                                   425 Park Avenue
                                   New York, NY  10022-3598
                                   (212) 836-8000

                                   ATTORNEYS FOR APPELLANT IHS
                                   LIQUIDATING LLC

## CERTIFICATE OF SERVICE

I hereby certify that on **March 24, 2005,** I electronically filed a true and correct copy of **Brief of**

**Appellant IHS Liquidating LLC** with the Clerk of the Court using CM/ECF, which will send

notification that such filing is available for viewing and downloading to the following counsel of record:

**David B. Stratton**
Pepper Hamilton LLP
1313 Market Street, Suite 5100
P.O. Box 1709
Wilmington, DE 19899-1709
(Coounsel for Don G. Angell, et al.)

**Don Beskrone**
U S Trustee
844 King Street, Lockbox 35
Wilmington, DE 19801

I further certify that on March 24, 2005, I caused a copy of **Brief of Appellant IHS Liquidating**

**LLC** to be served by hand-delivery on the following counsel of record:

**David B. Stratton**
Pepper Hamilton LLP
1313 Market Street, Suite 5100
P.O. Box 1709
Wilmington, DE 19899-1709
(Coounsel for Don G. Angell, et al.)

**Office of the United States Trustee**
844 King Street, Lockbox 35
Wilmington, DE 19801

Edmon L. Morton (No. 3856)
YOUNG CONAWAY STARGATT & TAYLOR, LLP
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, DE 19801
P.O. Box 391
Wilmington, DE 19899-0391
(302) 571-6681
emorton@ycst.com
bank@ycst.com

*Attorneys for Appellant*