**Item #1**

|  | DATE | DOCKET NO. | DOCUMENT |
|---|---|---|---|
| 1. | 04/12/2 001 | Adv. Pro. No. 01-1030<br><br>1 | Complaint for Declaratory & Injunctive Relief, Sanctions & Attorney's Fees |
| 2. | 06/12/2 001 | Adv. Pro. No. 01-1030<br><br>20 | Stipulation and Order Regarding Motion for Preliminary Injunction Staying Prosecution of The Angell Action |
| 3. | 11/21/2 001 | 5797 | Motion of the Angell Creditors Pursuant to Section 1102(a)(2) of the Bankruptcy Code for Appointment of an Official Committee of Unsecured Creditors of Premiere Associates, Inc. and Its Subsidiaries |
| 4. | 12/26/2 001 | 6093 | Order Granting Motion of Angell Creditors for Appointment of an Official Committee of Unsecured Creditors of Premiere Associates, Inc. and Its Subsidiaries |
| 5. | 01/09/2 002 | 6126 | Motion of the Official Committee of Unsecured Creditors of Premiere Associates, Inc. and its Subsidiaries for Leave to File an Adversary Proceeding Complaint on Behalf of Premiere Associates, Inc. and its Subsidiaries Filed by Official Committee of Unsecured Creditors of Premiere Associates, Inc. and its Subsidiaries |
| 6. | 01/10/2 002 | 6130 | Appointment of Official Committee of Unsecured Creditors--Premiere Group Cases |
| 7. | 01/14/2 002 | 6176 | Motion of the Official Committee of Unsecured Creditors of Premiere Associates, Inc. and its Subsidiaries for Leave to File an Adversary Proceeding Complaint on Behalf of Premiere Associates, Inc. and its Subsidiaries |

A000001

| | DATE | DOCKET NO. | DOCUMENT |
|---|---|---|---|
| 8. | 01/16/2002 | 6198 | Application to Employ Blanco Tackabery Combs & Matamoros, P.A. as Co-Counsel for the Official Committee of Unsecured Creditors of Premiere Associates, Inc. and its Subsidiaries Filed by Official Committee of Unsecured Creditors of Premiere Associates, Inc. and its Subsidiaries. |
| 9. | 01/23/2002 | 6259 | (i) (PRELIMINARY RESPONSE) to the Motion of the Official Committee of Unsecured Creditors of Premiere Associates, Inc. and its Subsidiaries for Leave to File an Adversary Proceeding Complaint on Behalf of Premiere Associates, Inc. and its Subsidiaries (Docket No. 6126)and (ii) Cross-Motion for an Adjournment and for Approval of a Tolling Agreement Between the Premiere Debtors and the Debtors' Senior Lenders |
| 10. | 01/23/2002 | 6261 | Objection to Motion of the Official Committee of Unsecured Creditors of Premiere Associates, Inc. and its Subsidiaries for Leave to File an Adversary Complaint on Behalf of Premiere Associates, Inc. and Its Subsidiaries Against the Directors and Officers of Premiere Associates, Inc. *et al.* |
| 11. | 02/01/2002 | 6376 | Complaint by Official Committee of Unsecured Creditors of Premiere Associates, Inc. and its Subsidiaries, on Behalf of Premiere Associates, Inc., *et al.* Against Daniel J. Booth, Ronald L. Lord, C. Taylor Pickett, Marshall Elkins and Marc Levin |
| 12. | 02/01/2002 | 6378 | Certification of Counsel Regarding Order to Authorize Commencement of the D&O Adversary Proceeding |
| 13. | 02/04/2002 | 6395 | Order Granting Motion of Official Committee of Unsecured Creditors of Premiere Associates, Inc. and its Subsidiaries for Leave to File an Adversary Proceeding Complaint Against the Directors and Officers of Premiere Associates, Inc., *et al.* |

| | DATE | DOCKET NO. | DOCUMENT |
|---|---|---|---|
| 14. | 02/08/2002 | 6538 | Order Adjourning Hearing on the Motion of the Official Committee of Unsecured Creditors of Premiere Associates, Inc. and Its Subsidiaries For Leave to File An Adversary Proceeding Complaint on Behalf of Premiere Associates, Inc. and Its Subsidiaries |
| 15. | 02/14/2002 | 6646 | Order approving employment and retention of Blanco Tackabery Combs & Matamoros, P.A. as co-counsel nunc pro tunc January 4, 2002 for the Official Committee of Unsecured Creditors of Premiere Associates, Inc. and its subsidiaries |
| 16. | 03/18/2002 | 6884 | Notice of Appearance and Request for Service of Notice Filed by Don G. Angell, The Don G. Angell Irrevocable Trust, Bermuda Village Retirement Center Limited Partnership, and Angell Care Incorporated. |
| 17. | 04/09/2002 | 7047 | Brief in Support of the Motion of the Official Committee of Unsecured Creditors of Premiere Associates, Inc. and Its Subsidiaries for Leave to File and Adversary Proceeding Complaint on Behalf of Premiere Associates, Inc. and its Subsidiaries |
| 18. | 04/09/2002 | 7048 | Brief in Support of the Motion of the Official Committee of Unsecured Creditors of Premiere Associates, Inc. and Its Subsidiaries to Further Prosecute its Adversary Proceeding Complaint Against the Directors and Officers of Premiere Associates, Inc. and its Subsidiaries |
| 19. | 04/18/2002 | 7111 | Memorandum of Law in Response to the Motions of the Official Committee of Unsecured Creditors of the Premiere Debtors (I) for Leave to File a Complaint Against Certain Banks on Behalf of the Premiere Debtors, and (II) to Further Prosecute its Complaint Against the Directors and Officers of the Premiere Debtors |

A000003

|  | DATE | DOCKET NO. | DOCUMENT |
|---|---|---|---|
| 20. | 04/19/2002 | 7113 | Memorandum of Law [REVISED] in Response to the Motions of the Official Committee of Unsecured Creditors of the Premiere Debtors (I) for Leave to File a Complaint Against Certain Banks on Behalf of the Premier Debtors, and (II) to Further Prosecute its Complaint Against the Directors and Officers of the Premiere Debtors |
| 21. | 05/01/2002 | 7203 | Certification of Counsel Regarding Order Staying Action by the Official Committee of Unsecured Creditors of Premiere Associates, Inc. and its Subsidiaries on Behalf of the Premiere Estates Against Certain Officers and Directors |
| 22. | 05/15/2002 | 7304 | Order Authorizing The Official Committee Of Unsecured Creditors Of Premiere Associates, Inc. and Its Subsidiaries To Serve The Complaint And Summons On Defendants |
| 23. | 05/16/2002 | 7323 | Certification of Counsel Regarding Corrected Order Staying Action by The Official Committee of Unsecured Creditors of Premiere Associates, Inc. and its Subsidiaries on Behalf of The Premiere Estates Against Certain Officers and Directors |
| 24. | 03/06/2003 | 9097 | Transcript Of Hearing Held On 1[2]/26/2003 |
| 25. | 03/21/2003 | 9218 | Transcript: Omnibus Hearing Held March 12, 2003 |

| | DATE | DOCKET NO. | DOCUMENT |
|---|---|---|---|
| 26. | 03/14/2003 | 9140 | Order (I) Approving Disclosure Statement For The Amended Joint Plan Of Reorganization Of Integrated Health Services, Inc. And Its Subsidiaries Under Chapter 11 Of The Bankruptcy Code, (II) Establishing A Record Date, (III) Establishing Notice And Objection Procedures For Confirmation Of The Plan, (IV) Approving Solicitation Packages And Procedures For Distribution, And (V) Approving Forms Of Ballots And Establishing Procedures For Voting On The Plan(related document(s) |
| 27. | 04/03/2003 | 9273 | Disclosure Statement for Amended Joint Plan of Reorganization of Integrated Health Services, Inc. and it's Subsidiaries Under Chapter 11 of the Bankruptcy Code |
| 28. | 02/24/2003 | 8974 | Amended Disclosure Statement and Joint Plan of Reorganization of Integrated Health Services, Inc. and its Subsidiaries under Chapter 11 of the Bankruptcy Code |
| 29. | 05/12/2003 | 9654 | Findings of Fact, Conclusions of Law and Order Under 11 U.S.C. Section 1129(a) and (b) and Fed.R.Bankr.P. 3020 Confirming Amended Joint Plan of Reorganization of Integrated Health Services, Inc. and its Subsidiaries Under Chapter 11 of the Bankruptcy Code |
| 30. | 06/11/2003 | 9883 | Memorandum of Law (i) in accordance with the Findings of Fact, Conclusions of Law and Order Under 11 U.S.C. Section 1129(A) and (B) and Fed. R. Bankr. P. 3020 Confirmation Amended Joint Plan of Reorganization of Integrated Health Services, Inc. and Its Subsidiaries Under Chapter 11 of the Bankruptcy Code, in Connection with Determination of Appropriate Reserve, If Any, to Be Established by the Liquidating LLC for the Benefit of C. Taylor Pickett, Daniel Booth and Ronald L. Lord and (ii) in Response to the Motion of C. Taylor Pickett and Daniel Booth to Establish Indemnification Obligation and Reserve in Connection with Administrative Claims and for Related Relief |

