**Item #6**

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| INTEGRATED HEALTH SERVICES, INC, et al. | ) Case No 00-389 (MFW) |
| | ) |
| | ) (Jointly Administered) |
| Debtors | ) |
| | ) |

---

| | |
|---|---|
| IHS LIQUIDATING LLC. | ) |
| Plaintiff, | ) |
| | ) |
| – against – | ) |
| | ) |
| DON G ANGELL, et al , | ) |
| | ) |
| | ) |
| Defendants | ) |
| | ) |
| | ) |
| | ) |

---

**APPELLANT'S DESIGNATION OF ITEMS TO BE INCLUDED IN THE
RECORD ON APPEAL AND STATEMENT OF ISSUES ON APPEAL
(NOTICE OF APPEAL FILED JUNE 25, 2004)**

Pursuant to Rule 8006 of the Federal Rules of Bankruptcy Procedure, IHS

LIQUIDATING LLC ("Appellant"). designates the following items to be included in the record

on appeal with respect to the Notice of Appeal from the *Order (i) Granting Motion to Dismiss*

*Counterclaims, (ii) Sustaining, in Part and Overruling, in Part, Objections to Claims, and (iii)*

*Allowing Unsecured Claims of Don G Angell Don G Angell Irrevocable Trust, Angell Care*

*Incorporated and Bermuda Village Retirement Center Limited Partnership*, entered by the

Honorable Mary F Walrath in the above-captioned contested proceeding on June 25. 2004  The

items so designated include the document and all exhibits thereto whether or not such exhibits
are separately listed in the designation below.

| DATE | DOCKET NO. | DOCUMENT |
|---|---|---|
| 04/12/2001 | Adv. Pro No 01-1030 <br><br> 1 | Complaint for Declaratory & Injunctive Relief, Sanctions & Attorney's Fees |
| 06/12/2001 | Adv. Pro No 01-1030 <br><br> 20 | Stipulation and Order Regarding Motion for Preliminary Injunction Staying Prosecution of The Angell Action |
| 11/21/2001 | 5797 | Motion of the Angell Creditors Pursuant to Section 1102(a)(2) of the Bankruptcy Code for Appointment of an Official Committee of Unsecured Creditors of Premiere Associates, Inc. and Its Subsidiaries |
| 12/26/2001 | 6093 | Order Granting Motion of Angell Creditors for Appointment of an Official Committee of Unsecured Creditors of Premiere Associates, Inc. and Its Subsidiaries |
| 01/09/2002 | 6126 | Motion of the Official Committee of Unsecured Creditors of Premiere Associates, Inc. and its Subsidiaries for Leave to File an Adversary Proceeding Complaint on Behalf of Premiere Associates, Inc. and its Subsidiaries Filed by Official Committee of Unsecured Creditors of Premiere Associates, Inc. and its Subsidiaries |
| 01/10/2002 | 6130 | Appointment of Official Committee of Unsecured Creditors--Premiere Group Cases |
| 01/14/2002 | 6176 | Motion of the Official Committee of Unsecured Creditors of Premiere Associates, Inc. and its Subsidiaries for Leave to File an Adversary Proceeding Complaint on Behalf of Premiere Associates, Inc. and its Subsidiaries |

A000050

| DATE | DOCKET NO | DOCUMENT |
|---|---|---|
| 01/16/2002 | 6198 | Application to Employ Blanco Tackabery Combs & Matamoros. P A as Co-Counsel for the Official Committee of Unsecured Creditors of Premiere Associates. Inc and its Subsidiaries Filed by Official Committee of Unsecured Creditors of Premiere Associates, Inc and its Subsidiaries |
| 01 23 2002 | 6259 | (i) (PRELIMINARY RESPONSE) to the Motion of the Official Committee of Unsecured Creditors of Premiere Associates, Inc and its Subsidiaries for Leave to File an Adversary Proceeding Complaint on Behalf of Premiere Associates, Inc and its Subsidiaries (Docket No 6126)and (ii) Cross-Motion for an Adjournment and for Approval of a Tolling Agreement Between the Premiere Debtors and the Debtors' Senior Lenders |
| 01/23/2002 | 6261 | Objection to Motion of the Official Committee of Unsecured Creditors of Premiere Associates, Inc and its Subsidiaries for Leave to File an Adversary Complaint on Behalf of Premiere Associates. Inc and Its Subsidiaries Against the Directors and Officers of Premiere Associates, Inc et al |
| 02/01/2002 | 6376 | Complaint by Official Committee of Unsecured Creditors of Premiere Associates. Inc and its Subsidiaries, on Behalf of Premiere Associates, Inc et al Against Daniel J Booth. Ronald L Lord. C Taylor Pickett, Marshall Elkins and Marc Levin |
| 02 01 2002 | 6378 | Certification of Counsel Regarding Order to Authorize Commencement of the D&O Adversary Proceeding |
| 02 04 2002 | 6395 | Order Granting Motion of Official Committee of Unsecured Creditors of Premiere Associates, Inc and its Subsidiaries for Leave to File an Adversary Proceeding Complaint Against the Directors and Officers of Premiere Associates. Inc et al |

| DATE | DOCKET NO | DOCUMENT |
|---|---|---|
| 02/08/2002 | 6538 | Order Adjourning Hearing on the Motion of the Official Committee of Unsecured Creditors of Premiere Associates, Inc and Its Subsidiaries For Leave to File An Adversary Proceeding Complaint on Behalf of Premiere Associates, Inc and Its Subsidiaries |
| 02 14/2002 | 6646 | Order approving employment and retention of Blanco Tackabery Combs & Matamoros, P A as co-counsel nunc pro tunc January 4, 2002 for the Official Committee of Unsecured Creditors of Premiere Associates Inc and its subsidiaries |
| 03/18/2002 | 6884 | Notice of Appearance and Request for Service of Notice Filed by Don G Angell. The Don G Angell Irrevocable Trust. Bermuda Village Retirement Center Limited Partnership, and Angell Care Incorporated. |
| 04/09/2002 | 7047 | Brief in Support of the Motion of the Official Committee of Unsecured Creditors of Premiere Associates, Inc and Its Subsidiaries for Leave to File and Adversary Proceeding Complaint on Behalf of Premiere Associates, Inc and its Subsidiaries |
| 04/09/2002 | 7048 | Brief in Support of the Motion of the Official Committee of Unsecured Creditors of Premiere Associates, Inc and Its Subsidiaries to Further Prosecute its Adversary Proceeding Complaint Against the Directors and Officers of Premiere Associates. Inc and its Subsidiaries |
| 04/18/2002 | 7111 | Memorandum of Law in Response to the Motions of the Official Committee of Unsecured Creditors of the Premiere Debtors (I) for Leave to File a Complaint Against Certain Banks on Behalf of the Premiere Debtors, and (II) to Further Prosecute its Complaint Against the Directors and Officers of the Premiere Debtors |

A000052

| DATE | DOCKET NO. | DOCUMENT |
|------|-----------|----------|
| 04/19/2002 | 7113 | Memorandum of Law [REVISED] in Response to the Motions of the Official Committee of Unsecured Creditors of the Premiere Debtors (I) for Leave to File a Complaint Against Certain Banks on Behalf of the Premier Debtors, and (II) to Further Prosecute its Complaint Against the Directors and Officers of the Premiere Debtors |
| 05/01/2002 | 7203 | Certification of Counsel Regarding Order Staying Action by the Official Committee of Unsecured Creditors of Premiere Associates, Inc and its Subsidiaries on Behalf of the Premiere Estates Against Certain Officers and Directors |
| 05/15/2002 | 7304 | Order Authorizing The Official Committee Of Unsecured Creditors Of Premiere Associates, Inc and Its Subsidiaries To Serve The Complaint And Summons On Defendants |
| 05/16/2002 | 7323 | Certification of Counsel Regarding Corrected Order Staying Action by The Official Committee of Unsecured Creditors of Premiere Associates, Inc and its Subsidiaries on Behalf of The Premiere Estates Against Certain Officers and Directors |
| 03/06/2003 | 9097 | Transcript Of Hearing Held On 1[2]/26/2003 |
| 03/21/2003 | 9218 | Transcript: Omnibus Hearing Held March 12, 2003 |

5

| DATE | DOCKET NO | DOCUMENT |
|------|-----------|----------|
| 03/14/2003 | 9140 | Order (I) Approving Disclosure Statement For The Amended Joint Plan Of Reorganization Of Integrated Health Services, Inc And Its Subsidiaries Under Chapter 11 Of The Bankruptcy Code, (II) Establishing A Record Date, (III) Establishing Notice And Objection Procedures For Confirmation Of The Plan, (IV) Approving Solicitation Packages And Procedures For Distribution, And (V) Approving Forms Of Ballots And Establishing Procedures For Voting On The Plan(related document(s) |
| 04/03/2003 | 9273 | Disclosure Statement for Amended Joint Plan of Reorganization of Integrated Health Services, Inc and it's Subsidiaries Under Chapter 11 of the Bankruptcy Code |
| 02/24/2003 | 8974 | Amended Disclosure Statement and Joint Plan of Reorganization of Integrated Health Services, Inc and its Subsidiaries under Chapter 11 of the Bankruptcy Code |
| 05/12/2003 | 9654 | Findings of Fact, Conclusions of Law and Order Under 11 U S C Section 1129(a) and (b) and Fed R Bankr P 3020 Confirming Amended Joint Plan of Reorganization of Integrated Health Services, Inc and its Subsidiaries Under Chapter 11 of the Bankruptcy Code |

6

A000054

| DATE | DOCKET NO | DOCUMENT |
|------|-----------|----------|
| 06/11/2003 | 9883 | Memorandum of Law (i) in accordance with the Findings of Fact. Conclusions of Law and Order Under 11 U.S.C. Section 1129(A) and (B) and Fed. R. Bankr. P. 3020 Confirmation Amended Joint Plan of Reorganization of Integrated Health Services, Inc. and Its Subsidiaries Under Chapter 11 of the Bankruptcy Code, in Connection with Determination of Appropriate Reserve. If Any. to Be Established by the Liquidating LLC for the Benefit of C. Taylor Pickett, Daniel Booth and Ronald L. Lord and (ii) in Response to the Motion of C. Taylor Pickett and Daniel Booth to Establish Indemnification Obligation and Reserve in Connection with Administrative Claims and for Related Relief |
| 08/22/2003 | 10256 | Transcript Hearing Held 6/16/03 |
| 12/02/2003 | 10550 | Motion of the Official Committee of Unsecured Creditors of Premiere Associates, Inc. and Its Subsidiaries to Enforce Plan Provisions by Designating and Paying. or Reserving for Premiere Unsecured Claims |
| 12/17/2003 | 10596 | Motion in Aid of Implementation of the Amended Joint Plan of Reorganization of Integrated Health Services. Inc. and Its Subsidiaries. for an Order Designating Certain Claims Filed Against the Debtors as Premiere Unsecured Claims |
| 12/17/2003 | 10597 | Joint Response to Motion of Official Committee of Unsecured Creditors of Premiere Associates. Inc. and its Subsidiaries to Enforce Plan Provisions by Designating and Paying. or Reserving for Premiere Unsecured Claims of IHS Liquidating LLC and the Post-Confirmation Committee |

A000055

| DATE | DOCKET NO | DOCUMENT |
|------|-----------|----------|
| 01/07/2004 | 10624 | Stipulation by and Between IHS Liquidating LLC, the Post-Confirmation Committee, and the Premiere Group Committee Allowing the Premiere Group Committee to File a Reply in Support of its Motion to Enforce Plan Provisions |
| 01/12/2004 | 10632 | Order Approving Stipulation By and Between IHS Liquidating LLC, the Post-Confirmation Committee, and the Premiere Group Committee Allowing the Premiere Group Committee to File a Reply in Support of its Motion to Enforce Plan Provisions |
| 01/14/2004 | 10636 | Limited Objection of the Official Committee of Unsecured Creditors of Premiere Associates, Inc. and Its Subsidiaries to Motion of IHS Liquidating LLC in Aid of Implementation of the Amended Joint Plan of Reorganization of Integrated Health Services, Inc. and Its Subsidiaries, for an Order Designating Certain Claims Filed Against the Debtors as Premiere Unsecured Claims |
| 01/15/2004 | 10637 | Response of C. Taylor Pickett and Daniel J. Booth to the Premiere Committee's Reply in Connection with its Motion to Enforce Plan Provisions by Designating and Paying, or Reserving for Premiere Unsecured Creditors |
| 02/03/2004 | 10693 | Amended Motion of IHS Liquidating LLC, in Aid of Implementation of the Amended Joint Plan of Reorganization of Integrated Health Services, Inc. and Its Subsidiaries, for an Order Designating Certain Claims Filed Against the Debtors as Premiere Unsecured Claims |
| 02/13/2004 | 10708 | Response of C. Taylor Pickett and Daniel J. Booth to the Premiere Committee's Reply in Connection with its Motion to Enforce Plan Provisions by Designating and Paying, or Reserving for Premiere Unsecured Creditors |

A000056

| DATE | DOCKET NO. | DOCUMENT |
|---|---|---|
| 03/23/2004 | 10789 | IHS Liquidating LLC's Objections and Counterclaims to the Claims Asserted by Don G. Angell, Don G Angell Irrevocable Trust and Angell Care Incorporated (Proof of Claim Nos. 9162-9172, 9657, 10620, 10623 and 10625) |
| 04/14/2004 | 10859 | Notice of Submission of Proof of Claim Regarding Objections and Counterclaims to the Claims Asserted by Don G. Angell, Don G. Angell Irrevocable Trust and Angell Care Incorporated |
| 05/07/2004 | 10900 | Notice of Submission of Proof of Claim (Re-Submission) Regarding Objections and Counterclaims to the Claims Asserted by Don G. Angell, Don G. Angell Irrevocable Trust and Angell Care Incorporated |
| 04/15/2004 | 10866 | Defendants' Motion to Dismiss Counterclaim Pursuant to Federal Rule of Bankruptcy Procedure 7012 and Preliminary Response to Objection to Claims |
| 04/30/2004 | 10891 | Objection to Defendant's Motion to Dismiss Counterclaim Pursuant to Federal Rule of Bankruptcy Procedure 7012 and Preliminary Response to Objection to Claims, and (B) Cross-Motion for Judgment on the Pleadings |
| 05/07/2004 | 10902 | Reply To IHS Liquidating LLC's (A) Opposition To Defendants' Motion To Dismiss Counterclaim Pursuant To Federal Rule Of Bankruptcy Procedure 7012 And Preliminary Response To Objection to Claims, and (B) Cross-Motion For Judgment On The Pleadings |
| 05/25/2004 | 10936 | Notice of Agenda of Matters Scheduled for Hearing on May 26, 2004 at 2:00 p.m. (UPDATED) |
| 06/25/2004 | 11007 | Order (i) Granting Motion To Dismiss Counterclaims; (ii) Sustaining, In Part, and Overruling, in Part, Objections To Claims; and (iii) Allowing Unsecured Claims of Don G. Angell, Don G. Angell Irrevocable Trust, Angell Care Incorporated and Bermuda Village Retirement Center Limited Partnership |

309043.87 VSWPD

A000057

| DATE | DOCKET NO | DOCUMENT |
|---|---|---|
| 06/10/2004 | 10977 | Certification of Counsel IHS Liquidating LLC's Objections And Counterclaims To The Claims Asserted By Don G. Angell, Don G. Angell Irrevocable Trust And Angell Care Incorporated |
| 08/25/2000 | Claim No. 10620 | Proof of Claim - Don G. Angell |
| 08/25/2000 | Claim No. 10623 | Proof of Claim - Bermuda Village Retirement Center |
| 08/25/2000 | Claim No. 10625 | Proof of Claim - Don G. Angell Irrevocable Trust |

[Balance of page intentionally left blank.]

