## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re | : | |
| | : | Chapter 11 |
| INTEGRATED HEALTH SERVICES, INC., *et al.* | : | |
| | : | Case No. 00-389(MFW) |
| Debtors. | : | (Jointly Administered) |
| ———————————————— | : | |
| | : | |
| IHS LIQUIDATING LLC, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| | : | Appeal No. 04-CV-917(GMS) |
| v. | : | |
| | : | |
| DON G. ANGELL, *et al.,* | : | |
| | : | |
| Defendants. | : | |
| ———————————————— | : | |

### BRIEF OF APPELLEES DON G. ANGELL, DON G. ANGELL IRREVOCABLE TRUST, ANGELL CARE INCORPORATED AND BERMUDA VILLAGE RETIREMENT CENTER LIMITED PARTNERSHIP

PEPPER HAMILTON LLP
David B. Stratton (Del Bar ID 960)
Hercules Plaza, Suite 5100
1313 Market Street
P.O. Box 1709
Wilmington, DE 19899-1709
(302) 777-6500

*Attorneys for Appellees*

# TABLE OF CONTENTS

**Page**

I.   COUNTER-STATEMENT OF THE ISSUES PRESENTED ON APPEAL ........................5

II.  COUNTER-STATEMENT OF THE STANDARD OF REVIEW .........................................6

III. COUNTER-STATEMENT OF THE CASE .........................................................................7

    A.   Nature of the Case ...............................................................................................7

    B.   Factual and Procedural Background .....................................................................8

IV. ARGUMENT...................................................................................................................15

    A.   Preliminary Statement........................................................................................15

    B.   The Bankruptcy Court Correctly Found that the Angell Parties Did Not Violate Any Provision of the Plan or Confirmation Order. ...........................16

    C.   The Bankruptcy Court Correctly Found That The Dismissal With Prejudice of the Angell Injunction Action Precludes IHS From Asserting The Counterclaims. ................26

V.   CONCLUSION ................................................................................................................30

PHLEGAL: #1723958 v2 (10y7q02!.DOC)

# TABLE OF AUTHORITIES

## CASES

Page

<u>Angell v. Kelly</u>, 336 F. Supp. 2d 540 (M.D.N.C. 2004) ........................................................11, 17

<u>Arizona v. California</u>, 460 U.S. 605 (1983) ................................................................................17

<u>In re Artra Group,Inc.</u>, 308 B.R. 851 (Bankr. N.D. Ill. 2003) .....................................................19

<u>Browning v. Levy</u>, 283 F.3d 761 (6th Cir. 2002) ........................................................................24

<u>CoreStates Bank, N.A. v. Huls America, Inc.</u>, 176 F.3d 187 (3d Cir. 1999) ...............................22

<u>Donaldson v. Bernstein</u>, 104 F.3d 547 (3d Cir. 1997).....................................................18, 19, 23

<u>Eagle Industries, Inc. v. Devilbliss Health Care, Inc.</u>, 702 A.2d 1228 (Del. 1997) .....................21

<u>Eastern Minerals & Chemicals Co. v. Mahan</u>, 225 F.3d 330 (3d Cir. 2000) ...............................19

<u>In re Fine Paper Antitrust Litigation</u>, 695 F.2d 494 (3d Cir. 1982)................................................2

<u>First Western SBLC, Inc. v. Mac-Tav, Inc.</u>, 231 B.R. 878 (D.N.J. 1999), *citing* <u>In re
    Weber</u>, 25 F.3d 413 (7th Cir. 1994) ....................................................................................2

<u>Glenstone Lodge v. Buckhead America Corp. (In re Buckhead America Corp.)</u>, 180 B.R.
    83 (D. Del., 1995)...............................................................................................................2

<u>In re Penn Central Transportation Co.</u>, 486 F.2d 519 (3d Cir. 1973), *cert. denied*, 415
    U.S. 990, 94 S. Ct. 1588, 39 L. Ed. 2d 886 (1974)); ...........................................................2

<u>Katchen v. Landy</u>, 382 U.S. 323, 86 S. Ct. 467, 15 L. Ed. 2d 391 (1966)...................................23

<u>In re Matunas</u>, 261 B.R. 129 (Bankr. D.N.J. 2001).....................................................................23

<u>Nantucket Investors II v. California Federal Bank (In re Indian Palms Associates)</u>, 61
    F.3d 197 (3d Cir. 1995) .....................................................................................................10

<u>Purter v. Heckler</u>, 771 F.2d 682 (3d Cir. 1985)..............................................................18, 19, 23

<u>Resolution Trust Co. v. Chitwood</u>, 836 F. Supp. 1123 (E.D. Pa. 1993)........................................19

<u>In re United Merchants and Manufacturers, Inc.</u>, 1981 U.S. Dist. LEXIS 15874
    (S.D.N.Y. 1981)................................................................................................................20

PHLEGAL: #1723958 v2 (10y7q02!.DOC)

United States v. Athlone Industrial, 746 F.2d 977 (3d Cir. 1984)................................24

Wallis v. Justice Oaks II, Ltd. (In re Justice Oaks II, Ltd.), 898 F.2d 1544 (11th Cir. 1990)...........................................................................................................................23

## MISCELLANEOUS

Restatement (Second) of Judgments § 24 (1982).........................................................24

*Restatement (Second) of Judgments*, § 36 (1982)..................................................18, 19

PHLEGAL: #1723958 v2 (10y7q02!.DOC)

Appellees Don G. Angell ("Angell"), Don G. Angell Irrevocable Trust ("Trust"), Angell Care Incorporated ("Angell Care," and together with Angell and the Trust, the "Angell Plaintiffs") and Bermuda Village Retirement Center Limited Partnership ("Bermuda Village") (collectively, the "Angell Parties" or "Appellees") respectfully submit this Brief in opposition to the Brief of Appellant IHS Liquidating LLC ("Appellant" or "IHS").

## I.  COUNTER-STATEMENT OF THE ISSUES PRESENTED ON APPEAL

1.  Whether the Bankruptcy Court abused its discretion by granting Appellees' Motion to Dismiss Counterclaims Pursuant to Federal Rule of Bankruptcy Procedure 7012 and Preliminary Response to Objection to Claim (the "Motion to Dismiss").

2.  Whether the Bankruptcy Court abused its discretion by denying Appellant's cross-motion for judgment on the pleadings set forth in *IHS Liquidating LLC's Objection to Defendant's Motion to Dismiss Counterclaim Pursuant to Federal Rule of Bankruptcy Procedure 7012 and Preliminary Response to Objection to Claims and (B) Cross-Motion for Judgment on the Pleadings* (the "Cross-Motion").

