**APPELLEES' APPENDIX**

**ITEM 1**

FILED

UNITED STATES BANKRUPTCY COURT
DISTRICT OF DELAWARE 2004 JUN 28 AM 10: 03

CLERK
US BANKRUPTCY COURT
DISTRICT OF DELAWARE

IN RE:                        . Case No. 00-389(MFW)
                              . Motion No.
                              .
  INTEGRATED HEALTH SERVICES, .
                              . 824 Market Street
                              . Wilmington, Delaware 19801
              Debtor,         .
                              . May 12, 2004
  . . . . . . . . . . . . . . . 2:30 p.m.


                    TRANSCRIPT OF HEARING
            BEFORE HONORABLE MARY F. WALRATH
            UNITED STATES BANKRUPTCY COURT JUDGE


APPEARANCES:

For the debtor:              Kaye Scholer LLP
                             By:  ARTHUR J. STEINBERG, ESQ.
                             425 Park Avenue
                             New York, NY  10022


For the Don Angell:          By:  DAVID STRATTON, ESQ.


Audio Operator:              Daniel R. Cherry

Proceedings recorded by electronic sound recording, transcript
            produced by transcription service.

---

J&J COURT TRANSCRIBERS, INC.
268 Evergreen Avenue
Hamilton, New Jersey 08619
E-mail:  jjcourt@optonline.net

(609) 586-2311  Fax No.  (609) 587-3599

2

1      THE COURT:  Good afternoon.

2      MR. STRATTON:  Good afternoon, Your Honor.  David

3  Stratton for Don Angell and the Angell entities.  Your Honor,

4  the only matter on today's agenda is the IHS liquidating LLC's

5  objection to claims asserted by my client and a counterclaim.

6  We filed a motion to dismiss that counterclaim and the

7  principle objection raised in the objection, excuse me, and the

8  hearing today is on that motion to dismiss so what I would

9  propose is that we present our motion, IHS respond to it, then

10 we can reply.  But I'm open to suggestions from the Court or

11 Mr. Steinberg on how you'd like to proceed.

12      THE COURT:  I think they're going to say it's their

13 objection to claim even though the issues are the same in the

14 counterclaim.

15      MR. STRATTON:  That's fine, Your Honor.

16      THE COURT:  Doesn't matter who goes first to me,

17 though.

18      MR. STEINBERG:  I'm happy to go first.  Good

19 afternoon, Arthur Steinberg from Kaye Scholer on behalf of the

20 liquidating LLC.  Your Honor, I think that a good portion of

21 what has been alleged in the papers before you is something

22 that you should be pretty familiar with since so much of it

23 happened in front of you.

24      By way of just some background to give what I think

25 is a useful history in this, originally there was an action

3

1  commenced by the Angell claimants prior to the bankruptcy in

2  North Carolina.  I don't know --

3          THE COURT:  Who are the named defendants?

4          MR. STEINBERG:  The named defendants in that

5  litigation were --

6          THE COURT:  The D&Os and was the debtor a defendant?

7          MR. STEINBERG:  No, it wasn't.  In fact, Your Honor,

8  I think, perhaps I may have mistaken, I think the complaint was

9  filed after the bankruptcy filing.  And the named plaintiffs

10 were Elizabeth Kelly, Taylor Picket, Daniel Booth and Ron Ward.

11         THE COURT:  Okay.

12         MR. STEINBERG:  Your Honor, in response to this post-

13 petition complaint that was filed against certain officers and

14 directors of the debtors, the debtors moved pursuant to Section

15 105 for an injunction to prevent that action from going

16 forward, essentially arguing that at least three of the four

17 defendants were still major officers and directors of the

18 company and they were necessary for the reorganization effort

19 and also alleging that a portion of the claims that have been

20 asserted in the North Carolina action were, in fact, the state

21 causes of action and therefore there had been a violation of

22 the automatic stay.

23         THE COURT:  I don't need all the background.

24         MR. STEINBERG:  Okay.

25         THE COURT:  Why don't you tell me what your

4

1   objections are to their claim against the estate?

2           MR. STEINBERG:  To their claims against the estate?

3           THE COURT:  Yes.

4           MR. STEINBERG:  Okay.  Your Honor, first we filed a

5   number of objections and in the reply that was filed by the

6   Angell claimants they agreed to withdraw claims 9163 through

7   9171 and also 9657 which would leave, I think, four claims left

8   in the case.  Three of the claims are for liquidated amounts

9   for in essence note obligations that Premier had at the time

10  that IHS acquired the Premier Estates in 1998.  And the fourth

11  is an unliquidated claim, claim 9162.  Now that claim which was

12  filed by the Blanco Tackaberry firm which was Mr. Angell's

13  lawyer prior to him then coming to Premier Committee counsel

14  alleged two very basic things.  It said in the first count and

15  it said it was unliquidated and contingent.  First was that Don

16  Angell and/ or the related entities may assert claims against

17  the debtor, its officers, and/ or its directors for

18  mismanagement, breach of fiduciary duty and other causes of

19  action to be determined through discovery.  And the second

20  paragraph said, "Claimant intends to seek avoidance of the

21  guarantee executed by Premier Associates in favor of lender for

22  Integrated Health Services, Inc."  So, when we saw that the

23  Angell claimants were withdrawing their claims that were all

24  contingent and unliquidated except for this one we contacted

25  Mr. Stratton and asked whether this was an omission or whether

5

1    he intentionally sought to preserve this claim and assert that

2    in this case and Mr. Stratton said that it was not an omission

3    and he did intend to go forward.

4            So, frankly, Your Honor, this claim which is against

5    potentially officers and directors of the debtors is still an

6    outstanding claim in this --

7            THE COURT:  Well, it's against the debtor also.

8            MR. STEINBERG:  That's correct.

9            THE COURT:  Okay.

10           MR. STEINBERG:  Over the same causes of action for

11   mismanagement, breach of fiduciary duty.  So that claim is here

12   and to some extent the refusal to withdraw that claim has a

13   twofold aspect.  One is, it brings the D&O causes of action,

14   still remain in this Court through the claim.  And second, --

15           THE COURT:  How did the D&O causes of action remain

16   in this court?

17           MR. STEINBERG:  It's the same claim.

18           THE COURT:  Well, we'll get to that but I don't have

19   any jurisdiction over their claim against the Ds&Os and their

20   proceeding with a North Carolina action, --

21           MR. STEINBERG:  I agree with that, Your Honor, but if

22   there asserting claims against the debtor for breaches of

23   fiduciary duty of the directors and officers and are not

24   withdrawing that claim then those issues which are the same

25   types of issues in North Carolina are still present in this

6

1   Court.  The second ramification of not withdrawing this claim

2   and leaving an unliquidated claim present in this case means

3   that you can not make a distribution to even the Premier

4   Estates until you quantify what that unliquidated claim is.

5   And therefore, the assertion of this claim, I believe and it

6   will be argued at some future time, continues to delay the

7   distribution not just of all of the general unsecured creditors

8   of the IHS estate which is one of the arguments we make in our

9   papers, but specifically this claim locks the distribution to

10  the Premier creditors as well, the class 7 creditors.

11          THE COURT:  Well, so what?  If a creditor files an

12  unliquidated claim against a debtor it's got to be liquidated.

13          MR. STEINBERG:  That's correct.

14          THE COURT:  Simply because it's unliquidated doesn't

15  mean, oh, you know, it's got to be disallowed because it's

16  holding up distribution to creditors.

17          MR. STEINBERG:  Oh, no.  No, no, no, no.  I probably

18  have confused Your Honor and I apologize.  It's not that the

19  claim should be at this point in time disallowed merely because

20  it's contingent or unliquidated, it's that because it's

21  contingent and unliquidated you can't compute what the

22  distribution is for the Premiere creditors and therefore that

23  delays the Premiere distribution.

24          THE COURT:  Okay.

25          MR. STEINBERG:  That's the only point I was trying to

7

1   make there.  And other than this claim and its impact I will

2   note that one of the basis for our objections with respect to

3   the claims that was not withdrawn was that there was a

4   component of these claims which alleged post-petition interest

5   on an unsecured claim.  And that amount for claim 10620, and

6   I'm going to use round numbers, was approximately $767,000.

7   For claim 10623 was approximately $239,000.  And for claim

8   10625 was approximately $121,000.

9           In the reply or in the responses to our objection the

10  Angell claimants tried to refute some of the pure objections to

11  the claim but omitted to say anything about this aspect.  And

12  so, one other aspect of the objection to claim is that to the

13  extent that it seeks post-petition interest on an unsecured

14  claim to the Premiere estates that that should be stricken as

15  being not allowable pursuant to Section 502 of the bankruptcy

16  code.

17          With those, I guess, Your Honor, preliminary issues

18  out of the way the primary reason that we filed to object to

19  the remaining Angell claims is that we believe that Angell is

20  in violation of the Premier settlement, in violation of the

21  plan of reorganization and in violation with the confirmation

22  order.  And because of that he should not receive a

23  distribution in this estate.  He's been adequately forwarned

24  that he was in violation and there is an economic consequence

25  to this estate by this violation.  The estate has D&O insurance

8

1  for a substantial portion of the claims asserted by Angell in

2  the North Carolina action but there is a self-insured retention

3  amount of a half a million dollars and the estate has been

4  funding the litigation in North Carolina on the self-insured

5  retention amount and that has been at a cost. A cost that

6  would have been otherwise, we believe, unnecessary if Angell

7  had complied with the provisions of the plan of reorganization.

