APPELLEES' APPENDIX

ITEM 2

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| INTEGRATED HEALTH SERVICES, INC., _et al._, | ) | Case No. 00-389 (MFW) |
|  | ) |  |
|  | ) | (Jointly Administered) |
| Debtors. | ) |  |
|  | ) |  |

## AMENDED JOINT PLAN OF REORGANIZATION OF INTEGRATED HEALTH SERVICES, INC. AND ITS SUBSIDIARIES UNDER CHAPTER 11 OF THE BANKRUPTCY CODE

KAYE SCHOLER LLP
425 Park Avenue
New York, New York  10022
Co-Attorneys for the Debtors
  and Debtors in Possession

JENKENS & GILCHRIST -
PARKER CHAPIN LLP
The Chrysler Building
405 Lexington Avenue
New York, New York  10174
Co-Attorneys for the Debtors
  and Debtors in Possession

YOUNG, CONAWAY,
STARGATT & TAYLOR LLP
The Brandywine Building
1000 West Street, 17th Floor
P.O. Box 391
Wilmington, DE  19899-0391
Co-Attorneys for the Debtors
  and Debtors in Possession

A0063

### 5.5    *Release of Representatives.*

As of the Effective Date, the respective officers, directors, agents, employees, representatives, financial advisors, professionals, accountants, and attorneys of the Debtors, solely to the extent of their direct and indirect participation in the business and financial affairs of the Debtors, shall be deemed released by the Debtors and the Debtors' estates from any and all Claims against them held by the Debtors or the Debtors' estates solely to the extent such Claims relate to their conduct in their respective capacities as representatives of the Debtors, except as otherwise expressly provided in the Plan or the Confirmation Order.

### 5.6    *Limitation on Releases, Indemnification and Exculpation of Directors.*

Notwithstanding anything to the contrary in the Plan or the Confirmation Order, no provision of the Plan or the Confirmation Order, including, without limitation, Sections 5.5, 8.4 and 10.7 of the Plan, will in any way modify, release, limit or be deemed in any way to modify, release or limit the liability of any officer or director from any claims or Causes of Action that are or may be asserted in the Compensation Action, subject to, and in accordance with, the Order, dated January 24, 2002, authorizing the Creditors' Committee to commence the Compensation Action.

### 5.7    *Cancellation of Existing Securities and Agreements.*

Except for purposes of evidencing a right to distributions under the Plan or as otherwise provided hereunder, on the Effective Date all agreements and other documents evidencing Claims or rights of any holder of a Claim against any of the Debtors, including all indentures and notes evidencing such Claims, shall be canceled and deemed null and void and of no force and effect as against the Debtors; provided, however, that (a) the Class 9 Indentures shall continue in effect for the purposes of (i) allowing the Class 9 Indenture Trustees to make any distributions on account of the respective Settled Senior Subordinated Debt Claims pursuant to the Plan and to perform such other necessary administrative functions with respect thereto, and (ii) permitting the Class 9 Indenture Trustees to maintain and assert any rights or liens for reasonable fees, costs and expenses under the Class 9 Indentures; and (b) the Class 10 Indenture shall continue in effect for the purpose of allowing the Class 10 Indenture Trustee to retain its charging lien until payment of its fees pursuant to Section 4.10(c) of the Plan. Upon termination of the indentures, the indenture trustees shall be released from any further obligation or duty under their respective indentures, except as necessary to effectuate distributions under the Plan.

### 5.8    *Merger and Liquidation of Subsidiaries.*

Except as otherwise set forth herein, prior to or as of the Effective Date, the Debtors may cause any or all of the Debtors to engage in any corporate restructuring transactions deemed reasonably necessary or appropriate to effectuate the implementation of the Plan, including, without limitation, merging, dissolving or transferring assets between or among Debtors.

