IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| INTEGRATED HEALTH SERVICES, INC., *et al.*, | ) ) ) | Chapter 11 |
| | ) | Case No. 00-389 (MFW) |
| Debtors. | ) | (Jointly Administered) |
| | ) ) ) ) ) | |
| IHS LIQUIDATING LLC, | ) ) | |
| Appellant, | ) ) | C.A. No. 04-CV-917 (GMS) |
| v. | ) ) | Ref. Docket Nos. 10 and 13 |
| DON G. ANGELL, *et al.*, | ) ) ) | |
| Appellee. | ) ) ) ) | |

**REPLY BRIEF OF APPELLANT
<u>IHS LIQUIDATING LLC</u>**

YOUNG CONAWAY STARGATT &
TAYLOR, LLP
Robert S. Brady (No. 2847)
Edmon L. Morton (No. 3856)
Joseph M. Barry (No. 4221)
Kenneth J. Enos (No. 4544)
The Brandywine Building
1000 West Street - 17th Floor
P.O. Box 391
Wilmington, DE  19899-0391
(302) 571-6600

KAYE SCHOLER LLP
Arthur Steinberg
425 Park Avenue
New York, New York  10022
(212) 836-8000

*Attorneys for Appellant IHS Liquidating LLC*

# TABLE OF CONTENTS

Page

TABLE OF CONTENTS ............................................................................................................. i

TABLE OF AUTHORITIES ...................................................................................................... ii

PRELIMINARY STATEMENT ................................................................................................. 1

REPLY .......................................................................................................................................... 3

    I.      The Parties' Intentions Were Clear, and All of the Relevant Provisions
           of the Plan, When Considered, Support the Appellants' View ............................. 3

    II.     The Court Should Reject Appellees' Inaccurate Account of the
           Factual Record ........................................................................................................ 5

    III.    Appellant's Challenge to the Bankruptcy Court's Application of
           *Res Judicata* to Bar Sanctions Stands Unrefuted .................................................. 9

    IV.    The Measure and Purpose of Appellant's Request for Sanctions
           Are Appropriate ....................................................................................................... 9

CONCLUSION ........................................................................................................................... 11

## TABLE OF AUTHORITIES

**Cases** Page

Moore v. Coachmen Indus., Inc.,
    499 S.E.2d 772 (N.C. App. 1998) ............................................................................5

Appellant Liquidating LLC respectfully submits this *Reply Brief of Appellant IHS Liquidating LLC* ("Reply Brief") in opposition to the *Brief of Appellees Don G. Angell, Don G. Angell Irrevocable Trust, Angell Care Incorporated and Bermuda Village Retirement Center Limited Partnership*, dated April 11, 2005 ("Appellees' Brief"), and in further support of the *Brief of Appellant IHS Liquidating LLC*, dated March 24, 2005 ("Appellant's Opening Brief").[1]

### PRELIMINARY STATEMENT

This Court is being asked to determine whether the Bankruptcy Court erred in construing isolated provisions of the Plan as barring the Appellant's right to (i) argue that Appellees' post-Effective Date prosecution of the claims they asserted in the Angell Lawsuit that are virtually identical to the claims asserted in the Premiere D&O Action (dismissed with prejudice under the Plan) violated the Plan and Confirmation Order, and (ii) seek sanctions for such violation. Appellant's Opening Brief sets forth in detail the reasons why the Bankruptcy Court should have considered and accepted Appellant's arguments.

In response, Appellees' Brief asks this Court to view the Plan as a clear and unambiguous contract and ignore (i) the internal inconsistencies resulting from the Plan that exist based on the Bankruptcy Court's reliance on only one, of many, integrated Plan provisions and (ii) the overwhelming evidence showing that the Estate Claims were not supposed to survive after the Plan Effective Date. No amount of rhetoric by Appellees can change the obvious fact that the parties' intentions were clear and that the proper reading of the Plan cannot be ascertained by an overly narrow focus on only one of many relevant Plan provisions.

---

[1] Unless otherwise defined herein, capitalized terms shall have the same meaning as set forth in Appellant's Opening Brief.