|  | DATE | DOCKET NO. | DOCUMENT |
|---|---|---|---|
| 31. | 08/22/2003 | 10256 | Transcript Hearing Held 6/16/03 |
| 32. | 12/02/2003 | 10550 | Motion of the Official Committee of Unsecured Creditors of Premiere Associates, Inc. and Its Subsidiaries to Enforce Plan Provisions by Designating and Paying, or Reserving for Premiere Unsecured Claims |
| 33. | 12/17/2003 | 10596 | Motion in Aid of Implementation of the Amended Joint Plan of Reorganization of Integrated Health Services, Inc. and Its Subsidiaries, for an Order Designating Certain Claims Filed Against the Debtors as Premiere Unsecured Claims |
| 34. | 12/17/2003 | 10597 | Joint Response to Motion of Official Committee of Unsecured Creditors of Premiere Associates, Inc. and its Subsidiaries to Enforce Plan Provisions by Designating and Paying, or Reserving for Premiere Unsecured Claims of IHS Liquidating LLC and the Post-Confirmation Committee |
| 35. | 01/07/2004 | 10624 | Stipulation by and Between IHS Liquidating LLC, the Post-Confirmation Committee, and the Premiere Group Committee Allowing the Premiere Group Committee to File a Reply in Support of its Motion to Enforce Plan Provisions |
| 36. | 01/12/2004 | 10632 | Order Approving Stipulation By and Between IHS Liquidating LLC, the Post-Confirmation Committee, and the Premiere Group Committee Allowing the Premiere Group Committee to File a Reply in Support of its Motion to Enforce Plan Provisions |

|  | DATE | DOCKET NO | DOCUMENT |
|---|---|---|---|
| 37 | 01/14/2004 | 10636 | Limited Objection of the Official Committee of Unsecured Creditors of Premiere Associates, Inc. and Its Subsidiaries to Motion of IHS Liquidating LLC, in Aid of Implementation of the Amended Joint Plan of Reorganization of Integrated Health Services, Inc. and Its Subsidiaries, for an Order Designating Certain Claims Filed Against the Debtors as Premiere Unsecured Claims |
| 38. | 01/15/2004 | 10637 | Response of C. Taylor Pickett and Daniel J. Booth to the Premiere Committee's Reply in Connection with its Motion to Enforce Plan Provisions by Designating and Paying, or Reserving for Premiere Unsecured Creditors |
| 39. | 02/03/2004 | 10693 | Amended Motion of IHS Liquidating LLC, in Aid of Implementation of the Amended Joint Plan of Reorganization of Integrated Health Services, Inc. and Its Subsidiaries, for an Order Designating Certain Claims Filed Against the Debtors as Premiere Unsecured Claims |
| 40. | 02/13/2004 | 10708 | Response of C. Taylor Pickett and Daniel J. Booth to the Premiere Committee's Reply in Connection with its Motion to Enforce Plan Provisions by Designating and Paying, or Reserving for Premiere Unsecured Creditors |
| 41. | 03/23/2004 | 10789 | IHS Liquidating LLC's Objections and Counterclaims to the Claims Asserted by Don G. Angell, Don G. Angell Irrevocable Trust and Angell Care Incorporated (Proof of Claim Nos. 9162-9172, 9657, 10620, 10623 and 10625) |
| 42. | 04/14/2004 | 10859 | Notice of Submission of Proof of Claim Regarding Objections and Counterclaims to the Claims Asserted by Don G. Angell, Don G. Angell Irrevocable Trust and Angell Care Incorporated |
| 43. | 05/07/2004 | 10900 | Notice of Submission of Proof of Claim (Re-Submission) Regarding Objections and Counterclaims to the Claims Asserted by Don G. Angell, Don G. Angell Irrevocable Trust and Angell Care Incorporated |

| | DATE | DOCKET NO. | DOCUMENT |
|---|---|---|---|
| 44. | 04/15/2004 | 10866 | Defendants' Motion to Dismiss Counterclaim Pursuant to Federal Rule of Bankruptcy Procedure 7012 and Preliminary Response to Objection to Claims |
| 45. | 04/30/2004 | 10891 | Objection to Defendant's Motion to Dismiss Counterclaim Pursuant to Federal Rule of Bankruptcy Procedure 7012 and Preliminary Response to Objection to Claims, and (B) Cross-Motion for Judgment on the Pleadings |
| 46. | 05/07/2004 | 10902 | Reply To IHS Liquidating LLC's (A) Opposition To Defendants' Motion To Dismiss Counterclaim Pursuant To Federal Rule Of Bankruptcy Procedure 7012 And Preliminary Response To Objection to Claims, and (B) Cross-Motion For Judgment On The Pleadings |
| 47. | 05/25/2004 | 10936 | Notice of Agenda of Matters Scheduled for Hearing on May 26, 2004 at 2:00 p.m. (UPDATED) |
| 48. | 06/25/2004 | 11007 | Order (i) Granting Motion To Dismiss Counterclaims; (ii) Sustaining, In Part, and Overruling, in Part, Objections To Claims; and (iii) Allowing Unsecured Claims of Don G. Angell, Don G. Angell Irrevocable Trust, Angell Care Incorporated and Bermuda Village Retirement Center Limited Partnership |
| 49. | 06/10/2004 | 10977 | Certification of Counsel IHS Liquidating LLC's Objections And Counterclaims To The Claims Asserted By Don G. Angell, Don G. Angell Irrevocable Trust And Angell Care Incorporated |
| 50. | 08/25/2000 | Claim No. 10620 | Proof of Claim - Don G. Angell |
| 51. | 08/25/2000 | Claim No. 10623 | Proof of Claim - Bermuda Village Retirement Center |
| 52. | 08/25/2000 | Claim No. 10625 | Proof of Claim - Don G. Angell Irrevocable Trust |

**Item #2**

D/K

140

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA



DON G. ANGELL; D. GRAY ANGELL,       )
JR. and DON R. HOUSE, in their       )
capacities as Co-Trustees of         )
the DON ANGELL IRREVOCABLE           )
TRUST UNDER INSTRUMENT DATED          )
JULY 24, 1992; and ANGELL CARE        )
INCORPORATED,                         )
                                      )
        Plaintiffs,                   )
                                      )
v.                                    )        1:01CV00435
                                      )
ELIZABETH B. KELLY, C. TAYLOR        )
PICKETT, DANIEL J. BOOTH, and        )
RONALD L. LORD,                      )
                                      )
        Defendants.                   )

MEMORANDUM OPINION and ORDER

OSTEEN, District Judge

        Plaintiffs D. Gray Angell, Jr. and Don R. House, in their

capacities as co-trustees of the Don Angell Irrevocable Trust,

Don G. Angell, and Angell Care Incorporated ("ACI") bring this

action against Defendants Elizabeth B. Kelly, C. Taylor Pickett,

Daniel J. Booth, and Ronald L. Lord claiming fraudulent

conveyance in violation of North Carolina General Statutes § 39-

23.1 et seq., unlawful distribution in violation of North

Carolina General Statutes §§ 55-8-33 and 55-6-40, and unfair and

deceptive trade practices in violation of North Carolina General

Statutes § 75-1.1 et seq. As an alternative to their unlawful

distribution claim, Plaintiffs assert a claim of unauthorized execution against only Defendants Booth and Lord.  Plaintiffs also assert common law claims of fraud, negligent misrepresentation, breach of fiduciary duty, and constructive fraud against all Defendants.  This matter is now before the court on Defendants Kelly, Pickett, and Booth's motion to dismiss and Defendant Lord's separate motion to dismiss, both made pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure.

I.    BACKGROUND

The following facts are presented in the light most favorable to Plaintiffs.[1]

Defendants are each former officers and directors of Integrated Health Services, Inc. ("IHS") and its subsidiary, Premiere Associates, Inc. ("Premiere").  Prior to IHS's acquisition of Premiere, Premiere had contracted to buy various nursing facilities then owned by Plaintiffs.  In consideration for the sale, Premiere executed a series of promissory notes in favor of Plaintiffs; the total value of the notes was $13,958,000.00.  The notes were backed by a pledge of all outstanding stock in Premiere and its subsidiaries and by a

---

[1] When considering a motion to dismiss, a court must construe the complaint in the light most favorable to the plaintiff, accepting as true all well-pleaded factual allegations.  Randall v. United States, 30 F.3d 518, 522 (4th Cir. 1994).