CH W R V 12501000.1

A000058

## STATEMENT OF ISSUES ON APPEAL

1.    Whether the Court erred in granting Don G. Angell, Don G Angell Irrevocable Trust, Angell Care Incorporated and Bermuda Village Retirement Center Limited Partnership's ("Appellees") *Motion to Dismiss Counterclaim Pursuant to Federal Rule of Bankruptcy Procedure 7012 and Preliminary Response to Objection to Claims*?

2.    Whether the Court erred in denying Appellant's Counterclaims set forth in *IHS Liquidating LLC's Objections and Counterclaims to the Claims Asserted by Don G Angell, Don G Angell Irrevocable Trust and Angell Care Incorporated (Proof of Claim Nos 9162-9172, 9657, 10620, 10623 and 10625)*?

3.    Whether the Court erred in denying Appellant's Cross-Motion for Judgment on the Pleadings set forth in Appellant's *Objection to Defendant's Motion to Dismiss Counterclaim Pursuant to Federal Rule of Bankruptcy Procedure 7012 and Preliminary Response to Objection to Claims and (B) Cross-Motion for Judgment on the Pleadings*?

4.    Whether the Court erred in allowing portions of Appellees' Proofs of Claim Nos. 10620, 10623 and 10625 as provided in the Court's *Order (i) Granting Motion To Dismiss Counterclaims (ii) Sustaining, In Part, and Overruling, in Part, Objections To Claims and (iii) Allowing Unsecured Claims of Don G Angell, Don G Angell Irrevocable Trust, Angell Care Incorporated and Bermuda Village Retirement Center Limited Partnership*?

5.    Whether the Court erred in holding that the Debtors waived their right to seek damages from Appellees in the event that in the case of *Don G Angell, D Gray Angell, Jr*

A000059

and Don R House in their capacities as Co-Trustees of the Don Angell Irrevocable Trust Under Instrument Dated July 24 1992 Angell Care Incorporated v Elizabeth B Kelly C Taylor Picket Daniel Booth and Ronald L Lord pending in the United Stated District Court for the Middle District of North Carolina Case No 01-CV-435, the court rules that Appellees are asserting causes of action that belong to the estates of the Debtors?

6.      Whether the Court erred in ruling that IHS Liquidating LLC has no right to pursue the counterclaims or an objection to claim based upon the arguments that were set forth in the Debtors' *Complaint for Declaratory & Injunctive Relief Sanctions & Attorney's Fees*, Adv Pro No 01-1030?

7.      Whether the Court erred in holding that the Debtors waived their right to argue that Appellees should not be pursuing derivative claims?

8.      Whether the Court erred in holding that the Debtors' *Amended Joint Plan of Reorganization of Integrated Health Services Inc and Its Subsidiaries Under Chapter 11 of the Bankruptcy Code* did not preserve the right of the Debtors to pursue the argument that Appellees are improperly pursuing derivative claims that belong to the Debtors' estates?

9.      Whether the Court erred in denying the Appellant the right to assert that the Appellees were violating the *Amended Joint Plan of Reorganization of Integrated Health Services Inc and Its Subsidiaries Under Chapter 11 of the Bankruptcy Code* and *Findings of Fact Conclusions of Law and Order Under 11 U S C Section 1129(a) and (b) and Fed R Bankr P 3020 Confirming Amended Joint Plan of Reorganization of Integrated Health Services, Inc and its Subsidiaries Under Chapter 11 of the Bankruptcy Code* because the

A000060

Debtors had dismissed the *Complaint for Declaratory & Injunctive Relief, Sanctions & Attorney's Fees*, Adv. Pro. No 01-1030, with prejudice?

      10  Whether the Court erred in applying the doctrine of res judicata to the *Debtors'* dismissal with prejudice of their *Complaint for Declaratory & Injunctive Relief, Sanctions & Attorney's Fees*, Adv Pro. No 01-1030?

      11  Whether the Court erred in by failing to recognize that by negative implication, the *Amended Joint Plan of Reorganization of Integrated Health Services Inc. and Its Subsidiaries Under Chapter 11 of the Bankruptcy Code* and *Findings of Fact. Conclusions of Law and Order Under 11 U.S C. Section 1129(a) and (b) and Fed R Bankr P. 3020 Confirming Amended Joint Plan of Reorganization of Integrated Health Services, Inc. and its Subsidiaries Under Chapter 11 of the Bankruptcy Code* prohibited the Appellees from pursuing claims that belong to the estates of the Debtors and must dismiss any and all such claims?

      [Balance of page intentionally left blank with signature page following]

A000061

Dated:  Wilmington, Delaware
        July 12, 2004

YOUNG CONAWAY STARGATT
& TAYLOR, LLP

_____

Robert S. Brady (No. 2847)
Edmon L. Morton (No. 3856)
Joseph M. Barry (No. 4221)
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, DE 19801
Tel: (302) 571-6731
Fax: (302) 571-1253

        - and -

KAYE SCHOLER LLP
Michael J. Crames
Arthur Steinberg
Marc D. Rosenberg
425 Park Avenue
New York, NY 10022-3598
Tel: (212) 836-8000
Fax: (212) 836-8689

Attorneys for IHS Liquidating LLC, Appellant

14

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re | ) | Chapter 11 |
| | ) | |
| INTEGRATED HEALTH SERVICES, INC., et al , ) | | Case No. 00 -389 (MFW) |
| | ) | |
| Debtors | ) | Jointly Administered |

## AFFIDAVIT OF SERVICE

| | |
|---|---|
| STATE OF DELAWARE | ) |
| | ) SS |
| NEW CASTLE COUNTY | ) |

    Thomas Hartzell, being duly sworn according to law, deposes and says that he is employed by the law firm of Young Conaway Stargatt & Taylor, LLP, attorneys for the Debtors in the within captioned matter, and that on the 12th day of July 2004, he caused a copy of the attached pleading to be served, as indicated, on the parties on the attached service list

_____
Thomas Hartzell

SWORN TO AND SUBSCRIBED before me this 12th day of July 2004

_____
Notary Public

A000063

SERVICE LIST
Integrated Health Services, Inc.
7/12/2004

Office of the United States Trustee, Esq.
Attn: Richard Shepacarter, Esq
844 N King Street, Room 2311
Wilmington, DE 19801
(U S Trustee)
*Hand Delivery*

David Stratton, Esq
Aaron Garber, Esq
Pepper Hamilton LLP
1313 Market Street, Hercules Plaza, Suite 5100
PO Box 1709
Wilmington, DE 19899
Counsel for Don G Angell, et al
*Hand Delivery*

A000064

**Item #7**

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

In re                                          :
                                               :    Chapter 11
INTEGRATED HEALTH SERVICES, INC., *et al.* :
                                               :    Case No. 00-389(MFW)
        Debtors.                               :    (Jointly Administered)
                                               :
_____        :
IHS LIQUIDATING LLC,                           :
                                               :
                Plaintiff,                     :
v                                              :
                                               :
DON G. ANGELL, *et al*,                        :
                                               :
                Defendants.                    :
_____        :

**COUNTER-DESIGNATION OF RECORD BY APPELLEES DON G. ANGELL,
DON G. ANGELL IRREVOCABLE TRUST AND ANGELL CARE INCORPORATED**

Pursuant to Rule 8006 of the Federal Rules of Bankruptcy Procedure, appellees

Don G. Angell, Don G. Angell Irrevocable Trust and Angell Care Incorporated (the "Appellees")

hereby designate the following additional items to be included in the record on appeal with

respect to Appellant's Notice of Appeal from the *Order (I) Granting Motion To Dismiss*

*Counterclaims, (Ii) Sustaining, In Part, And Overruling, In Part, Objections To Claims, And*

*(III) Allowing Unsecured Claims Of Don G Angell, Don G Angell Irrevocable Trust, Angell*

*Care Incorporated And Bermuda Village Retirement Center Limited Partnership,* entered by the

Honorable Mary F Walrath on June 25, 2004:

        1.  Transcript of Hearing held on April 29, 2003 [Docket No. 9769].

        2.  Transcript of Hearing held on May 7, 2003 [Docket No. 9720]

        3.  Transcript of Hearing held on May 12, 2004 [to be filed].

In accordance with Rule 8006 of the Federal Rules of Bankruptcy Procedure and Local Rule 8006-1, Appellees will provide copies of the items designated herein to the Clerk of the United States Bankruptcy Court for the District of Delaware.

Dated: July 22, 2004

/s/ David B. Stratton
David B. Stratton
PEPPER HAMILTON LLP
Hercules Plaza, Suite 5100
1313 Market Street
P.O. Box 1709
Wilmington, DE 19899-1709
(302) 777-6500

and

Bonnie MacDougal Kistler
Linda J. Casey
PEPPER HAMILTON LLP
3000 Two Logan Square
Eighteenth and Arch Streets
Philadelphia, PA 19103-2799
(215) 981-4000

Attorneys for Appellees

Error! Unknown document property name.

A000066

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re | : | |
| | : | Chapter 11 |
| INTEGRATED HEALTH SERVICES, INC., *et al.* | : | |
| | : | Case No. 00-389(MFW) |
| Debtors. | : | (Jointly Administered) |
| ——————————————— | : | |
| | : | |
| IHS LIQUIDATING LLC, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| DON G. ANGELL, *et al*, | : | |
| | : | |
| Defendants. | : | Hearing Date: May 12, 2004 at 2:00 pm |
| ——————————————— | : | |

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on July 22, 2004, copies of the *Counter-Designation of Record by Appellees Don G. Angell, Don G. Angell Irrevocable Trust and Angell Care Incorporated* were served by first class mail, postage prepaid, upon the following individuals:

PHLEGAL: #1580674 v1 (XVNM01!.DOC)

A000067

Arthur Steinberg, Esquire
Kaye Scholer LLP
425 Park Avenue
New York, NY 10022-3598
Telephone:   212-836-8000
Fax:   212-836-8689

Robert S. Brady, Esquire
Young Conaway Stargatt & Taylor LLP
The Brandywine Building
100 West Street, 17th Floor
Wilmington, DE 19801
Telephone: 302-571-6600
Fax:   302-571-1253

Don A. Beskrone
Office of the U.S. Trustee
844 King Street
Suite 2313
Wilmington, DE 19801
Telephone: 302-573-6491
Fax: 302-573-6497

Dated: July 22, 2004

PEPPER HAMILTON LLP

/s/David B. Stratton
David B. Stratton
PEPPER HAMILTON LLP
Hercules Plaza, Suite 5100
1313 Market Street
P.O. Box 1709
Wilmington, DE 19899-1709
(302) 77706500

and

Bonnie MacDougal Kistler
Linda J. Casey
PEPPER HAMILTON LLP
3000 Two Logan Square
Eighteenth and Arch Streets
Philadelphia, PA 19103-2799
(215) 981-4000

Attorneys for Claimants

**Item #8**

42

1          MR. STRATTON:  Because Count One of the complaint --

2    let me back up.

3          THE COURT:  The plan said the debtor agreed to

4    dismiss it with prejudice.  The defendants, the Ds&Os reserve

5    the right to argue --

6          MR. STRATTON:  And that's where I was going.

7          THE COURT:  -- that it's a derivative action --

8          MR. STRATTON:  Exactly.

9          THE COURT:  -- and the derivative action has been

10   settled by the plan.

11         MR. STRATTON:  Exactly.  As far as the debtor's

12   concerned, --

13         THE COURT:  Right.

14         MR. STRATTON:  -- the debtor -- well, first of all,

15   as I was trying to do, let me back up.  The dismissal of a

16   complaint or a claim with prejudice is an adjudication on the

17   merits.  One of the claims that was dismissed was this issue of

18   is it an estate cause of action or is it derivative or

19   individual?  The debtor agreed to dismiss that complaint.  In

20   other words, the debtor agreed that on the merits it could no

21   longer pursue that claim.  It, in fact, did waive the right to

22   raise that argument.  We agreed and they agreed and the Court

23   ordered that the defendants in the North Carolina action could

24   pursue the issue.  That's fine.  If they want to pursue it down

25   there, and they have, we'll do that.

J&J COURT TRANSCRIBERS, INC.

43

1            THE COURT:  Okay.

2            MR. STRATTON:  It can not and should not be pursued

3  by the defendants in this Court after the entry of the

4  confirmation order.

5            THE COURT:  Well, they're not here.

6            MR. STRATTON:  That's my point.

7            THE COURT:  The debtor's here.

8            MR. STRATTON:  I'm sorry, I said defendants, I meant

9  debtors.  And that's the important point.

10           THE COURT:  Right.  And I agree with you on that, the

11  debtor can't raise that here.

12           MR. STRATTON:  Thank you.  That's fine.  Which makes

13  most of my argument, since I think we agree, I think I can

14  limit myself to commenting.  First, we've talked about claim

15  number 9162.  Second, as I understand these issues and maybe I

16  don't understand the debtor's financial wherewithal, there is a

17  solution short of throwing the plan baby out with the debtor's

18  intent bath water and that is to create a reserve.  I don't

19  know how big it has to be.  And perhaps it means the

20  distributions will have to be delayed until the federal court

21  in North Carolina decides the estate and non-estate issue.  But

22  there is a solution, a reserve could be created.  And I think I

23  would suggest to the Court that doing that does a lot less

24  violence to a plan and a confirmation order than accepting the

25  debtor's invitation to revisit the language of the plan or the

J&J COURT TRANSCRIBERS, INC.

A000070

44
1 confirmation order.

2        Let me just look at my notes, Your Honor, but --

3        THE COURT:  What about the post-petition interest?

4        MR. STRATTON:  As I said, Your Honor, we will look at

5 that, if it's based solely on unsecured claims we'll withdraw

6 that claim.

7        THE COURT:  Oh, okay.

8        MR. STRATTON:  All right, I think the only other

9 point I think I need to address, Your Honor, is this interorum

10 if they don't dismiss these and we win later on, we'll seek to

11 offset their claims for damages we sustained in bringing the

12 motion and having to find self-insured retention.  I think Your

13 Honor had it right, they were going to have to fund that

14 anyhow.  And, given the language of the plan I can't imagine

15 how proceeding with the litigation could be viewed as

16 misconduct that would give rise to any kind of a claim against

17 the Angell entities but in light of Your Honor's comments

18 we'll, if we're forced to, we'll litigate that at a later time.

19        THE COURT:  All right.

20        MR. STEINBERG:  Your Honor, just briefly.  Mr.

21 Stratton keeps on making the argument in his papers and to Your

22 Honor that the dismissal of the 105 injunction action had a res

23 judicata effect on the ability to challenge whether something's

24 an estate claim or not an estate claim.  I think you can not

25 look at that aspect of what was an overall global settlement of

45

1 the Premier issues without looking at the other aspect that was

2 settled at the same time.  Which is that this Premier Committee

3 who had filed a delegation to bring what it had defined as the

4 officer and director estate causes of action were dismissing

5 those claims with prejudice.  I didn't need a declaratory

6 judgment anymore as to whether someone was going forward in

7 violation of the automatic stay or with pursuing an estate

8 claim.  I had a proceeding that was pending which defined the

9 estate claims and that was being dismissed with prejudice.  I

10 didn't need to do anything more, I had won.  I had gotten the

11 estate claims dismissed with prejudice.  I didn't need to do a

12 declaratory judgment anymore.