3.  Whether the Bankruptcy Court abused its discretion by holding that the Appellees did not violate any provision of the *Amended Joint Plan of Reorganization of Integrated Health Services, Inc. and Its Subsidiaries under Chapter 11 of the Bankruptcy Code* (the "Plan") *or the Findings of Fact, Conclusions of Law and Order Under 11 U.S.C. Section 1129(a) and (b) and Fed.R.Bankr.P. 3020 Confirming the Amended Joint Plan of Reorganization of Integrated Health Services, Inc. and Its Subsidiaries under Chapter 11 of the Bankruptcy Code* (the "Confirmation Order").

4.  Whether the Bankruptcy Court abused its discretion by holding that neither the Plan nor the Confirmation Order prohibit Appellees from prosecuting any cause of action they asserted in *Don G. Angell, et al. v. Elizabeth B. Kelly et al.* (the "North Carolina

Action"), pending in the United States District Court for the Middle District of North Carolina, Case No. 01-CV-435 (the "North Carolina Court").

      5.     Whether the Bankruptcy Court abused its discretion by holding that Appellant, having dismissed with prejudice its adversary complaint for declaratory and injunction relief against the Angell Parties and having agreed that the North Carolina Action should go forward, is barred by *res judicata* from asserting that any cause of action asserted by Appellees in the North Carolina Action belonged to the Debtors' estates.

## II.     COUNTER-STATEMENT OF THE STANDARD OF REVIEW

      As discussed in detail below, the dispute below and this appeal involve the Bankruptcy Court's application of the explicit and unambiguous terms of a confirmed plan of reorganization and the order confirming that plan.  A bankruptcy court's interpretation of a confirmed plan of reorganization is reviewed under the "abuse of discretion " standard and is entitled to great weight and deference.  *First Western SBLC, Inc. v. Mac-Tav, Inc.*, 231 B.R. 878, 883-884 (D.N.J. 1999), *citing In re Weber*, 25 F.3d 413, 416 (7th Cir. 1994).  A district court will not reverse a bankruptcy court's interpretation of its own order unless the record clearly shows an abuse of discretion.  *Glenstone Lodge v. Buckhead Am. Corp. (In re Buckhead Am. Corp.)*, 180 B.R. 83, 88 (D. Del., 1995) (affirming bankruptcy court's interpretation of claims bar date).  Absent a compelling basis to hold otherwise, a "court's interpretation of its own order in the decision appealed from is entitled to great weight."  *Id. (quoting In re Penn Central Transportation* Co., 486 F.2d 519, 531 (3d Cir. 1973), *cert. denied*, 415 U.S. 990, 94 S. Ct. 1588, 39 L. Ed. 2d 886 (1974)); see *also, In re Fine Paper Antitrust Litigation*, 695 F.2d 494, 498 (3d Cir. 1982) ("We must give particular deference to the district court's interpretation of its own order.")

III.    COUNTER-STATEMENT OF THE CASE

A.      Nature of the Case

The Angell plaintiffs are owed in excess of $13 million by the Debtor's bankruptcy estate.  As a litigation strategy concocted to excuse making a distribution of approximately $780,000 to the Angell Plaintiffs, IHS commenced this proceeding by bringing counterclaims against Appellees' claims against the Debtors' estates.  Although IHS does not dispute either the liability for or the amounts of Appellees' claims, it seeks to subordinate or eliminate those claims as a "sanction" for violating what IHS contends was an implicit requirement in the Plan and Confirmation Order that Appellees dismiss or amend their complaint against certain former officers of the Debtors in the North Carolina Action.

Appellees moved to dismiss IHS's counterclaims because they were precluded by the explicit terms of the Plan and because nothing in the Plan or the Confirmation Order required Appellees to dismiss or amend their complaint in the North Carolina action.  To the contrary, the Plan and Confirmation Order expressly permitted them to prosecute the North Carolina Action in its entirety.  In addition, Appellees moved to dismiss IHS's counterclaims as barred by *res judicata* by virtue of IHS's dismissal with prejudice of an earlier action making the same contentions as the counterclaims (the "Angell Injunction Action").  IHS opposed the motion to dismiss and brought the Cross-Motion for judgment on the pleadings.

To no one's surprise, the Bankruptcy Court, applying the specific language of the Plan and its own orders, found that Appellees had not violated the Plan or Confirmation Order but were in fact expressly permitted to prosecute the North Carolina Action.  In addition, the Bankruptcy Court found that that as a result of IHS's dismissal of the Angell Injunction Action with prejudice, IHS was barred by the doctrine of *res judicata* from making the claims set forth in its Counterclaims.  Accordingly, the Bankruptcy Court granted Appellees' Motion to Dismiss

-7-

the Counterclaims and denied IHS's cross-motion for judgment on the pleadings.  IHS then

appealed to this Court.

**B.     Factual and Procedural Background**

Because Appellant's recitation of the procedural background of this appeal is

incomplete, confusing, and misleading, the Angell Parties offer this discussion of the factual and

procedural background of this appeal.

1.     The Sale of the Angell Parties' Facilities to Premiere

In 1994, the Angell Plaintiffs contracted to sell various health care companies to

Premiere Associates, Inc. ("Premiere").  The Angell Plaintiffs financed Premiere's purchase

pursuant to a loan agreement under which Premiere issued promissory notes in the amount of

$13,958,000 (the "Notes"), secured by a pledge of all outstanding stock in Premiere and its

subsidiaries and guaranteed by Premiere's shareholders.  The loan agreement contained

covenants restricting Premiere's ability to transfer its stock without the consent of the Angell

Plaintiffs.  (D-41, Exh. A).[1]

2.     The Release of the Angell Parties' Security

In February 1998, Premiere entered into a merger agreement with Integrated

Health Services, Inc. ("IHS"), under which IHS would purchase all of the stock in Premiere and

its subsidiaries.  The merger could not go forward without the Angell Plaintiffs' consent.  Certain

officers of IHS (the "Former Officers") approached the Angell Plaintiffs and requested that they

release their security interests.  The Former Officers represented to the Angell Plaintiffs that the

Notes would have priority over all other indebtedness of Premiere.  The Angell Plaintiffs

---

[1] References to "D__" are to Appellant's Designation of Items to Be Included in the Record on Appeal, filed on July 12, 2004.  References to "CD__" are to Appellees' Counter-Designation of Items to Be Included in the Record on Appeal, filed on July 22, 2004.

consented and executed an agreement on March 31, 1998, releasing their security interests (the "Release Agreement").  (D-41, Exh. A).

What the Angell Plaintiffs did not know, and the Former Officers did not disclose, was that IHS already had debt obligations of $2.15 billion owing to Citibank, N.A. under a credit agreement that required subsidiaries of IHS to unconditionally guarantee payment of the entire $2.15 billion obligation, which would be senior to all other indebtedness of IHS and its subsidiaries.  (D-41, Exh. A).

On June 25, 1998, Premiere merged with IHS, and on the same date, IHS executed a guaranty of the Notes.  The Former Officers represented to the Angell Plaintiffs that the Notes would be senior in priority to all other obligations of Premiere.  (D-41, Exh. A).