8        THE COURT: Well, didn't the plan grant them relief

9  from the stay to proceed with that action?

10        MR. STEINBERG: The plan provided for a modification

11  of the Angell injunction action which had been rendered moot by

12  the plan of reorganization.

13        THE COURT: If that were true, why grant relief from

14  the stay to prosecute an action that was rendered moot?

15        MR. STEINBERG: Because, Your Honor, it was not a

16  relief from stay motion it was a consensual 105 injunction

17  motion as against the officers and directors of the company.

18  The plan of reorganization itself provided that upon

19  confirmation the automatic stay would be modified in general.

20        THE COURT: Right.

21        MR. STEINBERG: So that, even if there was a direct

22  automatic stay issue that was going to go away. The reason for

23  the 1105 injunction was twofold. One was to protect the

24  directors and officers during the reorganization effort, and

25  that was concluding, and all of them except for one were no

A0008

9

1   longer officers of the company and Ron Lord was going to work

2   as the general counsel for the purchaser.  So, the idea of

3   arguing that you needed to preserve an injunction to protect a

4   reorganization that had come to conclusion where most of them

5   were no longer officers and directors didn't make sense any

6   more.

7          THE COURT:  Okay.

8          MR. STEINBERG:  So the only other aspect of the 105

9   injunction that we were talking about was that to the extent

10  that they were asserting estate claims that we were saying that

11  they should not be allowed to do that.  But we had, by

12  definition under the settlement, settled all of those estate

13  claims.  Every estate claim was settled because the Premier

14  Creditor's Committee had gotten authority from Your Honor under

15  a delegation motion to bring every estate claim that they --

16         THE COURT:  I understand the argument, however,

17  didn't the plan preserve that for the defendants in the North

18  Carolina suit?

19         MR. STEINBERG:  Absolutely correct, Your Honor, and I

20  can explain why the language is written that way.  And I was

21  one of the architects for the writing of the language.  The

22  North Carolina action clearly has at least one count which is a

23  personal, and maybe two counts, which are personal claims for

24  the Angell claimants.  You couldn't get rid of the Angell

25  claimants in full by having a dismissal of the estate causes of

10

1    action because there were some personal claims there.  Fraud
2    was a personal claim there and arguably negligent
3    misrepresentation was a personal claim there.  In our view the
4    remaining claims were estate causes of action.  Knowing that
5    the action had to continue to go forward the first sentence of
6    the plan said the North Carolina action will continue.  The
7    second thing was asked to be inserted into the plan at the
8    request of Ron Lord who was the general counsel.  We said what
9    happens if there's monkey business or something that goes on in
10   North Carolina, shouldn't we say something that removes the
11   negative implication that you're allowing the litigation to go
12   forward by saying that some of these claims and causes of
13   action have been dismissed and we should be able to defend
14   ourselves in that grounds.  So, in an effort to try to ease the
15   paranoia of the officers and directors who were very unhappy
16   that they were going to continue to be sued after bankruptcy
17   when they had hoped that the whole thing would have worked
18   itself through during the bankruptcy, we added that sentence.
19        Significantly, we did not say that we were, in
20   effect, waiving our right to object to claims in this case.  We
21   did not say we were waiving our right to ask Your Honor to
22   enforce a settlement that Your Honor had approved as part of
23   the plan of reorganization and as part of the confirmation
24   order.  And we fully expected that if these things didn't work
25   itself out that we had the right to come back to this Court to

11

1 be able to argue that those claims which were settled in front

2 of you that Your Honor should enforce an order that says they

3 were settled.

4         THE COURT:  Well, they haven't worked themselves out.

5         MR. STEINBERG:  That's correct.

6         THE COURT:  Because the North Carolina Court has

7 under advisement the very issue that you're arguing.

8         MR. STEINBERG:  That's correct.

9         THE COURT:  How am I to presume that the North

10 Carolina Court can't make the proper decision on this?

11         MR. STEINBERG:  Well, I don't think Your Honor should

12 presume that at all.

13         THE COURT:  Well then, why are we dealing with this

14 today?

15         MR. STEINBERG:  Your Honor, in January or February, I

16 can't remember which because I was not at the hearing, Your

17 Honor said in reaction to a motion filed by the former counsel

18 of the defunct Premier Creditors Committee that there should be

19 a distribution in this case and one of the argument -- a

20 distribution in this case at least insofar as the Premier

21 creditors are concerned.  And one of the things that we argued

22 in response was that the Premier claims have unliquidated

23 claims and they have some issues that needed to be resolved and

24 Your Honor said, come, in effect, hell or highwater by some

25 early point in May I want all objections to Premier claims to

A0011

12

1  be filed. So we had a deadline set forth by Your Honor to

2  clean up or waive whatever objections to claims we had in the

3  Premier estate.

4          THE COURT:  All right.

5          MR. STEINBERG:  So this --

6          THE COURT:  Okay, it's my fault.  All right.

7          MR. STEINBERG:  Well, no, Your Honor, I think you're

8  --

9          THE COURT:  No, I expected that.

10          MR. STEINBERG:  You asked me, why the dynamic?  Why

11  is this coming in front of you now?  Why am I coming in when

12  something is sub judice in another court for nine months?  And

13  I'm saying to you that if I didn't assert it I would have

14  waived the claims, I thought I had the legal entitlement to do

15  it.  I thought Angell had been on notice that he should have

16  done it on his own.  We had said it on a number of different

17  occasions in front of Your Honor that this was appropriate to

18  do and that even when we filed our objection said they should

19  clean up their act.  They didn't.  They didn't do anything in

20  the North Carolina Court.  And frankly, --

21          THE COURT:  Well, because they take the position it's

22  not, I assume.

23          MR. STEINBERG:  Well, you know, Your Honor, that is

24  correct, they take the position that it's not.  But to me it's

25  (a) intuitively obvious that a substantial portion of the

13

1  claims were the estate claims because all you have to do is

2  contrast the delegation motion with the Angell complaint and

3  the complaint that was actually filed by the Premier Committee.

4  And remember, the Premier counsel filed the Committee was Don

5  Angell's individual counsel in the bankruptcy case before he

6  became the Premier Committee counsel.  Don Angell was the

7  Chairman or the Co-Chairman of the Creditor's Committee, the

8  three-person Creditor's Committee in the case.  I know but it's

9  not before the record today, but if it became relevant, Don

10 Angell was the dominant force in that Committee.  That

11 Committee staked out a position in this case.  They said, I

12 want the bankruptcy estate to pay for brining estate claims

13 which will benefit all of the Premier creditors.  And I will

14 define for Your Honor what those estate claims and causes of

15 action are.  I will say that a claim for breach fiduciary duty,

16 a claim for constructive fraud, a claim for unlawful transfer,

17 a claim for unlawful distribution, those same counts that were

18 in the Angell complaint I am going to assert in the delegation

19 motion charged the full bankruptcy estate for the cost of

20 litigating it.  We had a trial in front of Your Honor as to

21 whether that litigation made sense to go forward and while it

22 was sub judice we had the Premier claim.  So, I think that it's

23 intuitively obvious what the estate claims were.  But if Your

24 Honor wasn't prepared simply to look at what the Premier

25 Committee did and only looked at what Angell asserted in his

14

1  complaint you will see that in the Count Three which is the
2  breach of the constructed fraud action -- I'm sorry, let me
3  just get it in front of me, Your Honor, -- the breach of
4  fiduciary duty claim which is Count Three, you have language
5  here at the end of that count which says, "Defendants" meaning
6  the directors and officers "intentionally acted to benefit IHS
7  and themselves and completely ignored their obligations and
8  fiduciary duties to Premier and plaintiffs." So the count
9  itself specifically alleged that the damage was suffered by the
10 Premier debtors as well as the plaintiffs. And therefore, once
11 they've staked it like that they stake out in a state cause of
12 action. Similarly, in Count Number Six of the distributions in
13 violation of North Carolina law -- on information and belief
14 picketed director of Premier authorized an execution of the
15 joinder agreement and timely even knew or should have known IHS
16 was in perilous financial condition and that by executing the
17 joinder agreements Premier and subsidiaries would become unable
18 to pay the Premier notes. And their allegation in general is
19 that there is damage to the corporation.
20       I mean, the whole complaint, both the delegation
21 motion and the Angell action, all derives from the same issue
22 which was whether it was appropriate for Premier to sign a
23 guarantee of the CitiCorp agreement which was a contractual
24 obligation they had under the loan agreement. Then what you
25 have is a bunch of causes of action all emminating from that

15

1    same essential fact.  All of those counts were staked out by

2    the Premier Committee to be an estate cause of action.

3              And I understand the quandary that Your Honor --

4              THE COURT:  Well, part of the problem I have also is

5    that those are the actions, there can be an argument that it

6    harms the entire estate at the same time that there's an

7    argument that it harmed a specific creditor in a specific

8    manner.  For example, a creditor gives up a security interest

9    as a result of this action.  Is that an estate cause of action?

10             MR. STEINBERG:  Your Honor, I think if the same facts

11   lead to an estate cause of action that all creditors have the

12   benefit of it then becomes an estate cause of action.  I don't

13   think you can have a hybrid.

14             THE COURT:  And if the creditor is unable to assert

15   that the same actions harmed it individually, separate and

16   apart from the harm to the estate.