A0064

10.2    *Discharge of Claims and Termination of Equity Interests.*

Except as provided in the DIP Credit Facility, the rights afforded in the Plan of Reorganization and the payments and distributions to be made hereunder shall completely satisfy and discharge all existing debts and Claims, and terminate all Equity Interests, of any kind, nature, or description whatsoever against or in the Debtors or any of their assets or properties to the fullest extent permitted by section 1141 of the Bankruptcy Code. Except as provided in the Plan of Reorganization or the DIP Credit Facility, upon the Effective Date, all existing Claims against and Equity Interests in the Debtors, shall be, and shall be deemed to be, discharged, satisfied, released and terminated in full, and all holders of Claims and Equity Interests shall be precluded and enjoined from asserting against the Liquidating LLC or the Reorganized Debtors, as applicable, their successors and assigns, or any of their respective assets or properties, any other or further Claim or Equity Interest based upon any act or omission, transaction, or other activity of any kind or nature that occurred prior to the Effective Date, whether or not such holder has filed a proof of claim or proof of equity interest and whether or not the facts or legal bases therefor were known or existed prior to the Effective Date. Notwithstanding the foregoing, the Claims and Causes of Action against IHS in the Compensation Action are preserved.

10.3    *Discharge of Debtors.*

Upon the Effective Date and in consideration of the distributions to be made hereunder, except as otherwise expressly provided in the Plan or the DIP Credit Facility each holder (as well as any trustee or agent on behalf of such holder) of a Claim or Equity Interest and any affiliate of such holder shall be deemed to have forever waived, released, and discharged the Debtors, to the fullest extent permitted by section 1141 of the Bankruptcy Code, of and from any and all Claims, Equity Interests, rights, and liabilities that arose prior to the Effective Date. Upon the Effective Date, all such persons shall be forever precluded and enjoined, pursuant to section 524 of the Bankruptcy Code, from prosecuting or asserting any such discharged Claim against or terminated Equity Interest in the Debtors.

10.4    *Term of Injunctions or Stays.*

Unless otherwise provided, all injunctions or stays arising under or entered during the IHS Reorganization Cases under section 105 or 362 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until the later of the Effective Date and the date indicated in the order providing for such injunction or stay. Notwithstanding the foregoing, on the earlier of the Confirmation Date and April 29, 2003: (i) the adversary proceeding pending in the IHS Reorganization Cases captioned *Integrated Health Services, Inc. and Premiere Associates, Inc. v. Don G. Angell, D. Gray Angell, Jr., and Don R. House, individually and in their capacities as Co-Trustees of the Don Angell Irrevocable Trust Under Instrument dated July 24, 1992; Angell Care Incorporated; Angell Family Limited Partnership; and Bermuda Village Retirement Center Limited Partnership,* Adv. Pro. No. 01-1030 (the "Angell Injunction Action") shall be deemed to be dismissed with prejudice; (ii) the Stipulation and Order, dated June 12, 2001, effective as of April 19, 2001 [Docket No. 20] entered in the Angell Injunction Action shall be deemed

A0065

retain, reserve, and be entitled to assert all such claims, causes of action, rights of setoff, and other legal or equitable defenses which they had immediately prior to the Commencement Date or thereafter fully as if the IHS Reorganization Cases had not been commenced; and all of the Debtors' legal and equitable rights respecting any Claim left unimpaired by the Plan of Reorganization may be asserted after the Confirmation Date to the same extent as if the IHS Reorganization Cases had not been commenced.

      10.9   *Dismissal of Premiere Committee Matters.*

As of the Effective Date, the motion pending in the IHS Reorganization Cases entitled *Motion of the Official Committee of Unsecured Creditors of Premiere Associates, Inc. and its Subsidiaries for Leave to File an Adversary Proceeding Complaint on Behalf of Premiere Associates, Inc. and its Subsidiaries* filed on January 9, 2002 [Docket No. 6126] ("the Premiere Avoidance Motion") and the adversary complaint filed in the IHS Reorganization cases captioned *Official Committee of Unsecured Creditors of Premiere Associates, Inc. and its Subsidiaries, on behalf of Premiere Associates, Inc., et al., v. Daniel J. Booth, Ronald L. Lord, C. Taylor Pickett, Marshall Elkins and Marc Levin,* filed on February 1, 2002 [Docket No. 6376](the "Premiere D&O Action") shall each be deemed to be dismissed with prejudice.