Appellees' Brief is replete with erroneous factual assertions and misleading accounts of the record below, most of which are addressed in this Reply Brief. Appellees' attempt at revisionist history should not distract this Court's attention from the indisputable fact that Appellees' prosecution of the Estate Claims was improper, and after the Bankruptcy Court's ruling, the Estate Claims were ultimately dismissed by the North Carolina Court. It is hornbook law that only an estate representative may pursue causes of action that have caused an injury common to all creditors. Appellees knew this to be the law and the intent of the Premiere Settlement, but nevertheless elected to prosecute the Estate Claims in the Angell Lawsuit, even after the Plan became effective and the Estate Claims were dismissed with prejudice. The suggestion that this issue was the subject of a genuine dispute at the time of confirmation of the Plan is incredulous, given Appellees' direct involvement in the formation and direction of the Premiere Committee to pursue the Estate Claims, as well as the Plan negotiations that resulted in the settlement of the Estate Claims and their dismissal with prejudice.

While Appellees argue that they are not the Premiere Committee and should not be tarred by the same brush, Angell and his surrogates cannot escape from the identity of interests sufficient to meet the requisite privity element of *res judicata*. Appellees' post-Effective Date conduct was in conflict with the Plan Settlement that Angell negotiated, and Appellees should be sanctioned at a level commensurate with the damages caused by their improper actions. That is the sum and substance of what the Claim Objections sought to achieve–an appropriate remedy for a knowingly improper course of conduct that caused damage to the other creditors of the Debtors' Estates.

In essence, Appellees negotiated a settlement of Estate Claims and, thereafter,

sought, in a foreign court, to prosecute the exact claims already dismissed in the Bankruptcy Court, for their personal benefit. The North Carolina Court ruled (while this dispute was on appeal) that Appellees could not do that and dismissed all of the Estate Claims. Appellees' post-Effective Date actions through the date of the dismissal caused the Appellants to incur significant fees, delayed distributions under the Plan, and contravened the Plan and Confirmation Order. The sanction sought (6% of an approximate $13 million claim) or approximately $780,000, is not out of line with the damages caused by Appellees to the Debtors' Estates.

For the reasons set forth below and in the Appellant's Opening Brief, the Court should reverse the Bankruptcy Court's Order and either disallow the Appellees' Claims or remand the Claim Objections to the Bankruptcy Court for consideration of the merits of Appellant's argument for sanctions.

## REPLY

### I. The Parties' Intentions Were Clear, and All of the Relevant Provisions of the Plan, When Considered, Support the Appellants' View.

Appellees assert that the matters at issue in the Claims Objections are in the nature of a simple contract dispute and that the Court should not consider extrinsic evidence showing the parties' intentions because the Plan is clear and unambiguous. Appellees are wrong. Appellees' Brief makes the illogical argument that the Debtors' waiver of their claim for sanctions in the Injunction Complaint -- as a penalty for the Angell Plaintiffs' *pre-confirmation* violation of the automatic stay -- somehow constituted a clear and express waiver of the Appellant's right to seek sanctions --as a penalty for the Angell Plaintiffs' *post-Effective Date* violation of the Plan. Appellees further assert, without any direct support, that the Plan's preservation of the Former Officers' right to argue that claims asserted in the North Carolina

31074393                                -3-

Action are estate causes of action evidences a clear and unambiguous intention to bar the Appellant from arguing, post-Effective Date, that the Estate Claims, previously settled and released, should not be prosecuted -- even when the improper assertion of such actions caused direct and significant injury to the Debtors' Estates. In other words, according to Appellees, the Debtors had "tacitly" waived the right to enforce a settlement in which they were a party, and somehow entrusted former officers, with different motivations than the Debtors, to act on their behalf. That argument (a knowing waiver of a right to enforce a settlement) is not supported by anything in the record in these cases.