2

guaranty agreement executed by Premiere's shareholders. These
provisions were set forth in a loan agreement entered into on
September 28, 1994. The loan agreement also contained certain
covenants that restricted Premiere's ability to transfer its
stock absent Plaintiffs' consent.

In February 1998, Premiere entered into a merger agreement
with IHS. Pursuant to that agreement, IHS was to purchase all
stock in Premiere and its subsidiaries and Premiere would be
merged with a wholly-owned subsidiary of IHS. Due to the loan
covenants Premiere had entered into with Plaintiffs, Premiere's
merger with IHS could not go forward without Plaintiffs' consent.

To that end, Defendants Kelly and Pickett, negotiating on
behalf of IHS, sought to secure Plaintiffs' agreement to release
Premiere's shareholders from their guaranty agreement, release
Plaintiffs' security interests in all of Premiere's stock, and
release Premiere from the loan covenants preventing Premiere's
merger with the IHS subsidiary. Plaintiffs allege that, to
induce their assent to these provisions, Kelly and Pickett
represented that the promissory notes Plaintiffs held from
Premiere would have priority over all other indebtedness or other
obligation of Premiere. Kelly and Pickett assured Plaintiffs
that such an agreement was to Plaintiffs' benefit since,
following the merger, the promissory notes would be secured by
additional assets and Plaintiffs would continue to hold a special

3

priority status among Premiere's creditors. Plaintiffs assented to this agreement (the "Release Agreement") on March 31, 1998, releasing their security interests in exchange for IHS's guarantee of the promissory notes.

Unbeknownst to Plaintiffs, at the time of the Release Agreement, IHS had incurred debt obligations of $2.15 billion stemming from a revolving credit and term loan agreement IHS held with Citibank, N.A. That agreement limited IHS's ability to incur indebtedness or contingent obligations, to make additional acquisitions, to sell or dispose of assets, to create or incur liens, to pay dividends, to purchase or redeem IHS stock, and to merge or consolidate with any person or entity. The revolving credit agreement provided that subsidiaries of IHS, including those subsequently acquired, were required to unconditionally guarantee repayment of the entire $2.15 billion debt, which would be senior to all other indebtedness of IHS and its subsidiaries.

On June 25, 1998, as provided in the merger agreement, Premiere merged with the designated IHS subsidiary. Also on that date, IHS executed a guaranty agreement for Premiere's promissory notes to Plaintiffs. Defendants Kelly, Pickett, and Booth each made various representations in the guaranty agreement, including IHS's unconditional guarantee of the promissory notes Plaintiffs held from Premiere and a provision that this indebtedness would be senior to all other obligations of Premiere.

4

Shortly after Plaintiffs received the guaranty agreement, on July 22, 1998, Defendant Lord executed a series of joinder agreements on behalf of three Premiere subsidiaries, Health Care Properties III, Inc., Premiere Associates Healthcare Services, Inc., and SHCM Holdings, Inc. Lord also executed joinder agreements on behalf of each subsidiary of these three corporations. The joinder agreements expressly provided that each entity unconditionally guaranteed payment of the $2.15 billion debt of IHS to Citibank. Just over one month later, Defendant Booth executed a similar joinder agreement on behalf of Premiere, providing that Premiere also unconditionally guaranteed the $2.15 billion debt of IHS.

Less than two years after the merger, IHS and all of its subsidiaries, including Premiere, filed a voluntary petition for Chapter 11 bankruptcy reorganization in the United States Bankruptcy Court for the District of Delaware. Plaintiffs assert that, but for the execution of the aforementioned joinder agreements by Booth and Lord, Premiere would be solvent and fully capable of paying the promissory notes held by Plaintiffs. Plaintiffs further allege that Kelly, Pickett, and Booth made certain false or negligent misrepresentations, leading Plaintiffs to believe that their promissory notes would hold special priority status among Premiere's debt obligations. Plaintiffs also claim that Kelly, Pickett, and Booth negligently or

5

purposefully misstated or omitted material facts regarding IHS's

debts and Premiere's obligation to guarantee IHS's loan from

Citibank.  Plaintiffs contend these misrepresentations and

omissions induced them to enter into the Release Agreement, which

allowed the Premiere merger to go forward, eventually leading to

execution of the joinder agreements and Premiere's bankruptcy.

II.   ANALYSIS

    A.   Fraudulent Conveyance, Unlawful Distribution, and
         Unauthorized Execution

    Plaintiffs urge that the joinder agreements executed by

Booth and Lord were fraudulent transfers in violation of North

Carolina General Statutes § 39-23.1 and unlawful distributions in

violation of North Carolina General Statutes §§ 55-8-33 and 55-6-

40, for which all Defendants are liable.  As an alternative to

their unlawful distribution claim against all Defendants,

Plaintiffs assert a claim of unauthorized execution against Booth

and Lord, alleging that they acted improperly and without

authorization when executing the joinder agreements.

    Plaintiffs contend that execution of the joinder agreements,

which caused Premiere and its subsidiaries to assume IHS's $2.15

billion debt, resulted in Premiere's insolvency and subsequent

bankruptcy.  It is well-settled, however, that when all creditors

of an insolvent or bankrupt corporation share an injury based on

a common act, only a receiver or trustee has standing to assert

the creditors' collective claim against directors on behalf of

6

the corporation. See Underwood v. Stafford, 270 N.C. 700, 703, 155 S.E.2d 211, 213 (1967) (stating that a claim "founded on injuries peculiar or personal to [a creditor], so that any recovery would not pass to the corporation and indirectly to other creditors" would give rise to standing for the individual creditor, while causes of action "based on duties owed to the corporation and not to any particular creditor," such as the duty not to fraudulently transfer assets during insolvency, cannot be maintained by an individual creditor); see also National Am. Ins. Co. v. Ruppert Landscaping Co., 187 F.3d 439, 441 (4th Cir. 1999) (holding that individual creditor lacked standing to assert separate cause of action apart from bankruptcy proceeding because claim was substantially similar to those available to other creditors and "the trustee's role is to bring suits such as these on behalf of all the creditors"); Bradson Mercantile, Inc. v. Vanderbilt Indus. Mercantile, Inc., 883 F. Supp. 37, 54 (W.D.N.C. 1995) ("Where the alleged fraud or negligent mismanagement has resulted in loss to the corporation and its creditors generally, the right of action belongs to the corporation and it may be maintained only in the name of the corporation or its receiver if it is insolvent.") (citing Ford Motor Credit Co. v. Minges, 473 F.2d 918, 921 (4th Cir. 1973)); Keener Lumber Co. v. Perry, 149 N.C. App. 19, 25, 560 S.E.2d 817, 820, disc. rev. denied, 356 N.C. 164, 568 S.E.2d 196 (2002). Accordingly, if the claims

7

Plaintiffs now seek to advance could also have been pursued by any of Premiere's other creditors, Plaintiffs lack standing because the claims are property of the bankruptcy estate.

Here, execution of the joinder agreements resulted in Premiere's bankruptcy and its inability to pay debt obligations held by Plaintiffs and all of Premiere's other creditors. The injury Plaintiffs complain of is shared by all of Premiere's creditors and is not unique to Plaintiffs.

Plaintiffs argue that their "special priority status" among Premiere's creditors gives them a unique injury with regard to Premiere's bankruptcy and, therefore, standing to assert claims separate and apart from Premiere's other creditors. Despite Defendants' representations, however, Plaintiffs did not actually hold such special status; Defendants' false representations in that regard form the basis of Plaintiffs' claims for fraud, negligent misrepresentation, and unfair and deceptive trade practices. As will be addressed further herein, these representations caused Plaintiffs to execute the Release Agreement and facilitated Premiere's merger and assumption of IHS's debts. In this respect, the facts surrounding Defendants' misrepresentation and the injury Plaintiffs suffered as a result are unique to them amongst the creditors of Premiere.