13       What I expected was that having won that that I would

14 be able to enjoy the fruits of winning that, which is that no

15 one else is entitled to bring something that was resolved on

16 notice to every creditor in this case and with an opportunity

17 to be heard.  And what he wants to say with a lot of incendiary

18 language is that somehow I was trying to snooker somebody here

19 and I was not trying to do that.  I was --

20       THE COURT:  No, but did you by withdrawing with or

21 dismissing with prejudice that cause of action not agree that

22 the debtor would not make that argument any longer?  You feel

23 you settled it, well, you can't make that argument right now.

24       MR. STEINBERG:  No, no, no, I had a confirmation

25 order that says I was allowed to preserve anything that was

A000072

51

1 which was not asserted in the delegation motion.  I was Count
2 Eight.  And I said to Gene Tarr, why didn't you copy that one,
3 too?  And he said, because I thought I had a Rule 11 violation
4 to be able to assert that one so I didn't assert that one.
5 That was another reason why I preserved the right because I
6 didn't have an overlap completely of that cause of action.  I
7 had one estate cause of action that was in the Angell cause of
8 action, it's Count Eight, and that was not in, it's the unfair
9 trade practice case.

10              THE COURT:  Unfair deceptive trade, yes.

11              MR. STEINBERG:  That was not in the delegation
12 motion.  And I wanted the directors and officers to be able to
13 get rid of that count as well.  So there was a reason to be
14 able to allow them to assert it because I didn't have a
15 complete overlap of the estate causes of action.  And, you
16 know, Mr. Tarr's going to be here in two weeks asking for fees
17 for defending his defunct committee for actions that he took
18 after the committee was dissolved under the plan of
19 reorganization.  He was an active participant of what went on
20 there.  If Your Honor's not sure of what happened I certainly
21 think you could ask him, certainly he'd be more credible, what
22 he has to say as compared to Mr. Stratton who wasn't there and
23 --

24              THE COURT:  Well, I'm not going to hold off on this.
25 I think that this is a lot of argument unnecessarily.  I think

52

1  that the plan preserved for the defendants the right to raise
2  that argument, not for the debtor to raise that argument.  I
3  think the debtor by agreeing to dismiss with prejudice its
4  cause of action essentially said that it's not going to pursue
5  the argument as to whether it's derivative or not.  Because
6  that really does not effect the debtor's estate.  Peripherally
7  it effects the debtor's estate because of the indemnity claims
8  but I think by agreeing to let the North Carolina suit to
9  proceed and allowing the directors and officers themselves to
10 raise the defenses the debtor contemplated that it would be
11 paying the attorney's fees in North Carolina for doing that.
12 So I don't think that the debtor reserved the right to make
13 that argument.

14         Other than the indemnity claim issue it has no effect
15 on the debtor because pursuing the derivative actions has no
16 effect on the estate.  The debtor has settled the derivative
17 action suit.  The debtor has only the claim of the creditor
18 against it for damages and whether it's damages based on the
19 fraud of the directors and officers is still a damages claim
20 they have against the debtor.

21         MR. STEINBERG:  Your Honor, there are two ways that
22 it does effect the estate beyond the indemnity.  One is it does
23 erode the officers' and directors' insurance policy which is
24 also to be used for the compensation action which was for
25 bigger than what the insurance claim was about.  And the second

53
1 thing is, is that you do have a self-insured retention amount
2 under the policy for half a million dollars and it's cheaper to
3 litigate to dismiss one claim versus seven or eight claims.  So
4 there's an incremental expense to this estate.  And you do have
5 the delay in the distribution to this estate which is a
6 material aspect because money distributions delayed is
7 distributions denied to people.

8        THE COURT:  Well, with respect to the insurance
9 policy I have decided in the past two parties may have an
10 action against the insurance policies and the fact that one
11 pursuing it may decrease the amount of the policy that may
12 otherwise be available to the estate under a derivative claim
13 or otherwise does not mean that that claim does not have the
14 right to be pursued.

15        MR. STEINBERG:  Your Honor, I would agree with you
16 that if two parties were not pursuing estate claims and they
17 had a D&O coverage or the fact that the coverage was not enough
18 to handle the both claims shouldn't be a reason why.  But if
19 the estate is pursuing a derivative cause of action which is
20 the compensation action and the other estate related claims was
21 dismissed so that the policy would preserve for the full
22 benefit of a compensation action, you are damaging this estate
23 who is managing the whole process by allowing someone to pursue
24 what had otherwise been a dismissed claim.

25        THE COURT:  I understand --

J&J COURT TRANSCRIBERS, INC.

54

1           MR. STEINBERG:  You're effecting the policy.

2           THE COURT:  -- but I'm confident the North Carolina
3   Court can make the right decision and permit the non-derivative
4   actions to proceed and not those that have otherwise been
5   settled by the plan.

6           MR. STEINBERG:  Your Honor, then you still have the
7   issue as to whether if you thought that the plan was structured
8   so that the North Carolina Court would be the one to resolve
9   this issue, in the event that I'm correct and that Mr. Angell
10  is doing something improper based on the plan, he's pursuing
11  dismiss the estate claims, I think I should have a right to
12  offset from his distribution.  I don't know why I shouldn't be
13  able to seek compensation for that.  Your Honor may want --

14          THE COURT:  Because you waived the right to that by
15  dismissing with prejudice the 105.

16          MR. STEINBERG:  I didn't waive the right to assert
17  claims against him for the incremental cost that I might incur.

18          THE COURT:  You waived the right to argue that he
19  should not be pursuing derivative claims.

20          MR. STEINBERG:  Let's assume, Your Honor, for the
21  moment, that I waived the right to do that, if he was doing
22  something that was improper and I had assigned in effect the
23  right to make that claim to the Ds&Os and I was indirectly
24  funding that argument by paying for the insurance for the
25  ability to make that argument, if it turns out that the Ds&Os

55

1  were right that he was doing what was improper that had been

2  settled there's a cost that this estate have, why shouldn't

3  that be an offset without regard to what this plan says?  An

4  offset against his distribution.  Why shouldn't he be made to

5  suffer the consequences of having violated what I believe to be

6  the dismissal of an estate cause of action?  Whether I had the

7  right to assert it or the defendants have the right to assert

8  it and I had the obligation to fund that expense up to

9  $500,000, why shouldn't I have the right to recoup that

10 expense?

11         MR. STRATTON:  Your Honor, I think you ruled so I

12 think everything after your rulings is reargument of argument.

13 But to answer the question why shouldn't you?  Because you

14 agreed not to.  It's in the confirmation order.  It's in the

15 plan.  That's the answer.

16         I have nothing else.  I'm not sure how Your Honor

17 wants to proceed.

18         THE COURT:  Well, I have ruled and there is not a

19 right to pursue the counterclaim or objection to claim based on

20 the same argument that was in the adversary that was dismissed

21 with prejudice.  But I think that to the extent that the

22 unliquidated claim is merely duplicative of the note claims I

23 think that it should be dismissed.  So, unless the claimant can

24 establish that it's different or there are other damages that

25 would not otherwise be collectible under the note claim I can't

56

1 see that there is something that it is --

2       MR. STRATTON: I apologize. Let me suggest that we
3 take another look at that. If we can agree on language with
4 respect to the effect of the withdrawal of the claim, as we
5 discussed at the outset of my remarks, we'll submit an order.
6 If we can't then I'll submit a certification of counsel saying
7 we can't and we'll come back to court and explain why they're
8 not the same and why they shouldn't be withdrawn. But I
9 suspect that we should be able to resolve that rather narrow
10 issue with respect to claim number 9162, Your Honor. And the
11 same would apply to the post-petition interest in I think the
12 three claims on the notes.

13       THE COURT: All right.

14       MR. STEINBERG: Your Honor, did you, in fact, rule
15 that I am not entitled to at some point in time seek damages in
16 the event that it turns out that the North Carolina Court
17 determines that these are estate causes of action?

18       THE COURT: Yes. The debtor has waived that.

19       MR. STEINBERG: Does someone have the right to be
20 able to argue that? Does defendants have the right to argue
21 that they have been sued on something that had already been
22 dismissed and he's allowed to just do that?

23       THE COURT: Yes, the defendants have the right to
24 raise as a defense in their action that his complaint is a
25 derivative action and has been settled by the terms of the

**Item #9**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| INTEGRATED HEALTH SERVICES, INC., et al., ) | | Case No. 00-389(MFW) |
| | ) | |
| Debtors. | ) | Jointly Administered |
| | ) | |
| | ) | **Objection Deadline:** |
| | ) | **January 18, 2002 at 4:00 p.m.** |
| | ) | **Hearing Date:** |
| | ) | **January 24, 2002 at 11:30 a.m.** |

### NOTICE OF MOTION

TO:    Office of The United States Trustee, Counsel to the Debtors, Counsel to the Creditors Committee and all parties requesting service pursuant to Bankruptcy Rule 2002.

The Official Committee of Unsecured Creditors of Premiere Associates, Inc. and its subsidiaries (the "Movant") filed the **Motion of the Official Committee of Unsecured Creditors of Premiere Associates, Inc. and its Subsidiaries for Leave to File an Adversary Proceeding Complaint on Behalf of Premiere Associates, Inc. and its Subsidiaries** (the "Motion").

Any response or objection to the attached Motion must be filed on or before **January 18, 2002 at 4:00 p.m.**

At the same time, you must also serve a copy of the response or objection upon the Movant's attorneys:

Charlene D. Davis, Esq.
222 Delaware Avenue, Suite 900
P.O. Box 25130
Wilmington, Delaware 19899
(302) 655-5000

Gene B. Tarr, Esq.
P.O  Drawer 25008 Winston Salem. NC
27114-5008(336) 761-1250

HEARING ON THE MOTION WILL BE HELD ON: **January 24, 2002 at 11:30 a.m.**

$o/26$

ONLY THOSE OBJECTIONS MADE IN WRITING, TIMELY FILED, AND
SERVED IN ACCORDANCE WITH THE ABOVE PROCEDURES WILL BE
CONSIDERED AT THE HEARING.

Dated: January 9, 2002          THE BAYARD FIRM
       Wilmington, Delaware

                                _____
                                Charlene D. Davis (#2336)
                                222 Delaware Avenue, Suite 900
                                P.O. Box 25130
                                Wilmington, Delaware 19899
                                302-655-5000

                                        -- and --

                                BLANCO TACKABERY
                                COMBS & MATAMOROS, P.A.
                                Gene B. Tarr, NCSB #11110
                                P.O. Drawer 25008
                                Winston-Salem, NC 27114-5008
                                Telephone: (336) 761-1250

                                Proposed Counsel to the Official Committee of
                                Unsecured Creditors of Premiere Associates, Inc. and
                                its Subsidiaries

2

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| INTEGRATED HEALTH SERVICES, INC., et al., | ) | Case No. 00-389(MFW) |
| | ) | |
| Debtors. | ) | Jointly Administered |
| | ) | |
| | ) | **Objection Deadline:** |
| | ) | **January 18, 2002 at 4:00 p.m.** |
| | ) | **Hearing Date:** |
| | ) | **January 24, 2002 at 11:30 a.m.** |

## MOTION OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS OF PREMIERE ASSOCIATES, INC. AND ITS SUBSIDIARIES FOR LEAVE TO FILE AN ADVERSARY PROCEEDING COMPLAINT ON BEHALF OF PREMIERE ASSOCIATES, INC. AND ITS SUBSIDIARIES

The Official Committee of Unsecured Creditors of Premiere Associates, Inc. and its

subsidiaries (the "Premiere Committee"), by and through its counsel and pursuant to

Section 105(a), Section 1103(c)(5), and Section 1109(b) of Title 11 of the United States

Code (as amended, the "Bankruptcy Code"), hereby moves the Court for entry of an order

authorizing the Premiere Committee to file an adversary proceeding on behalf of Premiere

Associates, Inc. and its subsidiaries (the "Premiere Group Debtors") to avoid certain

transactions, as set forth more fully below (the "Motion"). In support of the Motion, the

Premiere Committee respectfully represents as follows:

## PRELIMINARY STATEMENT

1     On February 2, 2000, Integrated Health Services ("IHS") and 436 affiliates (the "Debtors"), including the Premiere Group Debtors, filed their Chapter 11 cases.[1] The cases are being jointly administered.

2.    By Order entered January 4, 2002, the Court directed the United States Trustee to appoint an official committee of unsecured creditors for the Premiere Group Debtors. Pursuant to that Order, on January 4, 2002, the United States Trustee held a meeting, on notice, at which an unsecured creditors committee for the Premiere Group Debtors was formed. Don G. Angell, Health Care Services Group, Inc., and Great Oaks Nursing Home, Inc. were appointed to serve as the Premiere Committee.[2]

3.    Immediately after its formation, the Premiere Committee met to retain counsel and to instruct its counsel, inter alia, to seek authority from the Court to commence an adversary proceeding on behalf of the Premiere Group Debtors, or to take other appropriate action to preserve the Premiere Committee's right, to avoid certain guarantys and related security agreements given by the Premiere Group Debtors (the "Action").

---

[1] The Premiere Group Debtors consist of: Health Care Properties III Incorporated; Premiere Associates Healthcare Services, Inc.; HCPIII Athens, Inc.; HCPIII Bremen, Inc.; HCPIII Bradenton, Inc.; HCPIII Bradenton ALF, Inc.; HCPIII Carrollton, Inc.; HCPIII Cedartown, Inc.; HCPIII Cumings, Inc.; HCPIII Eastman, Inc.; HCPIII Hartwell, Inc.; HCPIII Heritage, Inc.; HCPIII Hillsborough, Inc.; HCPIII Louisville, Inc.; HCPIII Macon, Inc.; HCPIII Miami, Inc.; HCPIII Moultrie, Inc.; HCPIII Pine Knoll, Inc.; HCPIII Rockmart, Inc.; HCPIII Roswell, Inc.; HCPIII Savannah, Inc.; HCPIII Shamrock, Inc.; HCPIII Social Circle, Inc.; HCPIII South Florida, Inc.; HCPIII Woodbridge, Inc.; HCPIII Woodstock, Inc.; Health Care Properties III Incorporated; SHCM Bonterra, Inc.; SHCM Hialeah, Inc.; SHCM Holdings, Inc.; SHCM Parkview, Inc.; Premiere Associates Healthcare Services, Inc.; Premiere Associates Management Company, Inc.; IHS Hollywood Hills, Inc.

[2] At the initial Premiere Committee meeting held, the Committee voted to employ Blanco Tackabery Combs & Matamoros, P.A. ("BTC&M") and the Bayard Firm ("Bayard") as its counsel, subject to the Court's approval. Given the exigent circumstances, BTC&M and Bayard have not yet sought the Court's approval of their retention as counsel for the Premiere Committee, however, they expect to file their applications within days.

2

4.    Avoidance of the guarantys and related security agreements would have significant impact on the unsecured creditors of the Premiere Group. According to the Debtors, of the estimated $3 7 billion owed to prepetition creditors, the Debtors owe bank creditors approximately $2.3 billion. The bank creditors (the "Bank Group") are creditors of the Premiere Group Debtors only because IHS compelled the Premiere Group to guaranty the Debtor's $2.1 billion Revolving Credit and Term Loan Facility (collectively together with all related agreements including any joinder, security or pledge agreements, the "Guaranty"). Excluding the claims of the Bank Group, approximately 320 unsecured creditors filed claims in the Premiere Group cases with claims totaling in excess of $27,000,000.[3] The Premiere Group Debtors do not have any fully-secured creditors. But for the Guaranty, the Premiere Committee believes that the Premiere Group Debtors' assets and income may be sufficient to pay its creditors in full.