In July and August of 1998, Premiere and its subsidiaries entered a series of joinder agreements by which each unconditionally guaranteed payment of the $2.15 billion obligation owed by IHS to Citibank (the "Joinder Agreements").  Prior to the merger with IHS, Premiere was solvent and capable of paying the Notes held by the Angell Plaintiffs.  As a result of the merger and Premiere's entry into the Joinder Agreements, Premiere was rendered insolvent.  (D-41, Exh. A; D-11).

### 3. The Bankruptcy Filing

On February 2, 2000, IHS and all of its subsidiaries, including Premiere, filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code.  On August 25, 2000, the Angell Parties filed proofs of claim for the balances owed under the Notes (the "Angell Claims").  (D-50, 51 and 52).

PHLEGAL #1723958 v2 (10y7q02!.DOC)

4.     The North Carolina Action

On March 28, 2001, the Angell Plaintiffs filed an action in North Carolina state court, against the Former Officers, alleging, *inter alia,* that the Former Officers made false or negligent misrepresentations that induced the Angell Plaintiffs to enter into the Release Agreement.  (D-1, Exh. A).  The Former Officers subsequently removed the case to the United States District Court for the Middle District of North Carolina, where it remains pending.  The North Carolina Action seeks to recover the damages suffered by the Angell Plaintiffs as a result of releasing their security.

5.     The Angell Injunction Action

On April 12, 2001, IHS and Premiere commenced an adversary proceeding in the Bankruptcy Court by filing a complaint and motion for preliminary injunction that sought to enjoin the Angell Plaintiffs from continuing to prosecute the North Carolina Action (the "Angell Injunction Action").  (D-1).  The Angell Injunction Action alleged that some of the causes of action asserted in the North Carolina Action were claims belonging to the Debtors' estates (the "Estate Claims") and could only be asserted by the Debtors.  The Angell Plaintiffs opposed the motion for preliminary injunction, but before the Bankruptcy Court decided the matter, the parties negotiated a stipulated order by which the Angell Plaintiffs agreed to stay their prosecution of the North Carolina Action (the "Stay Order").  (D-2).

6.     The Committee D & O Action

On December 20, 2001, the Bankruptcy Court ordered the appointment of an official committee of unsecured creditors of Premiere (the "Premiere Committee").  Three creditors were appointed to the Premiere Committee:  Great Oaks Nursing Home, Inc. and Health Care Services Group, Inc. (both entities unrelated to the Angell Plaintiffs), and Angell

-10-

Care, Inc. and then Bermuda Village Retirement Center Ltd. Partnership, which successively held the third seat on the Premiere Committee. (D-6).

On January 24, 2002, the Bankruptcy Court entered an order authorizing the Premiere Committee to file an adversary proceeding on behalf of the bankruptcy estates of Premiere and its subsidiaries against certain officers and directors of Premiere and IHS. (D-13). On February 1, 2002, the Premiere Committee filed a complaint against various officers and directors of Premiere and IHS, including the Former Officers named in the North Carolina Action (the "Committee D&O Action"). (D-11). The Committee D&O Action alleged, *inter alia*, that the defendants breached their fiduciary duties to Premiere and all of its creditors by entering into the Joinder Agreements and thereby rendering Premiere insolvent, and it sought to recover the damages incurred by Premiere and all of its creditors as a result of the defendants' actions. (D-11).

7.    The Plan and Confirmation Order

On May 12, 2003, the Bankruptcy Court entered the Confirmation Order confirming the Plan. (D-29). IHS Liquidating LLC was created as a successor-in-interest to the Debtors for purposes of implementing the Plan.

Section 10.4 of the Plan provided that (i) the Angell Injunction Action "shall be deemed to be dismissed with prejudice"; (ii) the Stay Order "shall be deemed vacated"; and (iii) to the extent the automatic stay applied to the North Carolina Action, the "stay shall be deemed modified to allow the [North Carolina Action] to be prosecuted." Section 10.4 further provided that "nothing [in the Plan] shall be construed as waiving or limiting the right of any defendant in the [North Carolina Action] to raise any defenses or counterclaims it may have, including, without limitation, that the claims asserted in the [North Carolina Action] are property of the

-11-

Debtors' estates and that the [Angell Plaintiffs] do not have standing to assert such claims."  (D-28).

The Confirmation Order (which IHS and Appellants' counsel drafted) expressly provides that:

- Adv. Pro. No. 01-1030 (the "Angell Injunction Action") shall be deemed to be dismissed with prejudice (¶ 67(a)(i));

- [The Stay Order] shall be deemed to be vacated (¶ 67(a)(ii));

- To the extent any stay was applicable, such stay shall be deemed modified to allow the [North Carolina Action] to be prosecuted; provided that nothing herein shall be construed as waiving or limiting the right of any defendant in the North Carolina Action to raise the defense that the claims asserted are property of the Debtors' estates (¶ 67(a)(iii)).

(D-29).

### 8.    The Resumption of the North Carolina Action

In accordance with the Plan and Confirmation Order, and with the full knowledge of IHS, the Angell Plaintiffs resumed their litigation against the Officers and Directors in the North Carolina Action.  In May of 2003, also in accordance with the Plan and Confirmation Order, the Officers and Directors moved to dismiss that Action on the ground that some of the claims asserted therein were Estate Claims that the Angell Plaintiffs lacked standing to assert. (Appellant's Appendix, Item 2).

For nearly a year, from May of 2003 until March 23, 2004, IHS raised no objection to the Angell Plaintiffs' prosecution of the North Carolina Action.  At no time during that ten-month period did IHS ever inform the Angell Plaintiffs that they considered the prosecution of the North Carolina Action to constitute a violation of the Plan or "misconduct" that was interfering with their implementation of the Plan.

9.    The Counterclaims against the Angell Parties

Under the Plan, Appellees were entitled to a distribution equal to approximately 6% of their allowed claims.  IHS needed to come up with some basis – any basis – to dispute Appellees' claims in the bankruptcy so that the Angell Plaintiffs would not receive their distribution.  Accordingly, on March 23, 2004, IHS filed and served *IHS Liquidating LLC's Objections and Counterclaims to the Claims Asserted by Don G. Angell, Don G. Angell Irrevocable Trust and Angell Care Incorporated (Proof of Claim Nos. 9162-9172, 9657, 10620, 10623 and 10625)* (the "Counterclaims"), asserting for the first time that the Angell Plaintiffs' continued prosecution of the North Carolina Action was in violation of the Plan and Confirmation Order, and that the Angell Claims should be disallowed as a sanction for their "misconduct."  (D-41).

IHS raised six separate Counterclaims, as follows:

- First, to "Determine Interest in Property," requesting that the Bankruptcy Court find that the claims asserted by the Angell Plaintiffs in the North Carolina Action "belong to the Premiere estate."

- Second, seeking a declaratory judgment that the Angell Plaintiffs' prosecution of the North Carolina Action is contrary to the Plan and in violation of the Confirmation Order.