17             MR. STEINBERG:  I think, Your Honor, that the more

18   fuller answer to your question is that on claims like unlawful

19   transfer, on claims like unlawful distribution which are claims

20   that said that the Premier Estate should not have given over

21   its assets for the benefit of an IHS creditor, that is a claim

22   which is only an estate claim.  It effects all the creditors

23   the same way.  I think what Your Honor is getting to is if

24   based on that act is there an individual claim that they have

25   and is there a fraud claim that could be asserted?  And there I

16

1  say, I think, Your Honor, is that I won't assess whether there
2  was a fraud claim in this case but someone could under the
3  right circumstances say that there was a unique injury that
4  damaged them which no one else could bring.  There, the
5  relinquishment of a lien position in connection with an
6  acquisition is not the same type of an estate claim that one
7  has when you say that it was either a fraudulent conveyance for
8  Premier to in effect incur an obligation on the CitiGroup, the
9  loan agreement. It's the same type of estate claim where you
10 say, that by doing that it was an unlawful distribution from a
11 subsidiary to a parent, that it was a breach of fiduciary duty
12 for these officers of Premier visa ve all of the Premier
13 creditors to issue a guarantee.  In this case, Your Honor, the
14 guarantee that was signed was two months after the acquisition
15 order.  Ninety days.  But it was not a simultaneous
16 transaction.  The guarantee being not to Angell but the
17 guarantee I'm talking about to CitiGroup.  At that point in
18 time the acts of the people who signed the guarantee was a
19 common act for all of the Premier creditors.
20         The complaint says that there was a special duty that
21 was owing to Angell.  I think other than saying the words they
22 don't define it.  And because I think they don't define it I
23 think it's not unintentional that they haven't defined it
24 because there was no special relationship.  If you look at the
25 structure --

17

1          THE COURT:  Well, --

2          MR. STEINBERG:  If you look at the structure of our

3   plan we don't have a separate Don Angell class.  We treated all

4   the Premier unsecured creditors exactly the same.  Angell, you

5   had a --

6          THE COURT:  Well, you're asking me to decide not the

7   merits of the claim right now, --

8          MR. STEINBERG:  That's correct.

9          THE COURT:  -- you're asking me to decide if

10  prosecuting your action against the D&O is a violation of the

11  plan?  Because you say it's prosecuting a derivative action.

12  But is it possible that the allegations if they support a

13  unique harm to a creditor can be pursued by that creditor

14  rather than simply by the estate.

15         MR. STEINBERG:  That's correct, Your Honor.

16         THE COURT:  How is there a violation of the plan?

17         MR. STEINBERG:  Well, I think that they're allowed

18  under the plan to pursue their personal claims.  They're not

19  entitled to pursue estate claims.  They're not entitled to do

20  that.  That's what we settled for.  That's what we paid for.

21         THE COURT:  Well, --

22         MR. STEINBERG:  And if they do that, Your Honor, Your

23  Honor, I think I understand --

24         THE COURT:  But the only harm so far, the D&Os had to

25  file a motion to dismiss, well, the plan contemplated that they

18

1  would do exactly that because it preserved their right to do

2  exactly that.  So, what harm?

3           MR. STEINBERG:  There are two harms.  The first harm

4  is that, and to the estate we draw a distinction between the

5  defendants that are part of the Angell action.  And we think

6  that there's a clear indemnity claim that could have an

7  administrative priority for defendants Booth and Lord because

8  if you look at their --

9           THE COURT:  Well, they're going to have that anyway.

10          MR. STEINBERG:  I understand.  But, I can answer your

11  question, Your Honor.

12          THE COURT:  Okay.

13          MR. STEINBERG:  I just need to say a few more

14  sentences.

15          THE COURT:  Okay.

16          MR. STEINBERG:  Booth and Lord, we believe that when

17  we redid their employment agreements we specifically referenced

18  the North Carolina litigation and said they would be

19  indemnified for it.  When you parse through the Angell

20  complaint Booth and Lord are not in every count, they're only

21  in a few of the counts.  The only act that Booth and Lord did

22  was they signed the guarantee agreement two months after the

23  closing of the transaction.  The complaint says that the

24  misrepresentations, the statements that were made at the time

25  of the merger were made by Picket and Kelly.  We clearly don't

19

1  have an administrative claim for Kelly because Kelly left
2  shortly after the bankruptcy proceedings started, and we have
3  an ongoing dispute with Picket as to whether his agreement
4  which was in a much different form than what we did for Lord
5  and Booth created administrative priority.  If these claims
6  were successful, if we were correct, and that our
7  administrative claims were limited to Booth and Lord and if
8  Angell did what we think the plan required him to do which is
9  to drop the estate claims, there would have been no claims
10  remaining for Booth and Lord and they would have been out of
11  the North Carolina action and we would not have had to incur
12  expense.

13          THE COURT:  I understand.  Except that tell me where
14  in the plan it says, and they shall dismiss any derivative
15  claim.

16          MR. STEINBERG:  Oh, I think, Your Honor, that there
17  is nothing --

18          THE COURT:  Where in the plan?  Okay.

19          MR. STEINBERG:  -- in the plan that has that explicit
20  language.  But on the other hand, Your Honor, --

21          THE COURT:  But it does say that the defendants have
22  a right to file a motion to dismiss because the cause of action
23  is a derivative and has been settled under res judicata.

24          MR. STEINBERG:  That is correct.  The plan does not
25  provide that any creditor, whether it's Angell or any other

20

1  creditor than they have sued is required to drop estate claims.

2  The plan does provide that estate claims against the directors

3  and officers are released.

4          THE COURT:  Okay.

5          MR. STEINBERG:  The plan has a general provision

6  releasing those estate claims.  Any creditor who violations

7  that provision of the plan or the provision of the plan where

8  we think they're trying to litigate again that which had

9  already been settled before Your Honor in the context of a

10 settlement which was noticed to all creditors with an

11 opportunity to object, we have the right under our confirmation

12 order to come to Your Honor to enforce that provision.  And

13 that is what we're doing here.  And I don't know why -- I know

14 for a fact that you are correct, Your Honor, when you asked me

15 the direction question whether there's an explicit provision.

16 But I also am correct that there is no provision that says I

17 can't do what I'm doing.  There is nothing that said I waived

18 my rights --

19         THE COURT:  Except that you haven't come here and

20 asked me to decide that.  What you have come here to do is to

21 object to any claim they may have because they have violated

22 the plan and your asserting the plan says they can't do what

23 they're doing.  But it doesn't say they can't do what they're

24 doing.

25         MR. STEINBERG:  Oh, no, Your Honor, the plan says and

21

1  I think the disclosure statement said and the order approving
2  the disclosure statement said that they can go forward in the
3  Angell litigation to pursue third party claims they have
4  against those defendants.  That by negative implication at
5  least would mean they can't pursue estate claims.  But I think
6  whether you wanted to rely on negative implication or not they
7  clearly can't assert estate claims.  They never had the estate
8  claims, only this estate had the claims and they settled it.
9  And I think, Your Honor, you can't --

10            THE COURT:  So should you file another adversary
11  against them?

12            MR. STEINBERG:  Your Honor, if it's the procedure
13  that is cumbersome here then we can do it in a different way.

14            THE COURT:  Well, I thought the procedure was that
15  the defendants would file a motion to dismiss on exactly that.
16  On res judicata grounds because it's been settled.

17            MR. STEINBERG:  Your Honor, they clearly had the
18  right to do that.

19            THE COURT:  And they did that.

20            MR. STEINBERG:  And they did that.  They clearly --
21  right.  And, Your Honor, I was going to say a little earlier
22  that I understand the quandary that I've put you in and I've
23  tried to explain to you why --

24            THE COURT:  My fault, I know.

25            MR. STEINBERG:  No, no, no, no.  But I understand the

22

1  quandary if you have a pending motion to dismiss and in front

2  of another Court, and for Your Honor to take over the same

3  issues now while it's been briefed is a difficult circumstance.

4  And so I have a potential solution out of the quandary which is

5  to adjourn these objections to claims until the North Carolina

6  action has ruled and Angell will have acted on his peril.  So

7  that if I am correct and the Court determines that those are

8  estate causes of action and he violated the confirmation order,

9  I can come in and seek before Your Honor the damages that I've

10 incurred and I will have to deal with the reserve issue which

11 is the other issue which drives this process in a different

12 way.  Remember, Your Honor, it will be at some point in time,

13 you will have the benefit of letting Akin come in again to

14 court saying, I should maintain a 30 million dollar reserve on

15 this Angell action which will prevent me from making my

16 distributions to the unsecured creditors, and I will come to

17 Your Honor saying that reserve shouldn't be 30 million dollars,

18 it should be zero, the Angell action is a litigation without

19 any merit at all, that there's D&O insurance to backstop this

20 thing and we should not prevent the distribution to the

21 thousands of other creditors waiting for their relatively small

22 distribution after five years or four and a half years, that

23 that should be allowed to go forward.  And it will all have

24 emanated from the fact of this is what is here.  And so, I am

25 trying to create the momentum to allow me to make a

23

1  distribution and that's why, it was the other reason why, I

2  thought appropriate to bring this motion on directly.

3          I think Your Honor could very well make sure that the

4  Angell claimants will be responsible for the damages caused by

5  either a delay in distribution -- if I have to litigate the

6  reserve issue with Picket and Booth and Lord on something that

7  they should have dismissed then I think they're responsible for

8  those fees and that should be an offset against their

9  distribution as well.  They should not be allowed to flout what

10  I think is a clear violation of the confirmation order, which

11  is to assert estate claims which their own former counsel

12  defined as estate claims, and still do it.  And still be

13  allowed to do it.  That should not be allowed to happen.  And

14  that if there's consequences to the creditors of this estate

15  they should be required to make up for that.