## SECTION 11. RETENTION OF JURISDICTION

    11.1   *Exclusive Jurisdiction.*

On and after the Effective Date, the Bankruptcy Court shall retain and have exclusive jurisdiction over all matters arising in, arising under, or related to the IHS Reorganization Cases, or that relate to any of the following:

    (a)   To hear and determine applications for the assumption or rejection of executory contracts or unexpired leases and the allowance of Claims resulting therefrom.

    (b)   To hear and determine any motion, adversary proceeding, application, contested matter, and other litigated matter pending on or commenced after the Confirmation Date.

    (c)   To ensure that distributions to holders of Allowed Claims are accomplished as provided herein.

    (d)   To consider Claims or the allowance, classification, priority, compromise, estimation, or payment of any Claim, Administrative Expense Claim, or Equity Interest.

    (e)   To enter, implement, or enforce such orders as may be appropriate in the event the Confirmation Order is for any reason stayed, reversed, revoked, modified, or vacated.

APPELLEES' APPENDIX

ITEM 3

IN THE UNITED STATES BANKRUPTCY COURT
DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| INTEGRATED HEALTH SERVICES, INC., _et al._, | ) | Case No. 00-389 (MFW) |
| | ) | |
| | ) | (Jointly Administered) |
| Debtors. | ) | |
| | ) | |

## DISCLOSURE STATEMENT FOR AMENDED JOINT PLAN
## OF REORGANIZATION OF INTEGRATED
## HEALTH SERVICES, INC. AND ITS SUBSIDIARIES
## UNDER CHAPTER 11 OF THE BANKRUPTCY CODE

Plan Proponent—Integrated Health Services, Inc., _et al._,
Debtors and Debtors in Possession

Dated — March 13, 2003

KAYE SCHOLER LLP
425 Park Avenue
New York, New York 10022
Co-Attorneys for the Debtors
and Debtors in Possession

JENKENS & GILCHRIST –
PARKER CHAPIN LLP
The Chrysler Building
405 Lexington Avenue
New York, New York 10174
Co-Attorneys for the Debtors
and Debtors in Possession

YOUNG, CONAWAY,
STARGATT & TAYLOR LLP
The Brandywine Building
1000 West Street, 17th Floor
P.O. Box 391
Wilmington, DE 19899-0391
Co-Attorneys for the Debtors
and Debtors in Possession

receive any recoveries thereunder and administer such recoveries pursuant to the terms of the Liquidating LLC Agreement.

    5.    *Qui Tam Suits.*

       Certain of the Debtors are defendants in various *qui tam* lawsuits brought by third parties alleging, among other things, violations of the federal False Claims Act, 31 U.S.C. §§ 3729-33. The United States Settlement Agreement addresses the resolution of certain *qui tam* claims against the Debtors in these lawsuits under 31 U.S.C. §§ 3730(b) or (d). All other *qui tam* claims will be treated as General Unsecured Claims in Class 6. The Debtors intend to file an objection seeking to disallow all such *qui tam* claims, and, if necessary, seek to have those claims estimated by the Bankruptcy Court.

    6.    *Jay M. Felser, et al. Litigation.*

       On or about December 10, 1998, Plaintiffs Jay M. Felser and Felser Health Ventures, Inc. ("Plaintiffs"), filed a Maryland State Court Complaint in the Circuit Court for Baltimore County, captioned as *Jay M. Felser and Felser Health Ventures, Inc., v. Integrated Health Services, Inc. and Monarch Properties, Inc., and Lyric Health Care, LLC,* case no. 03C-98-012297 (the "Felser State Court Action"). The Felser State Court Action arises from allegations including, but not limited to, breach of contract resulting from Plaintiffs' retention as an independent contractor for IHS.

       By Order of this Court dated April 11, 2002 (the "Order"), the automatic stay was modified to allow Plaintiffs to prosecute their claims in the Felser State Court Action through to judgment, provided however, the Movants may not enforce a judgment in the State Court Action against the Debtors except to the extent of available insurance coverage or any distribution made on account of any proof of claim filed in this bankruptcy. The Order further provided that "this Order shall be without prejudice to the [Plaintiffs'] rights, if any, as against non-Debtor parties to collect any agreed settlement and/or judgment in Movants' favor, whether or not it is covered by insurance . . . ."