Given the irreconcilable inconsistency between the Bankruptcy Court's construction of an isolated Plan provision with other Plan provisions detailed in Appellant's Opening Brief, it is obvious that the Bankruptcy Court committed reversible error; simply put, the Plan should have been interpreted by reviewing all of the relevant provisions, not just one singular provision. If any perceived ambiguity existed among the various Plan provisions, it was appropriate for the Bankruptcy Court to take evidence as to the parties' intent -- which it refused to do.

Appellees' bluster cannot bury the critical fact that they knew their actions were barred by operation of the Plan and acted at their own peril in pursuing the Estate Claims. Recognizing that fatal flaw, Appellees attempt to deflect the Court's focus and justify their improper actions by inartfully blurring the line between the Angell Plaintiffs' personal causes of action--for fraud, negligent misrepresentation and unfair and deceptive trade practices (collectively, the "Personal Claims") -- and the Estate Claims.[2] Appellants have *not* sought

---

[2] Appellant's Opening Brief at pp. 11-12 provides a summary and comparison of the Estate Claims (defined therein as the "D&O Claims") as alleged in the Angell Complaint and the Premiere Complaint

sanctions for Appellees prosecution of the Personal Claims. In fact, the existence of the Personal Claims is the very reason why the North Carolina Action was allowed to continue after the Plan Effective Date.[3] The record, which is detailed in Appellant's Opening Brief, is clear about this distinction.

Building on their flimsy premise, Appellees make the unsupportable statement that the question of whether the Estate Claims belonged to the Debtors was the subject of an ongoing dispute. Appellees then debunk their own suggestion in footnote 7 of Appellees' Brief, wherein they claim they never had any intention of pursuing Estate Claims. If the Angell Plaintiffs truly never believed they were entitled to pursue the Estate Claims, they should have acted accordingly and ceased prosecution in the North Carolina Court of all but their Personal Claims.[4]

## II. The Court Should Reject Appellees' Inaccurate Account of the Factual Record.

Appellees' Brief purports to submit certain "corrections" to the factual record summarized in the Appellant's Opening Brief. However, Appellees' recitation of the facts is replete with revisionist, self-serving statements, many of which actually conflict with the record

---

[3]  Appellees' Brief at p. 22 states that the "dismissal of the Committee D&O Action could just as easily be construed as a recognition that the claims in the D&O Action were not Estate Claims, but rather belonged to the Angell Plaintiffs individually." This is an absurd conclusion. It was the Premiere Committee's decision (of which Appellee Angell was Chair) to commence the Committee D&O Action that evidences Angell's admission that the claims belonged to the Estates. Further, by virtue of the Plan, Premiere's unsecured creditors received an enhanced distribution for the settlement of the Estate Claims. To suggest that the dismissal was a recognition that Estate Claims were worthless and truly belonged to Appellees is such an absurd contention that it speaks volumes as to the credibility of the other unsupportable statements made in Appellees' Brief.

[4]  Though the Plan did not *per se* preclude the Angell Plaintiffs' from pursuing the Personal Claims, the Angell Plaintiffs' election to assert promissory note claims against the Estates should preclude them from pursuing claims against the Former Officers as a matter of North Carolina law. *See Moore v Coachmen Indus, Inc*, 499 S.E.2d 772 (N.C. App 1998) (under North Carolina law, economic loss rule bars plaintiff from suing in tort for purely economic loss, which is governed by contract law).

and/or testimony elicited after the Appeal was taken.

First, for no apparent reason other than to sway the Court's sympathies toward the Angell Plaintiffs as *bona fide* injured parties, Appellees' Brief takes several indefensible liberties in describing the factual underpinnings of the Angell Complaint. Appellees state "The Former Officers represented to the Angell Plaintiffs that the Notes would have priority over all other indebtedness of Premiere."[5] However, Appellee Angell, who testified that he was the sole actor and representative on behalf of all the Angell Plaintiffs during their negotiations with IHS, admitted that he did not negotiate with the Former Officers.[6] Moreover, as noted in Appellant's Opening Brief, Appellees' alleged understanding of the arrangement is in complete conflict with the IHS Guaranty, which provided for the subordination of IHS' claims against Premiere to the claims of Appellees. The provision makes no mention of third-party claims (which IHS would not have had the capacity to release in any case), and the fact that Appellees did not understand a provision of a written agreement cannot possibly be attributed *any* act or omission by the Former Officers.