Those unique facts do not, however, form the basis of Plaintiffs' claims for fraudulent conveyance, unlawful

8

distribution, and unauthorized execution. Rather, Booth and Lord's execution of the joinder agreements support these claims. If, as Plaintiffs assert, execution of the joinder agreements was the cause of Premiere's bankruptcy, then that act also supports related claims by any of Premiere's creditors. In North Carolina, corporate officers and directors occupy a fiduciary position with respect to stockholders and creditors, and are thus charged with the preservation and proper distribution of the corporation's assets. Snyder v. Freeman, 300 N.C. 204, 216, 266 S.E.2d 593, 601 (1980) (quoting Underwood, 270 N.C. at 702, 155 S.E.2d at 212). As a result, any transfer that fraudulently or unlawfully deprives all creditors of their right to an insolvent corporation's assets necessarily gives rise to a cause of action shared by those creditors and not unique to any one of them. The fraudulent conveyance, unlawful distribution, and unauthorized execution claims Plaintiffs assert could be brought by any one of Premiere's creditors who, like Plaintiffs, were denied timely payment of Premiere's debts when execution of the joinder agreements led to Premiere's insolvency.[2] Compare Underwood, 270

---

[2] The court notes that Plaintiff ACI, as part of a creditors' committee, already asserted claims against Defendants Pickett, Booth, and Lord as part of an adversary proceeding in the Delaware Bankruptcy Court. (Materials Supp. Defs. Kelly, Pickett, and Booth's Mot. Dismiss Ex. B.) Therein, the creditors' committee purportedly acted on behalf of all Premiere creditors in pursuing claims including fraudulent transfer, unlawful distribution, and unauthorized execution. (Id.)

(continued...)

9

N.C. at 703, 155 S.E.2d at 213 (holding that, when a corporate creditor sued officers and directors of the corporate debtor for allegedly defrauding creditors by appropriating assets to themselves, the wrongs alleged were committed against the insolvent corporation and must be brought by a receiver), with Snyder, 300 N.C. at 217, 266 S.E.2d at 601-02 (holding that an individual creditor could maintain a claim against corporate directors when violations alleged regarded failure to earmark special trust fund held specifically for plaintiff apart from corporation's assets).

Accordingly, Plaintiffs lack standing to pursue their fraudulent conveyance, unlawful distribution, and unauthorized execution claims which arise from Booth and Lord's execution of the joinder agreements. Defendants' motions to dismiss these claims are, therefore, granted.

---

[2](...continued)
Although members of a creditors' committee may have standing to assert claims both in that representative capacity and, separately, as individual creditors, see, e.g., Hudgins v. Davidson, 127 B.R. 6, 8 (E.D. Va. 1991), they must still demonstrate that their individual standing is based on a unique injury distinguishable from that suffered by all creditors generally. Underwood v. Stafford, 270 N.C. 700, 703, 155 S.E.2d 211, 213 (1967). Plaintiffs have failed in that regard and are thus prevented from preserving these claims as an individual right. Since the court concludes Plaintiffs lack standing to pursue these claims in this case, it will not reach the question of whether res judicata bars these causes of action.

B.   Fraud, Negligent Misrepresentation, and Unfair and
Deceptive Trade Practices

Plaintiffs allege that Defendants fraudulently or
negligently misrepresented that Plaintiffs, upon execution of the
Release Agreement, would occupy a "special priority status" among
Premiere's creditors.  Based on these facts, Plaintiffs assert
claims of fraud, negligent misrepresentation, and unfair and
deceptive trade practices in violation of North Carolina General
Statutes § 75-1.1.

Defendants argue that Plaintiffs lack standing and their
claims are barred by res judicata because Plaintiffs participated
in the earlier bankruptcy case.  In the alternative, Defendants
contend that Plaintiffs failed to adequately plead these claims.
Defendant Lord also asserts in his separate motion that
Plaintiffs failed to make any allegation against him regarding
fraud, negligent misrepresentation, or unfair and deceptive trade
practices.  The court will address each argument in turn.

1.  Standing

Defendants first argue that Plaintiffs lack standing
since these causes of action belong to the bankruptcy estate and
are therefore property of the trustee.  See, e.g., Hudgins v.
Davidson, 127 B.R. 6, 8 (E.D. Va. 1991).  As discussed above, '
Plaintiffs, as individual creditors of Premiere, lack standing to
assert claims based on harms that are not "peculiar or personal"

11

to them.  Underwood v. Stafford, 270 N.C. 700, 703, 155 S.E.2d
211, 213 (1967).

Unlike the fraudulent transfer, unlawful distribution, and
unauthorized execution claims that were based on Booth and Lord's
execution of the joinder agreement, Plaintiffs' claims for fraud,
negligent misrepresentation, and unfair and deceptive trade
practices are based on Defendants' assurances regarding
Plaintiffs' status among Premiere's creditors.  Those assurances
were made directly to Plaintiffs in an effort to induce their
execution of the Release Agreement so Premiere's merger with the
IHS subsidiary could proceed.  This inducement was targeted only
at Plaintiffs and affected only promissory notes and other debt-
obligations held by Plaintiffs.

Since the alleged misrepresentations and execution of the
Release Agreements are factually unique to Plaintiffs as among
Premiere's other creditors, Plaintiffs have standing to assert
claims based on Defendants' representations.  Any injuries
stemming from those transactions are peculiar and personal to
Plaintiffs and may be pursued separate and apart from claims
reserved for the trustee in the bankruptcy proceeding.  See,
e.g., Lillian Knitting Mills Co. v. Earle, 233 N.C. 74, 75, 62
S.E.2d 492, 493 (1950) (holding that, when corporation was placed
in receivership, individual creditor could maintain claim
alleging fraudulent misrepresentations made directly to that

12

creditor by individual officers and directors, despite defendants' argument that claim belonged to receiver for benefit of all corporate creditors); see also Ashland Oil, Inc. v. Arnett, 875 F.2d 1271, 1280 (7th Cir. 1989) (holding that the plaintiff suffered direct injury distinct from that of other creditors and had standing to sue outside bankruptcy proceeding even though the plaintiff also suffered derivative injury common to all creditors).

Because Plaintiffs' claims for fraud, negligent misrepresentation, and unfair and deceptive trade practices are based on distinct conduct and unique injuries apart from other Premiere creditors, Plaintiffs have standing to pursue these claims here. Defendants' motions to dismiss will not be granted on this basis.

2.  Res Judicata

Defendants next assert that these claims are based on the same series of transactions that gave rise to the bankruptcy proceeding and are, therefore, barred by res judicata. As discussed above, the court concludes that Plaintiffs' claims arising from alleged misrepresentations are unique to them and by definition could not have been pursued by the trustee in the bankruptcy court. See Keener Lumber Co. v. Perry, 149 N.C. App. 19, 26-27, 560 S.E.2d 817, 822-23, disc. rev. denied, 356 N.C. 164, 568 S.E.2d 196 (2002) (holding that a claim based on

13

injuries unique to a creditor, such that recovery would pass
directly to that creditor, "belongs to, and is properly
maintained by, that particular creditor" rather than the
bankruptcy trustee) (citing Underwood, 270 N.C. at 703, 155
S.E.2d at 213). Likewise, these claims could not have been
pursued by the creditors' committee on which Plaintiff ACI served
because, in that context, ACI served in a representative capacity
to advance claims shared by all similarly-situated creditors.
See Hudgins, 127 B.R. at 8 (noting that members of a creditors'
committee have standing both in a bankruptcy proceeding and in a
separate proceeding, provided the first is based on claims shared
by other creditors and the second is based on a unique injury).

     The events surrounding the alleged misrepresentations are
distinct from the transactions related to execution of the
joinder agreements, which formed the basis of an injury shared by
numerous creditors. Plaintiffs' claims for fraud, negligent
misrepresentation, and unfair and deceptive trade practices are
based on an injury unique to them as among Premiere's creditors,
and Plaintiffs did not previously pursue these claims in the
bankruptcy proceeding. Since these claims were not pursued in
the bankruptcy proceeding, res judicata does not bar Plaintiffs
from asserting them here. See Ashland Oil, 875 F.2d at 1280
(holding that plaintiffs were not limited only to rights of
bankruptcy estate creditors since they suffered direct injury

14

"distinct from that of other creditors" and, therefore, could pursue claims apart from the bankruptcy proceeding).

Plaintiffs' claims for fraud, negligent misrepresentation, and unfair and deceptive trade practices are based on injuries unique to them as among Premiere's other creditors: Accordingly, these claims are not barred by any res judicata effect of the bankruptcy proceeding and Defendants' motions to dismiss will not be granted on that basis.

### 3. Sufficiency of Pleadings

A defendant's motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of pleadings, but does not seek to resolve disputes surrounding the facts. Republican Party of N.C. v. Martin, 980 F.2d 943, 952 (4th Cir. 1992). A court must determine only if the challenged pleading fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). A pleading "should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46, 78 S. Ct. 99, 102 (1957). The pleading must be "liberally construed" in the light most favorable to the non-moving party and allegations made therein are taken as true. Jenkins v. McKeithen, 395 U.S. 411, 421, 89 S. Ct. 1843, 1849 (1969).

A000023

Defendants contend that Plaintiffs have not sufficiently pleaded their claims for fraud, negligent misrepresentation, and unfair and deceptive trade practices. As to the fraud claim, Defendants assert that Plaintiffs' amended complaint fails to provide the particularity required under Federal Rule of Civil Procedure 9(b).