5.    Documents and testimony elicited from the Debtors during discovery show that the Guaranty should be avoided for the benefit of the Premiere Group Debtors' unsecured creditors. The Premiere Committee believes there is compelling evidence which will show that the Premiere Group received no consideration or inadequate consideration for the Guaranty, that the Guaranty was entered without due diligence, without corporate authority, without following corporate formalities, and that IHS compelled the Premiere Group to enter the Guaranty without considering the impact of the Guaranty on the Premiere Group and its creditors.

___

[3] These numbers exclude malpractice and other claims covered by insurance and the alleged prepetition bank debt. This analysis is based on the claims registers for the Premiere Group provided by Debtors after expiration of the deadline for filing proofs of claim

3

6      Pursuant to Section 108(c) and Section 546(a)(1)(A), the time in which the Premiere Group Debtors or the Premiere Committee may bring the Action expires in about three weeks, on February 1, 2002   Absent a tolling agreement binding on all parties, including the Bank Group, the Premiere Committee must be in a position to file an adversary proceeding complaint on or before February 1, 2002 or the possibility of avoiding the Guaranty for the benefit of the Premiere Group Debtors' unsecured creditors will be lost.

## JURISDICTION

7.      This Court has jurisdiction to consider the Motion and the relief requested herein in accordance with 28 U.S.C. § 1334(b).  This matter is a core proceeding under 28 U.S.C. § 157(b)(2).  Venue in this District is proper under 28 U.S.C. §§ 1408 and 1409. The statutory predicates for relief are 11 U.S.C. §§ 105, 1103(c)(5) and 1109(b).

## RELIEF REQUESTED

8.      By this Motion, the Premiere Committee respectfully seeks authority to file on behalf of the Premiere Group Debtors an adversary proceeding to avoid the Guaranty under the provisions of the Bankruptcy Code and applicable non-bankruptcy law.  The Premiere Committee requests this authority because it is clear that the Premiere Group Debtors are not going to avoid the Guaranty, even though avoidance would benefit the unsecured creditors of the Premiere Group Debtors.

## BASIS FOR RELIEF

9.      Section 1103(c)(5) of the Bankruptcy Code provides that:

A committee appointed under section 1102 of this title may –
(5)    perform such other services as are in the interests of those represented.

4

10. Section 1109(b) of the Bankruptcy Code provides that:

> A party in interest, including the debtor, the trustee, a creditors' committee, an equity security holders' committee, a creditor, an equity security holder, or any indenture trustee, may raise and may appear and be heard on any issue in a case under this chapter

11. Consistent with the authority conferred on creditor committees by the Bankruptcy Code, courts frequently authorize committees to bring actions in the name of the debtor in possession and to exercise avoidance powers, "particularly when the debtor in possession is unwilling to pursue a colorable claim that would benefit the bankruptcy estate." In re Cybergenics Corp., 226 F.3d 237, 240 (3d Cir. 2000).

12. Courts have frequently granted this authority where (1) the creditors' committee asserts a colorable claim against the proposed defendant, (2) the debtor in possession has unjustifiably refused to pursue the claim, and (3) the creditors' committee has obtained the permission of the bankruptcy court to initiate the action on behalf of the debtor. (Canadian Pac. Forest Prods. Ltd. v. J.D. Irving, Ltd.) (In re Gibson Group, Inc.), 66 F.3d 1436 (6th Cir. 1995); Louisiana World Exposition v. Federal Ins. Co., 858 F.2d 233 (5th Cir. 1988); Tennessee Valley Steel Corp. v. B.T. Commercial. Corp. (In re Tennessee Valley Steel Corp.), 183 B.R. 795 (Bankr. E.D. Tenn. 1995).

13. Arguably, the Third Circuit permits such authority where the creditors' committee simply has a colorable claim and no other statutory party has a reason to zealously pursue the action. See In re Gibson Group, Inc., 66 F.3d at 1444, (citing In re McKeesport Steel Castings Co., 799 F.2d 91, 94 (3d Cir 1986) for the proposition that a creditor may initiate adversary proceeding under Section 506(c) where creditor had colorable claim and

5

A000084

was the only creditor that would zealously pursue the action).[4]  Similarly, the Fifth Circuit has allowed a creditors' committee to prosecute an action even though the committee had not asked the bankruptcy court for permission to file its complaint.  Louisiana World Exposition, Inc. v. Federal Ins. Co. (In re Louisiana World Exposition, Inc.), 832 F.2d 1391, 1397 (5th Cir. 1987)  In so deciding, the Fifth Circuit refused to apply a "formalistic check-list" of requirements, although it agreed that the three criteria that bankruptcy courts generally applied were "relevant considerations."  Id.

14.    Here, whether using the "formalistic check-list" approach, or the "relevant considerations" approach, the Premiere Committee should be authorized to bring the Action on behalf of the Premiere Group Debtors for the benefit of Premiere Group unsecured creditors.

## A.    The Premiere Committee's Colorable Claim

15.    The Premiere Committee has a colorable claim.  Premiere Associates, Inc. ("Premiere") is a North Carolina company that is a wholly-owned subsidiary of IHS. Premiere in turn owns all of the stock, directly or indirectly, of 33 individual Premiere Group subsidiaries.

---

[4] Under the holding in Cybergenics, it is questionable whether the Third Circuit even requires a creditors' committee to make demand that a debtor in possession commence an action to avoid a fraudulent transfer. In Cybergenics, the Court said "We reach the inescapable conclusion that the fraudulent transfer claims, which state law provided to Cybergenics creditors, were never assets of Cybergenics, and this conclusion is not altered by the fact that a debtor in possession is empowered to pursue those fraudulent transfer claims for the benefit of all creditors."  In re Cybergenics, 226 F.3d at 245.

6

A000085

Case 1:04-cv-00917-GMS    Document 11-3    Filed 03/24/2005    Page 43 of 97

16. On June 25, 1998, IHS acquired the stock of Premiere through a merger between Premiere and an IHS subsidiary (the "IHS Merger"). The Premiere Committee believes that at the time of the IHS merger, the Premiere Group was solvent and profitable.[5]

17. Within two months following the IHS Merger, IHS forced the Premiere Group to give the Guaranty at a time when the $2.1 billion credit facility that IHS had been established with the Bank Group (the "Credit Facility"), had already been substantially drawn down by IHS.[6]

18. The sole consideration received by the Premiere Group in conjunction with the Guaranty of the Credit Facility appears to have been the potential ability to access the Credit Facility — however, being financially secure, the Premiere Group did not need to draw on the Credit Facility to any significant degree.[7] It does not appear that the Premiere Group received any significant benefit, economic or otherwise, as a result of its Guaranty.[8] The Debtors admit that the Premiere Group Debtors have not used the post-petition financing facility, except in conjunction with certain letters of credit.

19. The only relationship between the Premiere Group Debtors and the Bank Group is through the Guaranty; therefore, but for the Guaranty, the Bank Group is not otherwise a creditor of the Premiere Group Debtors.[9] But for the debt represented by the

---

[5] See Transcript of the Deposition of Charles Taylor Pickett, February 8, 2001, p. 42 (the "Pickett Transcript"). A copy of the cited portion of the Pickett Transcript is attached hereto as Exhibit A.
[6] See Integrated Health Services Inc., et al., Transcript of Proceedings, February 6, 2001, pp. 33-34 (Testimony of Mr. Joseph Bondi, Chief Executive Officer of IHS) (the "Bondi Transcript"). A copy of the cited portion of the Bondi Transcript is attached hereto as Exhibit B.
[7] See Pickett Transcript, pp. 100-104. A copy of the cited portion of the Pickett Transcript is attached as Exhibit C.
[8] See Pickett Transcript, pp. 100-104. A copy of the cited portion of the Pickett Transcript is attached as Exhibit D.
[9] See Bondi Transcript, p. 34 A copy of the cited portion of the Bondi Transcript is attached as Exhibit E.

7

Credit Facility, the Premiere Committee believes that the Premiere Group Debtors may be solvent. If the Guaranty is avoided, the unsecured creditors of the Premiere Group Debtors unquestionably benefit. They may be paid in full – they will almost certainly receive substantially more than if their claims pool is diluted by the claims of the Bank Group.

## B.    The Debtors' Refusal to Pursue the Claims

20.    The Debtors have unjustifiably refused to pursue avoidance of the Guaranty. Although they have had the opportunity to attempt to avoid the Guaranty for almost 2 years, and although they had substantially completed their analysis of the Debtors' capital structure and upstream guarantys in April 2001,[10] the Debtors have not taken any action to avoid the Guaranty. Nonetheless, and despite its apparent futility, the Premiere Committee made demand upon Debtors to commence an action to avoid the Guaranty by facsimile transmission dated January 7, 2002. A copy of the Premiere Committee's demand upon Debtors is attached hereto as Exhibit G. The Premiere Committee has not received any response from Debtors. Based on Debtors' statements in open court at a hearing on December 20, 2001, and on Debtors' description in open court of the findings in its Memorandum Addressing Upstream Guaranty by IHS Subsidiaries Under the 1997 Citibank Credit Facility dated December 14, 2001 (which is the subject of a confidentiality agreement), it is extremely unlikely that Debtors will seek to avoid the Guaranty.

21.    In determining whether a debtor in possession has unjustifiably refused to pursue a claim, courts consider whether there are conflicts of interest that exist, whether the

---

[10] See Transcript of Proceedings, December 20, 2001, pp. 85-86. A copy of the cited portion of the December 20 transcript is attached as Exhibit F.

A000087

creditors' interests are protected despite the debtor's refusal to bring the action, and whether pursuing the action will benefit the estate. See, e.g., In re Gibson Group, Inc, 66 F.3d at 1445 - 1446

22.    Conflicts of interest exist between the Premiere Group Debtors and the prospective defendant, the Bank Group, the non-Premiere Group. The non-Premiere Group Debtors' interest in substantively consolidating the Premiere Group Debtors' cases with some or all of the Debtors' other cases (except Rotech) is clear from the record and from Debtors' statements in open court.11 The Bank Group almost certainly favors substantive consolidation. If the Guaranty remains in place, substantive consolidation is all but assured. If the Guaranty is avoided, substantive consolidation will be more difficult to achieve.

23.    The interests of the Premiere Group Debtors' unsecured creditors are not protected if Debtors refuse to prosecute the Action. Debtors and the Bank Group will likely benefit if the Guaranty remains in place, rendering substantive consolidation all but certain. Virtually all creditors of the Debtors, except those that also hold substantial unsecured claims against the Premiere Group Debtors, are likely to benefit if the Guaranty remains in place and substantive consolidation occurs. However, substantive consolidation may have a negative impact on the unsecured creditors of the Premiere Group Debtors, thus those creditors will benefit if the Guaranty is avoided. Because no other party shares the interests of the Premiere Group Debtors' unsecured creditors, no other party can protect their interests

---

[11] See Transcript of Proceedings, December 20, 2001. p. 73. A copy of the cited portion of the December 20 transcript is attached as Exhibit 11.

9

24.    It appears that the Action will benefit the Premiere Group Debtors estates.
Candidly, however, the Premiere Committee will not have had sufficient time or information
by the February 1, 2002 deadline to conclude with certainty that a cost-benefit analysis would
justify prosecution of the Action to conclusion.  If, after commencing the Action and
conducting appropriate discovery, investigation and analysis, the Premiere Committee
concludes that the Action will not benefit the estate, then the Premiere Committee will take
appropriate steps   On its face, however, it would appear that avoiding in excess of
$2.3 billion of indebtedness and the related security interests will benefit the Premiere Group
Debtors' estates.

WHEREFORE, the Premiere Committee respectfully requests that the Court enter
an Order authorizing it to commence an action to avoid the Guaranty on behalf of the
Premiere Group Debtors, pursuant to the provisions of the Bankruptcy Code and applicable
non-bankruptcy law, against any appropriate person or entity, and providing for such other
relief as the Court deems proper.

Dated:  January 9, 2002            THE BAYARD FIRM
        Wilmington, Delaware

_____

Charlene D. Davis (#2336)
222 Delaware Avenue, Suite 900
P.O. Box 25130
Wilmington, Delaware  19899
302-655-5000

-- and --

10

BLANCO TACKABERY
COMBS & MATAMOROS, P.A.
Gene B. Tarr, NCSB #11110
P.O. Drawer 25008
Winston-Salem, NC 27114-5008
Telephone: (336) 761-1250

Proposed Counsel to the Official Committee of
Unsecured Creditors of Premiere Associates, Inc. and
its Subsidiaries

11

Exhibits have been filed with the Court
and served on counsel for the Debtors.

To request a copy of the exhibits, please contact:

Charlene D. Davis, Esquire
222 Delaware Avenue, Suite 900
P.O. Box 25130
Wilmington, DE  19899
(302) 429-4212
(302) 658-6395 (facsimile)

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| INTEGRATED HEALTH SERVICES, INC., et al., ) | | Case No. 00-389(MFW) |
| | ) | |
| Debtors. | ) | Jointly Administered |

### ORDER

THE COURT, having considered the Motion of the Official Committee of Unsecured Creditors of Premiere Associates, Inc. and its Subsidiaries for Leave to File an Adversary Proceeding Complaint on Behalf of Premiere Associates, Inc. and its Subsidiaries (the "Motion") and any objections thereto; and it appearing that the Official Committee of Unsecured Creditors of Premiere Associates, Inc. and its Subsidiaries should be authorized to commence an action to avoid the Guaranty (as defined in the Motion) on behalf of the Premiere Group Debtors pursuant to the provisions of the Bankruptcy Code and applicable non-bankruptcy law against any appropriate person or entity, as requested in the Motion; and due and sufficient notice of the Motion having been given to the Office of The United States Trustee, Counsel to the Debtors, Counsel to the Official Committee of Unsecured Creditors for the non-Premiere Group Debtors and all remaining parties on the Bankruptcy Rule 2002 service list; and it appearing that no other notice need be given; and after due deliberation and sufficient cause appearing therefore, it is hereby

ORDERED that the Motion is granted.

BY THE COURT:

_____
The Honorable Mary F. Walrath
United States Bankruptcy Judge

Dated: _____    _____, 2002

# EXHIBIT "A"

A000093

February 6, 2001          Multi-Page          Deposition of - Charles L. Picken
Re: Integrated Health Services, Inc.