- Third, seeking a declaration that the Angell Plaintiffs cannot continue to prosecute the North Carolina Action.

- Fourth, seeking to subordinate the Angell Claims, on the basis of alleged misconduct on the part of the Angell Plaintiffs in prosecuting the North Carolina Action.

- Fifth, seeking to enjoin the Angell Plaintiffs from continuing the prosecution of the North Carolina Action.

- Sixth, seeking money damages from the Angell Plaintiffs' for their alleged improper conduct in prosecuting the North Carolina Action.

Because it was obvious that the Counterclaims were barred by the Plan and Confirmation Order, the Angell Parties moved to dismiss the Counterclaims, and IHS opposed that motion and brought a cross-motion for judgment on the pleadings. (D-44). The Bankruptcy Court conducted a hearing on May 12, 2004, and after considering the arguments of counsel, ruled that the Angell Plaintiffs did not violate any provision of the Plan or Confirmation Order by prosecuting the North Carolina Action, and that as a result of its dismissal of the Angell Injunction Action with prejudice, IHS was barred by *res judicata* from asserting that the North Carolina Action included Estate Claims. (CD-3).[2]

Accordingly, on June 25, 2004, the Bankruptcy Court entered its order granting the Angell Parties' motion to dismiss the Counterclaims, denying IHS's cross-motion for judgment on the pleadings, and allowing the Angell Parties' proofs of claim. (D-48). In order to insure that the Angell Plaintiffs' claims continued to be disputed and, therefore, would not be entitled to a distribution under the Plan, Appellants filed this appeal on June 25, 2004.

10.    The Opinion and Order in the North Carolina Action

On September 17, 2004, after the entry of the order appealed from in this case, the United States District Court for the Middle District of North Carolina issued a Memorandum Opinion and Order in which it ruled on the Former Officers' motion to dismiss the North Carolina Action.[3] The North Carolina Court denied the motion to dismiss the claims for fraud,

---

[2] The May 12, 2004 Transcript is included in Appellees' Appendix as Item 1.

[3] Because the North Carolina decision postdated the Bankruptcy Court's decision, it was not considered by the Bankruptcy Court and was not part of the record below. IHS has included the Memorandum Opinion and Order as Item 2 of its Appendix of Items Cited in Opening Brief of Appellant IHS Liquidating LLC, but in fact it is not properly part of the record. However, to the extent that IHS's inclusion of this material in its Appendix could be construed as a request that this Court take judicial notice of the North Carolina decision pursuant to Federal Rule of Evidence 201, *see Nantucket Investors II v. California Fed. Bank (In re Indian Palms Assocs.),* 61 F.3d 197, 205 (3d Cir. 1995), Appellees have no objection.

-14-

negligent misrepresentation and unfair and deceptive trade practices, holding that the Angell Plaintiffs had standing to assert those claims and had stated viable causes of action. The North Carolina Court held that these causes of action were based on an injury unique, personal and peculiar to the Angell Plaintiffs, which by definition could not have been pursued by the trustee or creditors' committee in the bankruptcy proceeding. The North Carolina Action is continuing to proceed as to those causes of action. The North Carolina Court did not rule that any of the Angell Plaintiffs' claims were barred by the dismissal of the Committee D&O Action. See *Angell v. Kelly*, 336 F.Supp.2d 540, 544-45 (M.D.N.C. 2004).

## IV.    ARGUMENT

### A.    Preliminary Statement

The Angell Plaintiffs are owed in excess of $13 million by the IHS estate. They have been waiting for a distribution on that amount since the Plan was confirmed. The proceedings before the Bankruptcy Court were without foundation in law or fact and this appeal is a frivolous exercise to further delay the day when Appellees will be entitled to a distribution on their claims.[4]  In short, the claim objections, Counterclaims and this appeal have been pursued as a litigation strategy. The Bankruptcy Court summarily rejected Appellant's arguments. In this appeal, Appellant sets forth a series of confused and confusing arguments based on an inaccurate, misleading and incomplete recitation of the record. Appellants also raise several new arguments for the first time. As the following arguments will demonstrate, the appeal is wholly without merit.

---

[4] Appellees reserve the right to seek sanctions pursuant to Federal Rule of Bankruptcy Procedure 8020 for Appellant's pursuit of this appeal.

PHLEGAL: #1723958 v2 (10y7q02!.DOC)

B.   **The Bankruptcy Court Correctly Found that the Angell Parties Did Not Violate Any Provision of the Plan or Confirmation Order.**

    1.   The Plain and Unambiguous Plan Language Expressly Permitted the Angell Plaintiffs to Continue the North Carolina Action in its Entirety.

IHS argues that the Plan required the Angell Plaintiffs to dismiss certain of their causes of action in the North Carolina Action. Yet IHS does not, and cannot, point to any provision in the Plan, the Confirmation Order, or any other Plan Document that required the Angell Plaintiffs to dismiss any of their claims in the North Carolina Action. Indeed, IHS conceded at the hearing on the Motion to Dismiss "that there is nothing ... in the plan that has that explicit language." (CD-3) (Appellees' Appendix, Item 1, at 19).

Instead, IHS contends that "by negative implication" (CD-3) (Appellees' Appendix, Item 1, at 20), the Plan prohibited the Angell Plaintiffs from pursuing Estate Claims in the North Carolina Action. Forfeiture of a $13 million claim would be a rather extreme sanction for an alleged prohibition expressed only by "negative implication," but in any event IHS's argument fails. Clearly there can be no prohibition by implication of conduct that is expressly permitted by the same document. The Plan specifically, unconditionally and explicitly authorized the Angell Plaintiffs to resume prosecution of the North Carolina Action: "[T]o the extent any stay pursuant to Section 362 or 105 is applicable to the [North Carolina Action], such stay shall be deemed modified to allow the North Carolina Action to be prosecuted." Plan, at ¶ 10.4. (D-28).[5] *See also* Disclosure Statement, at p. 74-75 ("The Debtors have agreed with Don Angell and certain of his affiliates . . . [that the] stay shall be deemed modified to allow the North

---

    [5] Relevant portions of the Plan are included in Appellees' Appendix at Item 2.

Carolina Action to be prosecuted . . . .") (D-28).[6]  Nothing in the Plan language limited this permission to any particular causes of action.

IHS urges the Court to ignore the express and unambiguous language of the Plan and instead invites this Court to somehow read into the Plan a tacit requirement that the Angell Plaintiffs dismiss some or all of the claims they asserted in the North Carolina Action.  But the existence of any such requirement is flatly contradicted by the Plan's express reservation of the Former Officers' (and only the Former Officers') right to argue that some or all of the causes of action were actually Estate Claims and not individual claims.  The reservation of this right to the Former Officers – but not to IHS -- would be meaningless if the Plan actually required the Angell Plaintiffs to dismiss those alleged Estate Claims as IHS argues.