16          But that is the only other thing I could think of

17  other than to suggest to Your Honor that it's as much your

18  jurisdiction as anybody else's jurisdiction in this case.  The

19  settlement happened before Your Honor.  The claims relate to

20  issues that happened before Your Honor.  The claim that I

21  referred to before which is an unliquidated claim asserts these

22  actions in this court and I have to deal with that some way.

23  They refused to withdraw it.  And therefore, how do I clean up

24  the --

25          THE COURT:  But it's a claim against the debtor.

24

1          MR. STEINBERG:  Okay.  It's a claim against the
2     debtor.
3          THE COURT:  For the directors' and officers' fraud.
4          MR. STEINBERG:  Right.  Your Honor wants to schedule
5     a trial on that and that's --
6          THE COURT:  Well, --
7          MR. STEINBERG:  And you want to schedule a trial on
8     that issue and I'll argue whether that's an estate claim or not
9     an estate claim?  I don't know.  They didn't say, by the way,
10    Your Honor, that it's --
11         THE COURT:  Gosh, time --
12         MR. STEINBERG:  -- on the estate frauds, they argued
13    on mismanagement of breach of fiduciary duty.
14         THE COURT:  Time out.  Time out.  Are you suggesting,
15    let me posit this, that directors and officers do commit a
16    fraud such that it creates a derivative claim by the company
17    against the directors and officers, and let's assume that the
18    damages are 300 million dollars, are you asserting that none of
19    the creditors who were harmed by the directors' and officers'
20    fraud have any claim against the debtor for the damages caused
21    to them by that action?
22         MR. STEINBERG:  I think they do have that claim.
23         THE COURT:  Okay.
24         MR. STEINBERG:  Your Honor, he's asserted the same
25    claim twice.  He's asserted the principal dollar saying I have

25

1  an unpaid note obligation and I have a fraud claim against the
2  debtor for the failure to pay the same note obligation.  How
3  many claims are they entitled to the same relief?  That's a
4  duplicative claim, you have to pick your remedy.
5          THE COURT:  Well, that's the basis -- well, I'm not
6  sure you have to pick your remedy at this point.
7          MR. STEINBERG:  Your Honor, I wasn't here trying to
8  litigate that issue.
9          THE COURT:  You're saying that's the measure of the
10  damages.
11          MR. STEINBERG:  Yes.  And I shouldn't have to pay it
12  twice.
13          THE COURT:  Okay.  Okay.
14          MR. STEINBERG:  And there is a practical reality here
15  that, you know, the Premier creditors, it's six-cent dollars,
16  it's subject to a cap so it could be potentially less than that
17  and I'm trying to reach a resolution here that makes economic
18  sense in view of what's at stake.  But there is a substantial
19  amount at stake that's involved in this litigation that's
20  beyond whether these claims are allowed at 14 million dollars
21  or 12 million dollars.  The issues that underlie this case, the
22  reason why the liquidating LLC has an interest in it is it's
23  incurring expenses in the North Carolina action on claims that
24  should have been dismissed and this continuation --
25          THE COURT:  Well, but it's not incurring --

26

1          MR. STEINBERG:  Yes, it is.

2          THE COURT:  They filed a motion to dismiss that was

3     contemplated by the plan.

4          MR. STEINBERG:  We paid for those legal fees.

5          THE COURT:  But I think you knew that at the time

6     that you would be.

7          MR. STEINBERG:  We knew we would be required to pay

8     something potentially but, Your Honor, we are not liable to

9     indemnify anybody on fraud.  And therefore, if there was a

10    motion to dismiss on a fraud claim we would not be obligated to

11    indemnify.  Now the D&O carrier may have said that since the

12    fraud claim wasn't established you should advance the funds on

13    and so to that extent, to the extent that they tried to get rid

14    of a fraud claim we probably would have had to advance the

15    cause of action on that.  But we would have gotten the claims

16    against Angell and -- I think the claims against Booth and Lord

17    out of the way and those would have been the administrative

18    priority claims that potentially hold up the distribution in

19    this estate.  Because Booth and Lord did nothing more than sign

20    a guarantee 90 days after the consummation of the IHS Premier

21    merger with nothing in the Angell complaint that refers to

22    anything that they would have done.  And so therefore, all of

23    the fraud counts, the negligent misrepresentation counts, they

24    don't apply to Booth and to Lord.  And we think that --

25          THE COURT:  Well, but in the plan you didn't get them

27

1 to agree to dismiss those. I mean, again, the plan

2 contemplated that exactly this would happen.

3      MR. STEINBERG: I'm sorry, Your Honor, I'm not sure I

4 fully understood your last comment. I'm not sure if you stated

5 it correctly. I think I know where you want to go, but --

6      THE COURT: Your plan did not require Picket and

7 Booth dismiss the North Carolina action.

8      MR. STEINBERG: That's correct.

9      THE COURT: It fully contemplated that the motion to

10 dismiss would be filed by the defendants.

11      MR. STEINBERG: If the thrust of Your Honor's comment

12 is I did not address this issue head on for the argument that

13 I'm making the answer to that is correct, I did not address it

14 head on.

15      THE COURT: All right.

16      MR. STEINBERG: I didn't waive the right. I

17 addressed it head on. At the time I was trying to accomplish a

18 full settlement with the Premier Committee to allow the plan to

19 go forward. I thought that I had achieved enough so that I

20 could make this argument and not potentially scuttle

21 everything. I knew that I was never going to waive it and I,

22 frankly, had a fight with the Creditor's Committee as to

23 whether I should do anything that would be explicit and the

24 Creditor's Committee was concerned about the reserve and the

25 distribution issue and whether they should be paying Premier

28

1  any type of additional distribution and funding the expenses of

2  the Premier Committee out of the general estate and whether the

3  settlement was sufficient for them.  And I told them that the

4  dollars at stake, which was the incremental difference was less

5  than a million dollars, it was worth it to move this case to

6  fruition and that I thought that we were getting a release of

7  the estate counts and that that would have a significance not

8  just for the defendants in the North Carolina action to give

9  them Count One of their motion to dismiss, but that I had and

10  would not waive those rights if I had to deal with them in the

11  bankruptcy court.  So I will agree with you that it's not there

12  directly.  And that's true.  And I didn't deal with it directly

13  and I was aware of the issue.  But that didn't mean that by not

14  dealing with it directly I waived the issue and I think I

15  preserved the issue.  And two months after the bankruptcy when

16  I was arguing in front of you on the reserve motion --

17          THE COURT:  I remember.

18          MR. STEINBERG:  -- I explicitly told you what I was

19  doing and at that point in time the litigation was the D&O

20  litigations had not even been dismissed yet because that didn't

21  happen until the effective date which was September and I was

22  arguing these issues in June.  So at that point in time I told

23  Your Honor, I may come back to you to argue the exact points

24  that I'm arguing to you now.  And I think that, you know, this

25  case requires a solution.  This case requires, you know, a

29

1  forcing of the issues to get to a resolution. The worst thing

2  that can happen for this case and this issue is to allow

3  something to sit in a state court unresolved for years and

4  letting the distributions in this estate be tied up. And what

5  you're having here on behalf of the liquidating LLC is an

6  attempt to assert what we believe our our rights to force the

7  issue somehow to get something resolved.

8          THE COURT: All right. Let me ask you a question.

9  Isn't your argument that it's duplicative of the other claims?

10  You're not objecting to the note claims. Those claims are due.

11          MR. STEINBERG: Subject to my counterclaim, Your

12  Honor, with regard to the cost and expenses I've incurred in

13  connection with the Angell action. I don't have another

14  objection to the principal and pre-petition interest amount of

15  the note claims. I do have an objection to the post-petition

16  interest amount and I do think I have an offset based on what

17  has occurred since the confirmation of the plan.

18          THE COURT: All right.

19          MR. STEINBERG: So, that I think, Your Honor, is the

20  essence of my argument.

21          THE COURT: All right. Thank you.

22          MR. STRATTON: Your Honor, what I'd like to do is

23  just clarify one point on the claims because Mr. Steinberg has

24  quoted a material part of an e-mail I sent to one of his

25  associates last night on the issue of claim number 9162 which

30

1   is an unliquidated claim for various breaches of duties and

2   other conduct by directors and officers of the debtors.

3           What I told IHS, their attorneys, was that we could

4   not agree at this point to withdraw or agree to the

5   disallowance of those claims unless, and the unless was the

6   important part and the part Mr. Steinberg chose to leave out,

7   unless the debtor and the defendants in the North Carolina

8   action would agree that by doing so it would have no effect on

9   the issues that are before the Court in the North Carolina

10  action because I was certain especially in light of this

11  objection and this sort of post-confirmation revisionist

12  history that's being trotted out, that they would argue that by

13  doing so we had agreed that those claims were without merit and

14  therefore we lose.

15          So, if they're prepared to agree that withdrawing

16  that unliquidated claim will have no effect whatsoever on any

17  of the issues that are raised in their objection, the

18  counterclaim, or the North Carolina action and the defendants

19  in that action are prepared to agree to that as well, then

20  we'll withdraw it.  That's what I told him.  Okay, so I think

21  it's very important in this case to be accurate.

22          MR. STEINBERG:  Your Honor, I've been told I've

23  misquoted.  I'm happy that Mr. Stratton will read the --

24          THE COURT:  You can't be heard.  I'm sorry.

25          MR. STEINBERG:  Do you have the e-mail?

31

1        MR. STRATTON:  No, but I had it printed out.  I may

2   have it on my blackberry but it's not here.  If you have the

3   direct e-mail if you accuse me of being misquoted I'd like you

4   to read it to the record.  If you don't have --

5        THE COURT:  Well, let me ask the debtor's position on

6   that.