    7.    *Angell Action.*

       The Debtors have agreed with Don Angell and certain of his affiliates on the earlier of the Confirmation Date and April 29, 2003: (A) the adversary proceeding pending in the IHS Reorganization Cases captioned *Integrated Health Services, Inc. and Premiere Associates, Inc. v. Don G. Angell, D. Gray Angell, Jr., and Don R. House, individually and in their capacities as Co-Trustees of the Don Angell Irrevocable Trust Under Instrument dated July 24, 1992; Angell Care Incorporated; Angell Family Limited Partnership; and Bermuda Village Retirement Center Limited Partnership,* Adv. Pro. No. 01-1030 (the "Angell Injunction Action") shall be deemed to be dismissed with prejudice; (B) the Stipulation and Order, dated June 12, 2001, effective as of April 19, 2001 [Docket No. 20] entered in the Angell Injunction Action shall be deemed to be vacated, and (C) to the extent any stay pursuant to Section 362 or 105 is applicable to the civil action, pending in the United States District Court for the Middle District of North Carolina, captioned *Don G. Angell; D. Gray Angell, Jr., and Don R. House, in their capacities as Co-Trustees of the Don Angell Irrevocable Trust Under Instrument Dated July 24,*

A0068

*1992; and Angell Care Incorporated, v. Elizabeth B. Kelly, C. Taylor Pickett, Daniel J. Booth and Ronald L. Lord,* [Case No. 01-CV-435] (the "Angell Action"), such stay shall be deemed modified to allow the Angell Action to be prosecuted; *provided, however,* that nothing herein shall be construed as waiving or limiting the right of any defendant in the Angell Action to raise any defenses or counterclaims it may have, including without limitation, that the claims asserted in the Angell Action are property of the Debtors' estates and that the plaintiffs do not have standing to assert such claims; and *further provided,* that the plaintiffs in the Angell Action and any of their affiliates shall waive any claim they may have in the IHS Reorganization Cases for substantial contribution pursuant to section 503(b) of the Bankruptcy Code. The Debtors and the plaintiffs in the Angell Action agree to bear their own fees and expenses, including attorneys' fees, incurred in connection with the Angell Injunction Action. Nothing contained in the Disclosure Statement, the Plan or the Confirmation Order shall be construed as discharging or releasing the third party claims held by the plaintiffs in the Angell Action against any non-Debtor party, including the defendants in the Angell Action.

The Debtors believe that certain of the defendants in the Angell Action have available to them insurance in connection with potential liability arising therefrom. It should be noted that two of the defendants in the Angell Action have contingent indemnity claims against the Debtors' estates and may be entitled to Administrative Expense priority with respect to such indemnity claims.

## VII.
### The Debtors' Marketing Efforts and Selection of the Purchaser

Beginning in approximately November 2001, the Debtors, in consultation with their key creditor constituencies and with the assistance of UBS Warburg, undertook a series of marketing efforts for the sale of the Debtors' remaining businesses, which included contacting parties with potential interest in submitting a bid for LTC, the contract rehabilitation business, or both. This extensive marketing effort eventually led to UBS Warburg contacting approximately 85 entities, 50 of which were provided financial and organizational information regarding the LTC and Symphony businesses. The Debtors also made a data room available to provide potential bidders access to all pertinent information needed to conduct their due diligence reviews. From this group of 50 potential buyers, 14 expressed initial expressions of interest in January of 2002, and six submitted final bids in April of 2002.

After receiving the final bids, the Debtors and UBS Warburg, at the request of the Creditors' Committee, arranged and attended separate meetings for the two leading bidders for LTC and Symphony along with Arthur Andersen, the financial advisor for the Creditors' Committee[11]. After careful evaluation of the bids, the Debtors and UBS Warburg recommended to the Creditors' Committee that a combined bid for LTC and Symphony be pursued. The Creditors' Committee and their advisors agreed with that recommendation. THI emerged as the leading candidate, and the Debtors negotiated a stock purchase agreement, dated as of December 3, 2002, for the sale of the Shares to THI. The transaction

[11] Effective May 2002, the Creditors' Committee retained Eureka Capital Markets, LLC as its replacement financial advisor.