Appellees' Brief goes on to state that at the time of the Angell Plaintiffs' agreement to release their security interests in exchange for a payment guaranty from IHS, "the Angell Plaintiffs did not know, and the Former Officers did not disclose . . . that IHS already had debt obligations of $2.15 billion owing to Citibank, N.A. under a credit agreement that required subsidiaries of IHS to unconditionally guarantee payment of the entire $2.15 billion obligation,

---

[5] See Appellees' Brief at pp 8-9.

[6] Attached hereto as Exhibit "A" is a copy of a transcript of the Appellant's deposition of Don G. Angell taken in connection with Appellant's dispute with the Former Officers. Some of the testimony supporting Appellant's statement is contained in pp. 21:13- 24:21; 34:16-21, 38:7-25, 40:14-20; 43:1-45:2; 44:7-45:25; and 66:9-68:10.

which would be senior to all other indebtedness of IHS and its subsidiaries."[7] Again, Angell admitted under oath that the Former Officers did not negotiate with him. Moreover, as noted in Appellant's Opening Brief, IHS' debt obligations to Citibank and the subsidiary guaranty requirement were disclosed in IHS' public filings, which the Angell Plaintiffs acknowledged in writing they had received. Angell testified that he did not review these public filings, and that they may have been reviewed by his son, D. Gray Angell, and his lawyer, Don House (who are co-plaintiffs in their capacities as trustees of Appellee Trust). Hence, the Angell Plaintiffs' alleged lacks of knowledge and the Former Officers' alleged failure to disclose are of no consequence in light of the Angell Plaintiffs' own negligence.[8]

The Appellees also state that as a result of the Merger and Premiere's entry into the Joinder Agreement (defined in Appellees' Brief), Premiere was rendered insolvent. (D-41, Exh. A; D-11). This assertion, if true, had no relevance to any Personal Claim, but rather, is only relevant to the dismissed Estate Claims. In any event, as the North Carolina Court aptly stated in its Memorandum Opinion, Angell Plaintiffs "admit that Premiere continued to be solvent for almost two years following its merger with the IHS subsidiary and execution of the joinder agreements Plaintiffs blame for Premiere's bankruptcy."[9] Thus, the Court should disregard Appellees' statement in this regard.

In addition to skewing the facts underlying the Angell Complaint, Appellees' Brief also misrepresents certain aspects of the record before the Bankruptcy Court. First,

---

[7] See Appellee Brief at p. 9.

[8] As will presumably be litigated in the district court presiding over the North Carolina Action, Angell Plaintiffs' claims are barred by the doctrine of contributory negligence.

[9] See Appendix at p. A000031.

Appellees suggest that IHS' counsel conceded at the May 7, 2003 hearing on confirmation of the Plan ("Confirmation Hearing") that the issue of whether the Estate Claims were property of the estate was an open issue that was left intentionally unresolved by the Plan. Counsel's statement at the Confirmation Hearing quoted by Appellees on page 25 of Appellees' Brief was not referring to any open question concerning whether the Appellees' could pursue the Estate Claims. Read in context, it is obvious that counsel was referring to the Debtors' failed effort to settle the Angell Plaintiffs' Personal Claims as part of the global resolution. Appellees' mischaracterization of counsel's statements should be rejected.

Appellees also state that "[f]or nearly a year, from May of 2003 until March 23, 2004, IHS raised no objection to the Angell Plaintiffs' prosecution of the North Carolina Action. At no time during that ten-month period did IHS ever inform the Angell Plaintiffs that they considered the prosecution of the North Carolina Action to constitute a violation of the Plan or "misconduct" that was interfering with their implementation of the Plan."[10] That statement conveniently ignores the examples of such disclosure cited in Appellant's Opening Brief, such as statements of Debtors' counsel at the June 16, 2003 hearing, as well as several subsequent pleadings filed by Appellant in connection with the defunct Premiere Committee's motions seeking to compel distributions to holders of Premiere Unsecured Claims. The Court should reject Appellees' false statement out of hand.