Rule 9(b) requires that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." Fed. R. Civ. P. 9(b). In North Carolina, the requisite elements of a fraud claim are:

> (1) material misrepresentation of a past or existing fact; (2) the representation must be definite and specific; (3) made with knowledge of its falsity or in culpable ignorance of its truth; (4) that the misrepresentation was made with intention that it should be acted upon; (5) that the recipient of the misrepresentation reasonably relied upon it and acted upon it; and (6) that [thereby] resulted in damage to the injured party.

Volumetrics Med. Imaging, Inc. v. ATL Ultrasound, Inc., 243 F. Supp. 2d 386, 414 (M.D.N.C. 2003) (alteration in original) (quoting Horack v. Southern Real Estate Co. of Charlotte, 150 N.C. App. 305, 313, 563 S.E.2d 47, 53 (2002)).

To that end, Plaintiffs have alleged that, in an effort to induce Plaintiffs' execution of the Release Agreement, Kelly and Pickett represented that Plaintiffs' debt obligation would be senior to all other indebtedness of Premiere. (Am. Compl. ¶ 14.) This statement and related representations are alleged to have caused Plaintiffs, on March 31, 1998, to enter into the Release

16

Agreement.  (<u>Id.</u> ¶ 15.)  The Release Agreement allowed Premiere to merge with the IHS subsidiary on June 25, 1998, at which time Kelly, Pickett, and Booth are alleged to have made numerous false representations regarding the financial condition of IHS, that company's guarantee of Plaintiffs' debt obligation, and related statements detailed in Plaintiffs' amended complaint.  (<u>Id.</u> ¶¶ 19-20, 26(d), (h), (l), (m).)  These false statements are alleged to have been made knowingly and with the specific intent to induce Plaintiffs' execution of the Release Agreement.  (<u>Id.</u> ¶¶ 26-27.)  Plaintiffs executed the Release Agreement and claim that, in doing so, they reasonably relied on the statements of Kelly, Pickett, and Booth.  (<u>Id.</u> ¶ 27.)  Plaintiffs further claim that their execution of the Release Agreement facilitated Premiere's merger, which ultimately caused Premiere's bankruptcy and Plaintiffs' damages.  (<u>Id.</u>)

Although Rule 9(b) requires that the requisite factual allegations be pleaded with particularity, this mandate "does not contradict the theory of notice pleading embraced by the Federal Rules in general, and Rule 8, in particular."  <u>Gilbert v. Bagley</u>, 492 F. Supp. 714, 725 (M.D.N.C. 1980).  In keeping with that premise, the Fourth Circuit has held that courts "should hesitate to dismiss a complaint under Rule 9(b) if the court is satisfied (1) that the defendant has been made aware of the particular circumstances for which [the defendant] will have to prepare a

17

defense at trial, and (2) that plaintiff has substantial prediscovery evidence of those facts." Harrison v. Westinghouse Savannah River Co., 176 F.3d 776, 784 (4th Cir. 1999); accord Fulk v. Bagley, 88 F.R.D. 153, 164 (M.D.N.C. 1980). Plaintiffs' allegations make clear that they are in possession of a substantial amount of prediscovery evidence. Plaintiffs have also pleaded with sufficient factual specificity to make Defendants aware of the "particular circumstances" for which they will need to prepare a defense. Accordingly, the requirements of Rule 9 have been satisfied and the court will not dismiss Plaintiffs' fraud claim against Kelly, Pickett, and Booth on this ground.

Likewise, Plaintiffs have pleaded sufficiently to give Defendants notice of the circumstances surrounding Plaintiffs' claim of negligent misrepresentation. In North Carolina, "[i]t is well established that 'the tort of negligent misrepresentation occurs when (1) a party justifiably relies (2) to his detriment (3) on information prepared without reasonable care (4) by one who owed the relying party a duty of care.'" Jordan v. Earthgrains Cos., 155 N.C. App. 762, 766, 576 S.E.2d 336, 339, disc. review denied, 357 N.C. 461, 585 S.E.2d 761 (2003) (quoting Raritan River Steel Co. v. Cherry, Bekaert & Holland, 322 N.C. 200, 206, 367 S.E.2d 609, 612 (1988), rev'd on other grounds, 329 N.C. 646, 407 S.E.2d 178 (1991)). Plaintiffs allege numerous

18

specific misrepresentations by Kelly, Pickett, and Booth and assert that each failed to exercise reasonable care in making the representations. (Am. Compl. ¶¶ 14, 29-30.) Plaintiffs have also alleged that they justifiably relied on these representations and did so to their detriment, since execution of the Release Agreement allowed Premiere to go forward with its merger, eventually leading to its bankruptcy. (Id. ¶ 30.)

Again, these allegations are sufficient to give Defendants notice of Plaintiffs' claim and the particular facts and circumstances surrounding it. See Harrison, 176 F.3d at 784. Because Plaintiffs have adequately pleaded a claim of negligent misrepresentation against Kelly, Pickett, and Booth, the court will deny these Defendants' motion to dismiss this claim.[3]

Finally, by adequately pleading their fraud and negligent misrepresentation claims, Plaintiffs have also pleaded their claim of unfair and deceptive trade practices with sufficient particularity. See Powell v. Wold, 88 N.C. App. 61, 68, 362 S.E.2d 796, 800 (1987) ("Because the claims . . . based on fraud

---

[3] Defendants argue that the fraud and negligent misrepresentation claims should be dismissed because Plaintiffs have not established that they reasonably relied on Defendants' representations. See State Properties, L.L.C. v. Ray, 155 N.C. App. 65, 72, 574 S.E.2d 180, 186 (2002) (stating that a party's reliance on false statements must be reasonable). Since the reasonableness of Plaintiffs' reliance is typically "a question for the jury, unless the facts are so clear that they support only one conclusion," see id. at 73, 574 S.E.2d at 186, the court will not, at this stage of the proceeding, dismiss Plaintiffs' claims for fraud and negligent misrepresentation on that ground.

19

and negligent misrepresentation have been held . . . sustainable past a Rule 12(b)(6) motion to dismiss, the claim of unfair and deceptive trade practices cannot be dismissed. 'Proof of fraud necessarily constitutes a violation of the prohibition against unfair and deceptive trade practices.'") (quoting <u>Webb v. Triad Appraisal & Adjustment Serv., Inc.</u>, 84 N.C. App. 446, 449, 352 S.E.2d 859, 862 (1987)); <u>accord</u> <u>Hunter v. Guardian Life Ins. Co. of Am.</u>, ___ N.C. App. ___, 593 S.E.2d 595, 601 (2004). As such, the court will also deny Kelly, Pickett, and Booth's motion to dismiss Plaintiffs' claim for unfair and deceptive trade practices.

    4. Defendant Lord

    With regard to Defendant Lord, Plaintiffs allege only that he executed some of the joinder agreements that allowed Premiere's merger and later guarantee of IHS's $2.15 billion debt. (Am. Compl. ¶¶ 21, 23.) Execution of the joinder agreements does not form the basis of Plaintiffs' claims for fraud, negligent misrepresentation, or unfair and deceptive trade practices. (<u>Id.</u> ¶¶ 25-30.) Those claims are based on alleged material misrepresentations and omissions made by Kelly, Pickett, and Booth. Plaintiffs have made no allegation that Lord was involved in any of the representations or omissions that induced Plaintiffs to execute the Release Agreement. Since Plaintiffs have not alleged any fact that would provide a basis for Lord's

20

liability, Plaintiffs have failed to state a claim upon which relief can be granted for fraud, negligent misrepresentation, and unfair and deceptive trade practices. The court will, therefore, grant Lord's motion to dismiss these claims.

C.  Breach of Fiduciary Duty and Constructive Fraud

Plaintiffs allege that Defendants, in procuring the Release Agreement, promised to give Plaintiffs' promissory notes priority status over all indebtedness or other obligations of Premiere to IHS.  Plaintiffs argue that, if proven, this fact would establish Defendants' fiduciary duty to Plaintiffs, a duty that was breached when Premiere assumed IHS's debt to Citibank, which was an obligation senior to Plaintiffs' promissory notes.  Defendants maintain that their relationship to Plaintiffs did not create a fiduciary duty under North Carolina law and, as such, Plaintiffs cannot sustain a claim for breach of fiduciary duty.  Absent a fiduciary duty, Defendants contend that Plaintiffs also cannot sustain a claim of constructive fraud.  See, e.g., Keener Lumber Co. v. Perry, 149 N.C. App. 19, 28, 560 S.E.2d 817, 823 (stating that, to support a constructive fraud claim, "a plaintiff must show (1) the existence of a fiduciary duty, and (2) a breach of that duty"), disc. review denied, 356 N.C. 164, 568 S.E.2d 196 (2002).