Page 42

1  Q. And at that time, was Premiere making
2  money?
3  A. I believe Premiere was making money,
4  yes.
5  Q. Premiere was certainly a solvent entity?
6  MR. KIRSCHBAUM: Objection as to form.
7  A. I believe it was
8  Q. Okay. Were there any other concerns you
9  had about Premiere, other than the three you've
10 listed for me?
11 A. No. That I can recall.
12 Q. When the decision was made to issue this
13 letter of intent in and around November of 1997,
14 were you and Beth Kelly both in agreement that
15 the letter should go out, and the acquisition
16 should be pursued under the terms contained in
17 this letter?
18 A. We were in agreement the letter should
19 go out. And we were in agreement that we should
20 perform our normal procedures.
21 Q. And with regard to your concerns about

Page 43

1  Premiere that you've mentioned to me, you did
2  your normal procedures in covering anything that
3  caused either you or Beth Kelly to conclude that
4  IHS should back out of the transaction?
5  MR. KIRSCHBAUM: Objection as to form.
6  A. As I mentioned, it lead us to -- we were
7  concerned about the amount of consideration, and
8  whether the transaction would justify the amount
9  of consideration that we're talking about.
10 Q. Was that concern something that lead you
11 to advise or suggest that IHS should not follow
12 through with the transaction?
13 A. I don't recall ever suggesting that.
14 Q. Okay. Tell me about the concerns about
15 the amount of consideration that you've mentioned
16 in the answer to my previous question?
17 A. Again, in general terms, the due
18 diligence, my recollection is that the due
19 diligence showed that the future cash flows of
20 the Premiere entities versus the consideration
21 that we were looking at paying, made the

Page 44

1  transaction tight or difficult from our normal
2  acquisition criteria.
3  Q. What factors lead you to have concern
4  about future cash flows?
5  A. I don't recall the factors. Again, and
6  I'd looked at these numbers in a summary format,
7  based on the work product of that group.
8  Q. You were looking forward, thinking
9  perspectively about Premiere's future cash flows;
10 is that correct?
11 A. With the context -- or the context of
12 history, sure.
13 Q. And what, if anything, about Premiere or
14 any other outside influence lead you to have
15 concern about future cash flows?
16 A. We have found that any clinically
17 challenged facility tends to have less cash flow,
18 either on a regular basis or on a periodic basis,
19 i.e., you have an admissions band. Therefore,
20 your cash flow drops dramatically. So we review
21 any facility that we considered clinically

Page 45

1  challenged, as having potential cash flow issues.
2  Q. Do you often consider whether potential
3  targets of acquisitions by IHS are going to have
4  future cash flow problems? Is that something
5  that was considered?
6  A. Yes.
7  Q. And do you, at times, consider potential
8  candidates for acquisition, and then elect not to
9  pursue them because of problems that you perceive
10 with future cash flows?
11 A. Yes.
12 Q. And Premiere wasn't one of those, was
13 it?
14 A. Again, when you're looking at a
15 financial threshold, you have to correlate
16 potential future cash flows with considerations
17 being paid. So in any transaction, if we
18 projected that future cash flows maybe
19 diminished, in order to meet our thresholds, we
20 made still consider a transaction, but at a
21 reduced price.

# EXHIBIT "B"

A000095

Bondi - direct                                    33

1    EBITDA was for the year 2000 for the debtors?

2        A.    Well, the year isn't quite closed yet, but it

3    will approximate, be somewhat in excess of $200

4    million.

5        Q.    Can you tell me the number of employees that

6    the debtors employ at this point in time?

7        A.    Approximately 55,000 employees.

8        Q.    Can you describe the number of states that the

9    debtors have business in, the number of states?

10       A.    48, each state in the continental U.S.

11       Q.    And would you describe the debtors' businesses

12   being regulated businesses?

13       A.    The businesses are highly regulated by federal

14   and state authorities.

15       Q.    And how many debtors are the subject of these

16   bankruptcy proceedings?

17       A.    In excess of 400.

18       Q.    And can you briefly describe for the Court the

19   creditor constituencies involved in these cases?

20       A.    The creditors are due according to our books

21   and records approximately $3.7 billion, although they

22   have filed claims which aggregate over $12 billion.

23              The largest creditor group are the bank

24   creditors.  They have outstanding obligations due them



WILCOX & FETZER LTD.
Registered Professional Reporters

Bondi - direct

34

1    of about 2.1 billion.

2         There is subordinated debt of about 1.1

3    billion. There is convertible debt. There are

4    secured mortgages. There are accounts payable and

5    various other liabilities which aggregate to the total

6    that I mentioned.

7    Q.   Does the bank group have claims in each of the

8    debtor cases?

9    A.   Yes, they do. There are guaranties.

10   Q.   I want to now turn your attention to your

11   activities as the chief restructuring officer which

12   span basically the last extension period. And on each

13   of these subject matters I want you to describe what

14   was done over the last four, five months and what is

15   anticipated to be done going out the next four months.

16        And the first subject matter I would like

17   to call your attention to is the development of the

18   long-range business plan. If you can describe what

19   has been done and what is anticipated to be done with

20   respect to the long-range business plan.

21   A.   The preparation of a long-range business plan

22   occupied a lot of my time prior to its presentation in

23   mid-October. It involved a strategic assessment of

24   each of the debtors; based on that assessment, an



# EXHIBIT "C"

A000098

Page 98

1 Premiere Associates, Mr. Booth was obligating
2 Premiere Associates to unconditionally
3 guaranteeing repayment of the full debt
4 represented by the Citibank line of credit?
5     MR. KIRSCHBAUM: Objection as to form.
6 A. I don't know the specific details of
7 that guarantee.
8     Q. Are you familiar, generally though, with
9 whether or not it's an unconditional guarantee?
10     A My understanding is guarantees
11 throughout our bank credit agreement are
12 unconditional guarantees.
13     Q What, if anything, did Premiere
14 Associates receive in return for unconditional
15 guaranteeing that bank debt?
16     MR. KIRSCHBAUM: Objection. Conditional
17 or unconditional guarantees is a legal
18 construction. And I don't want to argue about it
19 with you, but I think if you're going to use that
20 in the question, I think I'm going to have to
21 object. Because I don't think that it's clear

Page 99

1 what that means. The guarantees are in the
2 record, so what they say is part of the record.
3     MR. TAYLOR: Sure.
4     MR. KIRSCHBAUM: If he were to
5 characterize these at the time you ask him about
6 it, to be unconditional --
7     MR. TAYLOR: That's fine. I'll withdraw
8 the question and ask another one.
9     Q. What, if anything, did the Premiere or
10 it's subsidiaries receive in return for signing
11 the guarantee -- the agreement to be bound by
12 guaranty?
13     A Premiere received a number of things.
14 The primary consideration was access to IHS's
15 revolving line of credit. In addition, as part
16 the IHS consolidated group, Premiere had access
17 to all of our corporate resources. And that
18 would go along the lines of the normal financial
19 resources. The departments of IS, tax, cash
20 management, accounting, and then our operating
21 resources, and I'll point out in particular,

Page 100

1 clinical protocols.
2     And as I've mentioned earlier, the
3 clinical, our view, that clinically these
4 facilities were somewhat deficient, is something
5 that we would provide to Premiere, the ability to
6 raise the clinical level within those facilities.
7 In addition, the capital, immediate capital that
8 we felt needed to be provided to upgrade the IS
9 systems.
10     So I would kind of look at that whole
11 bundle as consideration for being part of the IHS
12 consolidated group. In addition to the access to
13 the line.
14     Q. Are you aware of specific instances where
15 Premiere or one of it's subsidiaries received a
16 direct benefit from the line of credit?
17     A I'm not aware of specific instances. In
18 general, we did an immediate, almost immediate IS
19 upgrade, which involved substantial direct costs
20 for the equipment, hardware and software. And
21 indirect cost in the form of people's time.

Page 101

1     Q. IS means Information Systems?
2     A. Information Systems.
3     Q. Do you know how much that upgrade cost?
4     A. Generally, our direct cost run from a
5 hundred to $150,000 per facility. The indirect
6 cost of management time, which we don't push
7 through our accounting methodology, is also
8 significant. I wouldn't want to estimate that.
9     Q. And for how many of the Premiere
10 subsidiaries was that information system, how
11 many of those actually received upgrades?
12     A. I think we upgraded all of them.
13     Q. And during what period of time did that
14 occur?
15     A. I'm pretty sure we did it within a year.
16     Q. And how was that paid for?
17     A. Our capital expenditures are paid at a
18 corporate level, in general.
19     Q. Is that a cost that was allocated back
20 down to each subsidiary or each facility?
21     A. Yes.

Deposition of - Charles T. Pickett                    Multi-Page™                        February 8, 2001
Re: Integrated Health Services, I

Page 102

1   Q  What category on the income statements
2  would I look at to find that representative cost
3  allocation?
4      A  You would see that on the income
5  statement.
6      Q  Okay.  Where would I see that?
7      A  You'd see that on the balance sheets.
8  Property Plan and Equipment, in a related credit
9  to the inter-company account.
10     Q  Credit to inter-company account on the
11 balance sheets?
12     A  Uh-huh.
13     Q  Can you identify specific instances
14 where the line of credit was drawn down or behalf
15 for one or more subsidiaries of Premiere, after
16 their acquisition?
17     A  I'm not familiar with specific instances
18 of drawdown.  I think in general, Premiere was a
19 user of cash.  But I couldn't tell you to what
20 level.
21     Q  So you mentioned access to the revolver,

Page 103

1  and you mention as being part of IHS receiving
2  indirect benefits, corporate resources, tax, cash
3  management, accounting, those kinds of
4  considerations.
5      A  Uh-huh.
6      Q  And then we talked a bit about the IS
7  systems, and also the facilities being clinically
8  deficient.  But you told me that you're not aware
9  of specific instances where the cash was drawn
10 down from the line of credit from the path of
11 anyone or specific subsidiaries of Premiere;
12 correct?
13      MR. KIRSCHBAUM:  Objection as to form.
14     A  I'm not aware of any specific instances,
15 no.
16     Q  Then what's the basis for your testimony
17 that Premiere's access to the revolver was a
18 consideration?
19      MR. KIRSCHBAUM:  Objection as to form
20     A  Although I'm not aware of a specific
21 instance, as I testified earlier, I believe that

Page 104

1  Premiere was a general user of cash.
2      Q  Who told you that?
3      A  In reviewing balance sheets, which we do
4  periodically, one of the things we look at is a
5  use of cash and inter-company balances.  So, in
6  general, Premiere was using cash, at least,
7  initially.
8      Q  And are these the credits to the
9  inter-company accounts that you told me about a
10 moment ago?
11     A  You would see that as credit  That's
12 correct.
13     Q  Are these the same ones you told me
14 about a moment ago, with respect to the IS
15 upgrades?
16     A  That's an example.
17     Q  Other than the balance sheets, as you've
18 mentioned in that previous answer, any other
19 information that leads you to believe that
20 Premiere entities are a general user of cash?
21     A  No.  But that would be the source

Page 105

1  information that's subject to our internal
2  controls that I would look to.
3      Q  Okay.  Now, we talked a bit about your
4  involvement in the Premiere entities as of June
5  25, 1998.  I'd like to show you a North Carolina
6  Annual Report filed on behalf of Premiere
7  Associates, Inc. in October, or dated October of
8  2000.  And I've opened to the page that shows the
9  directors and officers of that entity?
10     A  Uh-huh.
11     Q  Can you read for me the names who are
12 listed on that page as directors and officers?
13     A  Sure  Taylor Pickett, Mark Faikano.
14 Mark Levine. Robert Stevensen.
15     Q  And what officer designation is beside
16 your name, Mr. Pickett?
17     A  I'm listed as a president.
18     Q  Okay.  Does that refresh your
19 recollection as to whether you're also a director
20 of Premiere Associates?
21     A  It does not, no.

COURT REPORTING CONCEPTS, INC.
(410) 821-4888 fax (410) 821-1889

A000100

# EXHIBIT "D"

A000101

Case 1:04-cv-00917-GMS    Document 11-3    Filed 03/24/2005    Page 59 of 97

February 8, 2001                    Multi-Page™                    Deposition of - Charles T. Pickett
                                                                   Re: Integrated Health Services, Inc.

Page 98

1 Premiere Associates, Mr. Booth was obligating
2 Premiere Associates to unconditionally
3 guaranteeing repayment of the full debt
4 represented by the Citibank line of credit?
5        MR. KIRSCHBAUM: Objection as to form.
6    A. I don't know the specific details of
7 that guarantee.
8    Q. Are you familiar, generally though, with
9 whether or not it's an unconditional guarantee?
10   A. My understanding is guarantees
11 throughout our bank credit agreement are
12 unconditional guarantees
13   Q. What, if anything, did Premiere
14 Associates receive in return for unconditional
15 guaranteeing that bank debt?
16       MR. KIRSCHBAUM: Objection. Conditional
17 or unconditional guarantees is a legal
18 construction. And I don't want to argue about it
19 with you, but I think if you're going to use that
20 in the question, I think I'm going to have to
21 object. Because I don't think that it's clear

Page 99

1 what that means. The guarantees are in the
2 record, so what they say is part of the record.
3        MR. TAYLOR: Sure.
4        MR. KIRSCHBAUM: If he were to
5 characterize these at the time you ask him about
6 it, to be unconditional --
7        MR. TAYLOR: That's fine. I'll withdraw
8 the question and ask another one.
9    Q. What, if anything, did the Premiere or
10 it's subsidiaries receive in return for signing
11 the guarantee -- the agreement to be bound by
12 guaranty?
13   A. Premiere received a number of things.
14 The primary consideration was access to IHS's
15 revolving line of credit. In addition, as part
16 the IHS consolidated group. Premiere had access
17 to all of our corporate resources. And that
18 would go along the lines of the normal financial
19 resources. The departments of IS, tax, cash
20 management, accounting, and then our operating
21 resources, and I il point out in particular,

Page 100

1 clinical protocols.
2        And as I've mentioned earlier, the
3 clinical, our view, that clinically these
4 facilities were somewhat deficient, is something
5 that we would provide to Premiere, the ability to
6 raise the clinical level within those facilities.
7 In addition, the capital, immediate capital that
8 we felt needed to be provided to upgrade the IS
9 systems.
10       So I would kind of look at that whole
11 bundle as consideration for being part of the IHS
12 consolidated group  In addition to the access to
13 the line.
14   Q. Are you ware of specific instances where
15 Premiere or one of it's subsidiaries received a
16 direct benefit from the line of credit?
17   A. I'm not aware of specific instances. In
18 general, we did an immediate, almost immediate IS
19 upgrade, which involved substantial direct costs
20 for the equipment, hardware and software  And
21 indirect cost in the form of people's time.