Three separate provisions of the Plan demonstrate that it clearly and unambiguously permitted the Angell Plaintiffs to resume the North Carolina Action in its entirety:

### Section 10.4:

. . . Notwithstanding the foregoing, on the earlier of the Confirmation Date and April 29, 2003: (i) the adversary proceeding pending in the IHS Reorganization Case captioned [*Integrated Health Serv., Inc., et al. v. Angell, et al.*], Adv. Pro. No. 01-1030 (the "Angell Injunction Action") shall be deemed to be dismissed with prejudice; (ii) the Stipulation and Order, dated June 12, 2001, effective as of April 19, 2001 [Docket No. 20] entered in the Angell Injunction Action shall be deemed to be vacated, and (iii) to the extent any stay pursuant to Section 362 or 105 is applicable to the [North Carolina Action], such stay shall be deemed modified to allow the North Carolina Action to be prosecuted; provided, however, that nothing herein shall be construed as waiving of limiting the right of any defendant in the North Carolina Action to raise any defenses or counterclaims it may have, including without limitation, that the claims asserted in

---

[6] Relevant portions of the Disclosure Statement are included in Appellees' Appendix as Item 3.

the North Carolina Action are property of the Debtors' estates and that the plaintiffs do not have standing to assert such claims; . . . .

The Debtors and the plaintiffs in the North Carolina Action agree to bear their own fees and expenses, including attorneys' fees, incurred in connection with the Angell Injunction Action. Nothing contained in the Disclosure Statement, the Plan or the Confirmation Order shall be construed as discharging or releasing the third party claims held by the plaintiffs in the North Carolina Action against any non-Debtor party including the defendants in the North Carolina Action.

**Section 10.9**:

As of the Effective Date, the motion pending in the IHS Reorganization Cases entitled *Motion of the Official Committee of Unsecured Creditors of Premiere Associates, Inc. and its Subsidiaries for Leave to File an Adversary Proceeding Complaint on Behalf of Premiere Associates, Inc. and its Subsidiaries* filed on January 9, 2002 [Docket No. 6126]) ("the Premiere Avoidance Motion") and the adversary complaint filed in the IHS Reorganization cases captioned *Official Committee of Unsecured Creditors of Premiere Associates, Inc. and its Subsidiaries, on behalf of Premiere Associates, Inc., et al, v. Daniel J. Booth, Ronald L. Lord, C. Taylor Pickett, Marshall Elkins and Marc Levin*, filed on February 1, 2002 [Docket No. 6376] (the "Premiere D&O Action") shall each be deemed to be dismissed with prejudice.

**Section 5.5**:

As of the Effective Date, the respective officers, directors, agents, employees, representatives, financial advisors, professionals, accountants, and attorneys of the Debtors, solely to the extent of their direct and indirect participation in the business and financial affairs of the Debtors, shall be deemed released by the Debtors and the Debtors' estates from any and all Claims against them held by the Debtors or the Debtors' estates solely to the extent such Claims relate to their conduct in their respective capacities as representatives of the Debtors, except as otherwise expressly provided in the Plan or the Confirmation Order.

The effect and meaning of these provisions are clear and unambiguous:

- The Debtors released the Former Officers from any claims the Debtors may have had against them relating to the discharge of their duties. Plan ¶5.5.

PHLEGAL: #1723958 v2 (10y7q02!.DOC)

- The Premiere Committee agreed to dismiss with prejudice its D&O Action. Plan ¶10.9.

- The Debtors agreed to dismiss **with prejudice** the Angell Injunction Action. Plan ¶10.4.

- The Angell Plaintiffs were given permission to prosecute the North Carolina Action. Plan ¶10.4.

- The Former Officers reserved their right to argue that some or all of the causes of action pursued in the North Carolina Action were actually estate claims as to which the Angell Plaintiffs had no standing. Plan ¶10.4.

Likewise, the Confirmation Order (D-29) clearly and unambiguously permitted the Angell Plaintiffs to prosecute the North Carolina Action, as follows:

- Adv. Pro. No. 01-1030 (the "Angell Injunction Action") shall be deemed to be dismissed with prejudice (¶ 67(a)(i))

- [The Stay Order] shall be deemed to be vacated (¶ 67(a)(ii))

- To the extent any stay was applicable, such stay shall be deemed modified to allow the [North Carolina Action] to be prosecuted; provided that nothing herein shall be construed as waiving or limiting the right of any defendant in the North Carolina Action to raise the defense that the claims asserted are property of the Debtors' estates (¶ 67(a)(iii))

There is nothing in the Plan, Confirmation Order or any other plan document that made any determination that any of causes of action in the North Carolina Action were Estate Claims or that otherwise required the Angell Plaintiffs to dismiss or amend any of those causes of action. Neither the Plan, the Confirmation Order nor any other plan document purports to resolve the dispute concerning whether any of the causes of action asserted in the North Carolina Action were Estate Claims. Rather, that question was reserved for the Former Officers to raise in the North Carolina Action if they so chose. Under the plain and unambiguous language of the Plan and Confirmation Order, the Angell Plaintiffs had the right to continue the North Carolina Action. Clearly there was no "misconduct" or Plan violation in doing so.

2.    <u>Sections 10.9 and 5.5 Do Not Alter The Plain Meaning Of Section 10.4.</u>

IHS argues that Section 10.4 of the Plan must be interpreted not as authorization for the Angell Plaintiffs to resume the North Carolina Action, but rather as a mandate that the Angell Plaintiffs dismiss certain of their claims in the North Carolina Action.  IHS reaches this tortured result by arguing that Sections 5.5 and 10.9 act to limit the express language of Section 10.4, because the dismissal of the Committee D&O Action and the Debtors' release of the Former Officers settled all of the Estate Claims.  This much no one disputes.[7]  But IHS then leaps from this premise to the untenable conclusion that the Plan (a) determined that the North Carolina Action included Estate Claims, and (b) required the Angell Plaintiffs to dismiss them.  The Bankruptcy Court, interpreting its own Confirmation Order and the Plan, disagreed.

IHS's reading of these three sections of the Plan cannot be reconciled with the plain language of the Plan.  The Angell Plaintiffs were given leave to pursue *all* the claims in the North Carolina Action.  There was no effort to limit which claims would be prosecuted, and no identification of any causes of action to be dismissed.  The Plan authorized the continued prosecution of the North Carolina Action in its entirety.  Moreover, the express reservation given to the Former Officers evidenced that there remained a dispute as to what constituted an Estate Claim and that the matter was to be decided, if at all, by the North Carolina Court (precisely as it has done).

IHS's argument would require the Court to ignore the plain language of Section 10.4, and rewrite it to provide that the "stay shall be deemed modified to allow the North Carolina Action to be prosecuted *except for the causes of action therein that the Debtors believe*

---

[7] The Angell Plaintiffs have never contended that they had the right to prosecute Estate Claims, but rather, they have sought damages for the unique injuries that they suffered individually as a result of the Former Officers' actions and representations.