7        MR. STEINBERG:  Oh, I have no problem with

8   withdrawing the claim, I would agree that that act would be

9   mutual to the North Carolina action.

10       THE COURT:  You're still not.

11       MR. STEINBERG:  I'm sorry.

12       THE COURT:  You have to talk into the record.

13       MR. STEINBERG:  Okay.  I would agree to the

14  withdrawal of a claim and for a stipulation that that act would

15  be mutual.  Would be a mutual event visa ve the North Carolina

16  action.

17       THE COURT:  And that specifically there's not any

18  determination that the North Carolina suit is without merit on

19  any of its basis'.

20       MR. STEINBERG:  That's correct, Your Honor.  But what

21  I think I feel a little affronted on for this presentation to

22  start this way is that if Mr. Stratton had read the e-mail

23  directly he did say that he might do that but the conclusion of

24  the e-mail was they would never agree to do that.

25       MR. STRATTON:  That's not what I said, Your Honor.

32

          MR. STEINBERG:  Well, I just read the --

          THE COURT:  Well, I don't care what the e-mail says
but if we can --

          MR. STEINBERG:  Just read the e-mail for the record.

          THE COURT:  If we can resolve it --

          MR. STEINBERG:  Before you say I misrepresent
something just read it on the record.

          THE COURT:  Nobody's misrepresented anything but if
we can resolve it on that basis.

          MR. STRATTON:  Your Honor, two points, I am
absolutely --

          THE COURT:  I don't think it has anything to do with
the defendants.

          MR. STRATTON:  Your Honor, the problem I have is that
as we've seen from the debtor's attempts to misconstrue and
misapply the very clear language of the plan and the
confirmation order and to provide to the Court arguments and
snippets and excerpts from hearings that we weren't parties to,
that information in this case is being, has been, and I'm
afraid will continue to be misused.

          And if, in fact, the dismissal of the claim will not
have an effect on the North Carolina action then the debtors
will agree to that.  I think it's only fair for us to ask that
the defendants agree to that as well so that this issue can be
put aside.  Otherwise, it really doesn't matter because as Your

33

1  Honor has already pointed out the general issue of the conduct

2  of the defendants in the North Carolina action is before a

3  United States District Court Judge, not a state court judge as

4  Mr. Steinberg suggested.  And, should be dealt with there as

5  the plan and the confirmation order contemplated.

6          THE COURT:  But the defendants are not parties here.

7  This is your claim against the debtor.  Your agreement to

8  withdraw it because it's duplicative of your other claims.

9          MR. STRATTON:  Your Honor, the problem I have is that

10  there may be an intersection between the claims of North

11  Carolina and that claim.  Insofar as it's only a claim against

12  the debtor and the debtor's willing to agree that it has no

13  bearing on anything, --

14          THE COURT:  Yes.

15          MR. STRATTON:  -- with nothing up sleeves, no secret

16  intents, no hidden meanings, then that's one thing.

17          THE COURT:  All right.

18          MR. STRATTON:  But with respect to the North Carolina

19  action my offer was if they'll agree to the same thing we'll do

20  it.  If not we'll leave it there unliquidated until that action

21  is decided or the debtor brings an appropriate motion to

22  estimate the claim, or --

23          THE COURT:  How is the claim different from your

24  notes claim?

25          MR. STRATTON:  I don't know, Your Honor, because I am

34

1  not litigating the North Carolina action.  I haven't sat down

2  and studied claim for claim what's involved in that particular

3  claim in the North Carolina action.

4          THE COURT:  No, how is it different from your proof

5  of claim for the notes?  Are you asserting any damages under

6  your unliquidated claim that are different from the fact that

7  you didn't get paid on your notes?  What other damages would

8  you have?

9          MR. STRATTON:  Your Honor, again, I don't know the

10  answer of the question.  I think the bulk of the claim would be

11  the same.  That is, in other words, we got a check for the full

12  amounts we were do, principal and interest, --

13          THE COURT:  Then you would not have any damages.

14          MR. STRATTON:  Right.  But the interest part, Mr.

15  Steinberg's right, to the extent we're seeking post-petition

16  interest on an unsecured claim we're not entitled to post-

17  petition interest and we don't contest that.  The question that

18  Your Honor asks is, would we have other claims beyond the

19  principal amount of the note that would be in addition to that

20  and I don't know the answer to that tonight.  But the offer was

21  made as I recited it and we're prepared to live by it.

22          THE COURT:  Well, I don't have any jurisdiction over

23  the defendants and I don't --

24          MR. STRATTON:  But I do know --

25          THE COURT:  Let's posit this, you filed a law suit in

35

1  court one against A, a law suit albeit on the same facts

2  against B in a different court, does anything in a resolution

3  of B have any effect on A?

4           MR. STRATTON:  Your Honor, --

5           THE COURT:  A settlement or withdrawal of the suit in

6  B, --

7           MR. STRATTON:  Well, that's the problem.

8           THE COURT:  -- without prejudice.

9           MR. STRATTON:  That's the problem.  If you assume

10  that the facts in A and B are different, that there's no

11  overlap, then the dismissal of B doesn't effect A.

12          THE COURT:  I'm assuming there's complete overlap.

13  Even if there's complete overlap.

14          MR. STRATTON:  Okay.  So then in law suit A the

15  defendants say -- in law suit B the debtor secured a dismissal

16  of the claims and --

17          THE COURT:  By consent.

18          MR. STRATTON:  -- we can use that offensively in law

19  suit A.

20          THE COURT:  How?

21          MR. STRATTON:  Well, because as I recall from

22  studying the issue a long long time ago there are circumstances

23  under which defendants in an action can use collateral estoppel

24  offensively.

25          THE COURT:  It's not a Court ruling.  You're agreeing

36

1  to a dismissal.  You're withdrawing.

2          MR. STRATTON:  If it's without prejudice?

3          THE COURT:  Yes.

4          MR. STRATTON:  And with an agreement.

5          THE COURT:  We hereby stipulate and agree --

6          MR. STRATTON:  Well, I think that we can move off of

7  this because I'll talk to Mr. Steinberg about it and if we can

8  agree on it then we've resolved that.

9          THE COURT:  Okay.

10         MR. STRATTON:  But I did want to make clear that we

11 weren't refusing under any circumstances to dismiss that claim.

12         Your Honor, when I first got involved in this case I

13 read the objection and I thought, this is a case about what's

14 an estate claim and what's not an estate claim.  And I started

15 to dig into it and almost immediately I became totally shocked

16 at the position that the debtors had taken in their objection

17 in their counterclaim.  And the reason I say that is, there are

18 two reasons I say that.  One, when I started looking at the

19 plan language and the confirmation order, then I'm going to get

20 into that, it seemed apparent to me that what happened post

21 confirmation is exactly what everybody agreed what happened

22 post confirmation.  And two, --

23         THE COURT:  I think I agree with you on that so I

24 don't know that we have to argue this.

25         MR. STRATTON:  That's wonderful.

37

1   THE COURT:  Okay.

2   MR. STRATTON:  And two, the debtors had completely

3   ignored the effect of their dismissal of their law suit with

4   prejudice in which the fundamental issue, is it an estate claim

5   or is it not an estate claim, should Mr. Angell and his related

6   entities be permitted to pursue the claim or should they be

7   enjoined was dismissed.  And that was a ruling on the merits of

8   that issue insofar as this debtor is concerned.  And that's why

9   the plan was set up the way it was.  We'll get rid of our law

10  suit, we'll dismiss it, you go to North Carolina and work it

11  out down there, the defendants can raise this issue down there

12  and they'll either win or they'll lose.  But they agreed to

13  dismiss their complaint.

14  THE COURT:  Well, a dismissal with prejudice does not

15  mean that my complaint had no validity.  It means I will not

16  continue to ask for relief under that.

17  MR. STRATTON:  I will not ask for relief that I

18  sought or could have sought in that complaint.  Between that

19  and the confirmation order all of the issues raised in the

20  counterclaims and the principal issue raised with respect to

21  the claims, the objection of "misconduct" because you pursued

22  the North Carolina action, have been resolved against the

23  debtor already.

24  THE COURT:  How?

25  MR. STRATTON:  Well, let me get my notes in front of

J&J COURT TRANSCRIBERS, INC.

38

1  me.  Count One of the --

2          THE COURT:  You know, the debtor's injunction was a

3  105 that you get during the pendency of the case.

4          MR. STRATTON:  Your Honor, let's back up.  Let me go

5  to the confirmation order in the plan.  The confirmation order

6  talks about the North Carolina action and specifically

7  addresses broader issues in Section 105, and so did the

8  complaint.  And I'll get back to that.

9          THE COURT:  Yes.  Talk about the complaint because

10  the complaint they filed was a 105 to extend the stay --

11          MR. STRATTON:  Well, it was for a declaratory

12  judgment.  There were two provisions in the complaint and in

13  the counterclaims that are identical.  The first count in both

14  the counterclaim and in the complaint sought a declaratory

15  judgment that the claims asserted by Mr. Angell were estate

16  causes of action.  That count was dismissed with prejudice as

17  to this debtor.

18          The fifth cause of action in both complaints, in

19  fact, they borrowed them from the same word processing

20  document, sought an injunction against the prosecution of the

21  North Carolina action.  That relief which they now have tried

22  to revive was dismissed with prejudice as to these debtors.