A0069

APPELLEES' APPENDIX

ITEM 4

UNITED STATES BANKRUPTCY COURT
DISTRICT OF DELAWARE

IN RE:                           . Case No. 00-389 (MFW)
                                 .
                                 . (Jointly Administered)
INTEGRATED HEALTH SERVICES,      .
INC., ET AL.,                    . 824 Market Street
                                 . Wilmington, Delaware  19801
                                 .
            Debtors              . February 26, 2003
                                 . 9:55 a.m.
. . . . . . . . . . . . . . . . .

TRANSCRIPT OF HEARING
BEFORE HONORABLE MARY F. WALRATH
UNITED STATES BANKRUPTCY COURT JUDGE

APPEARANCES:

For the Debtors:            Young Conaway Stargatt &
                            Taylor, LLP
                            By:  ROBERT S. BRADY, ESQ.
                                 EDMON L. MORTON , ESQ.
                            The Brandywine Building
                            1000 West Street, 17th Floor
                            Wilmington, Delaware  19801

                            Kaye Scholer LLP
                            By:  ARTHUR J. STEINBERG
                                 ANA M. ALFONSO, ESQ.
                                 MARC D. ROSENBERG, ESQ.
                                 MYRON KIRSCHBAUM, ESQ.
                            425 Park Avenue
                            New York, New York  10022-3598

Audio Operator:             Jennifer M. Patone

Proceedings recorded by electronic sound recording, transcript
produced by transcription service.

J&J COURT TRANSCRIBERS, INC.
268 Evergreen Avenue
Hamilton, New Jersey 08619
E-Mail:  jjcourt@optonline.net

(609) 586-2311  Fax No.  (609) 587-3599

18

1  and there was an issue as to whether they were asserting estate

2  cause of actions, and there was elements of a 105 injunction

3  about the necessity of these individuals that concentrate on

4  the reorganization and not be distracted by the North Carolina

5  litigation.

6          We have agreed since we are now at the verge of

7  confirmation to a consensual modification of the automatic stay

8  today, and we will be submitting a consensual order with Mr.

9  Angel's personal counsel. The stay would be lifted

10 automatically effective on the first day of the confirmation

11 hearing or April 23rd, whichever occurs earlier. That

12 litigation will then go forward in North Carolina. The estate,

13 to the extent that some of these causes of claims raise estate

14 causes of action, the defendants will be able to raise those

15 issues in the North Carolina court that they don't properly

16 belong to Mr. Angel individually.

17         But the critical component that the debtors get from

18 this arrangement is we get the Premiere Committee's support for

19 the Briarwood sale. We get the Premiere Committee's support

20 for the debtor's plan of reorganization. We get the Premiere

21 Committee to drop to the concern that they had about whether

22 litigation should be brought against the bank group with

23 respect to the guarantees that the Premiere debtors had signed

24 against them, and they dropped --

25         THE COURT: All right. That is resolved?

                    J&J COURT TRANSCRIBERS, INC.

A0071

APPELLEES' APPENDIX

ITEM 5

UNITED STATES BANKRUPTCY COURT
DISTRICT OF DELAWARE

IN RE:                          . Case No. 00-389
                                .
                                .
  INTEGRATED HEALTH SERVICES, .
    ET AL.,                     . 824 Market Street
                                . Wilmington, Delaware 19801
            Debtors.            .
                                . March 12, 2003
. . . . . . . . . . . . . . . . . 9:30 a.m.


                TRANSCRIPT OF OMNIBUS HEARING
          BEFORE HONORABLE MARY F. WALRATH
          UNITED STATES BANKRUPTCY COURT JUDGE


APPEARANCES:

For the Debtors:            Kaye Scholer LLP
                            By:  ARTHUR STEINBERG, ESQ.
                            425 Park Avenue
                            New York, NY 10022

For the Debtors:            Kaye Scholer LLP
                            By:  MARC ROSENBERG, ESQ.
                            425 Park Avenue
                            New York, NY 10022

For the Debtors:            Kaye Scholer LLP
                            By:  ANA ALFONSO, ESQ.
                            425 Park Avenue
                            New York, NY 10022

Audio Operator:             Jennifer M. Patone

Proceedings recorded by electronic sound recording, transcript
              produced by transcription service.