Despite Appellees' spinning and twisting, the record is clear that (a) the Premiere Settlement released all of the Estate Claims against the Former Officers, and (b) the Plan did not transfer these choses in action to Appellees. What inexorably follows is that Appellees' attempt

---

[10] Appellees' Brief at p. 12.

to circumvent and undermine the Premiere Settlement approved by the Bankruptcy Court, after it was consummated, by prosecuting released Estate Claims for their personal benefit, is sanctionable.

### III. Appellant's Challenge to the Bankruptcy Court's Application of *Res Judicata* to Bar Sanctions Stands Unrefuted.

Tellingly, at no point do Appellees attempt to refute Appellant's legal position that even if *res judicata* would otherwise be applicable as a bar to preclude Appellant's request for sanctions (which Appellant disputes), the facts and circumstances of the instant case trigger one or more of three recognized exceptions to the general rule. Instead, Appellees' Brief cites to the general rule and is silent with respect to the exceptions cited in Appellants' Opening Brief. Appellee's failure to address this argument is an admission of their applicability.

### IV. The Measure and Purpose of Appellant's Request for Sanctions Are Appropriate.

Appellees' Brief states that Appellant, motivated by "secret intentions," filed the Claim Objections "as a litigation strategy concocted to excuse making a distribution of $780,000 to the Angell Plaintiffs,"[11] which Appellees characterize as an "extreme sanction." At no point does Appellees' Brief explain what is improper about an estate fiduciary's effort to enforce the Plan and seek redress for harm caused to the Debtors' Estates. Appellant has no vested interest in the amount paid or which particular creditors receive dividends; however, it does have a duty to all creditors to seek redress for their benefit where appropriate. Such is the instant case that engendered the Claims Objections and Counterclaims. Moreover, while Appellees' characterize the proposed sanction as extreme, its value is certainly within the same ballpark as the amount of

---

[11]    Appellees' Brief at p. 7.

damages suffered by the Estates as a result of Appellees' improper conduct.

It is with great audacity that Appellees accuse Appellant of having brought this appeal to "further delay the day when Appellees will be entitled to distribution on their claims."[12] But for Appellees' illegitimate prosecution of the Estate Claims to suit their own personal ends, Appellant would have been able to avoid or curtail needless litigation with the Former Officers that effectively prevented the Estates from making unsecured creditor distributions. Thus, the Court should give no weight to this attempt to discredit Appellant's request.

---

[12] Appellees' Brief at p. 15

## **CONCLUSION**

For all of the reasons set forth in this Reply Brief and Appellant's Opening Brief, Appellant respectfully submits that the Court (a) should reverse the Bankruptcy Court's June 25, 2004 *Order (i) Granting Motion to Dismiss Counterclaims; (ii) Sustaining, In Part, and Overruling, in Part, Objections to Claims; and (iii) Allowing Unsecured Claims of Don G Angell, Don G. Angell Irrevocable Trust, Angell Care Incorporated and Bermuda Village Retirement Center Limited Partnership* and disallow the Appellees' Claims or remand to the Bankruptcy Court for consideration of the merits of Appellants' argument for sanctions, and (b) grant Appellant such other and further relief as the Court deems just and proper.

Dated:  April 22, 2005
        Wilmington, Delaware

YOUNG CONAWAY STARGATT
& TAYLOR, LLP

/s/ Robert S. Brady

Robert S. Brady (No. 2847)
Edmon L. Morton (No. 3856)
Joseph M. Barry (No. 4221)
Kenneth J. Enos (No. 4544)
The Brandywine Building
1000 West Street - 17th Floor
P.O. Box 391
Wilmington, DE  19899-0391
(302) 571-6600

-and-

KAYE SCHOLER LLP
Arthur Steinberg
425 Park Avenue
New York, NY  10022-3598
(212) 836-8000

ATTORNEYS FOR APPELLANT IHS
LIQUIDATING LLC