North Carolina courts are "reluctant" to impose "extra-contractual fiduciary obligations" even though parties to an

21

arms-length transaction may have placed confidence in one another. South Atl. Ltd. P'ship of Tenn. v. Riese, 284 F.3d 518, 533 (4th Cir. 2002) (citing Tin Originals, Inc. v. Colonial Tin Works, Inc., 98 N.C. App. 663, 666, 391 S.E.2d 831, 833 (1990). It is also well-settled that a debtor-creditor relationship does not give rise to a fiduciary duty. Security Nat'l Bank of Greensboro v. Educators Mut. Life Ins. Co., 265 N.C. 86, 95, 143 S.E.2d 270, 276 (1965); In re Gertzman, 115 N.C. App. 634, 639, 446 S.E.2d 130, 134 (1994); Branch Banking & Trust Co. v. Thompson, 107 N.C. App. 53, 61, 418 S.E.2d 694, 699 (1992).

Plaintiffs argue that Defendants' fiduciary duty arises from the special creditor status Defendants allegedly extended to them. This argument is in error. Defendants' representation that Plaintiffs occupied a special status among Premiere's creditors forms the basis of Plaintiffs' claims for fraud, negligent misrepresentation, and unfair and deceptive practices, but does not create a fiduciary duty to Plaintiffs. Even assuming that Plaintiffs did hold a preferential status among Premiere's creditors, the relationship between Premiere and Plaintiffs was at all times a debtor-creditor relationship and could not, without more, give rise to a fiduciary duty.

Furthermore, "[a]s a general rule, directors of a corporation do not owe a fiduciary duty to creditors of the corporation." Keener, 149 N.C. App. at 29, 568 S.E.2d at 824

22

A000030

(quoting <u>Whitley v. Carolina Clinic, Inc.</u>, 118 N.C. App. 523, 526; 455 S.E.2d 896, 899 (1995)). Such a duty exists only when the corporation is insolvent, "is in declining circumstances and verging on insolvency," or "where such facts establish circumstances that amount 'practically to a dissolution.'" <u>Id.</u> at 29-30, 568 S.E.2d at 824-25; <u>accord</u> <u>Whitley</u>, 118 N.C. App. at 528, 455 S.E.2d at 900 ("[T]he law of this state, consistent with other authorities, establishes that for a corporate director to breach a fiduciary duty to a creditor, the transaction at issue must occur under circumstances amounting to a 'winding-up' or dissolution of the corporation."). Although Premiere later entered bankruptcy, at the time the Release Agreement was negotiated, Plaintiffs concede that Premiere was solvent. Plaintiffs also admit that Premiere continued to be solvent for almost two years following its merger with the IHS subsidiary and execution of the joinder agreements Plaintiffs blame for Premiere's bankruptcy. Since Premiere was not insolvent, verging on insolvency, or contemplating dissolution when the Release Agreement was negotiated, Defendants, as officers of Premiere, did not owe a fiduciary duty to Plaintiffs.

Since Defendants did not owe any fiduciary duty to Plaintiffs under North Carolina law, Plaintiffs cannot support a claim for breach of that duty or a claim of constructive fraud.

23

Accordingly, Defendants' motions to dismiss both claims are granted.

    D.  Punitive Damages

    Defendants have moved to dismiss Plaintiffs' claim for punitive damages, arguing that Plaintiffs have failed to adequately plead any actionable wrong by Defendants.  Having determined that Plaintiffs properly stated a claim against Defendants Kelly, Pickett, and Booth for fraud, negligent misrepresentation, and unfair and deceptive trade practices, the court declines to bar Plaintiffs from pursuing punitive damages against these Defendants.

III. CONCLUSION

    For the reasons stated herein,

    IT IS ORDERED that Defendant Lord's Motion to Dismiss Plaintiffs' Amended Complaint [21] is GRANTED in full.

    IT IS FURTHER ORDERED that Defendants Kelly, Pickett, and Booth's Motion to Dismiss Plaintiffs' Amended Complaint [23] is GRANTED with respect to Plaintiffs' claims of fraudulent conveyance, unlawful distribution, unauthorized execution, breach of fiduciary duty, and constructive fraud.  Kelly, Pickett, and Booth's motion is DENIED with respect to Plaintiffs' claims for fraud, negligent misrepresentation, and unfair and deceptive trade practices.

24

This the ___17___ day of September 2004.


_____
United States District Judge

25

**Item #3**

43

1  agreement that that's the amount to be distributed to the class
2  of creditors.

3         MR. BARRY:  Your Honor, I just want to be clear on
4  the record that your finding is that there's an ambiguity in
5  the plan and that the distribution should have occurred 30 days
6  after the effective date of the plan.

7         THE COURT:  Correct, the initial distribution.

8         MR. BARRY:  And that there was a -- in light of the
9  Debtor's failure to perform there's been a breach and interest
10 should be awarded in an amount apparently to be negotiated
11 between the two parties?

12        THE COURT:  Yes.

13        MR. BARRY:  Thank you, Your Honor.

14        MR. GARFINKLE:  Thank you, Your Honor.

15        THE COURT:  All right.  Are we back to --

16        MR. GARFINKLE:  Your Honor, should McKesson submit an
17 order on that?

18        THE COURT:  Yes.

19        MR. GARFINKLE:  Okay.  Thank you, Your Honor, we
20 will.

21        THE COURT:  Thank you.

22        MR. BARRY:  Your Honor, I just want to make it clear,
23 too, that obviously the Reorganized Rotech Debtors will get the
24 opportunity to comment on with that order before they submit
25 it.

A000034

51

1          MR. PILIPIS:  Standing here I cannot attest to which

2    fees we did and which fees we did not pay.  I just know that

3    these are fees that we believe are covered by the plan if

4    nothing else.

5          THE COURT:  All right.

6          MS. ALFONSO:  Your Honor, the only thing I would add

7    is that this provision, Section 2.2 of the plan relating to

8    professionals really relates to which reserve such funds will

9    be paid from.  In other words, professional fees that are to be

10   paid by the Liquidating LLC, which is what that has to mean, do

11   come out of the administrative expense claims reserve account,

12   and that was the purpose of it.  The general treatment of

13   administrative expense claims clearly provides that ordinary

14   course obligations are the obligations that are governed by the

15   Stock Purchase Agreement.  This is a nuance.  I will admit that

16   I didn't make --

17         THE COURT:  It doesn't say professionals other than

18   ordinary course professionals.

19         MS. ALFONSO:  That's true, Your Honor.  In hindsight

20   I would have carved out from Section 327 those that were not

21   billing regularly and having their fees scrutinized by the

22   Court, which is what Mr. Capozzi was.

23         THE COURT:  Did Abe Briarwood pay any of the other

24   ordinary course professionals?

25         MS. ALFONSO:  Not being a witness, I would have to

J&J COURT TRANSCRIBERS, INC.



52

1  defer to Mr. Marcos.  But I will represent to the Court that I

2  can proffer his testimony that THI agreed that it would be

3  paying on behalf of the Reorganized Debtors the ordinary course

4  professional fees that came due or that had become due and had

5  accrued prior to the effective date.  That was part of the pain

6  of trying to, you know, clarify any open issues post-effective

7  date because there were a few others whose fees had somehow

8  slipped through the cracks and wound up not getting paid before

9  the effective date.

10          THE COURT:  Can I accept te proffer or do you want to

11  cross examine the witness?

12          MR. PILIPIS:  Your Honor, just to be sure -- I'm

13  unclear of what is being proffered.

14          MR. ALFONSO:  I'm proffering the testimony of Matt

15  Marcos, who is a principal of Eureka Management and who is --

16  which is the liquidating manager for the LLC.  I would proffer

17  his testimony that THI advised Mr. Marcos that they on behalf

18  of the Reorganized Debtors would be paying and would agree that

19  it is the Reorganized Debtor's obligation to pay the ordinary

20  course professional fees.

21          MR. PILIPIS:  Your Honor, if I understand what Ms.

22  Alfonso just said that THI -- that the testimony proffered is

23  that THI agreed that this is somehow Briarwood's obligation,

24  would that be correct?