Page 101

1    Q. IS means Information Systems?
2    A. Information Systems.
3    Q. Do you know how much that upgrade cost?
4    A. Generally, our direct cost run from a
5 hundred to $150,000 per facility. The indirect
6 cost of management time, which we don't push
7 through our accounting methodology, is also
8 significant. I wouldn't want to estimate that.
9    Q. And for how many of the Premiere
10 subsidiaries was that information system, how
11 many of those actually received upgrades?
12   A. I think we upgraded all of them.
13   Q. And during what period of time did that
14 occur?
15   A. I'm pretty sure we did it within a year.
16   Q. And how was that paid for?
17   A. Our capital expenditures are paid at a
18 corporate level, in general
19   Q. Is that a cost that was allocated back
20 down to each subsidiary or each facility?
21   A. Yes

Deposition of - Charles T. Pickett          Multi-Page™                February 8, 2001
Re: Integrated Health Services, i

**Page 102**

1  Q  What category on the income statements
2  would I look at to find that representative cost
3  allocation?
4  A  You would see that on the income
5  statement.
6  Q  Okay. Where would I see that?
7  A  You'd see that on the balance sheets.
8  Property Plan and Equipment, in a related credit
9  to the inter-company account.
10  Q  Credit to inter-company account on the
11  balance sheets?
12  A  Uh-huh.
13  Q  Can you identify specific instances
14  where the line of credit was drawn down or behalf
15  for one or more subsidiaries of Premiere, after
16  their acquisition?
17  A  I'm not familiar with specific instances
18  of drawdown. I think in general, Premiere was a
19  user of cash. But I couldn't tell you to what
20  level.
21  Q  So you mentioned access to the revolver,

**Page 103**

1  and you mention as being part of IHS receiving
2  indirect benefits, corporate resources, tax, cash
3  management, accounting, those kinds of
4  considerations.
5  A  Uh-huh.
6  Q  And then we talked a bit about the IS
7  systems, and also the facilities being clinically
8  deficient. But you told me that you're not aware
9  of specific instances where the cash was drawn
10  down from the line of credit from the path of
11  anyone or specific subsidiaries of Premiere;
12  correct?
13  MR. KIRSCHBAUM: Objection as to form.
14  A  I'm not aware of any specific instances,
15  no.
16  Q  Then what's the basis for your testimony
17  that Premiere's access to the revolver was a
18  consideration?
19  MR. KIRSCHBAUM: Objection as to form.
20  A  Although I'm not aware of a specific
21  instance, as I testified earlier, I believe that

**Page 104**

1  Premiere was a general user of cash.
2  Q  Who told you that?
3  A  In reviewing balance sheets, which we do
4  periodically, one of the things we look at is a
5  use of cash and inter-company balances. So, in
6  general, Premiere was using cash, at least,
7  initially
8  Q  And are these the credits to the
9  inter-company accounts that you told me about a
10  moment ago?
11  A  You would see that as credit. That's
12  correct.
13  Q  Are these the same ones you told me
14  about a moment ago, with respect to the IS
15  upgrades?
16  A  That's an example.
17  Q  Other than the balance sheets, as you've
18  mentioned in that previous answer, any other
19  information that leads you to believe that
20  Premiere entities are a general user of cash?
21  A  No. But that would be the source

**Page 105**

1  information that's subject to our internal
2  controls that I would look to.
3  Q  Okay. Now, we talked a bit about your
4  involvement in the Premiere entities as of June
5  25, 1998. I'd like to show you a North Carolina
6  Annual Report filed on behalf of Premiere
7  Associates, Inc. in October, or dated October of
8  2000. And I've opened to the page that shows the
9  directors and officers of that entity?
10  A  Uh-huh.
11  Q  Can you read for me the names who are
12  listed on that page as directors and officers?
13  A  Sure. Taylor Pickett, Mark Fuikino,
14  Mark Levine, Robert Stevenson.
15  Q  And what officer designation is beside
16  your name, Mr. Pickett?
17  A  I'm listed as a president.
18  Q  Okay. Does that refresh your
19  recollection as to whether you're also a director
20  of Premiere Associates?
21  A  It does not, no.

# EXHIBIT "E"

A000104

Bondi - direct                 33

1    EBITDA was for the year 2000 for the debtors?

2        A.    Well, the year isn't quite closed yet, but it

3    will approximate, be somewhat in excess of $200

4    million.

5        Q.    Can you tell me the number of employees that

6    the debtors employ at this point in time?

7        A.    Approximately 55,000 employees.

8        Q.    Can you describe the number of states that the

9    debtors have business in, the number of states?

10       A.    48, each state in the continental U.S

11       Q.    And would you describe the debtors' businesses

12   being regulated businesses?

13       A.    The businesses are highly regulated by federal

14   and state authorities.

15       Q.    And how many debtors are the subject of these

16   bankruptcy proceedings?

17       A.    In excess of 400.

18       Q.    And can you briefly describe for the Court the

19   creditor constituencies involved in these cases?

20       A.    The creditors are due according to our books

21   and records approximately $3.7 billion, although they

22   have filed claims which aggregate over $12 billion.

23             The largest creditor group are the bank

24   creditors.  They have outstanding obligations due them

Bondi - direct

34

1    of about 2.1 billion.

2              There is subordinated debt of about 1.1

3    billion.  There is convertible debt.  There are

4    secured mortgages.  There are accounts payable and

5    various other liabilities which aggregate to the total

6    that I mentioned.

7       Q.   Does the bank group have claims in each of the

8    debtor cases?

9       A.   Yes, they do.  There are guaranties.

10      Q.   I want to now turn your attention to your

11   activities as the chief restructuring officer which

12   span basically the last extension period.  And on each

13   of these subject matters I want you to describe what

14   was done over the last four, five months and what is

15   anticipated to be done going out the next four months.

16              And the first subject matter I would like

17   to call your attention to is the development of the

18   long-range business plan.  If you can describe what

19   has been done and what is anticipated to be done with

20   respect to the long-range business plan.

21      A.   The preparation of a long-range business plan

22   occupied a lot of my time prior to its presentation in

23   mid-October.  It involved a strategic assessment of

24   each of the debtors; based on that assessment, an

# EXHIBIT "F"

1           The creditors' committee counsel is here

2    today.  He's informed me that the counsel and the advisor

3    for the creditors' committee believe that the debtors'

4    report and its conclusions are correct.  The creditors'

5    committee itself has not fully reviewed all of the

6    report, but that will come up at the next committee

7    meeting and they usually will take deference to their

8    professional advisors on these type of issues.

9           The issue, Your Honor, as a practical

10   matter, has three components that I think we allude to in

11   our papers.  But it is worth spending time.  One is if

12   long-term care is substantively consolidated, the issue

13   goes away because the intercompany guarantees are

14   invalidated because you deal with distributions and one

15   general claim against the combined estate.   The

16   likelihood is -- and it's not before Your Honor today,

17   but when we get to plan confirmation for IHS, the

18   likelihood is that we'll be moving to substantively

19   consolidate.  We are not there yet to do that, and I'm

20   not trying to press that issue.  The only thing I wanted

21   to isolate for Your Honor is that this issue, if we go on

22   a long and expensive tangent, may very well be rendered

23   moot on a substantive consolidation of this estate.

24           The second thing is, while Angell takes the



# EXHIBIT "G"

A000109

01-09-2002 14:01 FAX 3367611530                                                        ☒002



**BLANCO
TACKABERY
COMBS &
MATAMOROS, P.A.**

ATTORNEYS AND COUNSELLORS AT LAW

GEORGE E. HOLLODICK
Ln 3007
GEH@BTCMLAW.COM

P.O. DRAWER 25008
WINSTON - SALEM, NC 27114 - 5008

STRATFORD POINT BLDG., 5TH FLOOR
110 SOUTH STRATFORD ROAD
WINSTON - SALEM, NC 27104-4299

TELEPHONE
(330) 761 1250
FACSIMILE
(336) 761 1530
WEB SITE
www.btcmlaw.com

January 7, 2002

*Via Telecopy (212) 836-8689*

Arthur J. Steinberg, Esq.
Kaye, Scholer, Fierman, Hays & Handler, LLP
425 Park Avenue
New York, New York 10022-3598

        *Re:     Premiere Associates*

Dear Art:

As you know, pursuant to Judge Walrath's order, on Friday on, January 4, 2002, the United States Trustee appointed an Official Committee of Unsecured Creditors (the "Committee") of Premiere Associates, Inc. and its subsidiaries (collectively, the "Premiere Group"). The Committee contains representatives of the Angell Creditors, Healthcare Service Group, Inc. and Great Oaks Nursing Home, Inc. Don G. Angell was elected as chairman of the Committee. Following an organizational meeting, the Committee selected Blanco Tackabery Combs & Matamoros, P.A. as Committee counsel. We will be filing an application for approval of our employment with the Court within the next several days. Assuming Court approval, Gene Tarr and I will be the primary attorneys working on this matter.

On behalf of the Committee, demand is hereby made on Integrated Health Services, Inc. ("IHS") and the other Debtors to institute an action (an "Avoidance Action") to avoid (i) guaranties executed by each member of the Premiere Group and (ii) any other documents executed by any member of the Premiere Group, including any Pledge and Security Agreement, in connection with any indebtedness of Integrated Health Services, Inc., including, without limitation, the Revolving Credit Agreement dated May 15, 1996, as amended, the Revolving Credit and Term Loan Agreement dated September 15, 1997, as amended, and the Participation Agreement dated July 31, 1997, as amended. As the deadline to file an Avoidance Action is February 1, 2002, the Committee demands that, prior to January 14, 2002, the Debtors indicate in writing their willingness to timely institute an Avoidance Action.

Given the Debtors' previously stated unwillingness to institute an Avoidance Action, the Committee directed us to file a motion for authority to bring the Avoidance Action as well as discuss with you and the bank group the possibility of a tolling agreement in order to allow both the Committee and its financial advisor (which should be selected within the next several days) additional time to further evaluate the merits of instituting an Avoidance Action.

B {CM:169929 1

A000110

01/08/2002 14:05 FAX 3367811538                                                                ☑ 003

Arthur J Steinberg, Esq.
January 7, 2002
Page 2

        Based on our prior discussions, we understand that the Debtors have agreed that the motion for
authority will be heard on January 24, 2007, unless a tolling agreement can be agreed upon before such date.

        Gene and I look forward to hearing from you regarding both the Committee's demand as well as the
possibility of a tolling agreement. If you have any questions, please feel free to contact me.

                                        Very truly yours,

                                        BLANCO TACKABERY COMBS
                                          & MATAMOROS, P.A.

                                        George F. Hollodick

GEH/cmm
cc:     Don G. Angell (via telecopy)
        Thomas Cook (via telecopy)
        Eugene Bishop (via telecopy)
        Gene Tau, Esq.

BTCM:169929 1

# EXHIBIT "H"

85

1   financial advisors, which, Your Honor, did not come as

2   any surprise to us.

3              The committee itself looked at issues of

4   solvency of this company.  In the context of acquisitions

5   made by IHS in 1997 and 1998 when billions and billions

6   of dollars were spent to acquire other health care

7   companies.

8              And we never felt that solvency was an

9   issue.  It didn't become an issue until, as has happened

10  in other health care cases, the effects of the balance

11  the budget act in sometime in mid- to late 1999.

12             The capital structure, Your Honor, of this

13  company is very similar to those of the other health care

14  companies, including those that are before you like Sun

15  Health Care, Your Honor, in which case we represent the

16  creditors' committee.

17             The issues of solvency and upstream

18  guarantees, I don't think, are any different in this case

19  than in the Sun Health Care case.  Nobody challenged the

20  validity of those guarantees or solvency of that company

21  at the time that they were issued, and I think the facts

22  here are substantially similar.

23             I'm not sure, Your Honor, what exactly this

24  motion is seeking.  If it is the appointment of a



86

1   committee to pursue an investigation which has already

2   taken place or to challenge the investigation, I'm not

3   sure that's the appropriate relief. If a creditor wishes

4   to have an investigation commenced, then I think that

5   there are other applications that ought to be made rather

6   than the appointment of a committee to conduct that

7   investigation or by some disinterested third party. And

8   in this particular case, Your Honor, I don't think that

9   is necessary. I don't think it's cost effective. I

10  think the analysis has been done. And I think --

11              THE COURT:  Let me ask the committee

12  counsel a question. Did the DIP provisions deal with any

13  deadline for commencing any actions to avoid any position

14  of the bank group?

15              MR. RICE:  I don't think so, Your Honor.

16  That would take me back two years, but I'm virtually

17  certain that they --

18              MR. ROSENBERG:  I don't believe so.

19              THE COURT:  There was no deadline?

20              MR. ROSENBERG:  No.

21              MR. RICE:  We have a statutory deadline

22  which is February 2, but I don't think there was a

23  deadline in the DIP order.

24              THE COURT:  All right.

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| INTEGRATED HEALTH SERVICES, INC., et al., | ) | Case No. 00-389(MFW) |
| | ) | |
| Debtors. | ) | Jointly Administered |
| | ) | |
| | ) | **Proposed Objection Deadline:** |
| | ) | **January 22, 2002 at 4:00 p.m.** |
| | ) | **Proposed Hearing Date:** |
| | ) | **January 24, 2002 at 11:30 a.m.** |

## NOTICE OF MOTION

TO:    Office of The United States Trustee, Counsel to the Debtors, Counsel to the Creditors Committee and all parties requesting service pursuant to Bankruptcy Rule 2002.

On January 14, 2002, the Official Committee of Unsecured Creditors of Premiere Associates, Inc. and its subsidiaries (the "Movant") filed the **Motion of the Official Committee of Unsecured Creditors of Premiere Associates, Inc. and its Subsidiaries for Leave to File an Adversary Proceeding Complaint on Behalf of Premiere Associates, Inc. and its Subsidiaries** (the "Motion").

Any response or objection to the attached Motion must be filed on or before **January 22, 2002 at 4:00 p.m.**

At the same time, you must also serve a copy of the response or objection upon the Movant's attorneys:

Charlene D. Davis, Esq.
222 Delaware Avenue, Suite 900
P.O. Box 25130
Wilmington, Delaware 19899
(302) 655-5000

Gene B. Tarr, Esq.
P.O. Drawer 25008
Winston-Salem, NC 27114-5008
(336) 761-1250

A000115

HEARING ON THE MOTION WILL BE HELD ON: **January 24, 2002 at 11:30 a.m.**

ONLY THOSE OBJECTIONS MADE IN WRITING, TIMELY FILED, AND SERVED IN ACCORDANCE WITH THE ABOVE PROCEDURES WILL BE CONSIDERED AT THE HEARING.

Dated:  January 14, 2002               THE BAYARD FIRM
        Wilmington, Delaware

Charlene D. Davis (#2336)
222 Delaware Avenue, Suite 900
P.O. Box 25130
Wlmington, Delaware  19899
302-655-5000

-- and --

BLANCO TACKABERY
COMBS & MATAMOROS, P.A.
Gene B. Tarr, NCSB #11110
P.O. Drawer 25008
Winston-Salem, NC 27114-5008
Telephone: (336) 761-1250

Proposed Counsel to the Official Committee
of Unsecured Creditors of Premiere
Associates, Inc. and its Subsidiaries

2

A000116

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| INTEGRATED HEALTH SERVICES, INC., et al., | ) | Case No. 00-389(MFW) |
| | ) | |
| Debtors. | ) | Jointly Administered |
| | ) | |
| | ) | **Proposed Objection Deadline:** |
| | ) | **January 22, 2002 at 4:00 p.m.** |
| | ) | **Proposed Hearing Date:** |
| | ) | **January 24, 2002 at 11:30 a.m.** |

## MOTION OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS OF PREMIERE ASSOCIATES, INC. AND ITS SUBSIDIARIES TO SHORTEN NOTICE WITH RESPECT TO THE MOTION FOR LEAVE TO FILE AN ADVERSARY PROCEEDING COMPLAINT ON BEHALF OF THE ESTATES OF PREMIERE ASSOCIATES, INC. AND ITS SUBSIDIARIES AGAINST THE DIRECTORS AND OFFICERS OF PREMIERE ASSOCIATES, INC. ET AL.

The Official Committee of Unsecured Creditors (the "Premiere Committee") of Premiere Associates, Inc. and its subsidiaries (the "Premiere Debtors") hereby moves this Court (the "Notice Motion"), pursuant to section 102 of title 11 of the United States Code (the "Bankruptcy Code"), Rule 2002 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rule 9006-1(c) of the Local Rules of the Bankruptcy Court for the District of Delaware, for an order shortening the notice period for a hearing on the Motion of the Official Committee of Unsecured Creditors of Premiere Associates, Inc. and its Subsidiaries for Leave to File an Adversary Proceeding Complaint on Behalf of the Estates (the "Estate") of Premiere Associates, Inc. and its Subsidiaries (the "Premiere Debtors") Against the Directors and Officers (the "Directors and Officers") of Premiere Associates, Inc. et al. (the "Motion") so that the Motion can be heard at the next omnibus hearing in these cases, which is scheduled for January 24, 2002 at 11:30 a.m. or at a

specially scheduled hearing prior to January 31, 2002. In support of the Notice Motion, the Premiere Committee represent as follows:

**BACKGROUND**

1.      On February 2, 2000, Integrated Health Services ("IHS") and 436 affiliates (the "Debtors"), including the Premiere Debtors, filed these chapter 11 cases, which are being jointly administered.