*are Estate claims, which the Angell Plaintiffs are hereby required to dismiss."* In order to be consistent, the Court would then have had to further rewrite Section 10.4 to provide that the Angell Injunction Action was dismissed *without* prejudice, and to delete the reservation of the Former Officers' right to argue that some of the causes of action in the North Carolina Action were Estate Claims. This would amount to such a liberal rewriting of the Plan as to constitute a different document altogether.

The dismissal of the Committee D&O Action provided for in Section 10.9 of the Plan likewise does not alter the plain meaning of Section 10.4 and its express authorization to resume the North Carolina Action. IHS argues that the Committee D&O Action established the "law of the case" that the claims asserted by the Angell Plaintiffs in the North Carolina Action belonged to the Debtors' estates and not to the Angell Plaintiffs. (Appellant's Brief, at 13). This assertion is wrong as a matter of both law and fact. First, the law of the case doctrine requires that the court actually rule. *Arizona v. California*, 460 U.S. 605, 618 (1983). The Bankruptcy Court never ruled on the Estate Claim issue, but rather preserved that issue for the Former Officers to raise in the North Carolina Action.

Second, the fact that the Premiere Committee had certain claims against the Former Officers does not mean that the Angell Plaintiffs could not also possess the same claims against the Former Officers. The North Carolina Court recognized this proposition. See *Angell*, 336 F.Supp.2d at 544-45 (recognizing that individual creditors have standing to bring actions against corporation or its officers and directors when creditors have suffered unique, specialized injury). As the Bankruptcy Court recognized, "there can be an argument that it [the conduct of the Former Officers] harms the entire estate at the same time that there's an argument that it harmed a specific creditor in a specific manner." (CD-3) (Appellees' Appendix, Item 1, at 15).

The conduct of the Former Officers injured the estate generally and the Angell Plaintiffs specifically; the two are not mutually exclusive. Indeed, IHS conceded this point at a hearing on a related issue:

> [T]he effective date of the plan also triggered the dismissal of the Premiere Creditors' Committee causes of action and in our papers, highlight *the overlap between what was in the estate cause of action and in the individual cause of action.*

(Appellant's Appendix, Item 14, at 27)(emphasis added).

Therefore, neither the filing nor the dismissal of the Committee D&O Action established whether the claims asserted in the North Carolina Action were or were not Estate Claims. But IHS argues that this ultimate determination exists by negative implication; because the Angell Plaintiffs were "at the helm" of the Premiere Committee, IHS argues, the filing of the Committee D&O Action means that the Angell Plaintiffs "essentially conceded" that the claims in the North Carolina Action were Estate Claims, and the dismissal of the Committee Action means that the Angell Plaintiffs were obligated to also dismiss the North Carolina Action. The illogic of this proposition is apparent: the dismissal of the Committee D&O Action could just as easily be construed as a recognition that the claims in the D&O Action were *not* Estate Claims, but rather belonged to the Angell Plaintiffs individually.

Finally, the dismissal of the Committee D&O Action can have no preclusive effect on the Angell Plaintiffs. First, the Angell Plaintiffs were not parties to that action, a prerequisite to barring future claims. *Donaldson v. Bernstein*, 104 F.3d 547, 554 (3d Cir. 1997); *Purter v. Heckler*, 771 F.2d 682, 690 (3d Cir. 1985). A creditors' committee is a different legal entity from its members, and the actions of a committee cannot be attributed to its individual members. *See Restatement (Second) of Judgments*, § 36 (1982). As a committee member, Angell Care/Bermuda Village owed fiduciary duties to all of Premiere's unsecured creditors, and

-22-

could not further the Angell Plaintiffs' interests to the detriment of the general unsecured creditor class. Because the furtherance of its fiduciary duties may conflict with individual interests, an entity cannot be bound by actions it has taken in its capacity as a fiduciary. *See* Restatement (Second) of Judgments § 36 (1982). *See also, Resolution Trust Co. v. Chitwood*, 836 F.Supp. 1123 (E.D. Pa. 1993) (*res judicata* bars subsequent claim only to extent party is asserting representative claim; individual claims not barred).

IHS cites to *In re Artra Group, Inc.*, 308 B.R. 851, 857 (Bankr. N.D. Ill. 2003) for the proposition that the Angell Plaintiffs were "in privity" with the Premiere Committee and are thus bound by the dismissal of the Committee D&O Action. But the *Artra* court held only that all creditors are bound by a committee's action when the committee is pursuing estate claims on their behalf. It did *not* hold that a creditor's individual cause of action would be lost by virtue of the committee's dismissal of estate claims. Nor did the *Artra* court hold that a committee's dismissal of estate claims constitutes a determination of whether an individual creditor's claims belong to the estate or are individual causes of action belonging to him or her alone.

This is the essential issue that was not resolved by the dismissal of the Committee D&O Action: whether the claims in the North Carolina Action were Estate Claims or rather were claims for a separate and unique injury suffered by the Angell Plaintiffs alone. *Res judicata* bars subsequent actions only if the claim asserted in the subsequent action was actually decided in the previous action. *Donaldson*, 104 F.3d at 554; *Purter*, 771 F.2d at 690. *See also Eastern Minerals & Chemicals Co. v. Mahan*, 225 F.3d 330, 339 (3d Cir. 2000) (while "one does not get a second bite at the proverbial apple ... care must be taken in determining whether the first bite was actually taken such that it would preclude the second"). Not only was there no determination that the claims in the North Carolina Action were Estate Claims, but the

Bankruptcy Court expressly reserved that issue for the Former Officers to raise in the North

Carolina Action. The question was thus carved out of the dismissal of the Committee D&O

Action, so that there can be no *res judicata* effect as to that issue.

IHS also argues that the plain meaning of Section 10.4 is altered by the release of

the Former Officers under Section 5.5 of the Plan. But that release was "by the Debtors and the

Debtors' estates" and was a release from "any and all Claims against them held by the Debtors or

the Debtors' estates." It was not a release by the Angell Plaintiffs and it was not a release of any

claims held by the Angell Plaintiffs. There is no basis whatsoever to conclude that IHS's own

release of the Former Officers acted as a prohibition against the Angell Plaintiffs' prosecution of

their claims against the Former Officers, particularly when Section 10.4 of the Plan specifically

permitted them to continue that prosecution in the North Carolina Action

In sum, IHS's "negative implication" argument cannot be fairly read into the Plan,

not only because nothing in the Plan language lends itself to such an interpretation, but also

because the actual Plan language clearly and unambiguously contradicts it.