23  The remaining four counts all turn on allegations that by

24  prosecuting the North Carolina action Mr. Angell and the Angell

25  entities were engaged in "misconduct".  Now those counts have

39

1  all been decided on the merits because the confirmation order

2  which has res judicata effect or claim preclusion effect said,

3  you can proceed with the North Carolina action in its entirety.

4  In its entirety.  There's no exceptions.  There's no

5  limitations.  There's nothing.  It says go forward.

6          THE COURT:  Well, I've already agreed with you on

7  this.  So, what's your point?

8          MR. STRATTON:  So, the point is as to --

9          THE COURT:  Why are we still discussing this?

10         MR. STRATTON:  -- the six claims in the counterclaim

11 they were all addressed by either the dismissal --

12         THE COURT:  Okay.

13         MR. STRATTON:  -- of the initial adversary proceeding

14 brought by the debtors or they were all precluded by the

15 confirmation order.

16         THE COURT:  All right.

17         MR. STRATTON:  So the point there, Your Honor, is

18 that as to our motion to dismiss for failure to state a claim

19 -- which by the way just to make a note of this, in their

20 response and their cross motion they -- Your Honor, my

21 associate has helped me out here -- the complaint that the

22 debtors filed in 2001 is a complaint for declaratory and

23 injunctive relief pursuant to Sections 362 and 105 of the

24 bankruptcy code.  And as I said they were seeking to reach

25 broader than Section 105 relief.  The point being this.  We

40

1    filed a motion to dismiss the counterclaims and the principal

2    objection to our claims on the basis that they failed to state

3    a claim upon which relief can be granted.

4              THE COURT:  All right.

5              MR. STRATTON:  The debtors in their response don't

6    argue with this about the law and they don't --

7              THE COURT:  I think this is all moot.  I mean, I

8    agree with you on the plan.  You're allowed to do what you're

9    doing.

10             MR. STRATTON:  Well, it's not moot, Your Honor.

11             THE COURT:  Why isn't it moot?

12             MR. STRATTON:  Well, it's not because first of all

13   we're sitting in the middle of a law suit an adversary

14   proceeding.  And --

15             THE COURT:  What adversary proceeding?

16             MR. STRATTON:  Well, under Rule 3007 an objection

17   when it's combined with a counterclaim commences an adversary

18   proceeding.

19             THE COURT:  Okay.

20             MR. STRATTON:  They've asserted claims against our

21   clients for affirmative relief.  Punitive damages, monetary

22   damages, declaratory judgment and an injunction.  And in

23   response to that as we would if the matter was instituted by a

24   complaint, we filed a motion to dismiss.

25             THE COURT:  I understand.  I agree with you on your

41

1  argument.

2          MR. STRATTON:  Fine.  Then I'll stop.

3          THE COURT:  Okay.  Thank you.

4          MR. STRATTON:  I thought we were agreeing on the plan

5  issues, I didn't realize you had agreed with me on the res

6  judicata dismissal of the complaint issues.  And, now I'm

7  looking at you and I'm thinking maybe we're not communicating

8  here.

9          THE COURT:  Isn't it the same thing?

10         MR. STRATTON:  Well, yes and no.  It is because the

11 factual underpinnings come from the confirmation order and the

12 plan.

13         THE COURT:  Right.

14         MR. STRATTON:  They are the same thing if you agree

15 with me on the law and the effect of the dismissal of that law

16 suit and the entry of the confirmation order on the claims

17 they're trying to assert.

18         THE COURT:  Well, I'm not certain that the dismissal

19 of the law suit with prejudice made any determination as to

20 whether your North Carolina suit is pursuing a derivative

21 action or not.  If that's what you're seeking to get from me

22 that was not what was decided.

23         MR. STRATTON:  I think it was, Your Honor, with all

24 due respect.

25         THE COURT:  How?

42

1          MR. STRATTON:  Because Count One of the complaint --

2    let me back up.

3          THE COURT:  The plan said the debtor agreed to

4    dismiss it with prejudice.  The defendants, the Ds&Os reserve

5    the right to argue --

6          MR. STRATTON:  And that's where I was going.

7          THE COURT:  -- that it's a derivative action --

8          MR. STRATTON:  Exactly.

9          THE COURT:  -- and the derivative action has been

10   settled by the plan.

11         MR. STRATTON:  Exactly.  As far as the debtor's

12   concerned, --

13         THE COURT:  Right.

14         MR. STRATTON:  -- the debtor -- well, first of all,

15   as I was trying to do, let me back up.  The dismissal of a

16   complaint or a claim with prejudice is an adjudication on the

17   merits.  One of the claims that was dismissed was this issue of

18   is it an estate cause of action or is it derivative or

19   individual?  The debtor agreed to dismiss that complaint.  In

20   other words, the debtor agreed that on the merits it could no

21   longer pursue that claim.  It, in fact, did waive the right to

22   raise that argument.  We agreed and they agreed and the Court

23   ordered that the defendants in the North Carolina action could

24   pursue the issue.  That's fine.  If they want to pursue it down

25   there, and they have, we'll do that.

43

1          THE COURT:  Okay.

2          MR. STRATTON:  It can not and should not be pursued

3    by the defendants in this Court after the entry of the

4    confirmation order.

5          THE COURT:  Well, they're not here.

6          MR. STRATTON:  That's my point.

7          THE COURT:  The debtor's here.

8          MR. STRATTON:  I'm sorry, I said defendants, I meant

9    debtors.  And that's the important point.

10          THE COURT:  Right.  And I agree with you on that, the

11    debtor can't raise that here.

12          MR. STRATTON:  Thank you.  That's fine.  Which makes

13    most of my argument, since I think we agree, I think I can

14    limit myself to commenting.  First, we've talked about claim

15    number 9162.  Second, as I understand these issues and maybe I

16    don't understand the debtor's financial wherewithal, there is a

17    solution short of throwing the plan baby out with the debtor's

18    intent bath water and that is to create a reserve.  I don't

19    know how big it has to be.  And perhaps it means the

20    distributions will have to be delayed until the federal court

21    in North Carolina decides the estate and non-estate issue.  But

22    there is a solution, a reserve could be created.  And I think I

23    would suggest to the Court that doing that does a lot less

24    violence to a plan and a confirmation order than accepting the

25    debtor's invitation to revisit the language of the plan or the

44

1   confirmation order.

2          Let me just look at my notes, Your Honor, but --

3          THE COURT:  What about the post-petition interest?

4          MR. STRATTON:  As I said, Your Honor, we will look at

5   that, if it's based solely on unsecured claims we'll withdraw

6   that claim.

7          THE COURT:  Oh, okay.

8          MR. STRATTON:  All right, I think the only other

9   point I think I need to address, Your Honor, is this interorum

10  if they don't dismiss these and we win later on, we'll seek to

11  offset their claims for damages we sustained in bringing the

12  motion and having to find self-insured retention.  I think Your

13  Honor had it right, they were going to have to fund that

14  anyhow.  And, given the language of the plan I can't imagine

15  how proceeding with the litigation could be viewed as

16  misconduct that would give rise to any kind of a claim against

17  the Angell entities but in light of Your Honor's comments

18  we'll, if we're forced to, we'll litigate that at a later time.

19         THE COURT:  All right.

20         MR. STEINBERG:  Your Honor, just briefly.  Mr.

21  Stratton keeps on making the argument in his papers and to Your

22  Honor that the dismissal of the 105 injunction action had a res

23  judicata effect on the ability to challenge whether something's

24  an estate claim or not an estate claim.  I think you can not

25  look at that aspect of what was an overall global settlement of

45

1  the Premier issues without looking at the other aspect that was

2  settled at the same time.  Which is that this Premier Committee

3  who had filed a delegation to bring what it had defined as the

4  officer and director estate causes of action were dismissing

5  those claims with prejudice.  I didn't need a declaratory

6  judgment anymore as to whether someone was going forward in

7  violation of the automatic stay or with pursuing an estate

8  claim.  I had a proceeding that was pending which defined the

9  estate claims and that was being dismissed with prejudice.  I

10 didn't need to do anything more, I had won.  I had gotten the

11 estate claims dismissed with prejudice.  I didn't need to do a

12 declaratory judgment anymore.

13       What I expected was that having won that that I would

14 be able to enjoy the fruits of winning that, which is that no

15 one else is entitled to bring something that was resolved on

16 notice to every creditor in this case and with an opportunity

17 to be heard.  And what he wants to say with a lot of incendiary

18 language is that somehow I was trying to snooker somebody here

19 and I was not trying to do that.  I was --

20       THE COURT:  No, but did you by withdrawing with or

21 dismissing with prejudice that cause of action not agree that

22 the debtor would not make that argument any longer?  You feel

23 you settled it, well, you can't make that argument right now.

24       MR. STEINBERG:  No, no, no, I had a confirmation

25 order that says I was allowed to preserve anything that was

46

1  settled by my plan.  I wasn't --

2          THE COURT:  Wait a minute, now, the directors' and

3  officers' defense on that issue is preserved.

4          MR. STEINBERG:  Oh, I have provisions in the

5  confirmation order that says I'm entitled to seek any order

6  from Your Honor in aid of implementation or assistance of the

7  plan.  If I had a litigation that was resolved by the plan that

8  settled with prejudice that said no one in the world, forget

9  about the Angell causes of action, no one in the world can sue

10 the officers or directors of this company which would trigger

11 potentially administrative claims, indemnity claims to my

12 officers and directors, I'm entitled to come back to Your Honor

13 and enforce that provision of the plan --

14         THE COURT:  But that conflicts with the provision

15 that says the North Carolina suit by Angell can go ahead.