---

J&J COURT TRANSCRIBERS, INC.
268 Evergreen Avenue
Hamilton, New Jersey 08619
E-Mail:  jjcourt@optonline.net

(609) 586-2311   Fax No.  (609) 587-3599

A0072

18

1   changed circumstances.  And I would have to say, Your Honor,
2   that there was some momentum to not have a deal, to have a
3   different deal, but by Tuesday -- if today is Wednesday, by
4   Tuesday we came back to a structure that was pretty much
5   consistent with the prior deal with the following caveats:  the
6   plan would provide for a special class of creditors for the
7   Premiere Creditors of which the Bank Group wouldn't participate
8   in.  That group of creditors would get six cents on the dollar
9   to the extent that the group of claims was $22 million.  To the
10  extent that claims exceeded $22 million -- primarily because we
11  anticipate rejection damages claims -- that we would go back to
12  paying three cents on the dollar for the group and with an
13  overall cap of $37 million.  In effect, that would mean that if
14  the claims in this case and for the premiere Group was over $22
15  million, we would be paying the Premiere estate three cents on
16  the dollar plus $660,000 and they would share pro rata.
17          In exchange for that arrangement, Mr. Angel would
18  withdraw any rights for a substantial contribution relating to
19  the formation of the committee.  The committee would agree that
20  the estate causes of action related to whether the bank
21  guarantee should have been issued and whether the directors
22  should have signed the guarantees -- those estate causes of
23  action, one of which is subjudiced as to whether they should be
24  able to bring it; the other one was brought but immediately
25  stayed.  Those would be dismissed with prejudice.  Mr. Angel's

19

1  individual litigation against those same offices and directors
2  for which we believe we have insurance coverage for would go
3  forward in the North Carolina Court, and we would agree to a
4  separate stipulation to allow that to go forward; although I
5  think that there is a momentum between Mr. Angel's counsel,
6  myself, and perhaps even the DNO carrier to figure out whether
7  we can resolve that issue before confirmation.
8       I will say to Your Honor that if that issue is not
9  resolved there will be an issue in this case in that two of the
10 officers, at least, that have been named in the North Carlina
11 lawsuit have indemnity claims pursuant to agreements that were
12 entered into post-petition relating to this litigation; so they
13 would argue that they would have a post-petition indemnity
14 claim.  To the extent the addendum clause is very
15  large and they move to try the damages, it could impact the
16 distribution in the case.  If we ever got to that point in
17 time, Your Honor -- I'm not asking Your Honor to prejudge the
18 issue -- but we would come to Your Honor and ask to have some
19 estimation procedure so that this litigation does not tie up
20 the entire matter.  I will say, also, that the General
21 Unsecured Creditors Committee's big sticking point in going
22 forward with the deal is that I was not able to wrap up all of
23 the issues.  But unfortunately, this issue which relates to an
24 individual third party claim against the nondebtors is
25 something that I didn't think I could necessarily control as

20

1  part of a plan of reorganization to impose a release.  And
2  while Mr. Angel is a member of the three-person Creditors
3  Committee of Premiere, he stands apart from them.  And I think
4  I convinced both sides that sometimes progress has to be made
5  in incremental steps instead of all at one time.  And
6  unfortunately I wasn't able to do it all at one time, but I
7  thought we needed to keep this case in the momentum going
8  towards the confirmation.  And once we get the confirmation and
9  with a little continued push on both sides, maybe we can reach
10 resolution on these issues.  I only -- to Your Honor because I
11 wanted you to understand the breadth of the issues that were
12 involved in the Premiere resolution.  And again, you're not
13 being asked to accept the Premiere resolution today.  I wanted
14 to let Your Honor know that these are some of the stumbling
15 blocks.
16          There is a little issue -- there is a couple of nits
17 and gnats that I think were supposed to be delivered last night
18 or this morning relating to the Premiere settlement.  I think
19 we will work them all out and go back to the Young Conaway
20 office and be able to come back with an approved disclosure
21 statement which would reflect the agreement of the premiere
22 Committee as the description of what the deal is about.  There
23 is a little issue about how the caps get applied with respect
24 to one or two particular creditors, and I've spoken to the
25 General Unsecured Committee on a whisper as things were going