25          MS. ALFONSO:  As a practical mater THI is running the

**J&J COURT TRANSCRIBERS, INC.**

A000036

56

1          MS. ALFONSO:  I just want to remind the Court that
2  ordinary course professionals didn't have to submit fee
3  applications, and we consider those types of professionals,
4  notwithstanding the fact that there is some general 327
5  authority to have been employed pursuant to a special first day
6  order of the Court.  They excused them from the typical rules
7  applicable to professionals.
8          MR. PILIPIS:  Your Honor, we don't believe that's
9  supported --  I'm sorry.  Once again, Dimitry Pilipis on behalf
10  of Brairwood.  We don't believe that's supported by the
11  language of the plan or the Stock Purchase Agreement, and we
12  stick with our position.
13          THE COURT:  Well they were excluded from filing fee
14  applications, but that doesn't mean they weren't paid under
15  Section 330.
16          MS. ALFONSO:  They were paid in the ordinary course
17  of business but for this amount that slipped through the
18  cracks, Your Honor.  We consider that tantamount to a typical
19  administrative expense claim.
20          THE COURT:  Well they were employed under 327.  You
21  only get paid if you're a 327 professional under 330 or 331,
22  whether or not I relieve them from the obligation of filing fee
23  applications under our local rules or procedures.  So I think
24  they're your obligation.
25          MS. ALFONSO  Just to be clear, Your Honor, you said

J&J COURT TRANSCRIBERS, INC.

A000037

**Item #4**

the Corporate Integrity Agreement referred to therein) is hereby approved as a fair, prudent, and reasonable compromise of the controversies resolved by such settlement and is binding upon the signatories thereto, and the Debtors are authorized to enter into such agreement substantially in the form included in the Plan Supplement.

27. <u>Premiere Group Settlement Agreement</u>. The compromise and settlement between the Debtors and the Premiere Group Creditors' Committee incorporated into the Plan and in this Order, is hereby approved as a fair, prudent, and reasonable compromise of the controversies resolved by such settlement and is binding upon all entities affected thereby.

28. <u>IHS/Lyric Settlement Agreement</u>. The compromise and settlement reflected in the IHS/Lyric Settlement Agreement incorporated into the Plan, is hereby approved, as a fair, prudent and reasonable compromise of the controversies resolved by such settlement and is binding upon all entities affected thereby, and the Debtors are authorized to execute the IHS/Lyric Settlement Agreement substantially in the form annexed hereto as Exhibit "B".

29. <u>Angell Action; Angell Injunction Action</u>. The Debtors' agreement with Don G. Angell and related entities as described in the Plan, with respect to certain pending actions, is approved.

30. <u>Sale Approval Order</u>. The Sale Approval Order which approved the Sale Agreement and authorized the Debtors to implement the Sale Transactions consistent with the Sale Agreement, the Plan and the Confirmation Order has not been appealed, reversed, vacated, modified or stayed, remains in full force and effect and remains binding upon all entities affected thereby.

31. <u>Satisfaction of Confirmation Requirements</u>. The Plan satisfies the requirements for confirmation set forth in section 1129 of the Bankruptcy Code.

A000038

32.    Retention of Jurisdiction.  The Bankruptcy Court may properly retain jurisdiction over the matters set forth in Section 11 of the Plan and section 1142 of the Bankruptcy Code.

## DECREES

NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED THAT:

33.    Technical Amendments.  The modifications and clarifications to the Plan set forth herein meet the requirements of sections 1127(a) and (c) of the Bankruptcy Code and such modifications and clarifications do not adversely change the treatments of the Claim of any creditor or Equity Interest of any holder thereof within the meaning of Bankruptcy Rule 3019, and no further disclosure, solicitation or voting is required.

34.    Confirmation.  The Plan is approved and confirmed under section 1129 of the Bankruptcy Code.  The terms of the Plan Supplement and the Plan Documents are incorporated by reference into and are an integral part of the Plan and this Confirmation Order. Notwithstanding the foregoing, nothing contained herein shall constitute an approval of the Stand-Alone Transactions and shall be without prejudice to the Debtors later seeking approval thereof.

35.    Objections.  All Objections that have not been withdrawn, waived, or settled, and all reservations of rights pertaining to confirmation of the Plan included therein, are overruled on the merits.  The Debtors have agreed to modify or clarify the Plan as follows in order to resolve certain Objections:

(a)    With respect to the Objection of Finova Capital Corporation ("Finova"):

A000039

66.    Survival of Corporate Indemnities.  Pursuant to Section 8 4 of the Plan (as modified herein), any obligations of the Debtors pursuant to their corporate charters and bylaws or agreements, entered into at any time prior to the Effective Date or pursuant to the Elkins Settlement Agreement, to the extent permitted by applicable law, to indemnify current directors, officers, agents, and/or employees, or the Elkins Released Parties with respect to all present and future claims, actions, suits, and proceedings against the Debtors or such directors, officers, agents, and/or employees, based upon any act or omission for or on behalf of the Debtors shall not be discharged or impaired by confirmation of the Plan of Reorganization, *provided, however,* that this provision shall not affect the priority of any claim for indemnification under the applicable provisions of the Bankruptcy Code and applicable law, as to which all rights are reserved  Notwithstanding the foregoing, the current directors, officers, agents and/or employees of the Debtors who are defendants in the Compensation Action shall be entitled to the advancement and/or reimbursement of the reasonable fees and expenses of their respective legal counsel incurred in connection with the Compensation Action; provided that such fees and expenses shall not exceed the sum of (a) $270,000, which has accrued, and (b) $1,000,000, which shall be payable only if (i) the Sale Transactions close and (ii) any portion of the Class 4 Cash Fund that may be used by the Debtors is repaid in full.

67    Releases, Exculpations, and Injunctions.  The release, exculpation, and injunction provisions contained in Sections 10 4, 10 5, 10 6 and 10.7 of the Plan as modified herein are fair and equitable, are given for valuable consideration, and are in the best interests of the Debtors and their chapter 11 estates, and the following provisions shall be effective and binding upon all persons and entities:

A000040

(a)    <u>Term of Injunctions or Stays</u>. Except as otherwise provided in the

Plan, all injunctions or stays arising under or entered during the IHS Reorganization Cases under

section 105 or 362 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation

Date, shall remain in full force and effect until the later of the Effective Date and the date

indicated in the order providing for such injunction or stay. Notwithstanding the foregoing, on

the earlier of the Confirmation Date and April 29, 2003: (i) the adversary proceeding pending in

the IHS Reorganization Cases captioned *Integrated Health Services, Inc. and Premiere*

*Associates, Inc. v. Don G. Angell, D. Gray Angell, Jr., and Don R. House, individually and in*

*their capacities as Co-Trustees of the Don Angell Irrevocable Trust Under Instrument dated July*

*24, 1992, Angell Care Incorporated, Angell Family Limited Partnership; and Bermuda Village*

*Retirement Center Limited Partnership*, Adv. Pro. No. 01-1030 (the "<u>Angell Injunction Action</u>")

shall be deemed to be dismissed with prejudice; (ii) the Stipulation and Order, dated June 12,

2001, effective as of April 19, 2001 [Docket No. 20] entered in the Angell Injunction Action

shall be deemed to be vacated, and (iii) to the extent any stay pursuant to Section 362 or 105 is

applicable to the civil action, pending in the United States District Court for the Middle District

of North Carolina, captioned *Don G. Angell, D. Gray Angell, Jr., and Don R. House, in their*

*capacities as Co-Trustees of the Don Angell Irrevocable Trust Under Instrument Dated July 24,*

*1992, and Angell Care Incorporated, v. Elizabeth B. Kelly, C. Taylor Pickett, Daniel J. Booth*

*and Ronald L. Lord* [Case No. 01-CV-435] (the "<u>Angell Action</u>"), such stay shall be deemed

modified to allow the Angell Action to be prosecuted; *provided, however*, that nothing herein

shall be construed as waiving or limiting the right of any defendant in the Angell Action to raise

any defenses or counterclaims it may have, including without limitation, that the claims asserted

in the Angell Action are property of the Debtors' estates and that the plaintiffs do not have

A000041

standing to assert such claims; and *further provided*, that any Premiere Unsecured Creditors or their professionals, including without limitation, the plaintiffs in the Angell Action and any of their affiliates, shall waive any claim they may have in the IHS Reorganization Cases for substantial contribution pursuant to section 503(b) of the Bankruptcy Code. The Debtors and the plaintiffs in the Angell Action have agreed to bear their own fees and expenses, including attorneys' fees, incurred in connection with the Angell Injunction Action. Nothing contained in the Disclosure Statement, the Plan or this Order shall be construed as discharging or releasing the third party claims held by the plaintiffs in the Angell Action against any non-Debtor party including the defendants in the Angell Action.

(b)     Injunction Against Interference With Plan. Upon the entry of this Order and except as otherwise provided in the DIP Credit Facility, all holders of Claims and Equity Interests and other parties in interest, along with their respective present or former employers, agents, officers, directors, or principals, shall be permanently and forever barred, restrained and enjoined from taking any actions to interfere with the implementation or consummation of the Plan.