2.      By Order entered January 4, 2002, the Court directed the United States Trustee to appoint an official committee of unsecured creditors for the Premiere Debtors. Pursuant to that Order, on January 4, 2002, the United States Trustee held a meeting, on notice, at which an unsecured creditors committee for the Premiere Debtors was formed.

3.      The Premiere Committee met to retain counsel and thereafter instructed its counsel, inter alia, to seek authority from the Court to commence an adversary proceeding on behalf of the Estates against the Directors and Officers for breaches of their fiduciary duties (the "Action").

4.      Pursuant to section 108(c), the time in which the Premiere Debtors or the Premiere Committee may bring the Action may expire in less than three weeks, on February 1, 2002. The Premiere Committee must be in a position to file an adversary proceeding complaint on or before February 1, 2002 or the possibility of bringing the Action on behalf of the Estates may be lost.

**RELIEF REQUESTED**

5.    By this Motion the Premiere Committee seeks to shorten the required notice period for the Motion to eight days so that a hearing (the "Hearing") on the Motion can be held on January 24, 2002 at 11:30 a.m. (Eastern Time), the current omnibus hearing scheduled in these cases or at a specially scheduled hearing prior to January 31, 2002.

**BASIS FOR RELIEF**

6.    On January 14, 2002, the Premiere Committee filed the Motion and served copies of the Motion on all parties requesting service of papers filed in these cases pursuant to Bankruptcy Rule 2002 (the "2002 List Parties").  On this same day, the Premiere Committee also served the 2002 List Parties with a notice that the Motion may be heard by this Court on January 24, 2002 at 11:30 a.m. (Eastern Time).

7.    By this Motion the Premiere Committee seeks to shorten the required notice period for the Motion so that this Court may consider the Motion at the current omnibus hearing scheduled in these cases or prior to January 31, 2002.  A hearing on the Motion prior to January 31, 2002 is necessary to protect the interests of the Estate, since the Action must be brought on or before February 1, 2002.

8.    Given the recent appointment of the Premiere Committee and the imminent deadline by which a complaint in the Action must be filed, the Premiere Committee submits that the limited notice proposed is reasonable.  The Premiere Committee will serve all parties requesting service of papers filed in these cases by hand delivery, facsimile transmission or overnight delivery.

WHEREFORE, the Premiere Committee respectfully requests that the Court approve the shortened notice period, or alternatively, schedule a special hearing to consider the Motion in sufficient time to allow the Premiere Committee to file a complaint on or before February 1, 2002, and grant such other and further relief as the Court deems proper.

Dated: Wilmington, Delaware
   January 14, 2002

      THE BAYARD FIRM


      Charlene D. Davis (No. 2336)
      Anthony M. Saccullo (No. 4141)
      222 Delaware Avenue, Suite 900
      P.O. Box 25130
      Wilmington, DE 19899
      Telephone: (302) 655-5000
      Facsimile: (302) 658-6395

      -- and --

      BLANCO TACKABERY
      COMBS & MATAMOROS, P.A.
      Gene B. Tarr, NCSB #11110
      P.O. Drawer 25008
      Winston-Salem, NC 27114-5008
      Telephone: (336) 761-1250

      Proposed Counsel to the Official Committee of Unsecured Creditors of Premiere Associates, Inc. and its Subsidiaries

SO ORDERED this ____ day

of _____, 2002


_____
The Honorable Mary F. Walrath

A000120

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| INTEGRATED HEALTH SERVICES, INC., et al., | ) | Case No. 00-389(MFW) |
| | ) | |
| Debtors. | ) | Jointly Administered |
| | ) | |
| | ) | **Proposed Objection Deadline:** |
| | ) | **January 22, 2002 at 4:00 p.m.** |
| | ) | **Proposed Hearing Date:** |
| | ) | **January 24, 2002 at 11:30 a.m.** |

## NOTICE OF MOTION

TO:  Office of The United States Trustee, Counsel to the Debtors, Counsel to the Creditors Committee and all parties requesting service pursuant to Bankruptcy Rule 2002.

On January 14, 2002, the Official Committee of Unsecured Creditors of Premiere Associates, Inc. and its subsidiaries (the "Movant") filed the **Motion of the Official Committee of Unsecured Creditors of Premiere Associates, Inc. and its Subsidiaries for Leave to File an Adversary Proceeding Complaint on Behalf of Premiere Associates, Inc. and its Subsidiaries** (the "Motion").

Any response or objection to the attached Motion must be filed on or before **January 22, 2002 at 4:00 p.m.**

At the same time, you must also serve a copy of the response or objection upon the Movant's attorneys:

Charlene D. Davis, Esq.
222 Delaware Avenue, Suite 900
P.O. Box 25130
Wilmington, Delaware  19899
(302) 655-5000

Gene B. Tarr, Esq.
P.O. Drawer 25008
Winston-Salem, NC 27114-5008
(336) 761-1250

A000121

HEARING ON THE MOTION WILL BE HELD ON: **January 24, 2002 at 11:30 a.m.**

ONLY THOSE OBJECTIONS MADE IN WRITING, TIMELY FILED, AND SERVED IN ACCORDANCE WITH THE ABOVE PROCEDURES WILL BE CONSIDERED AT THE HEARING.

Dated: January 14, 2002          THE BAYARD FIRM
     Wilmington, Delaware

 

Charlene D. Davis (#2336)
222 Delaware Avenue, Suite 900
P.O. Box 25130
Wlmington, Delaware  19899
302-655-5000

     -- and --

BLANCO TACKABERY
COMBS & MATAMOROS, P.A.
Gene B. Tarr, NCSB #11110
P.O. Drawer 25008
Winston-Salem, NC 27114-5008
Telephone: (336) 761-1250

Proposed Counsel to the Official Committee
of Unsecured Creditors of Premiere
Associates, Inc. and its Subsidiaries

2

A000122

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| INTEGRATED HEALTH SERVICES, INC., et al., | ) | Case No  00-389(MFW) |
| | ) | |
| Debtors | ) | Jointly Administered |
| | ) | |
| | ) | **Proposed Objection Deadline:** |
| | ) | **January 22, 2002 at 4:00 p.m.** |
| | ) | **Proposed Hearing Date:** |
| | ) | **January 24, 2002 at 11:30 a.m.** |

## MOTION OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS OF PREMIERE ASSOCIATES, INC. AND ITS SUBSIDIARIES FOR LEAVE TO FILE AN ADVERSARY PROCEEDING COMPLAINT ON BEHALF OF THE ESTATES OF PREMIERE ASSOCIATES, INC. AND ITS SUBSIDIARIES AGAINST THE DIRECTORS AND OFFICERS OF PREMIERE ASSOCIATES, INC. ET AL.

The Official Committee of Unsecured Creditors of Premiere Associates, Inc. and its subsidiaries (the "Premiere Committee"), by and through its counsel and pursuant to sections 105(a), 1103(c)(5) and 1109(b) of title 11 of the United States Code (the "Bankruptcy Code"), hereby moves (the "Motion") the Court for entry of an order authorizing the Premiere Committee to file an adversary proceeding on behalf of the estates (the "Estates") of Premiere Associates, Inc. and its subsidiaries (the "Premiere Debtors") against certain current and/or former directors and officers of the Premiere Debtors (the "Directors and Officers"). In support of the Motion, the Premiere Committee respectfully represents as follows:

## PRELIMINARY STATEMENT

1.    On February 2, 2000, Integrated Health Services ("IHS") and 436 affiliates (the "Debtors"), including the Premiere Debtors[1], filed these chapter 11 cases, which are being jointly administered.

2.    Premiere Associates, Inc. ("Premiere") is a North Carolina company that is a wholly-owned subsidiary of IHS (together with Premiere, the "Premiere Group"). Premiere, in turn, owns all the stock of 34 individual subsidiary corporations, which are also debtors in these cases.

3.    On June 25, 1998, IHS acquired the stock of Premiere through a merger between Premiere and an IHS subsidiary (the "IHS Merger"). At the time of the IHS Merger, the Premiere Group was solvent and profitable.

4.    Within two months following the IHS Merger, IHS through the acts and omissions of the Directors and Officers forced the Premiere Group to guaranty (and together with all related agreements including any joinder, security or pledge agreements, the "Guaranty") a $2.1 billion Revolving Credit and Term Loan Facility (the "Credit Facility") that had been established with several banks (the "Bank Group"), and drawn upon by IHS prior to the IHS Merger.

---

[1]  The Premiere Group Debtors consist of: Health Care Properties III Incorporated; Premiere Associates Healthcare Services, Inc.; HCPIII Athens, Inc.; HCPIII Bremen, Inc.; HCPIII Bradenton, Inc.; HCPIII Bradenton ALF, Inc.; HCPIII Carrollton, Inc.; HCPIII Cedartown, Inc.; HCPIII Cumings, Inc.; HCPIII Eastman, Inc.; HCPIII Hartwell, Inc.; HCPIII Heritage, Inc.; HCPIII Hillsborough, Inc.; HCPIII Louisville, Inc.; HCPIII Macon, Inc.; HCPIII Miami, Inc.; HCPIII Moultrie, Inc.; HCPIII Pine Knoll, Inc.; HCPIII Rockmart, Inc.; HCPIII Roswell, Inc.; HCPIII Savannah, Inc.; HCPIII Shamrock, Inc.; HCPIII Social Circle, Inc.; HCPIII South Florida, Inc.; HCPIII  Woodbridge, Inc.; HCPIII Woodstock, Inc.; Health Care Properties III Incorporated; SHCM Bonterra, Inc.; SHCM Hialeah, Inc.; SHCM Holdings, Inc.; SHCM Parkview, Inc.; Premiere Associates Healthcare Services, Inc.; and Premiere Associates Management Company, Inc.

2

5.     The Premiere Group received nominal, if any, consideration in conjunction with the Guaranty. The minimal benefit the Premiere Group received was the potential ability to access the Credit Facility--however, being financially secure, the Premiere Group never needed to draw on the Credit Facility to any significant degree. In actuality, the Premiere Group never received any significant benefit, economic or otherwise, as a result of its guaranty of the Credit Facility.

6.     The only relationship between the Premiere Group and the Bank Group is through the Guaranty; therefore, but for the Guaranty, the Bank Group is not otherwise a creditor of the Estates. Furthermore, but for the debt represented by the Credit Facility, the Estates would be solvent.

7.     By Order entered January 4, 2002, the Court directed the United States Trustee to appoint an official committee of unsecured creditors for the Premiere Debtors. Pursuant to that Order, on January 4, 2002, the United States Trustee held a meeting, on notice, at which an unsecured creditors committee for the Premiere Debtors was formed. Angell Care Inc., Bermuda Village Limited Partnership, Attn: Don G. Angell, Health Care Services Group, Inc., and Great Oaks Nursing Home, Inc. were appointed to serve as the Premiere Committee.[2]

8.     Thereafter, the Premiere Committee met and instructed its proposed counsel, inter alia, to seek authority from the Court to commence an adversary proceeding on behalf of the Estates against the Directors and Officers for breaches of their fiduciary duties as a

---

[2] The Premier Committee voted to employ Blanco Tackabery Combs & Matamoros, P.A. ("BTC&M") and the Bayard Firm ("Bayard") as its counsel, subject to the Court's approval. Given the exigent circumstances, BTC&M and Bayard have not yet sought the Court's approval of their retention as counsel

3

A000125

result of acts and omissions related to the Guaranty (the "Action").

9.     Documents and testimony elicited from the Debtors during discovery show that the Directors and Officers breached their fiduciary duties by allowing the Premiere Group to become a party to the Guaranty. The Premiere Committee believes there is compelling evidence that will show the Premiere Group received no consideration or inadequate consideration for the Guaranty, that the Guaranty was entered without due diligence, without corporate authority, without following corporate formalities, and without considering the impact of the Guaranty on the solvency of the Premiere Group, and its creditors.

10.     Pursuant to section 108(c), the time in which the Premiere Debtors or the Premiere Committee may bring the Action may expire in less than three weeks, on February 1, 2002. The Premiere Committee must be in a position to file an adversary proceeding complaint on or before February 1, 2002 or the possibility of bringing the Action on behalf of the Estates may be lost.

## JURISDICTION

11.     This Court has jurisdiction to consider the Motion and the relief requested herein in accordance with 28 U.S.C. § 1334(b). This matter is a core proceeding under 28 U.S.C. § 157(b)(2). Venue in this District is proper under 28 U.S.C. §§ 1408 and 1409. The statutory predicates for relief are 11 U.S.C. §§ 105, 1103(c)(5) and 1109(b).

---

for the Premiere Committee; however, they expect to file their applications within days.

A000126

**RELIEF REQUESTED**

12.    By this Motion, the Premiere Committee respectfully seeks authority to file

on behalf of the Estates an adversary proceeding against the Directors and Officers for breach

of their fiduciary duties, including but not limited to (1) breach of the duty of loyalty; (2)

breach of the duty of care; and (3) waste.  The Premiere Committee requests this authority

because it is clear that the Premiere Debtors are not going to bring the Action, even though

it would benefit the Estates.

**BASIS FOR RELIEF**

13.    Section 1103(c)(5) of the Bankruptcy Code provides that:

> A committee appointed under section 1102 of this title may –
> (5)    perform such other services as are in the interests of those
>        represented.

14.    Section 1109(b) of the Bankruptcy Code provides that:

> A party in interest, including the debtor, the trustee, a creditors'
> committee, an equity security holders' committee, a creditor, an
> equity security holder, or any indenture trustee, may raise and may
> appear and be heard on any issue in a case under this chapter.

15.    Consistent with the authority conferred on creditor committees by the

Bankruptcy Code, courts frequently authorize committees to bring actions on behalf of an

estate where (1) the creditors' committee asserts a colorable claim against the proposed

defendant, (2) the debtor in possession has unjustifiably refused to pursue the claim, and (3)

the creditors' committee has obtained the permission of the bankruptcy court to initiate the

action on behalf of the estate.  Canadian Pac. Forest Prods. Ltd. v. J.D. Irving, Ltd. (In re

Gibson Group, Inc.), 66 F.3d 1436 (6th Cir. 1995); Louisiana World Exposition v. Federal

Ins. Co., 858 F.2d 233 (5th Cir. 1988); Tennessee Valley Steel Corp. v. B.T. Commercial.

5

Corp. (In re Tennessee Valley Steel Corp.), 183 B.R. 795 (Bankr. E.D. Tenn. 1995).

16.    Here, the Premiere Committee should be authorized to bring the Action on behalf of the Estates.

## A.    The Premiere Committee's Colorable Claim

17.    The Premiere Committee asserts a colorable claim. Based on the deposition testimony of Daniel Booth and C. Taylor Pickett, former officers of IHS, as well as the Debtors' responses to document requests, it appears that the Guaranty was given by each of the Premiere Group entities without the exercise of due care of the Directors and Officers, without corporate authority, without following corporate formalities and without considering the impact of the Guaranty on the solvency of the Premiere Group and its creditors.