    3.    Extrinsic Evidence May Not Be Considered To Modify The
          Unambiguous Plan Language.

IHS attempts to avoid the plain language of the Plan and Confirmation Order by

proffering extrinsic evidence of its secret intentions and understanding of the effect of Plan

terms. Even if there were any such credible evidence, reliance on it would be improper. The

Plan is a contract, and therefore subject to state law principles of contract construction, including

the application of the parol evidence rule. *See e.g., In re United Merchants and Manufacturers,*

*Inc.*, 1981 U.S. Dist. LEXIS 15874 (S.D.N.Y. 1981). Under Delaware law, which the Plan

specifies as controlling, extrinsic evidence may not be used to interpret the intent of the parties

when a contract is unambiguous. *Eagle Industries, Inc. v. Devilbliss Health Care, Inc.*, 702 A.2d

1228, 1232-3 (Del. 1997). There is no ambiguity in the meaning or effect of the relevant Plan terms quoted above. Therefore, consideration of extrinsic evidence of IHS's unilateral interpretation of Plan terms to contradict its plain meaning is not permitted. This result is particularly appropriate where, as here, Appellants attempt to rely on statements by their counsel after the Confirmation Order was entered to create a new "spin" on its meaning.

In any event, the extrinsic evidence actually supports the plain-meaning interpretation of the Plan terms. For example, at a hearing on February 26, 2003, counsel for IHS stated his understanding of the Plan settlement being accomplished with the Angell Plaintiffs:

> The stay will be lifted . . . . That litigation will then go forward in North Carolina. **The estate, to the extent that some of these causes of their claims raised estate causes of action, the defendants will be able to raise those issues in the North Carolina court**, that they don't belong to Mr. Angell individually.

> (D-44, Exh. B) (Appellees' Appendix, Item 4, at 18, lines 9-16) (Emphasis

added). IHS did not state that the Angell Plaintiffs would be required to amend or dismiss any of their claims, but only that the Former Officers would be able to raise the issue that some of the claims belonged to the Debtors' estate.

In addition, at a hearing on March 12, 2003, counsel for IHS explained the global settlement reached with the Former Officers, the Premiere Committee and the Angell Plaintiffs, as follows:

> **And while Mr. Angel [sic] is a member of the three-person Creditors Committee of Premiere, he stands apart from them.** And I think I convinced both sides that sometimes progress has to be made in incremental steps instead of all at one time. And unfortunately I wasn't able to do it all at one time, but I thought we needed to keep this case in [sic] the momentum going towards the confirmation. And once we get the confirmation and with a little continued push on both sides, maybe we can reach resolution on those issues.

(D-44, Exh. D) (Appellees' Appendix, Item 5, at 20, lines 1-10) (Emphasis added). Thus, IHS acknowledged that it had been unable to reach a resolution of the claims in the North Carolina Action; that the Angell Plaintiffs stood apart from the Premiere Committee and were not bound by the Committee's actions or the settlement with the Premiere Committee; and that their claims would survive the dismissal of the Committee D&O Action. While IHS's counsel expressed hope of reaching a future resolution of the Estate Claim issue, his remarks made it clear that he was not able to accomplish that resolution in the Plan and Confirmation Order.

Therefore, the extrinsic evidence supports the plain language of the Plan and Confirmation Order: the Angell Plaintiffs were authorized to proceed with the North Carolina Action in its entirety, and there was no requirement that they amend or dismiss any of their causes of action.

### C. The Bankruptcy Court Correctly Found That The Dismissal With Prejudice of the Angell Injunction Action Precludes IHS From Asserting The Counterclaims.

The dismissal with prejudice of the Angell Injunction Action resulted in a final determination against IHS on the merits of the claims raised in that action. Because the Angell Injunction Action sought a determination that the Angell Plaintiffs were wrongfully pursuing Estate Claims, and because IHS dismissed that Action with prejudice, IHS was precluded from seeking the same determination through its Counterclaims.

The doctrine of claim preclusion prohibits parties from relitigating claims that were or could have been resolved in an earlier lawsuit. *CoreStates Bank, N.A. v. Huls Am., Inc.*, 176 F.3d 187, 194 (3d Cir. 1999) ("claim preclusion (or res judicata as it is also called) 'gives dispositive effect to a prior judgment if a particular issue, although not litigated, *could have been raised* in the earlier proceeding.'"). The principle of claim preclusion applies to bankruptcy

proceedings in general, and, in particular, to final orders confirming a reorganization plan. *See Wallis v. Justice Oaks II, Ltd. (In re Justice Oaks II, Ltd.)*, 898 F.2d 1544, 1552 (11th Cir. 1990) ("Because the claims raised in the Wallises' adversary complaint were already raised, or could have been raised, in their objection to confirmation, we hold that the doctrine of claim preclusion bars them from relitigating those claims."); *Katchen v. Landy*, 382 U.S. 323, 334, 86 S.Ct. 467, 15 L.Ed.2d 391 (1966) ("The normal rules of *res judicata* and collateral estoppel apply to the decisions of bankruptcy courts."); *Donaldson v. Bernstein*, 104 F.3d 547, 554 (3d Cir. 1997) ("[A] confirmation order is *res judicata* as to all issues decided or which could have been decided at the hearing on confirmation.").

Application of *res judicata* requires: (1) a final judgment on the merits in a prior suit; (2) involving the same parties or their privies; and (3) a subsequent suit based on the same causes of action. *Id.*; *Purter v. Heckler*, 771 F.2d 682, 690 (3d Cir. 1985). Each of these three prongs is satisfied here.

The first prong of the test is clearly met: the Confirmation Order specifically dismissed the Angell Injunction Action with prejudice. *In re Matunas*, 261 B.R. 129 (Bankr. D.N.J. 2001) (recognizing that a "final judgment" does not require a trial on the merits; default judgments, summary judgments and stipulated judgments can qualify as a "final judgment" for *res judicata* purposes).

The second prong is also clearly met: the Debtors were the plaintiffs in the Angell Injunction Action, and IHS is the successor-in-interest to the Debtors.[8]  The *res judicata* effect of a confirmation order applies equally to a liquidating entity created pursuant to the plan

---

[8] Under the Plan, HIS succeeded to all of the assets of the Debtors or their estates and was charged with the duty of defending against any claims or causes of action asserted against the Debtors.

to succeed to the rights of the debtor in bankruptcy, so that IHS is in the same position as the Debtors would have been had they brought these Counterclaims. *Browning v. Levy*, 283 F.3d 761, 772 (6th Cir. 2002). Of course, the Angell Plaintiffs were the defendants both in the Angell Injunction Action and in the Counterclaims.

The Third Circuit takes a broad view when deciding whether the third prong, that the two suits are based on the same "cause of action," has been met. *Id.* The courts "look[] to whether there is an 'essential similarity of the underlying events giving rise to the various legal claims.'" *Id.* (*citing United States v. Athlone Indus.*, 746 F.2d 977, 984 (3d Cir. 1984); *and* Restatement (Second) of Judgments § 24 (1982) cmt. a ("The present trend is to see claim in factual [as opposed to legal] terms and to make it coterminous with the transaction regardless of the number of substantive theories ... that may be available to the plaintiff ....")).