16         MR. STEINBERG:  It doesn't conflict.

17         THE COURT:  How does it not conflict?

18         MR. STEINBERG:  They're entitled to go forward on

19 their third party claims.  It didn't say they're entitled to

20 continue to sue on something that I've just settled with.

21 Where does it say that?  Where does it say that --

22         THE COURT:  No, but it says that --

23         MR. STEINBERG:  -- if he wants to sue on a fraudulent

24 conveyance claim that I settled with his former counsel after

25 having funded his expenses that he's allowed to do it and be in

47

1  another court and tell another jurisdiction that that's what
2  happened in this court.  I'm entitled to come to this Court
3  where the matter was settled and say that, Your Honor, you
4  settled this thing.  This thing was resolved and we shouldn't
5  be allowed to thwart what happened in this court.  And, yes,
6  the directors are allowed to defend themselves, I wasn't going
7  to strip them of their right, but I didn't strip myself of that
8  right.  I had settled the claim with prejudice.  I had settled
9  their claims, the estate claims.  I had settled them with
10 prejudice.  And to say that after having settled it with this
11 prejudice and having provisions and an order which protects me
12 to be able to get the benefits of my bargain I'm not allowed to
13 ask for it.

14           THE COURT:  Well then, why was the injunction action
15 which included a count finding asserting that these were
16 derivative actions, why was it dismissed with prejudice?

17           MR. STEINBERG:  Because it was no longer relevant.
18 You had a declaratory judgment that said, should he be able to
19 continue his Angell action.  And the answer was, yes, he's
20 allowed to -- in my view we were saying he was allowed to
21 pursue his third party claims.  Therefore, the stipulation that
22 had been entered into for the consensual 105 relief that we had
23 requested was going to be dissolved.  It was a consensual, by
24 the way --

25           THE COURT:  But, no, you went beyond resolving the

48

1  injunction.

2          MR. STEINBERG:  Right.  I resolved, I dismissed with

3  prejudice, asking for a declaratory judgment that he was

4  pursuing estate claims.

5          THE COURT:  Well, isn't that what you're asking for

6  today?

7          MR. STEINBERG:  No, but, Your Honor, I had done that

8  because at the same point in time as part of the same

9  resolution because you can't look at this with tunnel vision, I

10 had resolved the estate claims.  I had gotten rid of them.  And

11 I had gotten Your Honor to have continuing jurisdiction to

12 enforce an order that says I got rid of them.  So what more did

13 I need to do?  I need to keep a proceeding that no longer has a

14 relevance open?  Yes, they asked me to withdraw it and so I

15 withdrew it.  Cleaned up the Court's docket.  But I didn't give

16 up.  I didn't give up the right to say you're breaching --

17         THE COURT:  But, a dismissal with prejudice is

18 different from a dismissal without prejudice.

19         MR. STEINBERG:  Yes, because I had said he can go

20 forward in the North Carolina action to pursue third party

21 claims.  I was stopping at that point in time.  What he's

22 arguing that is twofold.  The 105 thing I don't think gets

23 anywhere because I agreed he can go forward.  I didn't say he

24 can go forward to bring estate claims that I had settled but I

25 agreed that he can go forward, and I'm not quibbling with that.

49

1  The issue is, is whether by agreeing to dismiss the injunction
2  action with prejudice I had given up my right to say that he
3  has estate causes of action.  I didn't give up that right, I
4  settled the estate causes of action.  I didn't have to fight
5  about it anymore.  I had his former counsel defining in an
6  action that Your Honor let him go forward where he defined what
7  the estate causes of action were and they agreed as the law of
8  this case to get rid of those causes of action.  I was way
9  beyond the events of 2001.  I'm into 2003 when we achieved what
10 I think was a victory.  I don't have to dwell on a motion in
11 2001 when I actually won in 2003.

12          In 2003 I get a settlement where they withdraw all
13 the stuff that they said about the bank guarantee claim which
14 costs thousands of dollars.  They withdraw with prejudice the
15 D&O litigation, all it does is cost the estates an extra three
16 cents on potentially 22 million dollars a claim.  For $660,000
17 I get rid of all the stuff in this case and it cost this estate
18 a million dollars to fund the Premier Associates legal fees.  I
19 had before Your Honor tried the issue as to whether these
20 actions would go forward.  I was cleaning up a mess to go
21 forward into confirmation saving the estate money.  I wasn't
22 waiving rights.  I was cleaning up the docket on that
23 injunction action and I expressly got rid of the litigation and
24 I expressly reserved the right to come back to Your Honor to
25 say that there's something going on here outside of Your

50

1  Honor's jurisdiction where people are trying to interpret what
2  happened here and I'm entitled to come back to Your Honor to be
3  able to do that to enforce the dismissal with prejudice, not
4  the injunction action, that's relevant.  To dismiss with
5  prejudice the estate claims.  No creditor, no creditor in this
6  case whether it's Angell or anybody else is entitled to assert
7  estate claims that were dismissed as part of this plan of
8  reorganization.  And I reserved the right to come back to Your
9  Honor to be able to enforce that to protect this estate from
10  indemnity claims from the officers and directors and for the
11  inability to make distributions in this case because I always
12  have open the potential that someone will assert a contingent
13  claim until I've exasperated the full statute of limitations
14  for any state in this country.  And that's not what I bargained
15  for.  And that's not what the creditors who voted on this plan
16  thought they got.
17        THE COURT:  Well, except that this was also in the
18  context of agreeing to let the North Carolina suit proceed and
19  reserving for the defendants in that suit the right to make the
20  exact same argument you're making.
21        MR. STEINBERG:  Agreed.  I wasn't saying to them, you
22  can't make this action, I'm the only one who can make the
23  action, because they're naked in North Carolina.  There was, by
24  the way, Your Honor, there was one count that was asserted in
25  the Angell cause of action which was an estate cause of action

51

1  which was not asserted in the delegation motion.  I was Count

2  Eight.  And I said to Gene Tarr, why didn't you copy that one,

3  too?  And he said, because I thought I had a Rule 11 violation

4  to be able to assert that one so I didn't assert that one.

5  That was another reason why I preserved the right because I

6  didn't have an overlap completely of that cause of action.  I

7  had one estate cause of action that was in the Angell cause of

8  action, it's Count Eight, and that was not in, it's the unfair

9  trade practice case.

10            THE COURT:  Unfair deceptive trade, yes.

11            MR. STEINBERG:  That was not in the delegation

12  motion.  And I wanted the directors and officers to be able to

13  get rid of that count as well.  So there was a reason to be

14  able to allow them to assert it because I didn't have a

15  complete overlap of the estate causes of action.  And, you

16  know, Mr. Tarr's going to be here in two weeks asking for fees

17  for defending his defunct committee for actions that he took

18  after the committee was dissolved under the plan of

19  reorganization.  He was an active participant of what went on

20  there.  If Your Honor's not sure of what happened I certainly

21  think you could ask him, certainly he'd be more credible, what

22  he has to say as compared to Mr. Stratton who wasn't there and

23  --

24            THE COURT:  Well, I'm not going to hold off on this.

25  I think that this is a lot of argument unnecessarily.  I think

52

1 that the plan preserved for the defendants the right to raise
2 that argument, not for the debtor to raise that argument.  I
3 think the debtor by agreeing to dismiss with prejudice its
4 cause of action essentially said that it's not going to pursue
5 the argument as to whether it's derivative or not.  Because
6 that really does not effect the debtor's estate.  Peripherally
7 it effects the debtor's estate because of the indemnity claims
8 but I think by agreeing to let the North Carolina suit to
9 proceed and allowing the directors and officers themselves to
10 raise the defenses the debtor contemplated that it would be
11 paying the attorney's fees in North Carolina for doing that.
12 So I don't think that the debtor reserved the right to make
13 that argument.

14        Other than the indemnity claim issue it has no effect
15 on the debtor because pursuing the derivative actions has no
16 effect on the estate.  The debtor has settled the derivative
17 action suit.  The debtor has only the claim of the creditor
18 against it for damages and whether it's damages based on the
19 fraud of the directors and officers is still a damages claim
20 they have against the debtor.

21        MR. STEINBERG:  Your Honor, there are two ways that
22 it does effect the estate beyond the indemnity.  One is it does
23 erode the officers' and directors' insurance policy which is
24 also to be used for the compensation action which was for
25 bigger than what the insurance claim was about.  And the second

53

1  thing is, is that you do have a self-insured retention amount

2  under the policy for half a million dollars and it's cheaper to

3  litigate to dismiss one claim versus seven or eight claims.  So

4  there's an incremental expense to this estate.  And you do have

5  the delay in the distribution to this estate which is a

6  material aspect because money distributions delayed is

7  distributions denied to people.

8          THE COURT:  Well, with respect to the insurance

9  policy I have decided in the past two parties may have an

10 action against the insurance policies and the fact that one

11 pursuing it may decrease the amount of the policy that may

12 otherwise be available to the estate under a derivative claim

13 or otherwise does not mean that that claim does not have the

14 right to be pursued.

15         MR. STEINBERG:  Your Honor, I would agree with you

16 that if two parties were not pursuing estate claims and they

17 had a D&O coverage or the fact that the coverage was not enough

18 to handle the both claims shouldn't be a reason why.  But if

19 the estate is pursuing a derivative cause of action which is

20 the compensation action and the other estate related claims was

21 dismissed so that the policy would preserve for the full

22 benefit of a compensation action, you are damaging this estate

23 who is managing the whole process by allowing someone to pursue

24 what had otherwise been a dismissed claim.