(c)     Injunction Against Suits Against IHS Under the Sale Transactions. Upon consummation of the Sale Transactions and effective as of the Effective Date, and except as otherwise provided in the Plan or the DIP Credit Facility, all holders of Claims and Equity Interests and other parties in interest, along with their respective present or former employers, agents, officers, directors, or principals, shall be permanently and forever barred, restrained and enjoined from taking any action, directly or indirectly, against IHS, to collect, recover or receive payment of, on, or with respect to any Claim or Equity Interest arising on or before the date of the Confirmation Order, including claims (within the meaning of section 101(5) of the

A000042

Bankruptcy Code) against IHS relating to any asset or liability being purchased or assumed by the Purchaser under the Sale Agreement.

(d)    Exculpation. Neither the Debtors, Alvarez & Marsal, Inc., any Disbursing Agent, the Liquidating LLC, the Liquidating Manager, the Creditors' Committee, the Premiere Group Creditors' Committee, the Post-Confirmation Committee, the Unofficial Senior Lenders' Working Group, nor any of their respective members, officers, directors, employees, agents, counsel or other professionals that served at any time after the Commencement Date shall have or incur any liability to any holder of any Claim or Equity Interest or any other entity for any act or omission in connection with, or arising out of, the IHS Reorganization Cases, the formulation, dissemination, implementation or confirmation of the Plan of Reorganization, the consummation of the Plan of Reorganization, or the administration of the Plan of Reorganization or property to be distributed under the Plan of Reorganization, or any other act or omission in connection with the Plan of Reorganization, the Disclosure Statement, or any contract, instrument, release or other document or agreement related thereto, *provided, however*, that the foregoing shall not affect the liability of any person that otherwise would result from any such act or omission to the extent such act or omission is determined by a Final Order to have constituted gross negligence or willful misconduct; *provided, further*, the foregoing shall not be deemed to encompass acts or omissions solely related to the ordinary course conduct of the Debtors' businesses during the pendency of the IHS Reorganization Cases. Any of the foregoing parties in all respects shall be entitled to rely on the advice of counsel with respect to their duties and responsibilities in connection with the Plan of Reorganization, and all other matters referred to in Section 10.7 of the Plan.

A000043

68.    Retention of Causes of Action/Reservation of Rights.

(a)    Nothing contained in the Plan (except for the dismissal of actions referred to in Sections 10.4 and 10.9 of the Plan) or this Order shall be deemed to be a waiver or the relinquishment of any rights or Causes of Action that the Debtors, the Debtors' estates, the Liquidating LLC, or the Post-Confirmation Committee may have or which the Liquidating LLC may choose to assert under any provision of the Bankruptcy Code or any applicable nonbankruptcy law, including, without limitation, (i) any and all Claims against any person or entity, to the extent such person or entity asserts a crossclaim, counterclaim, and/or Claim for setoff which seeks affirmative relief against any of the Debtors, the Liquidating LLC, or their respective officers, directors, or representatives, and (ii) the turnover of any property of any of the Debtors' estates.

(b)    Nothing contained in the Plan (except for the dismissal of certain actions described in Sections 10.4 and 10.9 of the Plan) or this Order shall be deemed to be a waiver or relinquishment of any claim, Cause of Action, right of setoff, or other legal or equitable defense which any of the Debtors or the Debtors' estates had immediately prior to the Commencement Date or thereafter, against or with respect to any Claim left unimpaired by the Plan. The Liquidating LLC shall have, retain, reserve, and be entitled to assert all such claims, causes of action, rights of setoff, and other legal or equitable defenses which the Debtors had immediately prior to the Commencement Date or thereafter fully as if the IHS Reorganization Cases had not been commenced, and all of the Debtors' legal and equitable rights respecting any Claim left unimpaired by the Plan of Reorganization may be asserted after the Confirmation Date to the same extent as if the IHS Reorganization Cases had not been commenced.

A000044

69.    Dismissal of Premiere Committee Matters.  As of the Effective Date, the

motion pending in the IHS Reorganization Cases entitled *Motion of the Official Committee of*

*Unsecured Creditors of Premiere Associates, Inc. and its Subsidiaries for Leave to File an*

*Adversary Proceeding Complaint on Behalf of Premiere Associates, Inc. and its Subsidiaries*

filed on January 9, 2002 [Docket No. 6126] (the "Premiere Motion") and the adversary complaint

filed in the IHS Reorganization cases captioned *Official Committee of Unsecured Creditors of*

*Premiere Associates, Inc. and its Subsidiaries, on behalf of Premiere Associates, Inc., et al., v.*

*Daniel J. Booth, Ronald L. Lord, C. Taylor Pickett, Marshall Elkins and Marc Levin,* filed on

February 1, 2002 [Docket No. 6376] shall each be deemed to be dismissed with prejudice, and

the Premiere Committee and the Debtors' estates shall be deemed to have permanently waived

and relinquished any and all claims and causes of action referred to in or contemplated by the

Premiere Motion.

70.    Cancellation of Existing Securities and Agreements.  Pursuant to

Section 5.7 of the Plan, except for purposes of evidencing a right to distributions under the Plan

or as otherwise provided hereunder, on the Effective Date all agreements and other documents

evidencing Claims or rights of any holder of a Claim against any of the Debtors, including all

indentures and notes evidencing such Claims, shall be canceled and deemed null and void and of

no force and effect as against the Debtors; *provided, however* that (a) the Class 9 Indentures shall

continue in effect for the purposes of (i) allowing the Class 9 Indenture Trustees to make any

distributions on account of the respective Settled Senior Subordinated Debt Claims pursuant to

the Plan and to perform such other necessary administrative functions with respect thereto, and

(ii) permitting the Class 9 Indenture Trustees to maintain and assert any rights or liens for

reasonable fees, costs and expenses under the Class 9 Indentures, and (b) the Class 10 Indenture

A000045

**Item #5**

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| INTEGRATED HEALTH SERVICES, INC, <u>et al</u>., | ) Case No. 00-389 (MFW) |
| | ) |
| | ) (Jointly Administered) |
| Debtors. | ) |
| | ) |
| ——————————————————— | |
| IHS LIQUIDATING LLC, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| – against – | ) |
| | ) |
| DON G ANGELL, <i>et al</i>, | ) |
| | ) |
| | ) |
| Defendants. | ) |
| | ) |
| ——————————————————— | ) |

## NOTICE OF APPEAL

IHS LIQUIDATING LLC hereby appeals, pursuant to 28 U.S.C. §158(a) and Rule 8001 of the Federal Rules of Bankruptcy Procedure, from the *Order (i) Granting Motion to Dismiss Counterclaims, (ii) Sustaining, in Part, and Overruling, in Part, Objections to Claims, and (iii) Allowing Unsecured Claims of Don G Angell, Don G Angell Irrevocable Trust, Angell Care Incorporated and Bermuda Village Retirement Center Limited Partnership* entered by the Honorable Mary F Walrath in the above-captioned contested proceeding on June 25, 2004.

The names of all the parties to the Order appealed from and the names, addresses and telephone numbers of the respective attorneys are as follows:

1. IHS LIQUIDATING LLC

Robert S Brady (No. 2847)
Edmon L. Morton (No. 3856)
Joseph M Barry (No. 4221)
YOUNG CONAWAY STARGATT & TAYLOR, LLP
The Brandywine Building
1000 West Street, 17th Floor

1

A000046

Wilmington, DE 19801
Tel: (302) 571-6731
Fax: (302) 571-1253

    - and -

Michael J. Crames
Arthur Steinberg
Marc D. Rosenberg
KAYE SCHOLER LLP
425 Park Avenue
New York, NY 10022-3598
Tel: (212) 836-8000
Fax: (212) 836-8689

2. Don G. Angell, Don G. Angell Irrevocable Trust, Angell Care Incorporated and Bermuda
Village Retirement Center Limited Partnership

David B. Stratton
Bonnie M. Kistler
PEPPER HAMILTON LLP
1313 Market Street
Suite 5100
Wilmington, DE 19899-1709
Tel: (302) 777-6566
Fax: (302) 421-8390

2

A000047

Dated: Wilmington, Delaware
        ▓▓▓▓, 2004
        June 30

YOUNG CONAWAY STARGATT
& TAYLOR, LLP

By: _____   (No 3849)
                                        ⊗  FOR
Robert S. Brady (No. 2847)
Edmon L. Morton (No. 3856)
Joseph M. Barry (No. 4221)

The Brandywine Building
1000 West Street, 17th Floor
Wilmington, DE 19801
Tel: (302) 571-6731
Fax: (302) 571-1253

        - and -

KAYE SCHOLER LLP
Michael J. Crames
Arthur Steinberg
Marc D. Rosenberg
425 Park Avenue
New York, NY 10022-3598
Tel: (212) 836-8000
Fax: (212) 836-8689

Attorneys for IHS Liquidating LLC

3

A000048