18.    These acts and omissions by the Directors and/or Officers violate the obligations imposed on them by the general corporation law of the states in which the Premiere Debtors are incorporated. See, e.g., N.C. Gen Stat. Secs., 55-8-01; 55-8-30; 55-8-41; and 55-8-42.

19.    Clearly the claims which the Premiere Group seeks to assert against the Directors and Officers are colorable.

## B.    The Debtors' Refusal to Pursue the Claims

20.    Generally, if a claim is colorable and the debtor has for any reason, or for no reason at all, refused to pursue it, courts in the Third Circuit will authorize a committee to bring it on behalf of the estates. In re Nicolet, Inc., 80 B.R. 733, 738-39 (Bankr. E.D. Pa. 1986); Official Committee of Unsecured Creditors v. Shapiro (In re Walnut Street Leasing), 1999 U.S. Dist. Lexis 14517, * 8 (E.D. Pa. 1999); Official Committee of Unsecured

6

<u>Creditors of Corell Steel v. Fisbein & Co.</u>, 1992 U.S. Dist. Lexis 11618, at * 6-7 (E.D. Pa. 1992). Here, two years have passed without any causes of action having been filed on behalf of the Estates based on the acts and omissions of the Directors and Officers in connection with the Guaranty.

21.     To the extent that the refusal to bring the Action must be unjustified, there appear to be conflicts here that would prevent the Debtors from prosecuting the Action. The claims in the Action are predicated, in part, on a conclusion that the Guaranty was a constructively fraudulent transfer. The Debtors have already essentially announced their view that the Guaranty is not a constructively fraudulent conveyance. Pursuit of the Action by the Debtors would unquestionably conflict with this position.

22.     Nevertheless, and despite its apparent futility, the Premiere Committee has made demand (the "Premiere Demand") on the Debtors to commence an action against the Directors and Officers by facsimile transmission dated January 14, 2002. A copy of the Premiere Demand is attached hereto as Exhibit A.

23.     The interests of the Estates are not protected if the Debtors refuse to prosecute the Action. The Estates have an interest in receiving recoveries commensurate with the harm caused by the Directors' and Officers' breaches of their fiduciary duties. This interest will not be protected unless the Premiere Committee is permitted to prosecute the Action.

7

A000129

WHEREFORE, the Premiere Committee respectfully requests that the Court enter an Order authorizing it to commence an action on behalf of the Estates against the Directors and Officers, pursuant to the provisions of the Bankruptcy Code and applicable non-bankruptcy law, and providing for such other relief as the Court deems proper.

Dated: January 14, 2002
       Wilmington, Delaware

THE BAYARD FIRM

_Charlene D. Davis_ /wp

Charlene D. Davis (#2336)
222 Delaware Avenue, Suite 900
P.O. Box 25130
Wilmington, Delaware 19899
302-655-5000

-- and --

BLANCO TACKABERY
COMBS & MATAMOROS, P.A.
Gene B. Tarr, NCSB #11110
P.O. Drawer 25008
Winston-Salem, NC 27114-5008
Telephone: (336) 761-1250

Proposed Counsel to the Official Committee
of Unsecured Creditors of Premiere
Associates, Inc. and its Subsidiaries

8

A000130

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| INTEGRATED HEALTH SERVICES, INC., et al., | ) | Case No. 00-389(MFW) |
| | ) | |
| Debtors. | ) | Jointly Administered |

### ORDER

THE COURT, having considered the Motion of the Official Committee of Unsecured

Creditors of Premiere Associates, Inc. and its Subsidiaries for Leave to File an Adversary

Proceeding Complaint on Behalf of the Estates of Premiere Associates, Inc. and its

Subsidiaries Against the Directors and Officers of Premiere Associates, Inc. et al. (the

"Motion") and any objections thereto; and it appearing that the Official Committee of

Unsecured Creditors (the "Premiere Committee")of Premiere Associates, Inc. and its

Subsidiaries (the "Premiere Debtors") should be authorized to commence an action against

the Directors and Officers (as defined in the Motion) on behalf of the estates of the Premiere

Debtors pursuant to the provisions of the Bankruptcy Code and applicable non-bankruptcy

law, as requested in the Motion; and due and sufficient notice of the Motion having been

given to the Office of The United States Trustee, Counsel to the Debtors, Counsel to the

Official Committee of Unsecured Creditors for the non-Premiere Group Debtors and all

remaining parties on the Bankruptcy Rule 2002 service list; and it appearing that no other

notice need be given; and after due deliberation and sufficient cause appearing therefore, it

is hereby

A000131

ORDERED that the Motion is granted.

BY THE COURT:

_____
The Honorable Mary F. Walrath
United States Bankruptcy Judge

Dated: _____, 2002

# EXHIBIT "A"

A000133

01/14/2002 15:31 FAX 3367279592        BLANCO TACKABERY COMBS &              ☒002/002

**BLANCO TACKABERY COMBS & MATAMOROS, P.A.**
ATTORNEYS AND COUNSELLORS AT LAW

P. O. DRAWER 25008
WINSTON-SALEM, NC 27114-5008

STRATFORD POINT BUILDING - 5TH FLOOR
110 SOUTH STRATFORD ROAD
WINSTON-SALEM, NC 27104-4299

GEORGE E. HOLLODICK
EXT 3007
GEH@BTCMLAW.COM

TELEPHONE: (336)761-1250
FACSIMILE: (336)761-1530
WEB SITE: WWW.BTCMLAW.COM

January 14, 2002

VIA FACSIMILE (1-212-836-8689)
& FEDERAL EXPRESS

Arthur J. Steinberg, Esq.
Kaye, Scholer, Fierman, Hays & Handler, LLP
425 Park Avenue
New York, NY 10022-3598

RE:    *Premiere Associates*

Dear Art:

On behalf of the Official Committee of Unsecured Creditors of Premiere Associates, Inc. and its Subsidiaries (collectively, the "Premiere Group"), demand is hereby made on each member of the Premiere Group to institute an action for breach of requisite corporate duties by (i) the directors of each member of the Premiere Group serving as of the date such member of the Premiere Group executed a Guaranty and/or other documents, including any Pledge and Security Agreement, in connection with any pre-existing indebtedness of Integrated Health Services, Inc., including without limitation, the Revolving Credit Agreement dated May 15, 1996, as amended, the Revolving Credit and Term Loan Agreement dated September 15, 1997, as amended, and the Participation Agreement dated July 31, 1997, as amended, and (ii) any officer of a member of the Premiere Group who executed any such Guaranty or other document.

As you know, the time in which the debtors can commence and prosecute certain causes of actions pursuant to Section 108 of the Bankruptcy Code may be claimed to lapse on February 2, 2002, the two year anniversary of the petition date. While reserving all rights to argue that the time period to file such a cause of action may be later, the Committee demands that prior to January 17, 2002, the Premiere Group debtors indicate in writing their willingness to timely institute an action.

I look forward to hearing from you regarding the Committee's demand. If you have any questions, please feel free to contact me.

Very truly yours,

BLANCO TACKABERY COMBS
& MATAMOROS, P.A.

George E. Hollodick

GEH/cmm
cc:    Don G. Angell (*via telecopy*)
       Thomas Cook (*via telecopy*)
       Eugene Bishop (*via telecopy*)
       Gene Tarr, Esq. (*via hand delivery*)

BTCM:170554.1

A000134

# EXHIBIT "A"

01/14/2002 15:31 FAX 3367279592          BLANCO TACKABERY COMBS &          ☎002/002

**BLANCO**
**TACKABERY**
**COMBS &**
**MATAMOROS, P.A.**
ATTORNEYS AND COUNSELLORS AT LAW

P. O. DRAWER 25008
WINSTON-SALEM, NC 27114-5008

STRATFORD POINT BUILDING - 5™ FLOOR
110 SOUTH STRATFORD ROAD
WINSTON-SALEM, NC 27104-4299

GEORGE E. HOLLODICK
EXT 3007
GEH@BTCMLAW.COM

TELEPHONE:  (336)761-1250
FACSIMILE:  (336)761-1530
WEB SITE: WWW.BTCMLAW.COM

January 14, 2002

VIA FACSIMILE (1-212-836-8689)
& FEDERAL EXPRESS

Arthur J. Steinberg, Esq.
Kaye, Scholer, Fierman, Hays & Handler, LLP
425 Park Avenue
New York, NY 10022-3598

RE:    *Premiere Associates*

Dear Art:

On behalf of the Official Committee of Unsecured Creditors of Premiere Associates, Inc. and its Subsidiaries (collectively, the "Premiere Group"), demand is hereby made on each member of the Premiere Group to institute an action for breach of requisite corporate duties by (i) the directors of each member of the Premiere Group serving as of the date such member of the Premiere Group executed a Guaranty and/or other documents, including any Pledge and Security Agreement, in connection with any pre-existing indebtedness of Integrated Health Services, Inc., including without limitation, the Revolving Credit Agreement dated May 15, 1996, as amended, the Revolving Credit and Term Loan Agreement dated September 15, 1997, as amended, and the Participation Agreement dated July 31, 1997, as amended, and (ii) any officer of a member of the Premiere Group who executed any such Guaranty or other document.

As you know, the time in which the debtors can commence and prosecute certain causes of actions pursuant to Section 108 of the Bankruptcy Code may be claimed to lapse on February 2, 2002, the two year anniversary of the petition date. While reserving all rights to argue that the time period to file such a cause of action may be later, the Committee demands that prior to January 17, 2002, the Premiere Group debtors indicate in writing their willingness to timely institute an action.

I look forward to hearing from you regarding the Committee's demand. If you have any questions, please feel free to contact me.

Very truly yours,

BLANCO TACKABERY COMBS
& MATAMOROS, P.A.

George E. Hollodick

GEH/emm
cc:    Don G. Angell (*via telecopy*)
       Thomas Cook (*via telecopy*)
       Eugene Bishop (*via telecopy*)
       Gene Tarr, Esq. (*via hand delivery*)

BTCM:170554 1

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| INTEGRATED HEALTH SERVICES, INC., et al., | ) | Case No. 00-389(MFW) |
| | ) | |
| Debtors. | ) | Jointly Administered |
| | ) | |
| | ) | **Proposed Objection Deadline:** |
| | ) | **January 22, 2002 at 4:00 p.m.** |
| | ) | **Proposed Hearing Date:** |
| | ) | **January 24, 2002 at 11:30 a.m.** |

## MOTION OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS OF PREMIERE ASSOCIATES, INC. AND ITS SUBSIDIARIES TO SHORTEN NOTICE WITH RESPECT TO THE MOTION FOR LEAVE TO FILE AN ADVERSARY PROCEEDING COMPLAINT ON BEHALF OF THE ESTATES OF PREMIERE ASSOCIATES, INC. AND ITS SUBSIDIARIES AGAINST THE DIRECTORS AND OFFICERS OF PREMIERE ASSOCIATES, INC. ET AL.

The Official Committee of Unsecured Creditors (the "Premiere Committee") of Premiere Associates, Inc. and its subsidiaries (the "Premiere Debtors") hereby moves this Court (the "Notice Motion"), pursuant to section 102 of title 11 of the United States Code (the "Bankruptcy Code"), Rule 2002 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rule 9006-1(c) of the Local Rules of the Bankruptcy Court for the District of Delaware, for an order shortening the notice period for a hearing on the Motion of the Official Committee of Unsecured Creditors of Premiere Associates, Inc. and its Subsidiaries for Leave to File an Adversary Proceeding Complaint on Behalf of the Estates (the "Estate") of Premiere Associates, Inc. and its Subsidiaries (the "Premiere Debtors") Against the Directors and Officers (the "Directors and Officers") of Premiere Associates, Inc. et al. (the "Motion") so that the Motion can be heard at the next omnibus hearing in these cases, which is scheduled for January 24, 2002 at 11:30 a.m. or at a

A000137

specially scheduled hearing prior to January 31, 2002. In support of the Notice Motion, the Premiere Committee represent as follows:

## BACKGROUND

1.    On February 2, 2000, Integrated Health Services ("IHS") and 436 affiliates (the "Debtors"), including the Premiere Debtors, filed these chapter 11 cases, which are being jointly administered.

2.    By Order entered January 4, 2002, the Court directed the United States Trustee to appoint an official committee of unsecured creditors for the Premiere Debtors. Pursuant to that Order, on January 4, 2002, the United States Trustee held a meeting, on notice, at which an unsecured creditors committee for the Premiere Debtors was formed.

3.    The Premiere Committee met to retain counsel and thereafter instructed its counsel, inter alia, to seek authority from the Court to commence an adversary proceeding on behalf of the Estates against the Directors and Officers for breaches of their fiduciary duties (the "Action").

4.    Pursuant to section 108(c), the time in which the Premiere Debtors or the Premiere Committee may bring the Action may expire in less than three weeks, on February 1, 2002. The Premiere Committee must be in a position to file an adversary proceeding complaint on or before February 1, 2002 or the possibility of bringing the Action on behalf of the Estates may be lost.

## RELIEF REQUESTED

5.      By this Motion the Premiere Committee seeks to shorten the required notice period for the Motion to eight days so that a hearing (the "Hearing") on the Motion can be held on January 24, 2002 at 11:30 a.m. (Eastern Time), the current omnibus hearing scheduled in these cases or at a specially scheduled hearing prior to January 31, 2002.

## BASIS FOR RELIEF

6.      On January 14, 2002, the Premiere Committee filed the Motion and served copies of the Motion on all parties requesting service of papers filed in these cases pursuant to Bankruptcy Rule 2002 (the "2002 List Parties"). On this same day, the Premiere Committee also served the 2002 List Parties with a notice that the Motion may be heard by this Court on January 24, 2002 at 11:30 a.m. (Eastern Time).

7.      By this Motion the Premiere Committee seeks to shorten the required notice period for the Motion so that this Court may consider the Motion at the current omnibus hearing scheduled in these cases or prior to January 31, 2002. A hearing on the Motion prior to January 31, 2002 is necessary to protect the interests of the Estate, since the Action must be brought on or before February 1, 2002.

8.      Given the recent appointment of the Premiere Committee and the imminent deadline by which a complaint in the Action must be filed, the Premiere Committee submits that the limited notice proposed is reasonable. The Premiere Committee will serve all parties requesting service of papers filed in these cases by hand delivery, facsimile transmission or overnight delivery.

WHEREFORE, the Premiere Committee respectfully requests that the Court approve the shortened notice period, or alternatively, schedule a special hearing to consider the Motion in sufficient time to allow the Premiere Committee to file a complaint on or before February 1, 2002, and grant such other and further relief as the Court deems proper.

Dated: Wilmington, Delaware
         January 14, 2002

THE BAYARD FIRM

Charlene D. Davis (No. 2336)
Anthony M. Saccullo (No. 4141)
222 Delaware Avenue, Suite 900
P.O. Box 25130
Wilmington, DE  19899
Telephone:  (302) 655-5000
Facsimile:  (302) 658-6395

-- and --

BLANCO TACKABERY
COMBS & MATAMOROS, P.A.
Gene B. Tarr, NCSB #11110
P.O. Drawer 25008
Winston-Salem, NC 27114-5008
Telephone: (336) 761-1250

Proposed Counsel to the Official Committee of Unsecured Creditors of Premiere Associates, Inc. and its Subsidiaries

SO ORDERED this _____ day

of _____, 2002

_____
The Honorable Mary F. Walrath

A000140