The claims in the Angell Injunction Action and the Counterclaims arise from the same cause of action. The event underlying each of IHS's Counterclaims is the Angell Plaintiffs' continued prosecution of the North Carolina Action. The essential factual allegation underlying each of IHS's Counterclaims is that the Angell Plaintiffs were pursuing Estate Claims in the North Carolina Action. This is the identical allegation made by IHS in the Angell Injunction Action, which sought a declaratory judgment that the claims asserted in the North Carolina Action "are property of the Debtors' estates" and an injunction prohibiting the Angell Plaintiffs from further prosecution of the North Carolina Action. The Counterclaims and the Angell Injunction Action thus assert identical causes of action, and the Bankruptcy Court was correct to hold that the dismissal with prejudice of the Angell Injunction Action precludes IHS from asserting the same cause of action in its Counterclaims.

IHS attempts to avoid claim preclusion by arguing that the claims asserted in the Angell Injunction Action are different from the claims asserted in the Counterclaims, because the former sought an injunction against the prosecution of the North Carolina Action while the latter sought an injunction preventing the Angell Plaintiffs from interfering with the implementation of the Plan *by prosecuting the North Carolina Action.* Obviously there is no difference, and no amount of linguistic contortions can change the fact that the Confirmation Order allowed the Angell Plaintiffs to prosecute the North Carolina Action. By seeking to penalize the Angell Plaintiffs' prosecution of the North Carolina Action, IHS is trying to revive the exact claims it already dismissed in the Angell Injunction Action.

IHS also attempts to avoid the *res judicata* effect of the dismissal of the Angell Injunction Action by arguing that it no longer needed a judicial determination that the Angell Plaintiffs were pursuing Estate Claims in the North Carolina Action and that was the sole reason it dismissed the Angell Injunction Action with prejudice. Under IHS's strained logic, the dismissal of the Committee D&O Action meant that that any creditor's individual claim against the Former Officers arising out of the same operative facts was also released, so that IHS could dismiss the Angell Injunction Action (which sought a declaration that the Angell Plaintiffs' claims were really Estate Claims) with prejudice, but nevertheless still preserve the right to argue that the Angell Plaintiffs were wrongfully pursuing Estate Claims.

There are two major fallacies in IHS's reasoning. First, as discussed above, the Plan did not resolve the dispute over what constituted Estate Claims, and at the confirmation hearing IHS's counsel expressly conceded that this remained an open issue. If dismissal of the Committee D&O Action actually had the effect of resolving the Estate Claims issue, then (1) the remarks of IHS's counsel at the confirmation hearing make no sense; and (2) the Plan provisions

-29-

that specifically authorized the resumption of the North Carolina Action and reserved the right of the Former Officers to raise that objection in the North Carolina Action also make no sense.

The second fallacy is IHS's assumption that the dismissal of the Committee D&O Actions prevents the Angell Plaintiffs from claiming that they suffered unique injuries at the hands of the Former Officers. As set forth above, this is simply not the law. The Angell Plaintiffs were not parties to the Committee D&O Action, and that Action did not resolve the essential issue of whether the claims asserted in the North Carolina belonged to the Angell Plaintiffs alone.

Therefore, even if the claims in the North Carolina Action were identical to the claims in the Committee D&O Action (and the decision of the North Carolina Court makes it clear that they were not), the dismissal of the D&O Action could not preclude the Angell Plaintiffs from continuing to assert their claims in the North Carolina Action.

## V.    CONCLUSION

For all the foregoing reasons, it is obvious that this appeal is meritless. Appellees respectfully submit that this Court should affirm the order entered below. Appellees did not violate the Plan or otherwise engage in misconduct. They did nothing more than what the Plan and Confirmation Order authorized them to do, *i.e.*, resume their prosecution of the North Carolina Action. Moreover, IHS expressly *agreed* that the Angell Parties could continue the North Carolina Action. For IHS now to argue that doing what the Plan specifically permitted is misconduct worthy of a $13 million sanction is outrageous. IHS's Counterclaims have no merit and were obviously interposed for the sole purpose of preventing the Angell Parties from receiving any recovery on their allowed claims against the estate. This appeal is the latest round in IHS's pursuit of a strategy of obfuscation and delay and should not be countenanced.

PHLEGAL: #1723958 v2 (10y7q02!.DOC)

Dated: April 11, 2005

PEPPER HAMILTON LLP

/s/ David B. Stratton
David B. Stratton (Del. Bar ID 960)
Pepper Hamilton LLP
Hercules Plaza, Suite 5100
1313 Market Street
P.O. Box 1709
Wilmington, DE  19899-1709
(302) 777-6500

and

Bonnie MacDougal Kistler
Linda J. Casey
Pepper Hamilton LLP
3000 Two Logan Square
Eighteenth and Arch Streets
Philadelphia, PA 19103-2799
(215) 981-4000

*Attorneys for Appellees*

## CERTIFICATE OF SERVICE

I hereby certify that on April 11, 2005, I electronically filed a true and accurate copy of the Brief Of Appellees Don G. Angell, Don G. Angell Irrevocable Trust, Angell Care Incorporated And Bermuda Village Retirement Center Limited Partnership with the Clerk of Court using CM/ECF, which will send notification that the document has been filed electronically and is available for viewing and downloading from CM/ECF, to the individuals on the attached service list.

I further certify that on April 11, 2005, I caused true and accurate copies of the Brief Of Appellees Don G. Angell, Don G. Angell Irrevocable Trust, Angell Care Incorporated And Bermuda Village Retirement Center Limited Partnership to be served on the individuals on the attached service list in the manner indicated.

PEPPER HAMILTON LLP

/s/ David B. Stratton
David B. Stratton (Del. Bar ID 960)
Pepper Hamilton LLP
Hercules Plaza, Suite 5100
1313 Market Street
P.O. Box 1709
Wilmington, DE  19899-1709
(302) 777-6500

and

Bonnie MacDougal Kistler
Linda J. Casey
Pepper Hamilton LLP
3000 Two Logan Square
Eighteenth and Arch Streets
Philadelphia, PA 19103-2799
(215) 981-4000

*Attorneys for Appellees*

-32-

VIA FEDERAL EXPRESS
Arthur Steinberg, Esquire
Kaye Scholer LLP
425 Park Avenue
New York, NY 10022-3598

VIA FEDERAL EXPRESS
Robert S. Brady, Esquire
Edmond L. Morton, Esquire
Joseph M. Barry, Esquire
Young Conaway Stargatt & Taylor LLP
The Brandywine Building
1000West Street – 17th Floor
Wilmington, DE 19801

VIA FEDERAL EXPRESS
Don A. Beskrone, Esquire
Office of the U.S. Trustee
844 King Street
Suite 2313
Wilmington, DE 19801

Via E-mail
Ana Alfonso, Esquire
Kaye Scholer LLP
425 Park Avenue
New York, NY 10022-3598