25         THE COURT:  I understand --

54

1      MR. STEINBERG:  You're effecting the policy.

2      THE COURT:  -- but I'm confident the North Carolina

3  Court can make the right decision and permit the non-derivative

4  actions to proceed and not those that have otherwise been

5  settled by the plan.

6      MR. STEINBERG:  Your Honor, then you still have the

7  issue as to whether if you thought that the plan was structured

8  so that the North Carolina Court would be the one to resolve

9  this issue, in the event that I'm correct and that Mr. Angell

10  is doing something improper based on the plan, he's pursuing

11  dismiss the estate claims, I think I should have a right to

12  offset from his distribution.  I don't know why I shouldn't be

13  able to seek compensation for that.  Your Honor may want --

14      THE COURT:  Because you waived the right to that by

15  dismissing with prejudice the 105.

16      MR. STEINBERG:  I didn't waive the right to assert

17  claims against him for the incremental cost that I might incur.

18      THE COURT:  You waived the right to argue that he

19  should not be pursuing derivative claims.

20      MR. STEINBERG:  Let's assume, Your Honor, for the

21  moment, that I waived the right to do that, if he was doing

22  something that was improper and I had assigned in effect the

23  right to make that claim to the Ds&Os and I was indirectly

24  funding that argument by paying for the insurance for the

25  ability to make that argument, if it turns out that the Ds&Os

J&J COURT TRANSCRIBERS, INC.

55

1  were right that he was doing what was improper that had been

2  settled there's a cost that this estate have, why shouldn't

3  that be an offset without regard to what this plan says?  An

4  offset against his distribution.  Why shouldn't he be made to

5  suffer the consequences of having violated what I believe to be

6  the dismissal of an estate cause of action?  Whether I had the

7  right to assert it or the defendants have the right to assert

8  it and I had the obligation to fund that expense up to

9  $500,000, why shouldn't I have the right to recoup that

10  expense?

11       MR. STRATTON:  Your Honor, I think you ruled so I

12  think everything after your rulings is reargument of argument.

13  But to answer the question why shouldn't you?  Because you

14  agreed not to.  It's in the confirmation order.  It's in the

15  plan.  That's the answer.

16       I have nothing else.  I'm not sure how Your Honor

17  wants to proceed.

18       THE COURT:  Well, I have ruled and there is not a

19  right to pursue the counterclaim or objection to claim based on

20  the same argument that was in the adversary that was dismissed

21  with prejudice.  But I think that to the extent that the

22  unliquidated claim is merely duplicative of the note claims I

23  think that it should be dismissed.  So, unless the claimant can

24  establish that it's different or there are other damages that

25  would not otherwise be collectible under the note claim I can't

56

1    see that there is something that it is --

2         MR. STRATTON:  I apologize.  Let me suggest that we

3    take another look at that.  If we can agree on language with

4    respect to the effect of the withdrawal of the claim, as we

5    discussed at the outset of my remarks, we'll submit an order.

6    If we can't then I'll submit a certification of counsel saying

7    we can't and we'll come back to court and explain why they're

8    not the same and why they shouldn't be withdrawn.  But I

9    suspect that we should be able to resolve that rather narrow

10   issue with respect to claim number 9162, Your Honor.  And the

11   same would apply to the post-petition interest in I think the

12   three claims on the notes.

13        THE COURT:  All right.

14        MR. STEINBERG:  Your Honor, did you, in fact, rule

15   that I am not entitled to at some point in time seek damages in

16   the event that it turns out that the North Carolina Court

17   determines that these are estate causes of action?

18        THE COURT:  Yes.  The debtor has waived that.

19        MR. STEINBERG:  Does someone have the right to be

20   able to argue that?  Does defendants have the right to argue

21   that they have been sued on something that had already been

22   dismissed and he's allowed to just do that?

23        THE COURT:  Yes, the defendants have the right to

24   raise as a defense in their action that his complaint is a

25   derivative action and has been settled by the terms of the

57

1  plan.  Or that is not otherwise held by him.

2          MR. STEINBERG:  Okay.

3          THE COURT:  All right.

4          MR. STRATTON:  Thank you, Judge.

5          THE COURT:  I'll look for a form of order.

6          MR. STRATTON:  Can we talk a little bit about that?

7  We have the claim number 9162 issue and we have the post-

8  petition issue, and I assume --

9          THE COURT:  Now, I guess we --

10         MR. STRATTON:  Now I need to figure out, since I

11 think you ruled in our favor and you seem to be very clear on

12 that, what the order should look like.  The objections are

13 overruled?

14         THE COURT:  Not in their --

15         MR. STRATTON:  Except as provided with respect to the

16 two issues we've just discussed.

17         THE COURT:  Well, if you wanted to do it in the

18 reverse I've sustained your motion to dismiss on the

19 counterclaim issue.

20         MR. STRATTON:  That's fine.  Where are we on the

21 claims objections?  Other than 9162 post-petition interest and

22 the withdrawn claims.  I think that you sustained that as well.

23         THE COURT:  I think that's all this --

24         MR. STRATTON:  It's rolled into this.

25         MR. STEINBERG:  He's withdrawing a bunch of claims.

58

1          MR. STRATTON:  Well, we'll withdraw the claims that

2     are contingent and unliquidated on the guarantee of leases.

3     We'll resolve, I hope, claim 9162 and we'll have to come back

4     and argue that.   Post-petition issue claim --

5          THE COURT:  Tell me the 9062 claim issue.

6          MR. STRATTON:  It was the unliquidated claim for

7     breaches of fiduciary duty and the like against the debtor's

8     directors and officers.

9          THE COURT:  Well, against the debtor, but is this not

10    the one you're going to withdraw because it's unliquidated?

11         MR. STRATTON:  Right.  Subject to looking at it,

12    understanding, and getting an agreement on the effect of

13    withdrawing it we'll include that.

14         THE COURT:  All right.  Okay.

15         MR. STRATTON:  The motion for failure to state a

16    claim as to the counterclaims and the claim objection that is

17    based on this general motion of misconduct, we'll include that

18    in the order as well.  I'll circulate it and I'm sure we'll be

19    back in two weeks fighting over its language.  I hope not, but

20    we'll see.

21         THE COURT:  And the post-petition interest issue

22    you're conceding.

23         MR. STRATTON:  Right, that'll be addressed as well,

24    Your Honor.

25         MR. STEINBERG:  Your Honor, I thought you had ruled

59

1    but obviously you would know better than I would, that you

2    thought that the 9162 claim was duplicative and was going to be

3    dismissed.

4            THE COURT:  I think he said he's going to withdraw it

5    after he looks at it.

6            MR. STEINBERG:  No, I think he said he's going to

7    think about it and then decide whether he's going to come back

8    to you based on how he thinks.

9            MR. STRATTON:  Your Honor, what I said, just so we

10   can be clear, is that we will look at it.  If it, in fact, it

11   is simply another iteration of the note claims and does not

12   raise the issues in the North Carolina action we'll dismiss it

13   or withdraw it if the debtor's will agree that in doing so it

14   has no preclusive effect and no effect generally, if I may not

15   be so precise, may be broader and more generalized in the North

16   Carolina action.  What I don't want is by agreement, withdraw

17   the claim and then have them run into the North Carolina Court

18   and say, look, Your Honor, --

19           THE COURT:  You're withdrawing it as duplicative.

20   How's that on the merits --

21           MR. STRATTON:  We'll work on the language, Your

22   Honor, and hopefully we will be able to work it out.

23           MR. STEINBERG:  Your Honor, not to quibble, I'm not

24   sure whether you have ruled or whether he's allowed to cogitate

25   and then decide he wants to open up everything again.  I'm not

A0059

60

1  sure whether Your Honor has actually ruled on the issue because

2  if that's the case --

3          THE COURT:  Well, I've ruled that to the extent it's

4  duplicative it's disallowed.  Unless he can articulate a reason

5  why it's not duplicative.

6          MR. STEINBERG:  So he's reserved the right to come

7  back to Your Honor to decide --

8          THE COURT:  To argue that there's --

9          MR. STEINBERG:  To articulate something that he

10 couldn't articulate today.

11         THE COURT:  Yes, exactly.  That there's something in

12 there that's not duplicative.

13         MR. STEINBERG:  We'll look at what he writes.  And,

14 Your Honor, just to be fair to the defendants because all of

15 the paranoia that you see expressed by Mr. Stratton will be

16 expressed by the defendants.  I'm pretty sure that we will have

17 language to negotiate to make sure that what happened here

18 today is not going to prejudice in any way the North Carolina

19 action.  And without some explicit language that says that

20 everything that's sub judice is still sub judice to be

21 determined, and nothing here has changed that we will have to

22 come back to Your Honor for that.

23         THE COURT:  Well, the North Carolina defendants are

24 not before me, so this has no effect on their rights.

25         MR. STRATTON:  Your Honor, I'm not going to comment

61

1   on that because I didn't understand it but I assume we'll be

2   able to address it.

3           MR. STEINBERG:  I'll draft that portion of the order.

4           THE COURT:  All right.  I'll look for a form of order

5   then.  We'll stand adjourned.

6           MR. STRATTON:  Thank you, Your Honor.

7                   *  *  *  *  *

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

62

C E R T I F I C A T I O N

    I, MARLENE A. FATTORE, court approved transcriber, certify that the foregoing is a correct transcript from the official electronic sound recording of the proceedings in the above-entitled matter.

_Marlene Fattore_        Date: _6/24/04_

MARLENE FATTORE

J&J COURT TRANSCRIBERS, INC.